## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

AIDS VACCINE ADVOCACY
COALITION,
     125 Broad Street
     9th Floor
     New York, NY 10004

     and

JOURNALISM DEVELOPMENT
NETWORK, INC.
     7 Saint Paul Street
     Suite 820
     Baltimore, MD 21202

          *Plaintiff,*

     v.

UNITED STATES DEPARTMENT
OF STATE,
     2201 C Street NW
     Washington, DC 20520,

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT,
     1300 Pennsylvania Ave. NW
     Washington, DC 20004,

MARCO RUBIO, Secretary of State,
     and Acting Administrator of
     United States Agency for
     International Development,
     United States Department of
     State,
     2201 C Street NW
     Washington, DC 20520,

OFFICE OF MANAGEMENT AND
BUDGET,
     725 17th Street NW

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Case No. _____

Washington, DC 20503,     )
    )
RUSSELL VOUGHT, Director,    )
    Office of Management and    )
    Budget,    )
    725 17th Street NW    )
    Washington, DC 20503,    )
    )
and    )
    )
DONALD TRUMP, President of the    )
    United States of America,    )
    1600 Pennsylvania Avenue NW )
    Washington, DC 20050,    )
    )
         *Defendants.*    )
_____ )

## INTRODUCTION

1.    This action seeks declaratory and injunctive relief with respect to a series of orders issued by President Donald Trump and his administration that—illegally and unconscionably—froze funding and work related to nearly every United States foreign assistance mission. The Executive Order titled "Reevaluating and Realigning United States Foreign Aid," Exec. Order. No. 14169, 90 Fed. Reg. 8619 (hereafter, Foreign Aid Executive Order), issued on January 20, 2025, exceeds President Trump's constitutional authority and violates his duty under the Take Care Clause of the Constitution, and subsequent orders by federal agencies to implement the Foreign Aid Executive Order's directives have resulted in unlawful actions that are harming and will harm countless individuals and entities, including plaintiffs.

2.    The Foreign Aid Executive Order directs the Office of Management and Budget (OMB) to effectuate a "90-day pause in United States foreign development

assistance for assessment of programmatic efficiencies and consistency with United States foreign policy." *Id*. The funding freeze applied "immediately" to all "obligations and disbursements of development assistance funds." *Id*. After that 90-day period, "[t]he responsible department and agency heads, in consultation with the Director of OMB, will make determinations … whether to continue, modify, or cease each foreign assistance program … with the concurrence of the Secretary of State." *Id*.

3.    Four days after the January 20 Executive Order, the Secretary of State directed his staff to halt "foreign assistance funded by or through" the Department of State and USAID and required the "immediate[ ]" issuance of "stop-work orders" for existing foreign assistance awards.[1]

4.    The Department of State and USAID then issued orders to recipients of foreign assistance funding, including grantees like plaintiffs, requiring them to immediately stop work and to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage.

5.    Congress has neither cancelled appropriated foreign assistance funds nor permitted deferral of grant awards, and it has not authorized blanket stop-work directives to grantees. Moreover, the terms of the grants do not allow arbitrary, unilateral orders to pause or suspend work or funding.

---

[1] Dep't of State, Memo. 25 STATE 6828 (attached as Exhibit A); *see also* U.S. Dep't of State, Office of the Spokesperson (Jan. 29, 2025) https://www.state.gov/prioritizing-americas-national-interests-one-dollar-at-a-time/ (confirming the existence of the January 24 order).

6.     The January 20 Executive Order, the January 24 order of the Secretary of State, and the stop work orders of the Department of State and USAID are unlawful. Implementation and enforcement of these orders should be enjoined.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

8.     Venue is proper in this district because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(e).

## PARTIES

9.     Plaintiff AIDS Vaccine Advocacy Coalition (AVAC) is a New York-based 501(c)(3) non-profit corporation that works to hasten the end of the global HIV/AIDS epidemic by accelerating development and delivery of HIV prevention options.

10.     Plaintiff Journalism Development Network, Inc. (JDN) is a Maryland-based 501(c)(3) non-profit corporation that supports a global consortium of journalists from more than 70 non-profit investigative centers and regional news organizations across the world. JDN works to help people better understand how organized crime and corruption affect their lives.

11.     Defendant United States Department of State is a federal agency headquartered in Washington, DC, with responsibility for United States foreign relations and foreign policy.

12.     Defendant USAID is a federal agency headquartered in Washington, DC, with responsibility for international development and humanitarian assistance.

13.    Defendant Marco Rubio is the Secretary of State and is the highest-ranking official within the Department of State and the Acting Administrator of USAID and highest-ranking official within USAID. Plaintiffs sue Secretary Rubio in his official capacity. On January 24, 2025, Secretary Rubio issued an order freezing federal funding allocated to plaintiffs and ordering plaintiffs to stop work on their grant projects.

14.    Defendant OMB is a federal agency headquartered in Washington, DC, with responsibility for overseeing the management of federal financial assistance. OMB was directed by Defendant Trump to implement the Foreign Aid Executive Order.

15.    Defendant Russell Vought is the Director of OMB and is the agency's highest-ranking official. Plaintiffs sue Director Vought in his official capacity.

16.    Defendant Donald Trump is the President of the United States and issued the Foreign Aid Executive Order.

## BACKGROUND

**Plaintiffs' Federal Grants**

17.    Through the President's Emergency Plan for Aids Relief (PEPFAR)—a program launched in 2003 to address the global HIV/AIDS epidemic—Plaintiff AVAC has received federal grants for global HIV prevention work for over a decade. In June 2016, USAID entered into a five-year Cooperative Agreement with AVAC to fund the organization's HIV Prevention and Biomedical Prevention Research Project. Through the Cooperative Agreement, AVAC receives federal PEPFAR grant funding to

support a coalition, CASPR, that focuses on accelerating biomedical HIV prevention research. CASPR works in African countries with the highest burden of new HIV infections and performs critical roles in supporting and accelerating prevention research. Among other things, CASPR oversees HIV prevention research projects to ensure that clinical trial participants' rights are protected, and it translates HIV prevention research into accessible resources for policymakers, clinical trial participants, and other community members affected by HIV prevention research. In 2021, USAID extended the agreement for five years—to June 19, 2026—and doubled the amount of funding provided to AVAC under the grant.

18.    AVAC's grant comes from funds appropriated by Congress. In the Further Consolidated Appropriations Act of 2024 (FCAA), Congress appropriated funding to carry out PEPFAR work like AVAC's, including, specifically, to fund "programs for the prevention, treatment, control of, and research on HIV/AIDS … and for assistance to communities severely affected by HIV/AIDS." Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 740 (2024).

19.    Plaintiff JDN is the recipient of a range of grants from the State Department to help investigative news outlets across the world succeed and serve the public. Among its grant-funded efforts are those that build and sustain local journalist networks in places ranging from the Pacific Islands to Paraguay by providing journalists with access to reporting partners, investigative technology and data, robust editing and fact-checking, digital and physical security support, and

protection against harassment. These grants all have periods of performance that stretch well-beyond the dates JDN received stop work notices.

20.    JDN is also the recipient of State Department grants that support its work through the Global Anti-Corruption Consortium (GACC). GACC exists to bring together journalists, advocates, and anti-corruption stakeholders to tackle transnational corruption and facilitate action by government, law enforcement, and international organizations. It is comprised of over 100 reporting partners, 98 civil society organizations, and two universities across 76 countries. One GACC grant has a period of performance that stretches to September 30, 2025; another stretches to September 30, 2027.

21.    JDN is also the recipient of USAID grant funding for its Strengthening Transparency and Accountability Through Investigative Reporting (STAIR) program. Through that program, JDN supports collaborative investigative journalism networks in Europe and Eurasia. JDN first received a grant for STAIR in 2022; subsequent agreements increased funding and lengthened the period of performance for the program through September 8, 2027.

22.    Funding for JDN grants is appropriated through the FCAA. In that statute, Congress directed that appropriated funds "should be made available for democracy programs," a category that includes "programs that support good governance, credible and competitive elections, freedom of expression, association, assembly, and religion, human rights, labor rights, independent media, and the rule of law, and that otherwise strengthen the capacity of democratic political parties,

governments, nongovernmental organizations and institutions, and citizens to support the development of democratic states and institutions that are responsive and accountable to citizens." *Id.* at Div. F, tit. VII, 138 Stat. 786.

23.    The FCAA also directs that appropriated funds for democracy programs "shall be made available to support and protect civil society activists and journalists who have been threatened, harassed, or attacked[.]" *Id.* at Div. F, tit. VII, 138 Stat. 787.

24.    The FCAA further directs that appropriated funds for democracy programs "shall be made available for programs to protect international freedom of expression and independent media, including through multilateral initiatives." *Id.*

**The Executive Order and the State Department Communiqué**

25.    On January 20, 2025, defendant President Trump signed the Foreign Aid Executive Order.

26.    The Foreign Aid Executive Order directs defendant OMB to effectuate, purportedly through the agency's "apportionment authority," a 90-day freeze on "obligations and disbursements of development assistance funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors."

27.    The Foreign Aid Executive Order further directs "department and agency heads, in consultation with the Director of OMB" to determine "whether to continue, modify, or cease each foreign assistance program."

28.    On January 24, 2025, defendants State Department and Secretary Rubio issued a communiqué to all U.S. diplomatic and consular posts purporting to implement the Foreign Aid Executive Order by directing them to "pause[ ] all new obligations of funding, pending a review, for foreign assistance programs funded by the Department and [USAID]."[2] For existing foreign assistance awards, contracting officers and grant officers were directed to "immediately issue stop-work orders … until such time as the Secretary shall determine, following a review."[3]

29.    Although the communiqué frames the suspension of federal assistance as a temporary "pause," defendants State Department and Rubio have stated that spending on obligated funds has been "prevented" and that many recipients of foreign assistance will not receive the funding to which they are entitled under the terms of the grants.[4] Indeed, reports indicate that, as of Thursday, February 6, about 800 awards and contracts administered through USAID had been canceled.[5]

---

[2] Dep't of State, Memo. 25 STATE 6828.

[3] *Id.*

[4] Office of the Spokesperson, Dep't of State, *Prioritizing America's Interests One Dollar at a Time* (Jan. 29, 2025), https://www.state.gov/prioritizing-americas-national-interests-one-dollar-at-a-time/ ("[E]ven at this early stage, over $1,000,000,000 in spending not aligned with an America First agenda has been prevented.").

[5] Karoun Demirjian and Aishvarya Kavi, *Trump Administration to Lay Off Nearly All of U.S. Aid Agency's Staff*, N.Y. Times (Feb. 6, 2025), https://www.nytimes.com/2025/02/06/us/politics/usaid-job-cuts.html.

**Agency Orders to Grantees**

30.    Shortly after the issuance of the State Department communiqué, defendants State Department and USAID began to issue stop-work orders to recipients of federal foreign assistance awards.

31.    On January 27, 2025, plaintiff AVAC received a stop-work order from USAID, directing AVAC to "immediately suspend work" and to "cease implementation immediately" of the programs funded by the Cooperating Agreement. AVAC has received no clarification or further communication from USAID.

32.    Beginning on January 24, 2025, plaintiff JDN received a flurry of stop-work orders, often without any indication of what awards they were in reference to. The stop-work orders contained vague and, at times, contradictory statements. One letter terminating an award provided that "all foreign assistance awards are immediately suspended" in one sentence, and in the next indicated that the specific award was suspended on the basis that it "no longer effectuates agency priorities." Other stop-work orders provided that that the suspension was "not due to any actions by your organization" but rather to "give the new administration time to review the use of Foreign Assistance Funds."

**The OMB Memorandum**

33.    On January 27, 2025, defendant OMB and then-OMB Acting Director Matthew Vaeth issued a memorandum titled "Temporary Pause of Agency Grant,

Loan, and Other Financial Assistance Programs."[6]  The memorandum identified several executive orders issued by defendant Trump, including the Foreign Aid Executive Order, and directed all federal agencies to "temporarily pause all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by [those] executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal."

34.    The OMB order was stayed and later enjoined. *See* Minute Entry for Emergency Hearing Held on 1/28/2025, *National Council of Nonprofits v. Office of Management and Budget*, 1:25-cv-00239 (D.D.C.); Memorandum Opinion and Order, Feb. 3, 2025, *National Council of Nonprofits v. Office of Management and Budget*, 1:25-cv-00239 (D.D.C.). On January 29, OMB rescinded the memorandum. *See* OMB Mem. M25-14, Rescission of M-25-13 (Jan. 29, 2025).

35.    Despite the rescission of the OMB memorandum, White House Press Secretary Karoline Leavitt has stated that "[t]he President's [executive orders] on federal funding remain in full force and effect, and will be rigorously implemented."[7]

36.    In separate litigation challenging the OMB memorandum, the United States District Court for the District of Rhode Island issued a temporary restraining order directing that OMB and other agency defendants "shall not pause, freeze, impede, block, cancel, or terminate" obligations to provide federal financial assistance

---

[6]    OMB    Mem-25-13    (Jan.    27,    2025),    *available    at* https://www.nytimes.com/interactive/2025/01/27/us/omb-memo.html.
[7] @PressSec, X (Jan. 29, 2025), https://x.com/PressSec/status/1884672871944901034/.

to plaintiff states and directing that any effort to review financial assistance programs, as identified in the OMB Memorandum, "shall not affect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." Temporary Restraining Order, Jan. 31, 2025, *State of New York v. Donald Trump*, 25:cv-00039 (D.R.I.).

37.    Recipients of foreign assistance awards, including plaintiffs, and including, on information and belief, hundreds of other organizations, attempted to draw down State Department and USAID grant funding after the issuance of these temporary restraining orders. They remain to this day unable to access obligated funds pursuant to their grants.

**Consequences of Defendants' Funding Freeze and Stop Work Orders**

38.    In response to defendants' action, U.S. programs ranging from provision of antiretroviral medications to HIV patients to efforts to combat international narcotrafficking to anti-corruption programming ground to an immediate halt. Predictably, chaos ensued. Non-governmental organizations across the world "began shutting doors, sending staff home and turning away their dependents."[8] Thousands

---

[8] Laura Kelly and Nathaniel Weixel, *Chaos and uncertainty swirl around Trump's foreign aid freeze*, The Hill (Jan. 30, 2025), https://thehill.com/homenews/administration/5114561-trump-rubio-foreign-aid-freeze/.

of American employees working for organizations that receive federal grant funding have been furloughed or laid off entirely.[9]

39.    The enormity of Defendants' actions cannot be overstated. Millions across the world are affected. Staff who operate humanitarian operations at refugee camps in Syria were told to stop work, leaving thousands of people vulnerable to instability and violence at the hands of ISIS.[10] Colombian anti-narcotrafficking helicopters were grounded for lack of fuel.[11] Soup kitchens that feed nearly a million people in famine-stricken Khartoum have shut down.[12] Clinical trials that had been underway in Uganda for a potentially lifesaving children's tuberculosis treatment stopped.[13]  In the Ivory Coast, a program to collect intelligence on Al Qaeda shut down.[14] Toddlers in Zambia have been deprived of rehydration salts to treat life-

---

[9] Sara Cook, et al., *Rubio foreign aid freeze leads to USAID staff suspensions and contractor terminations*, CBS News (Jan. 28, 2025), https://www.cbsnews.com/news/rubio-foreign-aid-freeze-leads-to-usaid-staff-suspensions-contractor-terminations/.

[10] Tom Bateman, *How a US freeze upended global aid in a matter of days*, BBC (Jan. 29, 2025), https://www.bbc.com/news/articles/c3604r84zjyo.

[11] David Pilling, et al., *Donald Trump's foreign aid freeze sparks global funding crisis*, Financial Times (Jan. 30, 2025), https://www.ft.com/content/59e008d2-ca81-4a31-9e4a-fa10f7497797/.

[12] Sui-Lee Wee, et al., *How the World is Reeling from Trump's Aid Freeze*, N.Y. Times (Jan. 31, 2025), https://www.nytimes.com/2025/01/31/world/asia/trump-usaid-freeze.html.

[13] Stephanie Nolan, *Abandoned in the Middle of Clinical Trials, Because of a Trump Order*, N.Y. Times (Feb. 6, 2025), https://www.nytimes.com/2025/02/06/health/usaid-clinical-trials-funding-trump.html.

[14] *Id.*

threatening diarrhea.[15] Doctors at U.S.-funded medical facilities in Sudan that treat severely malnourished children were forced to choose whether to obey Defendants' orders and "immediately stop their operations or to let up to 100 babies and toddlers die."[16] They continued to administer their life-saving care, but it is "a matter of days, not weeks, before they run out" of funds for supplies like IV bags.[17]

**Injuries to Plaintiffs**

40.    The abrupt cessation of funding and the stop-work order has been disastrous for AVAC. Its grant funding through USAID constitutes forty percent of its total operating budget. As part of its federally supported work, AVAC supports and funds CASPR, a working group of African civil society organizations that conducts research on HIV prevention and translates that research into resources for local communities, including medical research trial participants. The orders freezing funding and requiring AVAC to stop work on federally funded projects are devastating to AVAC's ability to provide these services. As a result of the challenged actions, AVAC was forced to halt all CASPR work, resulting in disruption to HIV prevention research and development and to clinical trials.

---

[15] Stephanie Nolen, *Health Programs Shutter Around The World As Trump Pauses Foreign Aid*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/health/trump-aid-malaria-tuberculosis-hiv.html?smid=nytcore-ios-share&referringSource=articleShare.

[16] Brett Murphy and Anna Maria Barry-Jester, *"People Will Die": The Trump Administration Said it Lifted its Ban on Lifesaving Humanitarian Aid. That's Not True*, ProPublica (Jan. 31, 2025), https://www.propublica.org/article/trump-state-department-usaid-humanitarian-aid-freeze-ukraine-gaza-sudan.

[17] *Id.*

41.     As of today, AVAC has had to lay off seven of its forty-six person staff because of the loss of USAID funding. Without immediate action, it will be forced to lay off ten more people in the next month.

42.     The orders have already caused severe harm to AVAC. With every hour the pause continues, AVAC's ability to do its work and advance its mission to end AIDS and prepare for future pandemics become increasingly more difficult.

43.     The abrupt cessation of funding has likewise devastated JDN's global operations. The organization's budget was abruptly slashed by 29 percent, forcing JDN to lay off 20 percent of its staff and reduce salaries and work time for the majority of the remaining employees.

44.     JDN's mission to support investigative journalists is being harmed in an irreparable and ongoing way.  If funding is not restored, JDN will have no choice but to close programs in a half dozen countries, resulting in the stoppage of investigative journalism operations in Asia, the Pacific, Latin America and Europe.

## FIRST CAUSE OF ACTION

Violation of Separation of Powers (Defendant Trump)

45.     Plaintiffs have a non-statutory right of action to declare unlawful official action that is ultra vires.

46.     The President of the United States has only those powers conferred on him by Article II of the Constitution and federal statutes.

47.     Federal legislation must be passed by both chambers of Congress before it may be presented to the President and, if signed, become law. U.S. Const., art. I.

The President has no authority under the Constitution unilaterally to amend federal statutes.

48.    By requiring agencies to consider and take final action by withholding funding based on factors that are impermissible and arbitrary under the governing statutes, the Executive Order purports to amend Congressional appropriations statutes.

49.    The Foreign Assistance Executive Order exceeds presidential authority and usurps legislative authority conferred by the Constitution on the Congress, in violation of the separation of powers.

50.    Plaintiffs will suffer irreparable injury if the Executive Order is not declared unlawful, and plaintiffs have no adequate remedy at law.

51.    The public interest favors entry of a declaration that the Executive Order is unconstitutional, in violation of the separation of powers, because implementation of the Executive Order has caused and will continue to cause needless death, destruction, and immiseration; will continue to threaten U.S. global security; and will directly result in thousands of Americans losing jobs and income.

## SECOND CAUSE OF ACTION

### Violation of Take Care Clause (Defendant Trump)

52.    Plaintiffs have a non-statutory right of action to declare unlawful official action that is ultra vires.

53.    Under the Constitution, the President has the duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3

54.     The Take Care Clause is judicially enforceable against presidential action that undermines statutes enacted by Congress and signed into law. *See*, *e.g.*, *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945) ("Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of [the Executive Branch]."); *Kendall v. United States ex. Rel. Stokes*, 37 U.S. (12 Pet.) 524, 612–13 (1838).

55.     The Take Care Clause limits the President's power and ensures that he will faithfully execute Congress's laws.

56.     Under the Constitution, the President lacks the authority to direct federal officers or agencies to act in derogation of a federal statute.

57.     Plaintiff will suffer irreparable injury if the Executive Order is not declared unlawful and in violation of the Take Care Clause. Plaintiff has no adequate remedy at law.

58.     The public interest favors entry of a declaration that the Executive Order is contrary to law and unconstitutional, because implementation of the Executive Order will cause needless death, destruction, and immiseration; continue to threaten U.S. global security; and directly result in thousands of Americans losing jobs and income.

59.     Accordingly, the Executive Order is in violation of the Take Care Clause and compliance with or enforcement of the Executive Order violates the Take Care Clause.

## THIRD CAUSE OF ACTION

Violation of the APA—Unlawful Suspension of Grants
and Issuance of Stop-Work Orders
(Defendants Department of State, USAID, Secretary Rubio, OMB, and Director
Vought)

60.    The Administrative Procedure Act (APA) authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

61.    Defendants' suspension of plaintiffs' grant funding and issuance of stop-work orders constitute final agency action under the APA.

62.    Agency defendants suspended plaintiffs' grant funding and ordered them to stop work without notice, explanation, or reasonable recourse, and in non-compliance with the terms of the grants.

63.    Defendants' suspension of plaintiffs' grant funding and order to stop work was arbitrary, capricious, unconstitutional, and not in accordance with law.

## FOURTH CAUSE OF ACTION

Violation of the APA—Unlawful Impoundment of Appropriated Funds
(Defendants Department of State, USAID, Secretary Rubio, OMB, and Acting
Director Vought)

64.    The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1), (2)(A).

65.    Defendants lack discretion to arbitrarily suspend or terminate existing grants for which Congress has appropriated funding.

66.     Defendants' actions with respect to plaintiffs' grants constitutes the unlawful impoundment of appropriated funds, contrary to the Further Consolidated Appropriations Act of 2024, in violation of the APA.

## FIFTH CAUSE OF ACTION

Violation of the APA—Violation of the Impoundment Control Act
(Defendants Department of State, USAID, Secretary Rubio, OMB, and Acting Director Vought)

67.     The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1), (2)(A).

68.     The Congressional Budget and Impoundment Control Act of 1974 (the Impoundment Control Act) requires the President to make appropriated funds "available for obligation," unless the President sends a special message to Congress detailing a request to rescind or reserve funds and Congress then passes a rescission bill rescinding the funding. 2 U.S.C. § 683.

69.     The President has not transmitted a special message to Congress requesting that foreign assistance funding be rescinded, and Congress has not rescinded appropriations for foreign assistance. The President is thus required by the Impoundment Control Act to expend the appropriated funding.

70.     Defendants' suspension of plaintiffs' grant despite the congressional appropriation, and statements that the money will not be spent, is contrary to the Impoundment Control Act, in violation of the APA.

## SIXTH CAUSE OF ACTION

Violation of the APA—Violation of the Anti-Deficiency Act
(Defendants Department of State, USAID, Secretary Rubio, OMB, and Acting
Director Vought)

71.    The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1), (2)(A).

72.    The Anti-Deficiency Act provides, in relevant part, that "[i]n apportioning or reapportioning an appropriation, a reserve may be established *only*— (A) to provide for contingencies; (B) to achieve savings made possible by or through changes in requirements or greater efficiency of operations; or (C) as specifically provided by law." 31 U.S.C. § 1512(c)(1) (emphasis added).

73.    Defendants' decision to freeze plaintiffs' grant funding results in an unlawful reserve, contrary to the Anti-Deficiency Act, in violation of the APA.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

(A) Declare defendants' suspension of foreign aid assistance unlawful;

(B) Enjoin defendants from enforcing the Executive Order, the January 24 communiqué, and the stop-work orders issued to plaintiffs pertaining to their foreign assistance awards;

(C) Order defendants to immediately reinstate foreign assistance funding and to continue to administer all foreign aid assistance awards to the same extent and in

the same manner as prior to the unlawful suspension, as provided in the terms of the awards;

(D) Award plaintiffs their costs and reasonable attorney fees; and

(E) Grant such other relief as this Court may deem just and proper.

Dated: February 10, 2025   Respectfully submitted,

<u>/s/ Lauren E. Bateman</u>
Lauren E. Bateman (D.C. Bar No. 1047285)
Allison M. Zieve (D.C. Bar No. 424786)
Nicolas A. Sansone (D.C. Bar No.1686810)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*