UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AIDS VACCINE ADVOCACY COALITION, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 25-cv-400 |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF STATE, et al., | ) ) ) ) | |
| *Defendants*. | ) ) | |

**REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION**

Responding to Plaintiffs' Emergency Motion to Enforce the Temporary Restraining Order and to Hold Restrained Defendants in Civil Contempt (ECF 26), Defendants appear to misunderstand the purpose of a temporary restraining order. A TRO is a tool of the federal courts to prevent irreparable harm, on an emergency basis, thereby permitting courts to afford full consideration to merits questions on an orderly basis. Such relief is warranted when the moving party shows a substantial likelihood of success on the merits, irreparable harm if the TRO is not granted, and that the balance of equities and public interest favor entry of an injunction. *See* Mem. in Support of Plaintiffs' Mot. for Temporary Restraining Order, ECF 13-1 at 9.

This Court held a hearing on Plaintiffs' motion for a TRO, at which time Defendants were afforded the opportunity to explain their position. The Court subsequently issued a thoroughly reasoned opinion and order granting such relief.

ECF 17. This Court's order unambiguously enjoined "Restrained Defendants" from enforcing or giving effect to provisions 1, 5, 7, 8, and 9 of the Rubio Memorandum and *to any other directives* that implement Sections 3(a) and 3(c) of Executive Order 14169. *Id.*

Defendants' February 18 filing and their response to the motion to enforce make clear that Defendants never intended to comply with this Court's order. Instead, they admit that the TRO prompted them to "beg[i]n an analysis of the thousands of contracts, grants, and cooperative agreements on which action was taken." ECF 22 at ¶ 8. The post-hoc rationalization they now offer to justify their continued noncompliance with the TRO is pure pretext: It is clear from the record, and uncontested, that Defendants froze grant funding and issued stop-work orders because of the directives contained in the Executive Order and subsequent agency directives stemming from that Executive Order. *See, e.g.*, ECF 1-10 (State Department memorandum providing that "consistent with the President's Executive Order on Reevaluating and Realigning United States Foreign Aid, this [memorandum] pauses all new publications of funding, pending a review, for foreign assistance programs funded by or through the Department and USAID"). And the evidence shows that Defendants made no effort to comply with the portions of the TRO that enjoin the enforcement or implementation of suspensions, terminations, and stop-work orders stemming from those directives. *See* Dec. of Jessica Doe, ECF 26-3 at ¶¶ 43–45 (stating that contracting officers at USAID were alerted to the existence of the TRO only as of February 17, and that they never received instruction

to rescind stop-work orders or terminations or halt ongoing stop-work orders and terminations); *see generally* Decl. of Pete Marocco, ECF 22-1.

Now, disingenuously asserting that the challenged actions were taken for reasons other than to implement the Executive Order and the Rubio Memorandum, Defendants point to the terms of the grants, contracts, and cooperative agreements at issue. Yet regardless of whether termination is permitted under the terms of any of those instruments, Defendants do not contest that any suspensions, terminations, and stop-work orders issued were, in fact, issued for the purpose of implementing the Executive Order and Rubio Memorandum.

Moreover, the language of the instruments does not justify flouting this Court's Order. Notably, Defendants rely on *implicit* incorporation of *unidentified* terms and conditions, and even then can offer only that "at least substantially all" or "a large share" of relevant instruments contain such provisions, *see* ECF 28 at 4–5—putting them in *admitted* violation of the TRO.

As for Defendants' assertion that a sanction for violating the Court order is not warranted because Plaintiffs can seek reimbursement from them for costs, *see* ECF 28 at 16-17, Defendants' argument simply disputes the Court's finding of irreparable harm.

Finally, Defendants' argument as to the posting of security misunderstands the situation here. Compliance with an order requiring them to continue funding grants to which the agencies obligated themselves, using money appropriated for that purpose by Congress, does not impose costs or damages on Defendants. If the Court

ultimately allows Defendants to terminate the grants, it will not be because the grants were unlawful or improper. Federal law, including the Impoundment Control Act, requires Defendants to spend the funds, and, regardless of the ultimate outcome of this litigation, Defendants suffer no harm from doing so in accordance with their constitutional, statutory, and contractual obligations.

Defendants' new assertions are, in any event, beside the point. Plaintiffs welcome the opportunity to litigate questions related to terms and conditions of grants in an orderly fashion, and fully expect to prevail. But at this preliminary stage of the proceedings, the point is that Plaintiffs and other recipients of foreign assistance funding—as well as the people across the world they serve—are suffering. That suffering is irreparable. This Court already recognized as much, *see* ECF 17 at p. 3–8, and Defendants do not claim otherwise. This Court likewise already concluded that Plaintiffs showed that they are likely to succeed on the merits and that Plaintiffs have demonstrated undisputed "existential consequence to their missions, which may endanger the health and safety of children and other vulnerable populations," and that Defendants "did not dispute the likelihood of those consequences." *Id.* at 9–12. This Court therefore issued a TRO, which Defendants have failed to abide by.

This Court should not permit Defendants to evade its Order. The Court should compel compliance by holding the Restrained Defendants in contempt until the TRO is followed.

February 20, 2025                              Respectfully submitted,

                                               <u>/s/ Lauren E. Bateman</u>
                                               Lauren E. Bateman (D.C. Bar No. 1047285)
                                               Allison M. Zieve (D.C. Bar No. 424786)
                                               Nicolas A. Sansone (D.C. Bar No. 1686810)
                                               Public Citizen Litigation Group
                                               1600 20th Street NW
                                               Washington, DC 20009
                                               (202) 588-1000

                                               *Counsel for Plaintiffs*