UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00402 (AHA) |

**Order**

Defendants have moved for clarification or a stay pending emergency appellate relief of the Court's orders dated February 13 (granting in part Plaintiffs' motion for a temporary restraining order) and February 20, 2025 (granting in part the *AIDS Vaccine* Plaintiffs' motion to enforce that order). *AIDS Vaccine*, ECF No. 32; *Glob. Health*, ECF No. 33. Specifically, Defendants state that they require clarification as to whether the Court's orders "(1) prohibit Defendants from relying on existing statutory or contractual bases for suspending or terminating contracts or grants, under the terms of the award or under other authorities, (2) treat all contractual and grant terms as enforceable by contempt, and/or (3) prohibit Defendants from conducting a payment integrity

review process (including pursuant to statutorily or contractually conferred authority to suspend or terminate contracts or grants)." *Glob. Health*, ECF No. 33 at 1–2.

To begin with, and as the Court has already reiterated once, "to the extent Defendants have continued the blanket suspension [of funds], they are ordered to immediately cease it and to take all necessary steps to honor the terms of contracts, grants, cooperative agreements, loans, and other federal foreign assistance awards that were in existence as of January 19, 2025, including but not limited to disbursing all funds payable under those terms." *Glob. Health*, ECF No. 28 at 5. That temporary emergency relief was to restore the status quo as it existed before Defendants' blanket suspension of congressionally appropriated funds pending a comprehensive review, given Plaintiffs' strong showing of irreparable harm and that Defendants' blanket suspension of funds was likely arbitrary and capricious under the Administrative Procedure Act (APA). *See id.* at 2; *Glob. Health*, ECF No. 21 at 5–13. Defendants' instant motion does not contest or rebut Plaintiffs' irreparable harm showing and does not contest or rebut the Court's finding that the agency action here was arbitrary and capricious under the APA.[1]

The Court has also already reiterated that while "of course, the TRO does not permit Defendants to simply search for and invoke new legal authorities as a post-hoc rationalization for the enjoined agency action," it "does not preclude Defendants from undertaking a good-faith, individualized assessment of a contract or grant and, where the terms or authority under law allows, taking action with respect to that particular agreement consistent with any procedures required." *Glob. Health*, ECF No. 28 at 2, 6. The line here is unambiguous. Defendants cannot continue to

---

[1] Defendants have now filed their brief opposing a preliminary injunction, which appears to offer more developed arguments relating to the issues before the Court. *Glob. Health*, ECF No. 34. As the Court has noted, it has agreed to consider those arguments on the briefing schedule proposed by the parties and will hold a hearing by March 4, 2025, and rule with dispatch thereafter. *See Glob. Health*, ECF No. 28 at 7 (setting forth a schedule).

suspend programs or disbursements based on the blanket suspension that was temporarily enjoined. And Defendants cannot simply come up with a new post-hoc rationalization in an attempt to justify the action that was temporarily enjoined as likely arbitrary and capricious for what it failed to consider. However, if since January 19, 2025, Defendants have suspended or terminated an agreement based on wholly independent legal authority and justification, rather than deriving from a general directive to suspend aid, then they are not acting in violation of the TRO. Under the terms of the TRO, any such agreement that was in effect as of January 19, 2025, must be given effect and promptly receive disbursements only up until a suspension or termination taken pursuant to independent legal authority and justification. If, on the other hand, suspensions or terminations since January 19, 2025, stemmed from a general directive to suspend all aid—the very agency action temporarily enjoined—those terminations would violate the TRO and cannot be given effect. The line here is one that is well-worn and should be familiar in litigation—the line between good faith and pretext to justify otherwise unlawful conduct. *See Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019).

  Contrary to Defendants' instant motion, the Court has been clear the TRO does not mean that "all contractual and grant terms [are] enforceable by contempt" or that Defendants must "litigate every arguable breach of contract in a contempt posture." *Glob. Health*, ECF No. 33 at 2, 6. The Court has been explicit that the TRO does not place this Court in the position of supervising Defendants' determinations as to whether to continue or terminate individual grants based on their terms. *See Glob. Health*, ECF No. 28 at 4 & n.2. While agency determinations based on wholly independent legal authority and justification such as the terms of particular agreements or sets of agreements, rather than deriving from a general directive to suspend aid, may be subject to some

other legal challenge, whether it be under the APA, separation of powers, individual breach of contract cases, or otherwise, such determinations do not violate the present TRO.

Defendants' remaining arguments in the instant motion show how quickly the ground is shifting in this matter and the importance of the Court having the opportunity to consider and expeditiously resolve the parties' arguments at the preliminary injunction phase. For example, Defendants assert that an injunction would raise "serious constitutional concerns" given "the Executive Branch's extensive foreign-relations powers." *Glob. Health*, ECF No. 33 at 2. However, they do not explain how this argument bears on likely violation of the APA, the authority on which the TRO was based and whose constitutional validity has not been challenged. Moreover, the argument seems to simply presume that Defendants will prevail on the separation of powers questions that Plaintiffs have raised, without nearly enough analytical depth. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) ("The Executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue."); *id.* at 62 (Roberts, C.J., dissenting) (recognizing that "[t]he Constitution allocates some foreign policy powers to the Executive, grants some to the Legislature, and enjoins the President to 'take Care that the Laws be faithfully executed'"). The parties requested a briefing schedule to develop these arguments for the preliminary injunction phase, which the Court has adopted and is still in progress.

Similarly, Defendants argue for the first time that disbursing congressionally appropriated aid pursuant to existing agreements could result in "waste, fraud, abuse, and even illegal payments" and cite the need to "protect the integrity of [their] payment systems." *Glob. Health*, ECF No. 33 at 5 (citation omitted). But the blanket suspension of congressionally appropriated funding that has been challenged and temporarily enjoined was the result of a categorical order, not any specific finding of possible waste, fraud, or abuse. In defending the challenged action at the Court's TRO

hearing, Defendants did not even attempt to argue that the action was or could be justified based on waste, fraud, or abuse. And, to date, Defendants have not adduced any evidence of waste, fraud, or abuse aside from conclusory statements from a declarant who has "serious questions" about these topics. *Glob. Health*, ECF No. 25-1 at 2. Even in asserting the argument now, Defendants do not explain how it would bear on the reasons for granting the TRO, including Plaintiffs' showing of irreparable harm and their likelihood of success in showing that the blanket suspension violated the APA.[2]

For the foregoing reasons, to the extent Defendants' motion to clarify is not mooted by the above, it is denied, and Defendants' motion to stay the Court's TRO pending an emergency appeal is also denied.

The Court reiterates once more:

> [T]he Court's TRO does not permit Defendants to simply continue their blanket suspension of congressionally appropriated foreign aid pending a review of the agreements for whether they should be continued or terminated. That is the very action that the Court temporarily enjoined because Plaintiffs had shown that blanket suspension pending review would cause irreparable harm and was likely arbitrary and capricious under the APA for failing to consider the massive reliance interests. . . . [T]o the extent Defendants have continued the blanket suspension, they are ordered to immediately cease it and to take all necessary steps to honor the terms of contracts, grants, cooperative agreements, loans, and other federal foreign assistance awards that were in existence as of January 19, 2025, including but not limited to disbursing all funds payable under those terms.

*Glob. Health*, ECF No. 28 at 5.

---

[2] To demonstrate the degree to which the ground is shifting: within the past four days, Defendants submitted multiple filings addressing compliance with the TRO. While each filing cited the declaration for other points, none mentioned the statements about waste, fraud, or abuse or "payment integrity." *See Glob. Health*, ECF No. 25; *AIDS Vaccine*, ECF Nos. 22, 28. To the extent the assertion of possible fraud or payment integrity issues is intended to create grounds for an emergency appeal before the Court has had the opportunity to resolve the preliminary injunction motions, it is worth noting that Defendants' preliminary injunction briefing, filed alongside the instant motion, does not appear to even mention fraud or payment integrity in its APA or separation of powers merits analyses. *See Glob. Health*, ECF No. 34.

5

The parties' joint status report addressing compliance is due on February 26, 2025, at 12:00 p.m. To the extent there is any dispute between the parties as to compliance, the parties shall identify:

1. Agency officials or employees who have personal knowledge to provide sworn, live testimony as to the relevant disputes as to compliance, such as what agency directives have been given and what funds have been disbursed in response to the Court's TRO and order enforcing it.

2. Any expedited discovery that would assist the parties and the Court in assessing compliance with the TRO and order enforcing it.

**SO ORDERED.**

_____
AMIR H. ALI
United States District Judge

Date:   February 22, 2025