UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AIDS VACCINE ADVOCACY COALITION, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 25-cv-400 |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF STATE, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD**

Pursuant to Local Civil Rule 65.1(d), Plaintiffs move for leave to supplement the record to include additional documents pertinent to Plaintiffs' motion for preliminary relief, ECF 13, as well as to whether this Court should reconsider civil contempt against Defendants, *see ECF* 26. These documents—three recent memoranda written by Nicolas Enrich, Acting Assistant Administrator of the USAID Bureau for Global Health—show that Defendants have misled this Court about the availability of waivers to permit lifesaving humanitarian assistance, further confirm that Defendants have taken no steps toward compliance with this Court's February 13 TRO and, to the contrary, have actively taken steps to prevent compliance, and provide additional support for Plaintiffs' request for injunctive relief.

This Court has the "discretion to allow parties to supplement the record of a case." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 53 (D.D.C. 2003) (citation omitted). The exercise of that discretion is warranted here because, as the situation on the ground continues to evolve and Defendants' policies and practices continue to shift, important facts continue to surface.

1

**1.** Exhibit A to the attached Bateman Declaration is a memorandum titled "Documentation of challenges and impediments to implementing the lifesaving humanitarian assistance waiver for the pause on foreign assistance (Jan 28 - Feb. 28)." This memorandum illustrates Defendants' continued non-compliance with the TRO. In addition, the memorandum further illustrates that Plaintiffs are entitled to a preliminary injunction because they are likely to succeed on the merits because Defendants' actions are arbitrary and capricious, and because the balance of equities and public interest weigh in Plaintiffs' favor. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Nken v. Holder*, 556 U.S. 418, 435 (2009).

To start, Defendants' have represented to this Court that they did not engage in an "undifferentiated" suspension of funding because "Secretary Rubio approved waivers," including "a waiver on the pause for life-saving humanitarian assistance." ECF 33 at 37; *see* Marocco Dec. ECF 22-1 ¶ 24 ("Plaintiffs' characterization of a 'blanket' pause is inaccurate" because "Secretary Rubio issued a number of programmatic waivers of the pause that permitted broad categories of foreign aid to flow."). This memorandum directly contradicts that representation. The memorandum reveals that "[s]uccessful implementation of Secretary's temporary waiver to the pause on foreign assistance was not possible" and the Bureau for Global Health "has been wholly prevented from delivering life-saving activities under the waiver to date." Bateman Dec. Exh. A at 1.

Specifically, Acting Assistant Administrator Enrich describes that "USAID's failure to implement lifesaving humanitarian assistance under the waiver is the result of political leadership at USAID, the Department of State, and DOGE, who have created and continue to create intentional and/or unintentional obstacles that have wholly prevented implementation." *Id.* These

2

actions, Acting Assistant Administrator Enrich concludes, "will no doubt result in preventable death, destabilization, and threats to national security on a massive scale." *Id.*

Further, the memorandum states that DOGE advisors directed the Bureau for Global Health not to review awards slated for termination to see if those awards were covered by the waiver, *id.* at 3, and that political leadership instructed the Bureau "to deprioritize activities related to neglected tropical diseases, Mpox, polio, Ebola, and any monitoring and surveillance activities, as those would not be approved," *id.* at 5. It concludes that the Bureau "has identified 72 activities across 31 awards that entail Lifesaving Humanitarian Assistance," that "[t]o date, none of these activities have been approved" for waiver, and that "[a]ll or nearly all of the awards needed to implement humanitarian assistance were terminated on or before February 27th, rendering impossible any efforts to implement activities under the waiver, even if they had been approved" *id.* at 6.

2. Exhibit B to the attached Bateman Declaration is a memorandum titled "Documentation of Bureau for Global Health Workforce Reductions." This memorandum contains detail about the decimation of the Global Health Bureau, and confirms Plaintiffs' statement in the February 26, 2025, joint status report that "the government has dramatically reduced USAID's workforce in recent days in a manner that will have the predictable effect of making compliance with the TRO extremely difficult, if not impossible, going forward" because insufficient employees remain to "effect payments or manage contracts, grants, cooperative agreements, and other awards going forward." ECF 40 at 10-11. Specifically, the memorandum describes that on January 20, the Bureau had a combined workforce of 783, and by February 28, the number had dwindled to 72. Bateman Dec. Ex. B at 1, 3. "These drastic staffing reductions," it concludes, "have severely impacted [the Bureau's] ability to function." *Id.* at 3.

3

**3.** Exhibit C to the attached Bateman Declaration is a memorandum titled "Risks to U.S. National Security and Public Health: Consequences of Pausing Global Health Funding for Lifesaving Humanitarian Assistance." This memorandum contains a host of information probative of the lawlessness of Defendants' actions and the balance of equities and public interest, such as:

- Illustrating that Plaintiffs are likely to demonstrate that Defendants' actions are arbitrary and capricious, the memorandum details how the pause and subsequent terminations have irrationally thwarted American interests, including by:

    - Heightening the risk of disease transmission to Americans, including transmission of malaria, measles, and tuberculosis. *Id.* at 6, 11-13 (projecting, annually, an additional 2,000 U.S. cases of malaria, an additional 7,300 U.S. cases of tuberculosis, an additional 105 million U.S. cases of highly pathogenic avian influenza, an additional 15 U.S. cases of emerging infectious diseases like Ebola and Marburg, and an additional 34,000 U.S. cases of mpox).

    - Burdening the United States with costly efforts to respond to outbreaks of disease, such as Ebola, rather than engaging in cost-effective proactive prevention. *Id.* at 4-5.

    - Burdening health infrastructure in the United States by eroding global disease surveillance and response capacity, potentially leading to U.S. hospitals simultaneously dealing with outbreaks of Ebola, drug-resistant malaria, and novel coronaviruses. *Id.* at 7.

    - Hurting American farmers by removing a stable, $2 billion food aid market that supports 15,000-20,000 American farm jobs. *Id.* at 9.

    - Enabling terrorists and rogue states to exploit disease surveillance gaps to launch biological attacks. *Id.* at 10.

- Illustrating that Plaintiffs are likely to succeed on their claims that Defendants have unlawfully impounded congressionally appropriated funds, the memorandum notes that "[i]f the pause leads to permanent contract terminations, the $7.7B in resources appropriated by Congress are no longer [being] used to support these lifesaving global health programs." *Id.* at 1.

- Illustrating that equities and public interest favor relief, the memorandum quantifies the global health impact of the pause, including:

    - An additional 71,000-166,000 malaria deaths annually. *Id.* at 1-2.

4

- o A 28-32% increase in global tuberculosis incidence, including multidrug-resistant tuberculosis. *Id* at 2.

- o A halt to global polio eradication efforts leading to an additional 200,000 paralytic polio cases per year. *Id.*

- o Denial of maternal health and postnatal care to nearly 17 million pregnant women and over 11 million newborns this year. *Id.*

- o Denial of severe acute malnutrition treatment for 1 million children per year. *Id.*

- o 2-3 million more deaths per year resulting from the shuttering of immunization programs. *Id.* at 12.

Counsel for Plaintiffs attempted to confer with counsel for Defendants as required by Local Civil Rule 7(m) by sending an email at 9:54 am seeking Defendants' position. As of the time of filing, Defendants had not responded to that email. A proposed order is attached.

    Respectfully submitted,

/s/ Lauren E. Bateman
Lauren E. Bateman (D.C. Bar No. 1047285)
Allison M. Zieve (D.C. Bar No. 424786)
Nicolas A. Sansone (D.C. Bar No. 1686810)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On March 3, 2025, I caused the foregoing and accompanying proposed order to be filed electronically via the Court's CM/ECF system, which provides electronic notice to all counsel of record.

Dated: March 3, 2025                                                                /s/ *Lauren Bateman*
                                                                                              Lauren Bateman