**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-00402 (AHA) |

**[[PROPOSED]]
DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL MATERIALS**

**INTRODUCTION**

Defendants respectfully submit this response to a second set of supplemental materials filed by Plaintiffs AIDS Vaccine Advocacy Coalition (AVAC) and Global Health Council (GHC) in support of their respective motions for a preliminary injunction. These new materials include a declaration by USAID Acting Assistant Administrator for Global Health Nicholas Enrich, who was recently placed on administrative leave, Doc. 47-1 (GHC), Ex. 1 ¶¶ 4–9; three memorandums Enrich drafted immediately prior to being placed on leave, *id.* Enrich Decl. Exs. A and B and Doc. 46-1 (AVAC), Ex. C; and an OMB memorandum dated February 26, 2025, requesting information to facilitate a review of foreign aid spending, Doc. 47-1 (GHC), Ex. 2.

None of those materials advances Plaintiffs' claims on the merits, nor do they show any violation of the Court's temporary restraining order. Rather, as with the declarations attached to Plaintiffs' reply briefs, those materials underscore that Plaintiffs' challenge to the pause on foreign aid spending implemented under Executive Order 14,169 and Secretary Rubio's January 24 Memorandum is moot. At this time, Defendants have nearly completed an individualized review of existing contracts and grants; thousands have been retained while others have been lawfully terminated under the terms of those instruments, consistent with independent legal authorities; and over $100 million in foreign assistance funding has been disbursed since February 13, 2025. While Plaintiffs and the employees and sources that supplied the new materials may disagree as a policy matter with Secretary Rubio's determinations regarding whether to terminate or continue particular contracts or grants funded with foreign assistance appropriations, none of Plaintiffs' claims challenge those ultimate determinations. Nor could they, since those decisions present quintessential policy judgments for the Executive Branch, within the broad scope of the President's

foreign affairs power and the terms of particular instruments. For each of these reasons, Plaintiffs' motions for preliminary injunctive relief should be denied.

## ARGUMENT

### I. Plaintiffs' New Declarations Do Not Advance Their Claims on the Merits.

As Defendants argued in their recent proposed surreply in these actions, the pause on existing foreign assistance awards here challenged was designed to endure only long enough to allow the Secretary of State to conduct an individualized review to ensure that foreign assistance awards align with the foreign policy interests of the United States—a review process that was specifically permitted under the terms of the Court's temporary restraining order. *See*, *e.g.*, Doc. 48-1 at 3–4. Consistent with the TRO, the agencies have been "expeditiously examining each USAID and State foreign assistance award on an individual basis and through a multi-step process to determine whether, beyond the directives to the contract and grant officers to comply with the TRO, USAID and State will" terminate funding under their independent authorities (namely, under contract or grant terms or other applicable law). *Id.* At this time, nearly all of Defendants' foreign aid funding instruments, including all of those impacting the funding recipient Plaintiffs, have been individually reviewed and either have been retained (with funding continuing) or terminated (with funding to permanently cease).[1] The exercise of Defendants' contractual and other rights following individual review of Plaintiffs' contracts and grants has mooted Plaintiffs' challenge to the pause implemented under Executive Order 14169 and the Secretary's Memorandum. *See Spirit*

---

[1] After Pete Marocco executed his March 3, 2025 declaration explaining that a final batch of 329 State Department contracts had been reviewed, Doc. 47-2 ¶¶ 1–3, the State Department discovered 162 additional contracts that required review. The State Department anticipates completing its review of those remaining contracts on or before March 10, 2025. None of the remaining 162 contracts are held by the funding recipient Plaintiffs.

2

*of the Sage Council v. Norton*, 411 F. 3d 225, 228–29 (D.C. Cir 2005). Plaintiffs' supplemental materials do nothing to change that reality.

Plaintiffs disclaim challenging any of these individual contract terminations in this action, and also have disclaimed any challenges *not* directed to the "wholesale" foreign assistance pause that Secretary Rubio's memorandum implemented. *See* Defs.' PI Opp at 21, Doc. 34; GHC PI Reply at 8, Doc. 46 ("Plaintiffs challenge actions that freeze funding wholesale rather than on any individualized basis. That is why, in pleading their claims, Plaintiffs did not attach or quote their award documents."). (Nor could Plaintiffs pursue such individualized breach-of-contract claims in this forum, as Defendants have previously explained. *See* Defs.' PI Opp at 13–15 (AVAC), Doc. 33.)

Given the absence of any challenges before the Court to particular contract terminations, the OMB memorandum that Plaintiffs cite is simply irrelevant. *See* Doc. 47-1 (GHC), Ex. 2. The record shows that Secretary Rubio and his aides conducted an individualized review to determine which awards and grants were consistent with the Administration's policy priorities. The OMB memorandum—a request for information made by a separate agency, OMB, not the Secretary— provides no basis to question where the Secretary drew those policy lines.

Plaintiffs also focus on the "waivers" that the Secretary made available as a safety valve from the original funding pause; they say the waiver process was illusory. But this is irrelevant too. This case challenges the *pause*, not the *waivers* from the pause. In any event, Plaintiffs appear to fundamentally misunderstand the purpose of the waivers. They criticize Defendants for failing to review whether awards slated for termination were covered by a waiver. Doc. 46 (AVAC) at 3. But the purpose of those waivers was to allow certain critical foreign aid to continue while Defendants completed their review of existing contracts and grants to ensure that all foreign aid is

3

consistent with United States foreign policy. Defs.' PI Opp at 4–5, Doc. 34. The waivers were never a categorical exemption from the review process or a guarantee that activities covered by a waiver would remain funded indefinitely.

In the end, Plaintiffs' supplemental materials merely expose that this action is a vehicle for airing Plaintiffs' policy differences with the President's approach to foreign aid. But those foreign policy decisions are the Presidents' "unique responsibility," not Plaintiffs', not Mr. Enrich's, and not an Article III court's. *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993); *see also*, *e.g.*, *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767 (1972) (noting "the lead role of the Executive in foreign policy") (plurality); *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (observing that foreign policy decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry"); *Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to the conduct of foreign relations ... are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.") (internal quotation omitted); *Haig v. Agee*, 453 U.S. 280, 292 ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."). The President's weighing of competing policy considerations and interests in exercising his foreign affairs power cannot and should not be second-guessed, much less enjoined, by the Court.

II. **Defendants' Efforts to Comply with the Temporary Restraining Order Is Well-Documented in the Record.**

Although Plaintiffs continue to level sweeping and unsupported assertions to the contrary, Defendants' efforts to comply with the Court's temporary restraining order were described in detail in a Joint Status Report and supporting materials filed with the Court on February 26, 2025, and

4

in the proposed surreply and supporting declaration filed on March 3, 2025. As those materials show, Defendants immediately circulated notification of the TRO both internally and to counterparties; in lieu of the planned pause, instead undertook an expedited, multi-level review process to determine whether or not to terminate existing foreign aid contracts and awards on an individualized basis; and have since instructed contracts and grant officers to lift all stop-work orders and suspensions relating to awards that have not been terminated. *See* Docs. 42–45 (GHC); Docs. 40–43 (AVAC).

Moreover, notwithstanding the Supreme Court's administrative stay of this Court's February 26 midnight deadline for Defendants to disburse outstanding amounts (subsequently vacated), Defendants have disbursed over $100 million in foreign assistance just since February 13, 2025, including over $20 million to plaintiffs, and are continuing to do so as payments are verified and processed. *See* Doc. 48-2 ¶ 5 (GHC). While it is undisputed that Defendants (like other federal agencies) have reduced their workforce in recent weeks, these payments definitively rebut Plaintiffs' suggestion that "insufficient employees remain [for Defendants] to effect payments or manage contracts, grants, cooperative agreements, and other awards going forward," Doc. 46 (AVAC) (citing ECF 40 at 10–11). This criticism represents yet another improper attempt by Plaintiffs to commandeer an executive agency away from the President. The Court should decline to proceed down that path.

## CONCLUSION

For the reasons above and those in Defendants' opposition brief of February 21, 2025 and proposed surreply of March 3, 2025, the Court should deny Plaintiffs' motions for a preliminary injunction and dissolve the TRO.

Dated: March 5, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

LAUREN A. WETZLER
Deputy Director

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*