IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00402 (AHA) |

**[[PROPOSED]]
DEFENDANTS' SURREPLY IN RESPONSE TO
PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Defendants respectfully submit this surreply in response to new declarations and a new proposed order included with the replies filed by Plaintiffs AIDS Vaccine Advocacy Coalition (AVAC) and Global Health Council (GHC). As explained below, the pseudonymous declarations are not properly before the Court; other declarations underscore the mootness of these actions; and the new proposed order is dramatically overbroad.

**ARGUMENT**

**I.    Plaintiffs Have No Basis For Relying On Pseudonymous Declarations.**

Three of GHC Plaintiffs' reply declarations are by individuals who use fictitious names: Jane Doe (Doc. 46-3), Jessica Doe (Doc. 46-4), and Joceyln Doe (Doc. 46-5). And in their portion of the Joint Status Report the day before, Plaintiffs relied on five such declarants: Zahra Doe (Doc. 42-1), Della Doe (Doc. 42-2), Ellie Doe (Doc. 42-3), Clara Doe (Doc. 42-4), and Sandra Doe (Doc. 42-5). Plaintiffs in their reply rely on those pseudonymous declarations in attempting to support various arguments. *See, e.g.*, GHC Reply 17-18 & n.7. Consistent with the "strong presumption in favor of public access to judicial proceedings," *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017), courts traditionally require a person seeking to use a pseudonym in court filings to make a showing akin to "good cause" for that course, *see Doe v. Von Eschenbach*, No. 06-cv-2131, 2007 WL 1848013 at *2; *cf. Chang v. Republic of S. Sudan*, 548 F. Supp. 3d 34, 37 (D.D.C. 2021) ("court may . . . *for good cause*, 'require redaction of additional information'" from filings) (quoting Fed. R. Civ. P. 5.2(e)(1)) (emphasis added). But here, Plaintiffs attempt no showing at all, let alone a "good cause" showing.

Indeed, the declarants *themselves* do not attest substantively to any facts of the type that traditionally have supported requests to proceed pseudonymously. For example, nowhere does any declarant attest that use of a pseudonym is necessary to protect the identities of agency

1

personnel, or state the rationale for seeking such protection. GHC Plaintiffs have simply given no justification outweighing the public interest in "open proceedings," and on that basis alone the "Doe" declarations are properly rejected.

In any event, those declarations do little to help Plaintiffs meet their burden. For example, many of the declarants are USAID staff placed on administrative leave within the last two months, who are aggrieved by those leave decisions. But the agency personnel decisions are already disputed in No. 25-cv-352, *Am. Foreign Serv. Ass'n v. Trump ("AFSA")*, and Plaintiffs point to no reason why, for example, staff on whose behalf AFSA presumably has brought that action also should be allowed to contest those leave decisions through this action (which, the *AFSA* court determined, is an unrelated action). Jessica Decl. ¶ 2, 4, 7, 12 (AFSA member placed on leave); Jocelyn Decl. ¶¶ 8, 10 (same). One declarant, an employee at Plaintiff American Bar Association, simply repeats what she purportedly heard from a pseudonymous employee of State, Jane Decl. ¶¶ 2-4, 6, 11, while another declarant similarly resorts to describing assertions from two unnamed "colleagues with direct knowledge," Jessica Decl. ¶¶ 11. *But see FTC v. CCC Holdings Inc.*, No. 08-cv-2043, 2009 WL 10631282 at *1 (D.D.C. Jan. 30, 2009) (even at PI stage, "the Court will not admit double hearsay because it inherently lacks sufficient indicia of reliability").

Moreover, the evident function of the Doe declarations is to attempt to controvert the declarations of Pete Marocco, Acting Deputy Administrator for Policy and Planning of USAID, Acting Deputy Administrator for Management and Resources of USAID, and Director of Foreign Assistance at State. *E.g.*, Jocelyn Decl. ¶¶ 11-13. But it is the responsibility of agency leadership, not subordinate staff, to chart agency policies consistent with the policies of the President, and the mere disagreement of subordinates with agency leadership on policy grounds is

2

inconsequential for Plaintiffs' APA and other claims.

II.     **The Reply Declarations Confirm Plaintiffs' Challenge To The "Pause" Is Moot.**

The AVAC Plaintiffs' reply declaration is further evidence that the core pleaded claims are moot under Article III, which is another reason why Plaintiffs cannot show that they are likely to prevail on the merits of those claims. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* (citations omitted). "The rule in federal cases is that an actual controversy must be *extant at all stages* of review, not merely at the time the complaint is filed," *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (emphasis added). And, most saliently at present, a case becomes moot when subsequent events permitted under an injunctive order make it "impossible for the court to grant any effectual relief." *See Spirit of the Sage Council v. Norton*, 411 F. 3d 225, 228-29 (D.C. Cir 2005) (completion of permitted agency action, a rulemaking, rendered original challenge moot); *PETA v. Gittens*, 396 F.3d 416, 421 (D.C. Cir. 2005) ("an appeal from an order granting a preliminary injunction becomes moot when, because of the defendant's compliance or some other change in circumstances, nothing remains to be enjoined through a permanent injunction."); *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996) (a case is moot when "intervening events make it impossible to grant the prevailing party effective relief" against the originally challenged policy).

Here, Plaintiffs' complaints challenge a particular policy embodied in two particular issuances, Executive Order 14,169 and Secretary Rubio's January 24 Memorandum. Taken together, those two issuances reflected the Executive Branch's decision to temporarily pause

3

expending certain foreign-assistance funds. That pause was designed to endure only long enough to allow the Secretary of State to conduct a further review to ensure that each grant, contract, or other instrument expending such funds aligned with the foreign policy interests of the United States.

Plaintiffs alleged that the pause itself violated the APA and the Constitution. *See* AVAC Doc. 1 (Feb. 10, 2025); GHC Doc. 1 (Feb. 10, 2025). But that challenge is now moot. The Court's February 13 TRO enjoined the agency defendants from "enforcing or giving effect to" any directive implementing the pause. AVAC Doc. 17. But the TRO did not bar, and indeed outright permitted, the agency defendants to "tak[e] action to enforce the terms of particular contracts, including with respect to expirations, modifications, or terminations pursuant to contractual provisions," and explicitly decreed "that nothing in" the TRO "shall prohibit" the Government "from enforcing the terms of contracts or grants." *Id.* The Court also subsequently clarified that its TRO did not enjoin action taken under independent regulatory authority, such as the applicable regulations governing federal grants and contracts. *See, e.g.*, Feb. 20, 2025 Order, AVAC Doc. 30 at 4 n.2. That is, the TRO did not enjoin Defendants from exercising their rights to individually review each funding agreement and make a final decision to enforce their contractual or other legal rights concerning those agreements.

As a result, and consistent with the TRO, the agencies have been "expeditiously examining each USAID and State foreign assistance award on an individual basis and through a multi-step process to determine whether, beyond the directives to the contract and grant officers to comply with the TRO, USAID and State will" terminate funding under independent authority. AVAC Doc. 40 at 16 ¶¶ 2-3. State and USAID have now completed their review of all funding instruments and determined, on an individualized basis, either to retain or terminate each

4

instrument under the terms of the funding instrument and independent legal authority. Ex. A, 3/3 Marocco Dec., ¶ 1 (addressing review of final approximately 329 contracts). The AVAC Plaintiffs' reply declaration confirms receipt of such terminations. *See* 4th Sullivan Decl. ¶ 6 (AVAC Doc. 44) (describing Feb. 26, 2025 terminations).

Agency leadership explains that all funding instruments, including those of Plaintiffs, have been individually reviewed and either have been retained (with funding to continue) or have been terminated (with funding to permanently cease). AVAC Doc. 40 at 16 ¶¶ 2-3 & Ex. A, ¶ 1. The exercise of Defendants' contractual and other legal rights following individual review of Plaintiffs' contracts and grants has therefore mooted Plaintiffs' challenge to the pause ordered by Executive Order 14169 and the Secretary's Memorandum. *See Spirit of the Sage Council*, 411 F. 3d at 228-29.

Insofar as Plaintiffs assert ongoing harm from the final terminations of their agreements, neither the complaints nor the preliminary injunction motion challenge either those terminations or Defendants' authority to make termination decisions within the terms of the funding instruments. And any claims arising from the termination of their agreements, or from work allegedly performed prior to termination, may be subject to applicable exhaustion requirements and ultimate review either in the Civilian Board of Contract Appeals or the United States Court of Federal Claims. *See, e.g.*, 48 C.F.R. 49.201 (providing rules for settlement of certain contract claims); 2 C.F.R. 200.343 (effects of suspension and termination); PI Opp'n 12–18. These contract claims are simply not properly before this Court at all, let alone on the preliminary injunction motions. Accordingly, Plaintiffs' core claims challenging "the pause" are now moot.

5

**III.     The Amended Proposed Order Attached to GHC Plaintiffs' Reply Seeks Inappropriate Relief Beyond the Scope of Plaintiffs' Claims.**

In the proposed order attached to GHC Plaintiffs' reply, they do not seek to convert the Court's TRO into a preliminary injunction. Nor do they re-urge the requests made in their original, overbroad proposed TRO. Instead, the GHC Plaintiffs ask the Court to wildly expand the scope of the injunction—revoking the agencies' contract and grant terminations that have issued on an individualized basis, forcing Defendants to use GHC Plaintiffs' preferred technical systems, altering and reversing personnel decisions, and requiring Defendants to justify any new terminations, suspensions, or stop-work orders in a biweekly status report filed with the Court (among other proposed provisions). *See* Proposed Order, Glob. Health, Doc. 46-6.

The apparent basis for many of the new, staggeringly broad decretal provisions that the GHC Plaintiffs now propose is their reply declarations, including the pseudonymous declarations. Those declarations assert that USAID's payment systems prior to January 20, 2025 were adequate. And the GHC Plaintiffs demand that the payment systems be restored. *Compare, e.g.*, Jocelyn Decl. ¶ 14 (opining USAID had "no need" for "new . . . process"); Varol Decl. ¶ 8 (opining Government "already demands" "extensive oversight" of "invoice[s] for costs incurred under a contract"), *with* GHC Prp. Order at 3 (proposing to mandate "that, subject to applicable payment review processes that were in place before January 20, 2025 or their functional equivalent, Restrained Defendants shall" pay invoices for past work done under contract); *id*. (proposing to mandate that USAID "restor[e] technical systems used in the funding processes, such as Phoenix, to their pre-January 20, 2025 status, or implementing their functional equivalent"). And—ignoring the pending *AFSA* action in this District concerning USAID's personnel practices—the Proposed Order relies on the new declarations to justify judicial supervision over USAID staffing levels. *Compare, e.g.*, Jocelyn Decl. ¶ 8 (opining certain staff placed on leave were the "only" ones "who

6

can provide detailed payment instructions to comply with" law), *with* GHC Prp. Order at 3 (proposing to mandate that USAID set "staffing levels sufficient to maintain payment processing rates equivalent to those achieved before January 20, 2025"). Never mind that the Executive Power—"all of it"—is vested in the President, rather than the courts. *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020).

Courts in this District have repeatedly denied motions to enjoin "a practice that plaintiffs do not challenge in the operative complaint." *United States v. Facebook, Inc.*, No. 19-cv-2184, 2023 WL 8190858, at *7 (D.D.C. Nov. 27, 2023) (citation omitted); *Steele v. United States*, No. 14-cv-1523 (RCL), 2020 WL 7123100, at *7 (D.D.C. Dec. 4, 2020) (denying motion "to enjoin a practice that plaintiffs do not challenge in the operative complaint"). The instant actions center on the effects on recipients of funds under contracts or grants from the Executive Branch's now-moot decision to pause foreign-assistance funds pending further review, not agency personnel decisions at issue in the *AFSA* actions or any of the other actions implicated by the sweeping GHC proposed order.

Nor do these actions allege violations of law predicated on Defendants' use of updated technical systems and processes for processing payments—a matter properly left in any event to the Executive's discretion. The relief that GHC Plaintiffs request shows how far they have ventured from their original Complaint. And their request for ongoing oversight of individualized terminations is incompatible with principles of Article III standing and traditional equitable relief even if their pleading were to be amended, because the Proposed Order's new decretal provisions are far more burdensome than necessary to provide complete relief to the GHC Plaintiffs on their challenge to the Executive Order and the Secretary's memorandum. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

7

In short, GHC Plaintiffs demand a structural injunction that would massively reconfigure USAID operations without any legitimate legal basis. Such an injunction would be inconsistent with the separation of powers: As "the constitutional representative of the United States in its dealings with foreign nations," *United States v. Louisiana*, 363 U.S. 1, 35 (1960), the President has "unique responsibility" for the conduct of "foreign ... affairs." *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993); *see also, e.g.*, *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767 (1972) (noting "the lead role of the Executive in foreign policy"). Yet the proposed injunction would impede the Executive Branch in ensuring that foreign-aid payments are consistent with the President's policy priorities, disregarding the president's "lead role" and "'vast share of responsibility for the conduct of our foreign relations.'" *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003); *see Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (observing that foreign policy decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry"). And it fails to account for the countervailing harms to the agency and the public from judicial superintendence of agency operations. Entry of their Proposed Order would therefore be improper. *See Cobell v. Kempthorne*, 455 F.3d 301, 317 (D.C. Cir. 2006) ("in light of the far-reaching effects this order would have on [Department of] Interior's operations," D.C. Circuit was "skeptical that the district court could provide . . . explanation" that "the public interest would benefit from" structural injunction, which D.C. Circuit vacated as abuse of discretion).

8

## CONCLUSION

For the reasons above and those in Defendants' opposition brief of February 21, 2025, the Court should deny Plaintiffs' motions for a preliminary injunction and dissolve the TRO.

Dated: March 3, 2025                                  Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

LAUREN A. WETZLER
Deputy Director

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*

9