# Appendix

# TABLE OF CONTENTS

| Exhibit | Document* | Bates Range (DEFMTDAPP_Nos.) |
|---|---|---|
| A | Standard Terms and Conditions for Federal Awards-10.1.24 | 000001-000023 |
| B | Standard Provisions for Non-U.S. Nongovernmental Organizations | 000024-000121 |
| C | ADS Chapter 303, Grants and Cooperative Agreements to Non-Governmental Organizations | 000122-000225 |
| D | JDN — State Agreement, SINLEC22GR0342-M002 (excerpted) | 000226-000230 |
| E | JDN — State Cooperative Agreement, SLMAQM21CA3486-M001 (excerpted) | 000231-000235 |
| F | AVAC — USAID Cooperative Agreement, AID-OAA-A-16-00031 (excerpted) | 000236-000242 |
| G | Chemonics — USAID Contract, 72052125C00001 (excerpted) | 000243-000252 |
| H | HIAS — USAID Grant, 720BHA24GR00159 | 000253-000257 |
| I | MSH — USAID Grant & Cooperative Agreement, 72061725CA00003 (excerpted) | 000258-000266 |
| J | State — ABA, Federal Assistance Award SAQMIP23CA0140 (excerpted) | 000267-000270 |
| K | State — ABA Federal Assistance Award, SAQMIP23GR0142 (excerpted) | 000271-000273 |

---

* Defendants have redacted certain identifying information immaterial to their Motions to Dismiss from the excerpts of the funding instruments reprinted herein.

# Exhibit A

DEFMTDAPP_000001

U.S. DEPARTMENT OF STATE

# STANDARD TERMS AND CONDITIONS FOR FEDERAL AWARDS

*EFFECTIVE OCTOBER 1, 2024*



| | | | |
|---|---|---|---|
| * | **A.** | Introduction | 02 |
| * | **B.** | Order of Precedence | 02 |
| * | **C.** | Applicability | 02 |
| * | **D.** | U.S. Department of State Responsibilities | 03 |
| | **E.** | Recipient Responsibilities and Compliance with Federal Requirements | 03 |
| | **F.** | Universal Identifier and System of Award Management | 04 |
| | **G.** | Reporting Subaward and Executive Compensation Information | 04 |
| * | **H.** | Award Term for Trafficking in Persons | 04 |
| * | **I.** | Never Contract with the Enemy | 04 |
| * | **J.** | Nonprocurement Debarment and Suspension | 05 |
| | **K.** | Governmentwide Requirements for Drug-Free Workplace | 05 |
| * | **L.** | Domestic Preference for Procurements | 05 |
| | **M.** | Prior Approval Requirements | 06 |
| * | **N.** | Branding and Marking | 06 |
| * | **O.** | Government-financed Air Transportation | 07 |
| * | **P.** | Mandatory Disclosure | 07 |
| * | **Q.** | Conflict of Interest | 07 |
| * | **R.** | Restrictions on Lobbying | 08 |
| * | **S.** | Prohibition Against Assignment | 08 |
| | **T.** | Indirect Costs | 09 |
| | **U.** | Audits | 09 |
| * | **V.** | Termination | 09 |
| * | **W.** | Appeals | 10 |
| | **X.** | Closeout | 10 |
| * | **Y.** | Nondiscrimination in Department of State Programs | 11 |
| * | **Z.** | Prohibition of Assistance to Drug Traffickers | 12 |
| * | **AA.** | Prohibition on Use of Funds for Performance or Research Respecting Abortions or Involuntary Sterilization | 12 |
| * | **BB.** | Policy Guidance | 12 |
| | | Appendix 1 | 13 |
| | | Appendix 2 | 14 |
| * | | Appendix 3 | 17 |
| | | Appendix 4 | 19 |

*Applicable to Awards to Individuals

DEFMTDAPP_000002

## A.  INTRODUCTION

These U.S. Department of State Standard Terms and Conditions for Federal Awards outline the Department's mandatory award terms as required by Title 2—Grants and Agreements, of the Code of Federal Regulations. Certain applicable Federal administrative standards are incorporated by reference. Electronic copies containing the complete text of the Code of Federal Regulations are available at https://www.ecfr.gov.

The recipient shall provide the principal investigator(s) or project director(s) with a copy of these terms and conditions, including the award provisions, and any subsequent changes to the award. Electronic copies of these Terms and Conditions are publicly available at https://www.state.gov/about-us-office-of-the-procurement-executive/.

These terms and conditions may be duplicated, copied, translated or otherwise reproduced as appropriate.  If the terms and conditions are translated, the original English language document shall be the controlling version.

## B.  ORDER OF PRECEDENCE

In the event of any inconsistency between the award documents, the inconsistency will be resolved by giving precedence in the following order:

(1) Applicable laws and statutes of the United States, including any specific legislative provisions mandated in the statutory authority for the award.
(2) Code of Federal Regulations (CFR)
(3) Standard Terms and Conditions
(4) Award Provisions
(5) Other award documents and attachments

## C.  APPLICABILITY OF CFR

In 2 CFR 600, and per policy, the Department of State established the following applicability structure for 2 CFR 200:

| Organization Type | Applicable Administrative Requirements |
|---|---|
| Domestic Non-federal entity (including state, local government, Indian Tribe, Institution of Higher Education (IHE), or non-profit organization) | • 2 CFR 200: Subparts A through F<br>• 2 CFR 600 & 601 |
| Foreign Non-Profit Organization | • 2 CFR 200: Subparts A through E<br>• 2 CFR 600 & 601 |
| Domestic & Foreign For-Profit Organization | • 2 CFR 200: Subparts A through D<br>• 2 CFR 600 & 601<br>• 48 CFR Part 30 & 31 |

DEFMTDAPP_000003

| Individuals | • 2 CFR 200 does not apply None |
|---|---|
| Foreign Public Entities<br>(Including Public International Organizations) | • 2 CFR 200 does not apply |

## D.  U.S. DEPARTMENT OF STATE RESPONSIBILITIES

The U.S. Department of State (hereinafter referred to as the Department) has overall responsibility for Department-funded awards, including providing oversight for technical, programmatic, financial and administrative performance.

Grants Officer (GO):

Authorized by a warrant issued by the Department's Senior Procurement Executive, the GO is responsible for all actions on behalf of the Department, including entering into, amending, or terminating the award. In addition, the GO is responsible for the administrative coordination and liaison with the recipient. The GO is the only person authorized to approve changes to any of the requirements in the award.

Grants Officer Representative (GOR):

In accordance with Department policy, the GO is responsible for all aspects of the award but may designate technically qualified personnel to assist in the administration of grants. The GOR is delegated by the GO and responsible for the programmatic, technical, and/or scientific aspects of the award. The recipient should direct all correspondence related to programmatic and budgetary issues to both the GO and GOR.

## E.  RECIPIENT RESPONSIBILITIES AND COMPLIANCE WITH FEDERAL REQUIREMENTS

The recipient is responsible for notifying the Department of any significant developments relating to the administrative, programmatic or financial aspects of the award. Significant developments includes both adverse and beneficial events that impact the award. The recipient has full responsibility for the management of the project or activity supported under the award and for adherence to Federal regulations, the award provisions, and these terms and conditions. Although the recipient is encouraged to seek the advice and opinion of the GO and/or the GOR on special problems that may arise, such advice does not diminish the recipient's responsibility for making prudent and sound administrative judgments under the circumstances prevailing at the time the decision was made and should not imply that the responsibility for operating decisions has shifted to the Department.

In addition to the requirements specified in 2 CFR 200.332 , these terms and conditions flow down to all subrecipients and must be included in the recipient's subaward instrument. Depending on the type of entity, all subrecipients and subcontractors are subject to the Federal regulations specified in provision *C–Applicability* of these terms and conditions.

DEFMTDAPP_000004

Nothing in this provision alters the recipient's responsibility for conduct of the project and compliance with all applicable laws and regulations.

## F.    UNIVERSAL IDENTIFIER AND SYSTEM OF AWARD MANAGEMENT

In compliance with 2 CFR 25.220, the Department has adopted the Award term—System for Award Management and Universal Identifier Requirements which is applicable to both recipients and subrecipients. The full text of this award term is included as Appendix 1 to these terms and conditions.

## G.    REPORTING SUBAWARD AND EXECUTIVE COMPENSATION INFORMATION

In compliance with 2 CFR 170.220, the Department has adopted the Award term—Reporting Subawards and Executive Compensation. The full text of this award term is included as Appendix 2 to these terms and conditions.

Awards that are deemed "sensitive", and therefore do not require Federal Funding Accountability and Transparency Act (FFATA) reporting, will be designated in the award provisions stating that the award is not subject to the FFATA subaward reporting requirements as outlined in the Office of Management and Budgets (OMB) guidance issued August 27, 2010.

## H.    AWARD TERM FOR TRAFFICKING IN PERSONS

In compliance with 2 CFR 175.15(a), the Department has adopted the Award term—Trafficking in Persons. The full text of this award term is included as Appendix 3 to these terms and conditions.

## I.    NEVER CONTRACT WITH THE ENEMY

In accordance with 2 CFR 183 (the recipient referred to as "you"), the following terms apply if the award exceeds $50,000 and is performed outside the United States, including U.S. territories, and is in support of a contingency operation in which members of the Armed Forces are actively engaged in hostilities. It does not apply to the authorized intelligence or law enforcement activities of the Federal Government.

    I.    Prohibition on Providing Funds to the Enemy

        A.  You must—

            1.  Exercise due diligence to ensure that no funds, including supplies and services, received under this grant or cooperative agreement are provided directly or indirectly (including through subawards or contracts) to a person or entity who is actively opposing the United States or coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities, which must be completed through 2 CFR

DEFMTDAPP_000005

180.300 prior to issuing a subaward or contract and;

    2.   Terminate or void in whole or in part any subaward or contract with a person or entity listed in the System for Award Management (SAM.gov) as a prohibited or restricted source pursuant to subtitle E of Title VIII of the NDAA for FY 2015, unless the Department of State provides written approval to continue the subaward or contract.

B.   You may include the substance of this clause, including paragraph (A) of this clause, in subawards under this grant or cooperative agreement that have an estimated value over $50,000 and will be performed outside the United States, including its outlying areas.

C.   The Department of State has the authority to terminate or void this grant or cooperative agreement, in whole or in part, if the Department becomes aware that the recipient failed to exercise due diligence as required by paragraph (A) of this clause or if the Department becomes aware that any funds received under this grant or cooperative agreement have been provided directly or indirectly to a person or entity who is actively opposing coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities.

II.   Additional Access to Recipient Records

A.   In addition to any other existing examination-of-records authority, the Federal Government is authorized to examine any of your records and records of your subawards or contracts to the extent necessary to ensure that funds, including supplies and services, available under this grant or cooperative agreement are not provided, directly or indirectly, to a person or entity that is actively opposing the United States or coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities, except for awards awarded by the Department of Defense on or before Dec 19, 2017, that will be performed in the United States Central Command (USCENTCOM) theater of operations.

B.   The substance of this clause, including this paragraph (B), must be included in subawards or contracts under this grant or cooperative agreement that have an estimated value over $50,000 and will be performed outside the United States, including its outlying areas.

## J.   NONPROCUREMENT DEBARMENT AND SUSPENSION

In compliance with 2 CFR 180.20, the Department has adopted the OMB guidance in subparts A through I of 2 CFR 180 (and as supplemented by 2 CFR 601), as the Department's policies and procedures for nonprocurement debarment and suspension.

DEFMTDAPP_000006

## K. Governmentwide Requirements for Drug-Free Workplace

In compliance with 2 CFR 182.20, the Department has adopted the OMB guidance in subparts A through F of 2 CFR 182 (and as supplemented by 22 CFR 133), as the Department's policies and procedures for the drug-free workplace requirements.

## L. Domestic Preference for Procurements

In accordance with 2 CFR 200.322, the recipient should, to the greatest extent practicable  and consistent with law, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The requirements of this section must be included in all subawards including all contracts and purchase orders for work or products under the award.

For purposes of this section:

"Produced in the United States" means, for iron and steel products, that all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States.

"Manufactured products" means items and construction materials composed in whole or in part of non-ferrous metals such as aluminum; plastics and polymer-based products such as polyvinyl chloride pipe; aggregates such as concrete; glass, including optical fiber; and lumber.

## M. Prior Approval Requirements

In addition to prior approval requirements specified in 2 CFR 200.308, the recipient must receive prior approval in order to transfer funds between direct cost categories when the Federal share of the award exceeds the Simplified Acquisition Threshold ($250,000) and the cumulative amount of such transfers exceeds or is expected to exceed 10 percent of the total budget including cost share as last approved by the Department. When requesting approval for budget revisions, the recipient must use the same format for budget information that was used in the application, except if the Department has approved an alternate format.

## N. Branding and Marking

All programs, projects, assistance, activities, and public communications to foreign audiences, partially or fully funded by the Department, must be marked appropriately overseas with the standard U.S. flag in a size and prominence equal to (or greater than) any other logo or identity. The recipient may continue to use existing logos or program materials; however, a standard rectangular U.S. flag must be used in conjunction with such logos. Recipients wishing to use the Department's seal in addition to the U.S. flag must receive prior written permission from the GO.

DEFMTDAPP_000007

This requirement does not apply to the recipient's own corporate communications or in the United States. For general questions about the Department marking policy and overall branding strategy, please contact VisiblyAmerican@state.gov.

The recipient must appropriately acknowledge the U.S. Government support in all dealings with program participants, and in press releases, ceremonies, dedications, interviews, publicity, etc. Furthermore, the recipient must coordinate publicity, ceremonial events, dedications, etc., with the sponsoring Department office or embassy office and public affairs officer.

For all Department funded awards, publications or articles resulting from the award must acknowledge the support of the Department and include a disclaimer of official endorsement as follows: "*This [article] was funded [in part] by a grant from the United States Department of State. The opinions, findings and conclusions stated herein are those of the author[s] and do not necessarily reflect those of the United States Department of State*." The recipient must ensure that this disclaimer be included on all brochures, flyers, posters, billboards, or other graphic artwork that are produced under the award.

## O.  GOVERNMENT-FINANCED AIR TRANSPORTATION

All Federal government financed international air transportation is required by 49 U.S.C. 40118, commonly referred to as the "Fly America Act," to use U.S. air carrier service for all air travel and cargo transportation services. One exception to this requirement is transportation provided under a bilateral or multilateral air transport agreement, known as an "Open Skies Agreement," to which the U.S. Government and the government of a foreign country are parties, and which the Department of Transportation has determined meets the requirements of the Fly America Act.

Current "Open Skies Agreements" that are in effect can be found here: https://www.gsa.gov/policy-regulations/policy/travel-management-policy/fly-america-act.

Exceptions vary depending on the direction of travel and are outlined in 41 CFR 301-10.136 and 41 CFR 301-10.137.

It is the recipient's responsibility for making determinations and documenting the decision as to whether an exemption to this requirement applies.

## P.  MANDATORY DISCLOSURE

Consistent with 2 CFR 200.113,  an applicant, recipient, or subrecipient of a Federal award must promptly disclose whenever, in connection with the Federal award (including any activities or subawards thereunder), it has credible evidence of the commission of a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act (31 U.S.C. 3729–3733). Recipients and subrecipients are also required to report matters related to recipient integrity and performance in accordance with Appendix XII of this part. Failure to make required disclosures can result in any of the remedies described in § 200.339. Disclosures must be made, in writing to the

DEFMTDAPP_000008

Grants Officer listed on the award, the Office of Inspector General, and the pass-through entity (if applicable).

The U.S. Department of State, Office of Inspector General can be reached here:

> U.S. Department of State
> Office of Inspector General
> P.O. Box 9778
> Arlington, VA 22219
> Phone: 1-800-409-9926 or 202-647-3320
> Website: https://www.stateoig.gov/hotline

If the total value of a recipient's currently active grants, cooperative agreements, and procurement contracts from all Federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the award, then the recipient must comply with Appendix 4 of these terms and conditions.

## Q.  CONFLICT OF INTEREST

In accordance with 2 CFR 200.318, the recipient must maintain written standards of conduct covering conflicts of interest and governing the action of its employees engaged in the selection, award, and administration of contracts. In addition, the recipient must also maintain written standards of conduct covering organizational conflicts of interest.

The recipient must disclose any conflict of interest, including organizational conflicts of interest, and the recipient's approach for resolving the conflict of interest to the GO for the award within ten (10) calendar days of the discovery of the conflict of interest. Upon notice from the recipient of a potential conflict of interest and the approach for resolving it, the GO will make a determination regarding the effectiveness of the recipient's actions to resolve the conflict of interest within thirty (30) calendar days of receipt of the recipient's notice, unless the GO advises the recipient that a longer period is necessary. The recipient must not request payment from the Department for costs associated with the conflict of interest in question pending notification of the GO's determination. The recipient's failure to disclose a conflict of interest may result in cost disallowances.

## R.  RESTRICTIONS ON LOBBYING

In accordance with 31 USC 1352, the recipient is required to abide by the policy and procedures codified at 22 CFR 138 et seq. By accepting the award, the recipient agrees that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into

DEFMTDAPP_000009

of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this award was made or entered into. Submission of this certification is a prerequisite for making or entering into this award imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $20,134 and not more than $201,340 for each such failure.

## S.  PROHIBITION AGAINST ASSIGNMENT

Notwithstanding any other provision of the award, the recipient must not transfer, pledge, mortgage, or otherwise assign the award, or any interest therein, or any claim arising thereunder, to any party or parties, bank trust companies, or other financing or financial institutions.

## T.  INDIRECT COSTS

A non-profit organization which has not previously established an indirect cost rate with a Federal agency, that believes the Department should be its cognizant agency, shall submit its initial indirect cost proposal immediately after the organization is advised that the award will be made and, in no event, later than three months after the effective date of the award. When requested by the recipient, the GO will provide instructions on how to submit the indirect cost rate proposal.

## U.  AUDITS

All U.S. recipients (not including for-profit organizations) that expend $1,000,000 or more during the recipient's fiscal year in Federal awards must have a single or program-specific audit conducted for that year in accordance with the provisions of 2 CFR 200 Subpart F. In addition, the recipients are subject to the audit requirements found in the Single Audit Act of 1984, 31 U.S.C. 7501-7506. The cost of an audit may be charged to the award in accordance with 2 CFR 200.425.

All foreign recipients that expend $1,000,000 or more during the recipient's fiscal year in Department awards must have a single or program-specific audit conducted for that year in

DEFMTDAPP_000010

accordance with these terms and conditions. In the event the recipient undergoes an audit for another Federal agency, a second audit does not need to be procured so long as the Department's funding was analyzed under the same audit. A program-specific audit means an audit of one Federal award program. Single audit means an audit that includes both the recipient's financial statements and the Department awards received to be conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS).

The audit must be independently and professionally executed in accordance with GAGAS either prescribed by a government's Supreme Audit Institution with auditing standards approved by the Comptroller General of the United States, or in accordance with the host country's laws or adopted by the host country's public accountants or associations of public accountants, together with generally accepted international auditing standards. However, foreign entity audits consistent with International Standards for Auditing or other auditing standards are acceptable with the GO's approval.

The Department and its authorized representatives have the legally enforceable right to examine, audit, and copy, at any reasonable time, all records in the Department's possession pertaining to the award. Furthermore, the Inspector General or any of his or her duly authorized representatives shall have access to any pertinent books, documents, papers and records of the recipient. Information accessible to the Inspector General includes written, printed, recorded, produced, or reproduced by any mechanical, magnetic, or other process or medium. The Department reserves the right to make audits, inspections, excerpts, transcriptions or other examinations as authorized by law of the recipient's documents and facilities.

## V.    TERMINATION

In compliance with 2 CFR 200.340, any award may be terminated in whole or in part as follows:

(1) By the Department, if the recipient fails to comply with the terms and conditions of the award;

(2) By the Department with the consent of the recipient, in which case the two parties must agree upon the termination conditions, including the effective date and, in the case of partial termination, the portion to be terminated;

(3) By the recipient upon sending to the Department GO written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Department determines in the case of partial termination that the reduced or modified portion of the award will not accomplish the purposes for which the award was made, the Department may terminate the award in its entirety; or

(4) By the Department, in accordance with the terms and conditions of the award, including, to the extent authorized by law, if the award no longer effectuates program goals or agency priorities.

DEFMTDAPP_000011

## W.  APPEALS

If the recipient fails to comply with Federal statutes, regulations or the terms and conditions of the award, the GO may take appropriate action including, but not limited to, withholding payments, disallowing costs, suspending or terminating the award, or initiating suspension and debarment proceedings.

In accordance with 2 CFR 200.342, the GO will provide the recipient an opportunity to object and provide information and documentation challenging the action. The recipient has 30 calendar days after receiving the written notification to submit its appeal. The recipient's appeal should contain:

A cover letter with a brief statement of the recipient's argument and the disputed factual, legal, or other issues.

  (1)  the date the recipient received the GO's decision;

  (2)  the amount of disallowed costs in dispute (if applicable); and

  (3)  any other relevant documents.

## X.  CLOSEOUT

In accordance with 2 CFR 200.345, the closeout of the award does not affect any of the following:

  (1)  the right of the Department to disallow costs and recover funds on the basis of a later audit or review.

  (2)  The recipient's requirement to return funds or right to receive any remaining and available funds as a result of refunds, corrections, final indirect cost rate adjustments (unless the Federal award is closed in accordance with § 200.344(h)), or other transactions.

  (3)  The ability of the Department to make financial adjustments to a previously closed award such as resolving indirect cost payments and making final payments.

  (4)  Audit requirements in subpart F of 2 CFR 200.

  (5)  Property management and disposition requirements in 2 CFR 200.310 through 200.316.

  (6)  Records retention as required in 2 CFR 200.334 through 200.337.

After the closeout of the award, a relationship created under the award may be modified or ended in whole or in part. This may only be done with the consent of the Department and the recipient, provided the responsibilities of the recipient referred to in paragraph (1) through (6) of this section, including those for property management as applicable, are considered and provisions are made for continuing responsibilities of the recipient or subrecipient, as appropriate.

The recipient may charge the award during closeout for the costs of publication or sharing of research results if the costs are not incurred during the period of performance of the award as

well as costs related to the closeout process such as preparation of final programmatic and financial reports. See 2CFR200.403(h).

## Y.    NONDISCRIMINATION IN DEPARTMENT OF STATE PROGRAMS

**Nondiscrimination on the Basis of Handicap in Programs or Activities Receiving Federal Financial Assistance**

In accordance with 29 USC 701 et seq., the recipient is required to abide by the policy and procedures codified at 22 CFR 142, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance.

**Nondiscrimination in Federally-Assisted Programs of the Department of State — Effectuation of Title VI of the Civil Rights Act of 1964**

In accordance with 42 USC 2000d et seq., the recipient is required to abide by the policy and procedures codified at 22 CFR 141, which stipulates that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of State.

**Nondiscrimination on the Basis of Age in Programs or Activities Receiving Federal Financial Assistance**

In accordance with 42 USC 6101 et seq., the recipient is required to abide by the governmentwide policy and procedures codified at 45 CFR 90 and as supplemented by 22 CFR 143, which prohibits discrimination on the basis of age in programs or activities in the United States receiving Federal financial assistance.

**Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance**

In accordance with 20 USC 1681 et seq., the recipient is required to abide by the policy and procedures codified at 22 CFR 146, which prohibits discrimination on the basis of sex in any education program or activity receiving Federal financial assistance.

## Z.    PROHIBITION OF ASSISTANCE TO DRUG TRAFFICKERS

In accordance with 22 USC 2291f, the recipient is required to abide by the policy and procedures codified at 22 CFR 140, which is designed to ensure that Federal assistance funds are not provided to or through any individual or entity that:

(1) Has been convicted of a violation of, or a conspiracy to violate, any law or regulation of the United States, a State or the District of Columbia, or a foreign country relating [to] narcotic or psychotropic drugs or other controlled substances; or

DEFMTDAPP_000013

(2) Is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assistor, abettor, conspirator, or colluder with others in the illicit trafficking in any such substance.

## AA. PROHIBITION ON USE OF FUNDS FOR PERFORMANCE OR RESEARCH RESPECTING ABORTIONS OR INVOLUNTARY STERILIZATION

The recipient agrees that in accordance with 22 USC 2151b(f) no foreign assistance funds provided by the award shall be used to:

(1) pay for the performance of abortions as a method of family planning or to motivate or coerce any person to practice abortions (Helms Amendment, 1973).

(2) pay for the performance of involuntary sterilizations as a method of family planning or to coerce or provide any financial incentive to any person to undergo sterilizations (Involuntary Sterilization Amendment, 1978).

(3) pay for any biomedical research which relates, in whole or in part, to methods of, or the performance of, abortions or involuntary sterilization as a means of family planning (Biden Amendment, 1981).

Furthermore, the recipient agrees in accordance with the Department's annual appropriation bill, that no funds provided by the award may be used to lobby for or against abortion (Siljander Amendment, 1981).

## BB. POLICY GUIDANCE

The recipient shall comply with the following Executive Orders as applicable:

(1) E.O. 12432 – Minority business enterprise development

(2) E.O. 13224 - Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism

(3) E.O. 13279 - Equal Protection of the Laws for Faith-Based and Community Organizations

DEFMTDAPP_000014

# APPENDIX 1

I.   System for Award Management (SAM.gov) and Universal Identifier Requirements

   A.   Requirement for System for Award Management

   Unless exempt from this requirement under 2 CFR 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must renew their SAM.gov registration annually which includes reviewing and updating the information in SAM.gov from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.

   B.   Requirement for Unique Entity Identifier

   If the recipient is authorized to make subawards under this Federal award, the recipient:

      1.   Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.

      2.   Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.

   C.   Definitions

   For purposes of this term:

      1.   System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found inSAM.gov (currently at https://www.sam.gov).

      2.   Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.

      3.   Entity is defined at 2 CFR 25.400 and includes all of the following types as defined in 2 CFR 200.1:

         a.   Non-Federal entity;

         b.   Foreign organization;

         c.   Foreign public entity;

         d.   Domestic for-profit organization; and

         e.   Federal agency.

      4.   Subaward has the meaning given in 2 CFR 200.1.

      5.   Subrecipient has the meaning given in 2 CFR 200.1.

DEFMTDAPP_000015

# APPENDIX 2

I.  Reporting Subawards and Executive Compensation

    A.  Reporting of first-tier subawards.

        1.  Applicability.  Unless the recipient is exempt as provided in paragraph D.1 of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the subaward.

        2.  Reporting Requirements.

            a.  The entity or Federal agency must report each subaward described in paragraph A.1 of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov.

            b.  For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)

    B.  Reporting total compensation of recipient executives for entities.

        1.  Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:

            a.  The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;

            b.  in the preceding fiscal year, the recipient received:

                i.  80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

                ii.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

                iii.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

DEFMTDAPP_000016

2. Reporting Requirements. The recipient must report executive total compensation described in paragraph B.1 of this award term:

    a. As part of your registration profile at https://www.sam.gov.

    b. No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.)

C. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph D.1 of this award term, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:

    a. The total Federal funding authorized to date under the subaward equals or exceeds $30,000;

    b. In the subrecipient's preceding fiscal year, the subrecipient received:

        i. 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

        ii. $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

    c. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 ((15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this appendix. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov no later Start Printed Page 30113 than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

D. Exemptions.

1. A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:

DEFMTDAPP_000017

    a. Subawards, and

    b. The total compensation of the five most highly compensated executives of any subrecipient.

E. Definitions. For purposes of this award term:

  1. Entity includes:

    a. Whether for profit or non-profit:

      i. A corporation;

      ii. An association;

      iii. A partnership;

      iv. A limited liability company;

      v. A limited liability partnership;

      vi. A sole proprietorship;

      vii. Any other legal business entity;

      viii. Another grantee or contractor that is not excluded by subparagraph b; and

      ix. Any State or locality;

    b. Does not include:

      i. An individual recipient of Federal financial assistance; or

      ii. A Federal employee.

  2. Executive means an officer, managing partner, or any other employee holding a management position.

  3. Subaward has the meaning given in 2 CFR 200.1.

  4. Subrecipient has the meaning given in 2 CFR 200.1.

  5. Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR 229.402(c)(2).

DEFMTDAPP_000018

# APPENDIX 3

I.  Trafficking in persons.

   A.  Provisions applicable to a recipient that is a private entity.

      1.  Under this award, the recipient, its employees, subrecipients under this award, and subrecipient's employees must not engage in:

         a.  Severe forms of trafficking in persons;

         b.  The procurement of a commercial sex act during the period of time that this award or any subaward is in effect;

         c.  The use of forced labor in the performance of this award or any subaward; or

         d.  Acts that directly support or advance trafficking in persons, including the following acts:

            i.  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

            ii.  Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

               1.  Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or

               2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

            iii.  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

            iv.  Charging recruited employees a placement or recruitment fee; or

            v.  Providing or arranging housing that fails to meet the host country's housing and safety standards.

      2.  The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:

DEFMTDAPP_000019

a. Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or

b. Has an employee that is determined to have violated a prohibition in paragraph A.1 of this this award term through conduct that is either:

    i. Associated with the performance under this award; or

    ii. Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR 601

B. Provision applicable to a recipient other than a private entity.

1. The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if a subrecipient that is a private entity under this award:

a. Is determined to have violated a prohibition in paragraph A.1 of this award term; or

b. Has an employee that is determined to have violated a prohibition in paragraph A.1 of this award term through conduct that is either:

    i. Associated with the performance under this award; or

    ii. Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR  180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR 601.

C. Provisions applicable to any recipient.

1. The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph A.1 of this award term.

2. The Federal agency's right to unilaterally terminate this award as described in paragraphs A.2 or B.1 of this award term:

a. Implements the requirements of 22 U.S.C. 78, and

b. Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.

3. The recipient must include the requirements of paragraph A.1 of this award term in any subaward it makes to a private entity.

4. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

DEFMTDAPP_000020

D.  Definitions. For purposes of this award term:

1.  Employee means either:

   a.  An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or

   b.  Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

2.  Private Entity means any entity, including for-profit organizations, non-profit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

3.  The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 102 of the TVPA, as amended (22 U.S.C. 7102).

# APPENDIX 4

I.  Reporting of Matters Related to Recipient Integrity and Performance

    A.  General Reporting Requirement

    If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (*SAM.gov*), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111-212, all information posted in responsibility/qualification records in *SAM.gov* on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.

    B.  Proceedings About Which You Must Report

        1.  You must submit the required information about each proceeding that:

            a.  Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

            b.  Reached its final disposition during the most recent five-year period; and

            c.  Is one of the following:

                i.  A criminal proceeding that resulted in a conviction;

                ii.  A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

                iii.  An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

                iv.  Any other criminal, civil, or administrative proceeding if:

                    1.  It could have led to an outcome described in paragraph B.1.c.i through iii;

                    2.  It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and

                    3.  The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.

DEFMTDAPP_000022

C. Reporting Procedures

Enter the required information in *SAM.gov* for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in *SAM.gov* because you were required to do so under Federal procurement contracts that you were awarded.

D. Reporting Frequency

During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five-year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.

E. Definitions:

For purposes of this award term:

1. Administrative proceeding means a non-judicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with the performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

2. Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

3. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).

DEFMTDAPP_000023

# Exhibit B

DEFMTDAPP_000024



# Standard Provisions for
# Non-U.S. Nongovernmental Organizations

## A Mandatory Reference for ADS Chapter 303

Partial Revision Date: 10/01/2024
Responsible Office: M/OAA/P
File Name: 303mab_100124

DEFMTDAPP_000025

# Standard Provisions for Non-U.S. Nongovernmental Organizations

## Table of Contents

MANDATORY STANDARD PROVISIONS FOR NON-U.S. NONGOVERNMENTAL ORGANIZATIONS 5

M1.     ALLOWABLE COSTS (AUGUST 2024)                                               5

M2.     ACCOUNTING, RECORD RETENTION AND ACCESS, AND AUDITS (AUGUST 2024)      6

M3.     AMENDMENT OF AWARD, REVISION OF BUDGET AND PROGRAM PLANS (AUGUST 2024)                                                                     8

M4.     NOTICES (JUNE 2012)                                                         9

M5.     PROCUREMENT POLICIES (AUGUST 2024)                                         10

M6.     USAID ELIGIBILITY RULES FOR PROCUREMENT OF COMMODITIES AND SERVICES (MAY 2020)                                                                12

M7.     TITLE TO AND USE OF PROPERTY (AUGUST 2024)                                 13

M8.     SUBMISSIONS TO THE DEVELOPMENT EXPERIENCE CLEARINGHOUSE AND DATA RIGHTS (JUNE 2012)                                                          16

M9.     MARKING AND PUBLIC COMMUNICATIONS UNDER USAID-FUNDED ASSISTANCE (DECEMBER 2014)                                                            18

M10.    AWARD SUSPENSION AND TERMINATION (AUGUST 2024)                            21

M11.    RECIPIENT AND EMPLOYEE CONDUCT (OCTOBER 2023)                              22

M12.    DEBARMENT AND SUSPENSION (JUNE 2012)                                      24

M13.    DISPUTES AND APPEALS (DECEMBER 2022)                                       25

M14.    PREVENTING TRANSACTIONS WITH, OR THE PROVISION OF RESOURCES OR SUPPORT TO, SANCTIONED GROUPS AND INDIVIDUALS (MAY 2020)                26

M15.    TRAFFICKING IN PERSONS (AUGUST 2024)                                       26

M16.    VOLUNTARY POPULATION PLANNING ACTIVITIES - MANDATORY REQUIREMENTS (MAY 2006)                                                               32

M17.    EQUAL PARTICIPATION BY FAITH-BASED ORGANIZATIONS (JUNE 2024)              33

M18.    NONDISCRIMINATION (AUGUST 2024)                                            35

M19.    USAID DISABILITY POLICY - ASSISTANCE (JUNE 2012)                          36

M20.    LIMITING CONSTRUCTION ACTIVITIES (AUGUST 2023)                            36

M21.    USAID IMPLEMENTING PARTNER NOTICES (IPN) PORTAL FOR ASSISTANCE (JULY 2014)                                                                  37

M22.    ENHANCEMENT OF GRANTEE EMPLOYEE WHISTLEBLOWER PROTECTIONS (AUGUST 2024)                                                                     39

M23.    SUBMISSION OF DATASETS TO THE DEVELOPMENT DATA LIBRARY (OCTOBER 2014)                                                                      40

*Text highlighted in yellow indicates that the material is new or substantively revised*

M24. PROHIBITION ON REQUIRING CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS OR STATEMENTS (MAY 2017)     41

M25. SAFEGUARDING AGAINST EXPLOITATION, SEXUAL ABUSE, CHILD ABUSE, AND CHILD NEGLECT (OCTOBER 2023)     43

M26. MANDATORY DISCLOSURES (AUGUST 2024)     46

M27. NONDISCRIMINATION AGAINST BENEFICIARIES (NOVEMBER 2016)     47

M28. CONFLICT OF INTEREST (AUGUST 2024)     47

M29. PROHIBITION ON CERTAIN TELECOMMUNICATION AND VIDEO SURVEILLANCE EQUIPMENT OR SERVICES (AUGUST 2024)     48

M30. EXCHANGE VISITORS VISA REQUIREMENTS (DECEMBER 2022)     49

M31. CONTRACT AWARD TERM AND CONDITION FOR RECIPIENT INTEGRITY AND PERFORMANCE MATTERS (AUGUST 2024)     51

M32. OMB APPROVAL UNDER THE PAPERWORK REDUCTION ACT (OCTOBER 2023)     53

M33. SYSTEM FOR AWARD MANAGEMENT (SAM.GOV) AND UNIQUE ENTITY IDENTIFIER (UEI) REQUIREMENTS (AUGUST 2024)     54

REQUIRED AS APPLICABLE (RAA) STANDARD PROVISIONS FOR NON-U.S. NONGOVERNMENTAL ORGANIZATIONS     57

RAA1. ADVANCE PAYMENT AND REFUNDS (AUGUST 2024)     57

RAA2. REIMBURSEMENT PAYMENT AND REFUNDS (AUGUST 2024)     59

RAA3. INDIRECT COSTS – NEGOTIATED INDIRECT COST RATES PROVISIONAL & FINAL (AUGUST 2024)     60

RAA4. INDIRECT COSTS – CHARGED AS A FIXED AMOUNT (NONPROFIT) (AUGUST 2024)     62

RAA5. INDIRECT COSTS – DE MINIMIS RATE (AUGUST 2024)     63

RAA6. RESERVED     64

RAA7. REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION (AUGUST 2024)     64

RAA8. SUBAWARDS (AUGUST 2024)     68

RAA9. TRAVEL AND INTERNATIONAL AIR TRANSPORTATION  (DECEMBER 2014)     70

RAA10. OCEAN SHIPMENT OF GOODS (JUNE 2012)     72

RAA11. REPORTING HOST GOVERNMENT TAXES (DECEMBER 2022)     73

RAA12. PATENT RIGHTS (DECEMBER 2022)     74

RAA13. RESERVED     76

RAA14. INVESTMENT PROMOTION (DECEMBER 2022)     76

RAA15. COST SHARING (AUGUST 2024)     76

RAA16. PROGRAM INCOME (AUGUST 2024)     79

RAA17. FOREIGN GOVERNMENT DELEGATIONS TO INTERNATIONAL CONFERENCES (JUNE 2012)     81

RAA18. STANDARDS FOR ACCESSIBILITY FOR THE DISABLED IN USAID ASSISTANCE AWARDS INVOLVING CONSTRUCTION (SEPTEMBER 2004)     82

RAA19. PROTECTION OF HUMAN RESEARCH SUBJECTS  (JUNE 2012)     83

RAA20. STATEMENT FOR IMPLEMENTERS OF ANTI-TRAFFICKING ACTIVITIES ON LACK OF SUPPORT FOR PROSTITUTION  (JUNE 2012)     85

RAA21. ELIGIBILITY OF SUBRECIPIENTS OF ANTI-TRAFFICKING FUNDS (JUNE 2012)     86

3

RAA22. PROHIBITION ON THE USE OF ANTI-TRAFFICKING FUNDS TO PROMOTE, SUPPORT, OR ADVOCATE FOR THE LEGALIZATION OR PRACTICE OF PROSTITUTION (JUNE 2012)    86

RAA23. VOLUNTARY POPULATION PLANNING ACTIVITIES – SUPPLEMENTAL REQUIREMENTS (JANUARY 2009)    87

RAA24. CONSCIENCE CLAUSE IMPLEMENTATION (ASSISTANCE) (FEBRUARY 2012)    91

RAA25. CONDOMS (ASSISTANCE) (SEPTEMBER 2014)    91

RAA26. PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ASSISTANCE)  (SEPTEMBER 2014)    92

RAA27. LIMITATION ON SUBAWARDS TO NON-LOCAL ENTITIES (JULY 2014)    93

RAA28. CONTRACT PROVISION FOR DBA INSURANCE UNDER RECIPIENT PROCUREMENTS (DECEMBER 2022)    94

RAA29. RESERVED    96

RAA30. RESERVED    96

RAA31. NEVER CONTRACT WITH THE ENEMY (AUGUST 2024)    96

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATE-MTDAPP_000028

## MANDATORY STANDARD PROVISIONS FOR NON-U.S. NONGOVERNMENTAL ORGANIZATIONS

## M1.  ALLOWABLE COSTS (AUGUST 2024)

(a)    The recipient will be reimbursed for costs incurred in carrying out the purposes of this award in accordance with the terms of this award and the applicable cost principles in effect as noted below The recipient may obtain a copy of the applicable cost principles from the Agreement Officer (AO):

    (1) **Cost Principles for Nonprofit Organizations:**

        (i)    If this award is being issued or amended between August 7, 2024 and September 30, 2024, the cost principles set forth in **Subpart E of the "2024 Revisions" of 2 CFR 200** (89 FR 30046 dated April 22, 2024) are applicable.

        (ii)    Otherwise, the cost principles set forth in **Subpart E of 2 CFR 200** in effect on the date of this award or amendment are applicable.

    (2) **Cost Principles for Commercial Organizations:** The Federal Acquisition Regulation (FAR) at **48 CFR 31.2** and USAID Acquisition Regulation (AIDAR) at **48 CFR 731.2** are applicable.

(b)    It is the recipient's responsibility to ensure that costs incurred are reasonable, allowable, and allocable as defined in the applicable cost principles.

(c)    The recipient must obtain any prior written approvals from the AO that are required by the applicable cost principles. The recipient may obtain the AO's written determination on whether specific costs not clearly addressed in the applicable cost principles are allowable or allocable. The AO reserves the right to make a final determination on the allowability of costs.

(d)    USAID will not pay any profit or fee to the recipient or subrecipients of a grant or cooperative agreement. This restriction does not apply to procurements under this award made in accordance with the Standard Provision, "Procurement Policies."

(e)    The recipient must retain documentation to support charges to this award for a period of three years from the date of submission of the final expenditure report in accordance with the Standard Provision, "Accounting, Record Retention and Access, and Audits."

(f)    This provision must be incorporated into all subawards and contracts which are paid on a cost reimbursement (non-fixed) basis.

5

*Text highlighted in yellow indicates that the material is new or substantively revised*

[END OF PROVISION]

# M2.  ACCOUNTING, RECORD RETENTION AND ACCESS, AND AUDITS (AUGUST 2024)

(a) Accounting and Record Retention and Access

(1) The recipient's financial management system, including records documenting compliance with applicable statutes, regulations, and the terms and conditions of this award, must be sufficient to permit the preparation of reports and track expenditures to establish that funds have been used in accordance with the terms and conditions of this award. The records must comply with accounting principles generally accepted in the United States, the cooperating country, or by the International Accounting Standards Board (a subsidiary of the International Financial Reporting Standards Foundation). Accounting records and supporting documentation must, at a minimum, be adequate to show all costs incurred under this award; receipt and use of goods and services acquired under this award; the costs of the program supplied from other sources; and the overall progress of the program.

(2) The recipient must maintain all award records, including financial records, supporting documentation, statistical records, and all other records to support performance of and charges to this award. The recipient must retain all award records for three years from the date of submission of their final financial report. For awards that are renewed quarterly or annually, the recipient must retain records for three years from the date of submission of the quarterly or annual financial report, respectively. Exceptions to this three-year retention period are as follows:

    (i) The records must be retained until all litigation, claims, or audit findings involving the records have been resolved and final action taken, if any litigation, claim, or audit is started before the expiration of the three-year period.

    (ii) When the recipient or subrecipient is notified in writing by the Federal agency (or recipient) to extend the retention.

(3) The recipient must grant timely access to USAID, the USAID Inspector General, and the Comptroller General of the United States, or any of their authorized representatives, to any documents, papers, or other records of the recipient and any subrecipient, which are pertinent to the Federal award, in order to perform audits, execute site visits, or for any other official use. This includes timely and reasonable access to the recipient's personnel for the purpose of interview and discussion related to such documents or the award in general.

*Text highlighted in yellow indicates that the material is new or substantively revised*   SEEMTDAPP_000030

(4) USAID's rights of access are not limited to the required retention period of this provision but lasts as long as the records are retained.

(b) Audits

(1) Beginning in recipient's 2025 fiscal year, the recipient must have an annual single or program-specific audit, consistent with 2 CFR Part 200, Subpart F, for any recipient fiscal year in which the recipient expends $1,000,000 or more in all federal awards, either as a recipient, subrecipient, or contractor. For fiscal year 2024 and earlier, the audit threshold is $750,000.

    (i) The audit report must be submitted to the AO within 30 calendar days after receipt of the auditor's report, or nine months after the end of the audit period (whichever is earlier). The AO may authorize an audit extension when the nine-month timeframe would place an undue burden on the recipient.

    (ii) The USAID Inspector General will review this report to determine whether it complies with the audit requirements of this award. USAID will only pay for the cost of audits conducted in accordance with the terms of this award.

    (iii) In cases of continued inability or unwillingness by the recipient to have an audit performed in accordance with the terms of this provision, USAID will consider appropriate actions that may include suspension of all, or a percentage of, disbursements; suspension or termination of all or part of the award; or other legally available remedies, until the audit is satisfactorily completed.

(2) The recipient is not required to have an annual audit for any recipient fiscal year (2025 and later), in which the recipient expends less than $1,000,000 in all federal awards, either as a recipient, subrecipient, or contractor. For fiscal year 2024 and earlier, the audit threshold is $750,000. In all instances, the recipient must make records pertaining to this award for that fiscal year available for review by USAID officials or their designees upon request.

(3) USAID retains the right to conduct, or arrange for, financial reviews, audits, and evaluations to ensure adequate accountability of USAID funds by the recipient, regardless of the above audit requirements.

(c) Subawards and Contracts

(1) If the recipient provides USAID resources to other organizations to carry out the USAID-financed program and activities, the recipient is responsible for monitoring such subrecipients or contractors. The costs for subrecipient audits for organizations that meet the threshold in paragraph b. are allowable. The costs for subrecipient audits for organizations that do not meet the threshold in

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000031

paragraph b. are allowable only for the following types of compliance audits: activities allowed or unallowed; allowable costs/cost principles; eligibility; cost share; level of effort; earmarking; and reporting.

(2) This provision must be incorporated in its entirety into all subawards and contracts with non-U.S. organizations that are for more than $10,000.

[END OF PROVISION]

## M3. AMENDMENT OF AWARD, REVISION OF BUDGET AND PROGRAM PLANS (AUGUST 2024)

(a) *Amendments in Writing.* This award may only be amended in writing by a formal amendment or letter signed by the Agreement Officer (AO), and in the case of a bilateral amendment, by the AO and an authorized official of the recipient.

(b) *Budget Deviations:* The recipient must report to the Agreement Officer deviations from the approved award budget.

(c) *One-time extensions.* The recipient may initiate a one-time extension of the period of performance by up to 12 months, unless:

(1) The terms and conditions of the award prohibit the extension;
(2) The extension requires additional Federal funds; or
(3) The extension involves any change in the approved scope of the award.

A one-time extension may not be exercised for the sole purpose of using unobligated balances. The recipient must notify the AO in writing with the supporting reasons and revised period of performance at least 10 calendar days before the end of the period of performance specified in the Federal award.

(d) *Prior Approvals.* In addition to other approvals required in this award, the recipient must receive prior written approval from the AO to:

(1) Change the scope or the objectives of the project or program (even if there is no associated budget revision) (amendment required);

(2) Increase the total award amount and revise the approved budget, and/or to request additional obligation of USAID funds in excess of the amount currently obligated (amendment required);

(3) Revise the period of performance (amendment required);

(4) Change key personnel that are identified by name or position in the award;

(5) Permit the absence of more than three months from, or a 25 percent reduction in

time and effort devoted to, the award over the course of the period of performance by the approved project director or principal investigator;

(6) Include costs that require prior approval in the applicable cost principles, as identified in the Standard Provision "Allowable Costs";

(7) Transfer funds budgeted for participant support costs, as defined in 2 CFR 200.1, to other budget categories;

(8) Include subaward activities not proposed in the application and approved in the award terms. This requirement does not apply to procurement transactions for goods or services. A change of subrecipient requires prior approval when mandated in the award;

(9) Change the total approved cost-sharing amount (amendment required);

(10)    Transfer funds budgeted for construction activities (as defined in the Standard Provision entitled, "Limiting Construction Activities") to other non-construction cost categories, or vice versa;

(11) Obtain a no-cost extension of the period of performance (meaning, an extension of time that does not require the obligation of additional Federal funds), other than a one-time extension as described in paragraph (c) above. All requests for no-cost extensions should be submitted at least 10 calendar days before the conclusion of the period of performance (amendment required); and

(12) If specified in the Schedule of this award (often attachment A), transfer funds among direct cost categories, or programs, functions, and activities listed in the award budget, when the cumulative amount of such transfers exceeds or is expected to exceed 10% of the total award amount, as last approved by the AO (amendment required).

(e) Failure by the recipient to obtain required written approvals as detailed in this provision, or any other provision requiring approval, or elsewhere in this award, may result in the AO disallowing such costs. USAID is under no obligation to reimburse the recipient for costs incurred in excess of the total amount obligated under this award. If the total obligated amount under this award has been increased, the AO will notify the recipient of the increase and specify the new total obligated amount by written amendment to the award.

[END OF PROVISION]

## M4.  NOTICES (JUNE 2012)

(a)    Any notice given by USAID or the recipient is sufficient only if in writing and delivered in person, mailed or emailed as follows:

*Text highlighted in yellow indicates that the material is new or substantively revised.*  DEMTDAPP_000033

(1)    To the USAID Agreement Officer, at the address specified in this award; or

(2)    To the recipient, at the recipient's address shown in this award, or to such other address specified in this award.

[END OF PROVISION]

## M5.  PROCUREMENT POLICIES (AUGUST 2024)

The recipient must use its own procurement policies and procedures for the procurement of commodities and services necessary for this award, provided they conform to the requirements listed below and the Standard Provision, "USAID Eligibility Rules for Procurement of Commodities and Services." A procurement is not a subaward, which is an award provided by a pass-through entity (defined in 2 CFR 200.1) to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. If subawards are authorized under this award, then the recipient must comply with the Standard Provision "Subawards."

(a) The recipient must maintain and conduct all of its procurements according to written policies and procedures for the award and administration of contracts and ensure that the price is fair and reasonable for all procurements.

(b) The recipient may designate a reasonable micro-purchase threshold not to exceed $10,000, under which the recipient may use informal procurement methods. The recipient may also use informal procurement methods for procurements that do not exceed the simplified acquisition threshold as established in the Federal Acquisition Regulation (Subpart 2.1) in order to expedite the completion of transactions, minimize administrative burdens, and reduce costs. For procurements above the recipient's designated micro-purchase threshold and at or below the simplified acquisition threshold, the recipient must obtain price or rate quotations from an adequate number of qualified sources.

(c) The recipient's procurement procedures must provide, at a minimum:

(1) The recipient must conduct procurements that exceed the simplified acquisition threshold as established in the Federal Acquisition Regulation (Subpart 2.1), in a manner that provides fair and unbiased competition, including the following:

(i)    All responsible sources must be allowed to compete in an equal manner.
(ii)   Solicitations must clearly establish all requirements that the bidder or offeror must fulfill in order to be evaluated by the recipient.

10

    (iii)   Contracts must be awarded to offerors whose proposals are responsive to the solicitation and are determined by the recipient to be the best value considering price and other factors.

    (iv)   Contracts must be awarded only to responsible offerors that possess the ability to perform successfully under the terms and conditions of a proposed contract.

    (v)   The recipient is encouraged to use U.S. small businesses whenever practicable.

(2) Where appropriate, the recipient must determine the most economical and practical means by which to accomplish program objectives, including the necessity of the commodities or services, lease or purchase options, and reasonableness of costs.

(3) The recipient must maintain a system for contract administration to ensure that contractors perform in accordance with the terms, conditions, and specifications of their contracts.

(4) The recipient must avoid conflicts of interest and eliminate unfair competitive advantage. The recipient must comply with the requirements in the Standard Provision "Conflict of Interest." To ensure objective contractor performance and eliminate unfair competitive advantage, a contractor that developed or drafted specifications, requirements, statements of work, invitations for bids, and/or requests for proposals must be excluded from competing for such procurements. The recipient must also ensure that no potential contractor has unequal access to information that may provide that contractor an unfair competitive advantage. For instance, a potential contractor who has received procurement sensitive information, such as others' offered prices that are not available to all competitors, must be excluded from the competition.

(5)  The recipient must retain all procurement records related to this award in accordance with the Standard Provision, "Accounting, Record Retention and Access, and Audits," and make such records available to USAID upon request. In addition, for awards above the recipient's micro-purchase threshold, the recipient must also retain the following written documentation:

    (i)     Basis for contractor selection;

    (ii)    Justification for lack of competition when competitive bids or offers are not obtained; and

    (iii)   Basis for award cost or price.

(5) The type of procurement contracts used (for example, fixed price contracts, cost reimbursable contracts, purchase orders, incentive contracts) must be appropriate for the particular procurement and for promoting the best interest of the program or project. The recipient must not use a "cost-plus-a-percentage-of-cost," "percentage of construction cost," or any other method that provides for a

11

fee payable as a percentage of costs incurred, because such arrangements encourage the contractor to increase costs to increase its fee.

(6) The recipient is responsible for the settlement of all contractual and administrative issues arising out of procurement transactions. These issues include, but are not limited to source evaluation, protests, disputes, and claims. These standards do not relieve the recipient of any contractual responsibilities under its contracts. USAID will not substitute its judgment for that of the recipient unless the matter is primarily a USAID concern. The recipient must report violations of law to the appropriate authority with the proper jurisdiction.

(d) For contracts under this award, the recipient must include all provisions required by this award to be included in contracts, any other provisions necessary to define a sound and complete contract, and the following provisions:

(1) Contracts in excess of the recipient's micro-purchase threshold must contain provisions that allow for administrative, contractual, or legal remedies if a contractor violates the contract terms; and

(2) In all contracts for construction or facility improvement awarded for more than $250,000, the recipient must observe generally accepted bonding requirements.

[END OF PROVISION]

# M6. USAID ELIGIBILITY RULES FOR PROCUREMENT OF COMMODITIES AND SERVICES (MAY 2020)

(a)    This provision is not applicable to commodities or services that the recipient provides with private funds as part of a cost-sharing requirement, or with Program Income generated under this award.

(b)    Ineligible and Restricted Commodities and Services:

(1)    Ineligible Commodities and Services. The recipient must not, under any circumstances, procure any of the following under this award:

(i)    Military equipment,
(ii)    Surveillance equipment,
(iii)    Commodities and services for support of police or other law enforcement activities,
(iv)    Abortion equipment and services,
(v)    Luxury goods and gambling equipment, or
(vi)    Weather modification equipment.

(2)    Ineligible Suppliers. Any firms or individuals that do not comply with the requirements in Standard Provision "Debarment and Suspension" and Standard

Provision "Preventing Transactions with, or the Provision of Resources or Support to, Sanctioned Groups and Individuals" must not be used to provide any commodities or services funded under this award.

(3)     Restricted Commodities. The recipient must obtain prior written approval of the Agreement Officer (AO) or comply with required procedures under an applicable waiver, as provided by the AO when procuring any of the following commodities:

(i)      Agricultural commodities,
(ii)     Motor vehicles,
(iii)    Pharmaceuticals,
(iv)    Pesticides,
(v)     Used equipment,
(vi)    U.S. Government-owned excess property, or
(vii)   Fertilizer.

(c)     Source and Nationality:

Except as may be specifically approved in advance by the AO, all commodities and services that will be reimbursed by USAID under this award must be from the authorized geographic code specified in this award and must meet the source and nationality requirements set forth in 22 CFR 228. If the geographic code is not specified, the authorized geographic code is 937. When the total value of procurement for commodities and services during the life of this award is valued at $250,000 or less, the authorized geographic code for procurement of all goods and services to be reimbursed under this award is code 935. For a current list of countries within each geographic code, see **ADS 310, Source and Nationality Requirements for Procurement of Commodities and Services Financed by USAID**.

(d)     Guidance on the eligibility of specific commodities and services may be obtained from the AO. If USAID determines that the recipient has procured any commodities or services under this award contrary to the requirements of this provision, and has received payment for such purposes, the AO may require the recipient to refund the entire amount of the purchase.

(e)     This provision must be included in all subawards and contracts, which include procurement of commodities or services.

[END OF PROVISION]

# M7.  TITLE TO AND USE OF PROPERTY (AUGUST 2024)

(a) Title to all Property financed under this award vests in the recipient upon acquisition unless otherwise specified in this award.

13

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(b) *Property* means real property or personal property as defined individually below, financed under this award or furnished by USAID:

(1) *Real Property* means land, including land improvements, structures and appurtenances thereto, and legal interests in land, including fee interest, licenses, rights of way, and easements. Real property excludes moveable machinery and equipment.

(2) *Personal property* means property other than real property. It may be tangible or intangible.

(3) *Equipment* means tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost that equals or exceeds the lesser of the capitalization level established by the recipient for financial statement purposes, or $10,000.

   (i) *General purpose equipment* means equipment that is not limited to research, medical, scientific, or other technical activities. Examples include office equipment and furnishings, modular offices, telephone networks, information technology equipment and systems, air conditioning equipment, reproduction and printing equipment, and motor vehicles.

   (ii) *Information technology systems* means computing devices, ancillary equipment, software, firmware, and related procedures, services (including support services), and resources.

   (iii) *Special purpose equipment* means equipment that is used only for research, medical, scientific, or other similar technical activities. Examples of special purpose equipment include microscopes, x-ray machines, surgical instruments, spectrometers, and associated software.

(4) *Supplies* means all tangible personal property other than those described in the Equipment definition. A computing device is a supply if the acquisition cost is below the lesser of the capitalization level established by the recipient for financial statement purposes or $10,000, regardless of the length of its useful life. *Computing devices* are machines that acquire, store, analyze, process, and publish data and other information electronically, including accessories (or "peripherals") for printing, transmitting and receiving, or storing electronic information.

(5) *Intangible Property* means property having no physical existence, such as trademarks, copyrights, data (including data licenses), websites, IP licenses, trade secrets, patents, patent applications, and property such as loans, notes and other debt instruments, lease agreements, stocks and other instruments of property ownership of either tangible or intangible property, such as intellectual property, software, or software subscriptions or licenses.

14

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(c) The recipient agrees to use and maintain all Property for the purpose of this award in accordance with the following procedures:

(1) The recipient must use the Property for the program for which it was acquired during the period of this award, and must not provide any third party a legal or financial interest in the property (e.g., through a mortgage, lien, or lease) without the approval of USAID.

(2) When the Property is no longer needed for the program for which it was acquired during the period of this award, the recipient must use the Property in connection with its other activities, in the following order of priority:

(i)  Activities funded by USAID, then
(ii)  Activities funded by other United States Government (USG) agencies, then
(iii)  As directed by the Agreement Officer (AO).

(d) The recipient must maintain the Property in good condition, have management procedures to protect the Property, and maintain an accurate inventory of all Property. The recipient is responsible for maintaining and updating property records when there is a change in the status of the property. Maintenance procedures must include the following:

(1) Accurate description of the Property, including serial number, model number, or other identifying number, acquisition date and cost, the percentage of the USAID portion of the original purchase, location, use and condition, and disposition data of any Property (date of disposition, sales price, method used to determine current fair market value, etc.), as applicable.

(2) A physical inventory of Property that must be conducted, and the results must be reconciled with the Property records, at least once every two years during the period of this award.

(3) A control system must be in place to ensure safeguards for preventing Property loss, damage, or theft. Any loss, damage, or theft of equipment must be investigated and fully documented, and the recipient must promptly notify the AO. The recipient must maintain appropriate insurance equivalent to insurance the recipient maintains for its own property. The recipient may be liable where insurance is not sufficient to cover losses or damage.

(4) Regular maintenance procedures must be in place to ensure the Property is in proper working condition.

(e) Upon completion of this award, or when the equipment is no longer needed for the purpose of this award, the recipient must submit to the AO a proposed Property disposition plan for the following types of Property.

*Text highlighted in yellow indicates that the material is new or substantively revised.* AIDEMTDAPP_000039

(1) All equipment that has a current fair market value in excess of $10,000 per unit.

(2) New/unused supplies exceeding $10,000 in aggregate current fair market value. The aggregate value consists of all supply types, not just like-item supplies.

(3) Real or intangible property, of any value.

(f) If the AO fails to provide approval of the recipient's proposed Property disposition plan or does not provide other Property disposition instructions, in writing within 120 days of the AO's receipt of the recipient's proposed Property disposition plan, the recipient may dispose of the Property in accordance with the recipient's property disposition plan. Disposition may include the following:

(1) The recipient may retain title with no further obligation to USAID.

(2) The recipient may retain title, but must compensate USAID for the USAID share, based on the current fair market value or the proceeds from the sale of the Property.

(3) The recipient may be directed to transfer title to USAID or a third party, including another implementing partner or the host country government. In such a case, the recipient will be compensated for its proportional share of the Property that the recipient financed with its own funds, if any, based on the current fair market value of the Property.

(g) The AO may direct, at any time during this award, that title to the Property vests in the USG or a third party, such as the cooperating country. In such cases, the recipient must maintain custody and control of the Property, until directed otherwise, and must allow reasonable access to the Property to the title holder. While in its custody and control, the recipient must follow the provisions above for protection and maintenance of the Property, and provide the AO with an annual inventory of such Property and follow any additional instructions on protection and maintenance as may be provided by the AO.

(h) The recipient must retain records for property and equipment acquired with USAID funds provided under this award for three years after final disposition.

(i) This provision must be included in all subawards and contracts.

[END OF PROVISION]

## M8.   SUBMISSIONS TO THE DEVELOPMENT EXPERIENCE CLEARINGHOUSE AND DATA RIGHTS (JUNE 2012)

(a)   Submissions to the Development Experience Clearinghouse (DEC).

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000040

(1) The recipient must provide the Agreement Officer's Representative one copy of any Intellectual Work that is published, and a list of any Intellectual Work that is not published.

(2) In addition, the recipient must submit Intellectual Work, whether published or not, to the DEC, either on-line (preferred) or by mail. The recipient must review the DEC Web site for submission instructions, including document formatting and the types of documents to submit. Submission instructions can be found at:

**http://dec.usaid.gov**

(3) For purposes of submissions to the DEC, Intellectual Work includes all works that document the implementation, evaluation, and results of international development assistance activities developed or acquired under this award, which may include program and communications materials, evaluations and assessments, information products, research and technical reports, progress and performance reports required under this award (excluding administrative financial information), and other reports, articles and papers prepared by the recipient under the award, whether published or not. The term does not include the recipient's information that is incidental to award administration, such as financial, administrative, cost or pricing, or management information.

(4) Each document submitted should contain essential bibliographic information, such as

(i) descriptive title;
(ii) author(s) name;
(iii) award number;
(iv) sponsoring USAID office;
(v) development objective; and
(vi) date of publication.

(5) The recipient must not submit to the DEC any financially sensitive information or personally identifiable information, such as social security numbers, home addresses and dates of birth. Such information must be removed prior to submission. The recipient must not submit classified documents to the DEC.

(b) Rights in Data

(1) Data means recorded information, regardless of the form or the media on which it may be recorded, including technical data and computer software, and includes Intellectual Work, defined in (a) above.

17

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(2) Unless otherwise provided in this provision, the recipient may retain the rights, title and interest to Data that is first acquired or produced under this award. USAID reserves a royalty-free, worldwide, nonexclusive, and irrevocable right to use, disclose, reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, in any manner and for any purpose, and to have or permit others to do so.

(c) Copyright. The recipient may copyright any books, publications or other copyrightable materials first acquired or produced under this award. USAID reserves a royalty-free, worldwide, nonexclusive, and irrevocable right to use, disclose, reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, in any manner and for any purpose, and to have or permit others to do so.

(d) The recipient will provide the U.S. Government, on request or as otherwise provided in this award, a copy of any Data or copyrighted material to which the U.S. Government has rights under paragraphs b. and c. of this provision. The U.S. Government makes no representations or warranties as to title, right to use or license, or other legal rights or obligations regarding any Data or copyrighted materials.

[END OF PROVISION]

## M9.  MARKING AND PUBLIC COMMUNICATIONS UNDER USAID-FUNDED ASSISTANCE (DECEMBER 2014)

(a) The USAID Identity is the official marking for USAID, comprised of the USAID logo and brandmark with the tagline "from the American people," unless amended by USAID to include additional or substitute use of a logo or seal and tagline representing a presidential initiative or other high level interagency initiative. The standard USAID logo must be used unless the award requires use of an additional or substitute logo. The USAID Identity (including any required additional insignia or related identity) is available on the USAID Web site at **www.usaid.gov**. Recipients must use the USAID Identity, of a size and prominence equivalent to or greater than any other identity or logo displayed, to mark the following:

(1)    Programs, projects, activities, public communications, and commodities partially or fully funded by USAID;

(2)    Program, project, or activity sites funded by USAID, including visible infrastructure projects or other physical sites;

(3)    Technical assistance, studies, reports, papers, publications, audio-visual productions, public service announcements, Web sites/Internet activities, promotional, informational, media, or

18

communications products funded by USAID;

(4)     Commodities, equipment, supplies, and other materials funded by USAID, including commodities or equipment provided under humanitarian assistance or disaster relief programs; and

(5)     Events financed by USAID, such as training courses, conferences, seminars, exhibitions, fairs, workshops, press conferences and other public activities. If the USAID Identity cannot be displayed, the recipient is encouraged to otherwise acknowledge USAID and the support of the American people.

(b) The recipient must implement the requirements of this provision following the approved Marking Plan in the award.

(c) The Agreement Officer may require a preproduction review of program materials and "public communications" (documents and messages intended for external distribution, including but not limited to correspondence; publications; studies; reports; audio visual productions; applications; forms; press; and promotional materials) used in connection with USAID-funded programs, projects or activities, for compliance with an approved Marking Plan.

(d) The recipient is encouraged to give public notice of the receipt of this award and announce progress and accomplishments. The recipient must provide copies of notices or announcements to the Agreement Officer's Representative (AOR) and to USAID's Office of Legislative and Public Affairs in advance of release, as practicable. Press releases or other public notices must include a statement substantially as follows:

"The U.S. Agency for International Development administers the U.S. foreign assistance program providing economic and humanitarian assistance in more than 80 countries worldwide."

(e) Any "public communication" in which the content has not been approved by USAID must contain the following disclaimer:

"This study/report/audio/visual/other information/media product (specify) is made possible by the generous support of the American people through the United States Agency for International Development (USAID). The contents are the responsibility of [insert recipient name] and do not necessarily reflect the views of USAID or the United States Government."

(f) The recipient must provide the USAID AOR, with two copies of all program and communications materials produced under this award.

19

(g) The recipient may request an exception from USAID marking requirements when USAID marking requirements would:

    (1)    Compromise the intrinsic independence or neutrality of a program or materials where independence or neutrality is an inherent aspect of the program and materials;

    (2)    Diminish the credibility of audits, reports, analyses, studies, or policy recommendations whose data or findings must be seen as independent;

    (3)    Undercut host-country government "ownership" of constitutions, laws, regulations, policies, studies, assessments, reports, publications, surveys or audits, public service announcements, or other communications;

    (4)    Impair the functionality of an item;

    (5)    Incur substantial costs or be impractical;

    (6)    Offend local cultural or social norms, or be considered inappropriate; or

    (7)    Conflict with international law.

(h) The recipient may submit a waiver request of the marking requirements of this provision or the Marking Plan, through the AOR, when USAID-required marking would pose compelling political, safety, or security concerns, or have an adverse impact in the cooperating country.

    (1)    Approved waivers "flow down" to subawards and contracts unless specified otherwise. The waiver may also include the removal of USAID markings already affixed, if circumstances warrant.

    (2)    USAID determinations regarding waiver requests are subject to appeal by the recipient, by submitting a written request to reconsider the determination to the cognizant Assistant Administrator.

(i) The recipient must include the following marking provision in any subagreements entered into under this award:

    *"As a condition of receipt of this subaward, marking with the USAID Identity of a size and prominence equivalent to or greater than the recipient's, subrecipient's, other donor's, or third party's is required.*

20

*In the event the recipient chooses not to require marking with its own identity or logo by the subrecipient, USAID may, at its discretion, require marking by the subrecipient with the USAID Identity."*

[END OF PROVISION]

## M10. AWARD SUSPENSION AND TERMINATION (AUGUST 2024)

(a) The recipient or Agreement Officer (AO) may terminate this award at any time, in its entirety or in part, upon written notice to the other party in accordance with the Standard Provision, "Notices,"as follows:

    (1) by USAID if the recipient fails to comply with the terms and conditions of the award or by the recipient if the subrecipient fails to comply with the terms and conditions of the award;

    (2) by USAID with the consent of the recipient or by the recipient with the consent of the subrecipient, in which case the two parties must agree upon the termination conditions. These conditions include the effective date and, in the case of partial termination, the portion to be terminated;

    (3) by the recipient or subrecipient upon sending the USAID or recipient a written notification of the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if USAID or recipient determines that the remaining portion of the award will not accomplish the purposes for which the award was made, USAID or recipient may terminate the award in its entirety; or

    (4) by USAID or, for a subaward, the recipient, if the award or subaward no longer effectuates the program goals or agency priorities.

(b) The AO may suspend or terminate the award in whole or in part:

    (1) if at any time USAID determines that continuation would not be in the national interest of the United States or would be in violation of an applicable law.

    (2) if the recipient or any of its employees, subrecipients, or contractors are found to have been convicted of a narcotics offense or to have been engaged in drug trafficking as defined in 22 CFR 140.

    (3) if the recipient does not make a good-faith effort to maintain a drug-free workplace.

(c) When suspension occurs, the AO will provide a written notice, including any limitations on the expenditure of funds.

*Text highlighted in yellow indicates that the material is new or substantively revised.* DEFMTDAPP_000045

(d) If a suspension is put into effect for 60 calendar days or more, USAID may terminate the award in whole or in part on written notice of termination. The termination notice must contain the reason(s) for the termination; the effective date; and, in the case of a partial termination, the portion to be terminated. A termination based on non-compliance may be considered in selection for future awards.

(e) Termination Procedures.

(1) Upon receipt of, and in accordance with, a termination notice from USAID, the recipient must take immediate action to minimize all expenditures and cancel all obligations financed by this award to the greatest extent possible. Except as provided in this provision or as the AO approves in writing, the recipient is not entitled to costs incurred after the effective date of termination.

(2) Within 30 calendar days after the effective date of such termination, the recipient must repay to the U.S. Government all unexpended USAID funds as of the effective date of termination, which are not otherwise obligated by a non-cancellable legally binding transaction applicable to this award.

(3) Should the funds paid by USAID to the recipient prior to the effective date of the termination of this award be insufficient to cover legally binding obligations to third parties by the recipient, the recipient may submit to USAID within 90 calendar days after the effective date of a termination a written claim covering such recipient obligations. The AO must determine the amount(s) to be paid by USAID to the recipient under such claim in accordance with this provision and the Standard Provision, "Allowable Costs."

(f) The recipient must include a provision in all subawards and contracts.

[END OF PROVISION]

## M11. RECIPIENT AND EMPLOYEE CONDUCT (OCTOBER 2023)

(a)    The recipient must have written policies and procedures in place to prevent personal conflicts of interest and to prevent its officers, employees, or agents from using their positions for personal gain or presenting the appearance of a personal conflict of interest. A personal conflict of interest is a situation in which an officer, employee, or agent of the recipient has a financial interest, personal activity, or relationship that could impair the employee's ability to act impartially when performing under the award. The recipient's written policy must state that an employee, officer, or agent of the recipient, or any member of an employee's immediate family cannot receive a subaward or have a financial or other interest in the entity selected for a subaward without disclosing the conflict and following the recipient's written policies and procedures for mitigating the conflict. In addition, the written policy must state that the officers, employees, and

22

agents of the recipient must neither solicit nor accept gratuities, favors, or anything of monetary value from subrecipients or prospective subrecipients.

(b)    The recipient, its employees, and consultants are prohibited from using U.S. Government information-technology systems (such as Phoenix, GLAAS, etc.), must be escorted to use U.S. Government facilities (such as office space or equipment), and may not rely on assistance from any U.S. Government clerical or technical personnel in the performance of this award, except as otherwise provided in this award.

(c)    The recipient, its employees, and consultants are private individuals, are not employees of the U.S. Government, and must not represent themselves as such.

(d)    The following requirements in this provision apply to the recipient's employees who are not citizens of the cooperating country.

(1) If the recipient's employees enjoy exemptions from import limitations, customs duties or taxes on personal property in connection with performance of this award, the sale of such personal property is governed by the rules contained in 22 CFR 136, including a prohibition from profiting from such sale, except as this may conflict with host-government regulations.

(2) Any outside business dealings of the recipient's employees must be legal and not conflict in any manner with this award. Outside business dealings include, but are not limited to, any investments, loans, employment, or business ownership by the recipient's employees, other than work to be performed under this award.

(e)    If the recipient determines that the conduct of any recipient employee is not in accordance with this provision or this award, the recipient's Chief of Party must coordinate with the Agreement Officer and the USAID Mission Director to resolve the situation with regard to such employee including, if necessary, termination of the employee. In the case of termination of a non-host country national, the recipient must use its best efforts to cause the return of such employee to the United States, or point of origin, as appropriate.

(f)    The parties recognize the rights of the U.S. Chief of Mission to direct the removal from a country of any U.S. citizen, or direct the discharge from this award of any individual (U.S., third-country, or cooperating-country national) when, at the discretion of the U.S. Chief of Mission, it is in the best interest of the United States.

(g)    If it is determined, under paragraph (e) or (f) above, that the services of such employee should be terminated, the recipient must use its best efforts to cause the return of such employee to the United States, or third-country point of origin, as appropriate, and replace the employee with an acceptable substitute at

23

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000047

no cost to USAID.

(h).    The substance of this provision, including this paragraph (g), must be included in all subawards. Any matters relating to subrecipients, including the employees of subrecipients, must be coordinated through the recipient's Chief of Party.

[END OF PROVISION]

## M12. DEBARMENT AND SUSPENSION (JUNE 2012)

(a)    The recipient must not transact or conduct business under this award with any individual or entity that has an active exclusion on the System for Award Management (SAM) (www.sam.gov) unless prior approval is received from the Agreement Officer. The list contains those individuals and entities that the U.S. Government has suspended or debarred based on misconduct or a determination by the U.S. Government that the person or entity cannot be trusted to safeguard U.S. Government funds. Suspended or debarred entities or individuals are excluded from receiving any new work or any additional U.S. Government funding for the duration of the exclusion period. If the recipient has any questions about listings in the system, these must be directed to the Agreement Officer.

(b)    The recipient must comply with Subpart C of 2 CFR Section 180, as supplemented by 2 CFR 780. USAID may disallow costs, annul or terminate the transaction, debar or suspend the recipient, or take other remedies as appropriate, if the recipient violates this provision. Although doing so is not automatic, USAID may terminate this award if a recipient or any of its principals meet any of the conditions listed in paragraph c. below. If such a situation arises, USAID will consider the totality of circumstances—including the recipient's response to the situation and any additional information submitted—when USAID determines its response.

(c)    The recipient must notify the Agreement Officer immediately upon learning that it or any of its principals, at any time prior to or during the duration of this award:

(1) Are presently excluded or disqualified from doing business with any U.S. Government entity;

(2) Have been convicted or found liable within the preceding three years for committing any offense indicating a lack of business integrity or business honesty such as fraud, embezzlement, theft, forgery, bribery or lying;

(3) Are presently indicted for or otherwise criminally or civilly charged by any governmental entity for any of the offenses enumerated in paragraph (c)(2); or

*Text highlighted in yellow indicates that the material is new or substantively revised.* SEEMTDAPP_000048

(4) Have had one or more U.S.-funded agreements terminated for cause or default within the preceding three years.

(d)    Principal means—

(1) An officer, director, owner, partner, principal investigator, or other person within a participant with management or supervisory responsibilities related to a covered transaction; or

(2) A consultant or other person, whether or not employed by the participant or paid with Federal funds, who—

(i) Is in a position to handle Federal funds;
(ii) Is in a position to influence or control the use of those funds; or,
(iii) Occupies a technical or professional position capable of substantially influencing the development or outcome of an activity required to perform the covered transaction.

(e)    The recipient must include this provision in its entirety except for paragraphs (c)(2)-(4) in any subawards or contracts entered into under this award.

[END OF PROVISION]

## M13. DISPUTES AND APPEALS (DECEMBER 2022)

(a)    Any dispute under this award will be decided by the Agreement Officer (AO). The AO must furnish the recipient a written copy of the decision.

(b)    Decisions of the AO are final unless the recipient appeals the decision to USAID's Deputy Assistant Administrator, Bureau for Management. Any appeal made under this provision must be in writing, postmarked within 30 calendar days of receipt of the AO's decision; include all relevant and material evidence; and be addressed to the Deputy Assistant Administrator, Bureau for Management, U.S. Agency for International Development, Management Bureau, 1300 Pennsylvania Ave, NW, Washington, D.C. 20523 or as redelegated in accordance with ADS 103, Delegations of Authority. A copy of the appeal must be concurrently furnished to the AO. No hearing will be provided.

(c)    A decision under this provision, as noted in paragraph (b) above, is final.

(d)    Notwithstanding any other term of this award, subawardees and contractors have no right to submit claims directly to USAID and USAID assumes no liability for any third party claims against the recipient.

[END OF PROVISION]

*Text highlighted in yellow indicates that the material is new or substantively revised.*    SACEMTDAPP_000049

## M14. PREVENTING TRANSACTIONS WITH, OR THE PROVISION OF RESOURCES OR SUPPORT TO, SANCTIONED GROUPS AND INDIVIDUALS (MAY 2020)

(a) In carrying out activities under this award, except as authorized by a license issued by the Office of Foreign Assets Control (OFAC) of the U.S. Department of Treasury, the recipient will not engage in transactions with, or provide resources or support to, any individual or entity that is subject to sanctions administered by OFAC or the United Nations (UN), including any individual or entity that is included on the Specially Designated Nationals and Blocked Persons List maintained by OFAC (https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx/) or on the UN Security Council consolidated list (https://www.un.org/securitycouncil/content/un-sc-consolidated-list).

(b) Any violation of the above will be grounds for unilateral termination of the agreement by USAID.

(c) The recipient must include this provision in all subawards and contracts issued under this award.

[END OF PROVISION]

## M15. TRAFFICKING IN PERSONS (AUGUST 2024)

(a) The recipient, its employees, contractors at any tier, subrecipients under this award, and subrecipient and contractor employees must not engage in:

(1) Severe forms of trafficking in persons during the period of this award;

(2) Procurement of a commercial sex act during the period of performance of this award;

(3) Use of forced labor in the performance of this award; or

(4) Acts that directly support or advance trafficking in persons, including the following acts:

(i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

(ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000050

    (A) exempted from the requirement to provide or pay for such return transportation by USAID under this award; or

    (B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

    (iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

    (iv) Charging recruited employees a placement or recruitment fee; or

    (v) Providing or arranging housing that fails to meet the host country housing and safety standards.

(b) USAID may terminate this award, without penalty, or take any remedial actions authorized by 22 U.S.C. 7104b(c), if the recipient under this award:

    (1) Is determined to have violated a prohibition in paragraph (a); or

    (2) Has an employee that is determined to have violated a prohibition in paragraph (a) through conduct that is either:

        (i) Associated with the performance under this award; or

        (ii) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by USAID at 2 CFR 780.

(c) USAID's right to unilaterally terminate this award as described in paragraph (b)(1) implements the requirements of 22 U.S.C. chapter 78, and (2) is in addition to all other remedies for noncompliance that are available to USAID under this award.

(d) The recipient must immediately notify the Bureau for Management, Office of Management Policy, Budget, and Performance, Responsibility, Safeguarding, and Compliance Division (M/MPBP/RSC) at **disclosures@usaid.gov**, the AO, and the USAID Office of Inspector General of any information it receives from any source alleges credible information that the recipient, any subrecipient, contractor, or subcontractor of the recipient, or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a). The recipient must fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

*Text highlighted in yellow indicates that the material is new or substantively revised* SACEMTDAPP_000051

(e) If the estimated value of services required to be performed under the award outside the United States exceeds $500,000, the recipient must certify annually that:

(1) The recipient has implemented a plan to prevent the activities described in paragraph (a) of this provision, and is in compliance with this plan;

(2) The recipient has implemented procedures to prevent any activities described in paragraph (a) of this provision and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this provision; and

(3) To the best of the recipient's knowledge, neither the recipient, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this provision.

(f) Any plan or procedures implemented pursuant to paragraph (e) must be appropriate to the size and complexity of the award and to the nature and scope of the activities, including the number of non-United States citizens expected to be employed. The compliance plan must include, at a minimum, the following:

(1) An awareness program to inform recipient employees about the U.S. Government's policy prohibiting trafficking-related activities described in paragraph (a), the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

(2) A reporting process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(3) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging of recruitment fees to the employees or potential employees, and ensures that wages meet applicable host-country legal requirements or explains any variance.

(4) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets any host-country housing and safety standards.

(5) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this provision,

*Text highlighted in yellow indicates that the material is new or substantively revised.*

and to monitor, detect, and terminate any agents, subawards, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.

(g) The recipient must provide a copy of the plan to the AO upon request and must post the useful and relevant contents of the plan or related materials on its website (if one is maintained) and at the workplace.

(h) The AO may direct the recipient to take specific steps to abate an alleged violation or enforce the requirements of a compliance plan.

(i) For purposes of this provision:

(1) "*Abuse or threatened abuse of law or legal process*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(2) "*Coercion*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means:

(i) Threats of serious harm to or physical restraint against any person;
(ii) Any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
(iii) The abuse or threatened abuse of the legal process.

(3) "*Commercial sex act*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means any sex act on account of which anything of value is given to or received by any person.

(4) "*Debt bondage*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means the status or condition of a debtor arising from a pledge by the debtor of his or her personal services or of those of a person under his or her control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined.

(5) "*Employee*" means either:

(i) an individual employed by the recipient or subrecipient who is engaged in the performance of the project or program under this award; or

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000053

(ii) another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

(6) "*Involuntary servitude*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), includes a condition of servitude induced by means of:

(i) Any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or

(ii) The abuse or threatened abuse of the legal process.

(7) "*Recruitment Fee*" means fees of any type, including charges, costs, assessments, or other financial obligations, that are associated with the recruiting process, regardless of the time, manner, or location of imposition or collection of the fee.

(i) Recruitment fees include, but are not limited to, the following fees (when they are associated with the recruiting process) for:

(A) Advertising;

(B) Obtaining permanent or temporary labor certification, including any associated fees;

(C) Processing applications and petitions;

(D) Acquiring visas, including any associated fees;

(E) Acquiring photographs and identity or immigration documents, such as passports, including any associated fees;

(F) Accessing the job opportunity, including required medical examinations and immunizations; background, reference, and security clearance checks and examinations; and additional certifications;

(G) An employer's recruiters, agents or attorneys, or other notary or legal fees;

*Text highlighted in yellow indicates that the material is new or substantively revised* SAETMTDAPP_000054

(H) Language interpretation or translation, arranging for or accompanying on travel, or providing other advice to employees or potential employees;

(I) Government-mandated fees, such as border crossing fees, levies, or worker welfare fund;

(J) Transportation and subsistence costs:

   *(1)* While in transit, including, but not limited to, airfare or costs of other modes of transportation, terminal fees, and travel taxes associated with travel from the country of origin to the country of performance and the return journey upon the end of employment; and

   *(2)* From the airport or disembarkation point to the worksite;

      *(i)* Security deposits, bonds, and insurance; and
      *(ii)* Equipment charges.

(ii) A recruitment fee, as described in the introductory text of this definition, is a recruitment fee, regardless of whether the payment is:

(A) Paid in property or money;

(B) Deducted from wages;

(C) Paid back in wage or benefit concessions;

(D) Paid back as a kickback, bribe, in-kind payment, free labor, tip, or tribute; or

(E) Collected by an employer or a third party, whether licensed or unlicensed, including, but not limited to:

   *(1)* Agents;
   *(2)* Labor brokers;
   *(3)* Recruiters;
   *(4)* Staffing firms (including private employment and placement firms);
   *(5)* Subsidiaries/affiliates of the employer;
   *(6)* Any agent or employee of such entities; and

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000055

*(7)* Subcontractors at all tiers.

(8) "*Severe forms of trafficking in persons*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means:

(i) Sex trafficking in which a commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age; or

(ii) The recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage or slavery.

(9) "*Sex trafficking*," as defined at section 103 of the TVPA, as amended (22 U.S.C. 7102), means the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act.

(10)    Terms not defined in this provision have the same meaning as provided in 2 CFR part 200, subpart A.

(j)  The recipient must include in all subawards the requirements of paragraph (a) of this award term, this paragraph (j), and a notification requirement to the recipient similar to that described in paragraph (d). The recipient must forward such notifications as required in paragraph (d).

[END OF PROVISION]

## M16.  VOLUNTARY POPULATION PLANNING ACTIVITIES - MANDATORY REQUIREMENTS (MAY 2006)

(a) Requirements for Voluntary Sterilization Programs

(1)    Funds made available under this award must not be used to pay for the performance of involuntary sterilization as a method of family planning or to coerce or provide any financial incentive to any individual to practice sterilization.

(b) Prohibition on Abortion-Related Activities:

(1)    No funds made available under this award will be used to finance, support, or be attributed to the following activities:

(i) procurement or distribution of equipment intended to be used for the purpose of inducing abortions as a method of family planning;
(ii) special fees or incentives to any person to coerce or motivate them to

*Text highlighted in yellow indicates that the material is new or substantively revised.* AEMTDAPP_000056

have abortions;

(iii) payments to persons to perform abortions or to solicit persons to undergo abortions;

(iv) information, education, training, or communication programs that seek to promote abortion as a method of family planning; and

(v) lobbying for or against abortion. The term "*motivate*," as it relates to family planning assistance, must not be construed to prohibit the provision, consistent with local law, of information or counseling about all pregnancy options.

(2)    No funds made available under this award will be used to pay for any biomedical research which relates, in whole or in part, to methods of, or the performance of, abortions or involuntary sterilizations as a means of family planning. Epidemiologic or descriptive research to assess the incidence, extent, or consequences of abortions is not precluded.

[END OF PROVISION]

## M17. EQUAL PARTICIPATION BY FAITH-BASED ORGANIZATIONS (JUNE 2024)

(a) Equal Participation.

(1) Faith-based organizations are eligible, on the same basis as any other organization, to receive any USAID award for which they are otherwise eligible. USAID and pass-through entities must not discriminate for or against an organization on the basis of the organization's religious character, motives, or affiliation, or lack thereof; or for any other reason that would not be a valid basis to favor or disfavor a similarly situated secular organization.

(2) Faith-based organizations must not be disqualified from receiving USAID awards because of their religious character, motives, or affiliation, or lack thereof. Notices of funding opportunities must include language indicating that faith-based organizations are eligible on the same basis as any other organization and subject to the protections and requirements of federal law.

(3) Decisions about awards of USAID financial assistance must be free from political interference or even the appearance of such interference. Awards must be made on the basis of merit, not the basis of the religious affiliation of an applicant, or lack thereof.

(4) A faith-based organization may continue to carry out its mission, including the definition, development, practice, and expression of its religious beliefs, within the limits contained in this provision. For more information, see the **USAID Center for Faith-Based and Neighborhood Partnerships** website and **22 CFR 205.1**.

*Text highlighted in yellow indicates that the material is new or substantively revised.* SEEMTDAPP_000057

(b) Explicitly Religious Activities Prohibited.

    (1) Explicitly religious activities include activities that involve overt religious content such as worship, religious instruction, prayer, or proselytization.

    (2) The recipient must not engage in explicitly religious activities as part of the programs or services directly funded with Federal financial assistance from USAID. If the recipient engages in explicitly religious activities, the activities must be offered separately, in time or location, from any programs or services directly funded by this award, and participation must be voluntary for beneficiaries of the programs or services funded with USAID assistance.

    (3) These restrictions apply equally to faith-based and secular organizations. All organizations that participate in USAID programs, as recipients or subrecipients, including faith-based organizations, must carry out eligible activities in accordance with all program requirements and other applicable requirements governing USAID-funded activities.

    (4) Notwithstanding the restrictions of (b)(1) and (2), a faith-based organization that applies for or receives USAID-funded awards or subawards:

        (i) Retains its autonomy, religious character, and independence and may continue to carry out its mission, including the definition, development, practice, and expression of its religious beliefs, provided that it does not use direct financial assistance from USAID to support or engage in any explicitly religious activities or in any other manner prohibited by law;

        (ii) May use space in its facilities, without concealing, altering or removing religious art, icons, scriptures, or other religious symbols; and

        (iii) Retains its authority over its internal governance, and may retain religious terms in its organization's name, select its board members on a religious basis, and include religious references in its organization's mission statements and other governing documents.

(c) Requests for Accommodation: USAID must consider requests for accommodation, including for religious exercise, with respect to one or more award requirements on a case-by-case basis.

(d) Implementation in accordance with the Establishment Clause of the First Amendment to the U.S. Constitution: Nothing in this provision must be construed as authorizing the use of USAID funds for activities that are not permitted by Establishment Clause jurisprudence or otherwise by law.

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(e) Nothing in this provision must be construed in such a way as to advantage, or disadvantage, faith-based organizations affiliated with historic or well-established religions or sects in comparison with other religions or sects.

(f) Discrimination Based on Religion Prohibited: The recipient must not, in providing services or outreach activities related to such services, discriminate against a program beneficiary or potential program beneficiary on the basis of religion or religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

(g) A religious organization's exemption from the Federal prohibition on employment discrimination on the basis of religion, set forth in Sec. 702(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e–1, is not forfeited when the organization receives financial assistance from USAID.

(h) The Secretary of State may waive the requirements of this section in whole or in part, on a case-by-case basis, where the Secretary determines that such waiver is necessary to further the national security or foreign policy interests of the United States.

(i) This provision must be included in all subawards under this award.

[END OF PROVISION]

# M18. NONDISCRIMINATION (AUGUST 2024)

(a)    No U.S. citizen or legal resident shall be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination on the basis of race, color, national origin, age, disability, sex, sexual orientation or gender identity, under any program or activity funded by this award when work under the award is performed in the U.S. or when employees are recruited from the U.S.

(b)    Additionally, USAID is committed to achieving and maintaining a diverse and representative workforce and a workplace free of discrimination. Based on law, Executive Order, and Agency policy, USAID prohibits discrimination, including harassment, in its own workplace on the basis of race, color, religion, sex (including pregnancy, sexual orientation, gender identity, or transgender status), national origin, age (40 or older), physical or mental disability, genetic information, marital or parental status, veteran status, membership in an employee organization, political affiliation, or involvement in protected equal employment opportunity (EEO) activity.

(c)    In addition, the Agency strongly encourages its recipients and subrecipients, as well as vendors (at all tiers), performing both in the U.S. and overseas, to develop and enforce comprehensive nondiscrimination policies for their workplaces that include protection for all their employees on these expanded bases, subject to applicable law.

*Text highlighted in yellow indicates that the material is new or substantively revised.* SAEMTDAPP_000059

[END OF PROVISION]

# M19. USAID DISABILITY POLICY - ASSISTANCE (JUNE 2012)

The recipient must not discriminate against people with disabilities in the implementation of USAID funded programs and should demonstrate a comprehensive and consistent approach for including men, women, and children with disabilities.

[END OF PROVISION]

# M20. LIMITING CONSTRUCTION ACTIVITIES (AUGUST 2023)

**PRESCRIPTION:** *In accordance with the policy at ADS 303.3.30, Agreement Officers (AOs) must include this provision in all solicitations and awards. When no construction activities are contemplated under the award, the AO must insert "Construction is not eligible for reimbursement under this award" in section e) of this provision. If the award permits construction activities based on the policy above (or as authorized by waiver or exception), the AO must insert the description and location(s) of the specific construction activities in section d) of this provision. The AO must not make a general reference to the Program Description. The AO must also ensure that there is a specific line item for construction activities in the award budget.*

### LIMITING CONSTRUCTION ACTIVITIES (AUGUST 2023)

(a) Construction is not eligible for reimbursement under this award unless specifically identified in paragraph (d) below.

(b) Definitions

    (1) "*Construction*" means —construction, alteration, or repair (including dredging and excavation) of buildings, structures, or other real property and includes, without limitation, improvements, renovation, alteration and refurbishment. The term includes, without limitation, roads, power plants, buildings, bridges, water treatment facilities, and vertical structures. The term does not include emplacement and removal of prefabricated structures and humanitarian shelters that are designed and constructed to be readily moved, erected, disassembled, stored, and reused (i.e., "relocatable buildings"), unless the emplacement and removal of the relocatable building requires site preparation work that otherwise meets the definition of construction.

    (2) "*Improvements, renovation, alteration, and refurbishment*" means – any betterment or change to an existing property to allow its continued or more efficient use within its designed purpose (renovation), or for the use of a different purpose or function (alteration). Improvements also include improvements to or upgrading of primary mechanical, electrical, or other

building systems. "Improvements, renovation, alteration, and refurbishment" does NOT include non-structural, cosmetic work, including painting, floor covering, wall coverings, window replacement that does not include changing the size of the window opening, replacement of plumbing or conduits that does not affect structural elements, and non-load bearing walls or fixtures (e.g., shelves, signs, lighting, etc.). It also does NOT include repairs used in humanitarian assistance which constitute minor fixes to physical elements of a currently serviceable structure, if those repairs do not significantly impact or change the primary mechanical, electrical, or structural elements of the real property.

(c) Agreement Officers will not approve any subawards or procurements by recipients for construction activities that are not listed in paragraph (d) below. USAID will reimburse allowable costs for only the construction activities listed in this provision not to exceed the amount specified in the construction line item of the award budget. The recipient must receive prior written approval from the AO to transfer funds allotted for construction activities to other cost categories, or vice versa, with the exception of increases or decreases directly associated with currency fluctuations.

(d) <u>Description</u>
[*Type of construction and location(s)*]

(e) The recipient must include this provision in all subawards and procurements and make vendors providing services under this award and subrecipients aware of the restrictions of this provision.

[END OF PROVISION]

## M21. USAID IMPLEMENTING PARTNER NOTICES (IPN) PORTAL FOR ASSISTANCE (JULY 2014)

**APPLICABILITY:** *For use in all solicitations and resulting awards. Please refer to* <u>**ADS 303, Section 303.3.31, "USAID Implementing Partner Notices (IPN) Portal For Assistance"**</u> *for additional guidance.*

**USAID IMPLEMENTING PARTNER NOTICES (IPN) PORTAL FOR ASSISTANCE (JULY 2014)**

(a)    Definitions

(1) "*USAID Implementing Partner Notices (IPN) Portal for Assistance ("IPN Portal)*" means the single point where USAID posts proposed universal bilateral amendments for USAID awards, which can be accessed electronically by registered USAID recipients. The IPN Portal is located at <u>**https://sites.google.com/site/usaidipnforassistance/**</u>.

37

(2) "*IPN Portal Administrator*" means the USAID official designated by the Director, M/OAA, who has overall responsibility for managing the USAID Implementing Partner Notices Portal for Assistance.

(3) "*Universal bilateral amendment*" means those amendments with revisions or new requirements or provisions that affect all awards or a designated class of awards, as specified in the Agency notification of such revisions or new requirements.

(b)   By submission of an application and execution of an award, the applicant/recipient acknowledges the requirement to:

(1) Register with the IPN Portal if awarded an assistance award resulting from this solicitation, and

(2) Receive universal bilateral amendments to this award and general notices via the IPN Portal.

(c)   Procedure to register for notifications.

Go to **https://sites.google.com/site/usaidipnforassistance/** and click the "Register" button at the top of the page. Recipient representatives must use their official organization email address when subscribing, not personal email addresses.

(d)   Processing of IPN Portal Amendments

The recipient may access the IPN Portal at any time to review all IPN Portal amendments; however, the system will also notify the recipient by email when the USAID IPN Portal Administrator posts a universal bilateral amendment for recipient's review and signature. Proposed USAID IPN Portal amendments distributed via the IPN Portal are applicable to all awards, unless otherwise noted in the proposed amendment.

Within 15 calendar days from receipt of the notification email from the IPN Portal, the recipient must do one of the following:

(1) (i) verify applicability of the proposed amendment for their award(s) per the instructions provided with each amendment;
(ii) download the amendment and incorporate the following information on the amendment form: award number, organization name, and organization mailing address as it appears in the basic award;
(iii) sign the hardcopy version; and
(iv) send the signed amendment (by email or hardcopy) to the AO for signature. The recipient must not incorporate any other changes to the IPN Portal amendment. Bilateral amendments provided through the IPN Portal are not effective until the both the recipient and the AO sign the amendment;

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000062

(2) Notify the AO in writing if the amendment requires negotiation of additional changes to terms and conditions of the award; or

(3) Notify the AO that the recipient declines to sign the amendment.

Within 30 calendar days of receipt of a signed amendment from the recipient, the AO must provide the fully executed amendment to the recipient or initiate discussions with the recipient.

[End of Provision]

## M22. ENHANCEMENT OF GRANTEE EMPLOYEE WHISTLEBLOWER PROTECTIONS (AUGUST 2024)

The requirement to comply with and inform all employees of the "Enhancement of Contractor Employee Whistleblower Protections" is retroactively effective for all assistance awards, subawards, and contracts issued beginning July 1, 2013.

The recipient must inform their employees in writing in the predominant native language of the workforce of employee whistleblower rights and protections under 41 U.S.C. 4712. See statutory requirements for whistleblower protections at 10 U.S.C. 4701, 41 U.S.C. 4712, 41 U.S.C. 4304, and 10 U.S.C. 4310.

In accordance with 41 U.S.C. § 4712, an employee of a recipient may not be discharged, demoted, or otherwise discriminated against as a reprisal for "whistleblowing." In addition, whistleblower protections cannot be waived by any agreement, policy, form, or condition of employment.

For the purposes of this provision, "*whistleblowing*" is defined as making a disclosure "that the employee reasonably believes" is evidence of any of the following:

● Gross mismanagement of a USAID contract or grant;
● A gross waste of USAID funds;
● An abuse of authority relating to a USAID contract or grant;
● A substantial and specific danger to public health or safety; or
● A violation of law, rule, or regulation related to a USAID contract or grant (including the competition for, or negotiation of, a contract or grant).

To qualify under the statute, the employee's disclosure must be made to:

● A Member of the U.S. Congress, or a representative of a U.S. Congressional Committee;
● A cognizant U.S. Inspector General;
● The U.S. Government Accountability Office;
● A USAID employee responsible for contract or grant oversight or management at the relevant agency;

*Text highlighted in yellow indicates that the material is new or substantively revised.* SAEFMTDAPP_000063

- A U.S. court or grand jury; or
- A management official or other employee of the recipient who has the responsibility to investigate, discover, or address misconduct.

The recipient must include this requirement in any subaward or contract made under this award.

[END OF PROVISION]

## M23. SUBMISSION OF DATASETS TO THE DEVELOPMENT DATA LIBRARY (OCTOBER 2014)

(a)     Definitions. For the purpose of submissions to the DDL:

(1)     "*Dataset*" is an organized collection of structured data, including data contained in spreadsheets, whether presented in tabular or non-tabular form. For example, a Dataset may represent a single spreadsheet, an extensible mark-up language (XML) file, a geospatial data file, or an organized collection of these. This requirement does not apply to aggregated performance reporting data that the recipient submits directly to a USAID portfolio management system or to unstructured data, such as email messages, PDF files, PowerPoint presentations, word processing documents, photos and graphic images, audio files, collaboration software, and instant messages. Neither does the requirement apply to the recipient's information that is incidental to award administration, such as financial, administrative, cost or pricing, or management information. Datasets submitted to the DDL will generally be those generated with USAID resources and created in support of Intellectual Work that is uploaded to the Development Experience Clearinghouse (DEC) **(See M8. SUBMISSIONS TO THE DEVELOPMENT EXPERIENCE CLEARINGHOUSE AND DATA RIGHTS (JUNE 2012)).**

(2)     "*Intellectual Work*" includes all works that document the implementation, monitoring, evaluation, and results of international development assistance activities developed or acquired under this award, which may include program and communications materials, evaluations and assessments, information products, research and technical reports, progress and performance reports required under this award (excluding administrative financial information), and other reports, articles and papers prepared by the recipient under the award, whether published or not. The term does not include the recipient's information that is incidental to award administration, such as financial, administrative, cost or pricing, or management information.

(b)     Submissions to the Development Data Library (DDL)

STATEMTDAPP_000064

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(1)    The recipient must submit to the Development Data Library (DDL) at **www.usaid.gov/data**, in a machine-readable, non-proprietary format, a copy of any Dataset created or obtained in performance of this award, including Datasets produced by a subawardee or a contractor at any tier. The submission must include supporting documentation describing the Dataset, such as code books, data dictionaries, data gathering tools, notes on data quality, and explanations of redactions.

(2)    Unless otherwise directed by the Agreement Officer (AO) or the Agreement Officer Representative (AOR), the recipient must submit the Dataset and supporting documentation to the DDL within thirty (30) calendar days after the Dataset is first used to produce an Intellectual Work or is of sufficient quality to produce an Intellectual Work. Within thirty (30) calendar days after award completion, the recipient must submit to the DDL any Datasets and supporting documentation that have not previously been submitted to the DDL, along with an index of all Datasets and Intellectual Work created or obtained under the award. The recipient must also provide to the AOR an itemized list of any and all DDL submissions.

The recipient is not required to submit the data to the DDL, when, in accordance with the terms and conditions of this award, Datasets containing results of federally funded scientific research are submitted to a publicly accessible research database. However, the recipient must submit a notice to the DDL by following the instructions at **www.usaid.gov/data**, with a copy to the agreement officer representative, providing details on where and how to access the data. The direct results of federally funded scientific research must be reported no later than when the data are ready to be submitted to a peer-reviewed journal for publication, or no later than five calendar days prior to the conclusion of the award, whichever occurs earlier.

(3)    The recipient must submit the Datasets following the submission instructions and acceptable formats found at **www.usaid.gov/data**.

(4)    The recipient must ensure that any Dataset submitted to the DDL does not contain any proprietary or personally identifiable information, such as social security numbers, home addresses, and dates of birth. Such information must be removed prior to submission.

(5)    The recipient must not submit classified data to the DDL.

[END OF PROVISION]

## M24. PROHIBITION ON REQUIRING CERTAIN INTERNAL

*Text highlighted in yellow indicates that the material is new or substantively revised* SACEMTDAPP_000065

# CONFIDENTIALITY AGREEMENTS OR STATEMENTS (MAY 2017)

(a) Definitions.

    (1) "*Contract*" has the meaning given in 2 CFR Part 200.

    (2) "*Contractor*" means an entity that receives a contract as defined in 2 CFR Part 200.

    (3) "*Internal confidentiality agreement or statement*" means a confidentiality agreement or any other written statement that the recipient requires any of its employees or subrecipients to sign regarding nondisclosure of recipient information, except that it does not include confidentiality agreements arising out of civil litigation or confidentiality agreements that recipient employees or subrecipients sign at the behest of a Federal agency.

    (4) "*Subaward*" has the meaning given in 2 CFR Part 200.

    (5) "*Subrecipient*" has the meaning given in 2 CFR Part 200.

(b) The recipient must not require its employees, subrecipients, or contractors to sign or comply with internal confidentiality agreements or statements that prohibit or otherwise restrict employees, subrecipients, or contractors from lawfully reporting waste, fraud, or abuse related to the performance of a Federal award to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (for example, the Agency Office of the Inspector General).

(c) The recipient must notify current employees and subrecipients that prohibitions and restrictions of any preexisting internal confidentiality agreements or statements covered by this provision, to the extent that such prohibitions and restrictions are inconsistent with the prohibitions of this provision, are no longer in effect.

(d) The prohibition in paragraph (b) of this provision does not contravene the requirements applicable to Standard Form 312 (Classified Information Nondisclosure Agreement), Form 4414 (Sensitive Compartmented Information Nondisclosure Agreement), or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

(e) In accordance with section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015, (Pub. L. 113-235), and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions) use of funds appropriated (or otherwise made available) is prohibited, if the Government determines that the recipient is not in compliance with the requirements of this provision.

(f) The recipient must include the substance of this provision, including this paragraph

*Text highlighted in yellow indicates that the material is new or substantively revised.*
STATEMTDAPP_000066

(f), in subawards and contracts under such awards.

[END OF PROVISION]

## M25. SAFEGUARDING AGAINST EXPLOITATION, SEXUAL ABUSE, CHILD ABUSE, AND CHILD NEGLECT (OCTOBER 2023)

(a) Definitions for the purposes of this provision.

(1) "*Agent*" means any individual, including a director, an officer, or an independent contractor, authorized to act on behalf of an organization.

(2) "*Child*" means a person younger than 18 years of age.

(3) "*Child abuse*" means emotional, physical, sexual, or any other ill-treatment carried out against a child by an adult.

(4) "*Child neglect*" means a failure to provide for a child's basic needs in the absence of the child's parent or guardian when the care of the child is associated with the award activities.

(5) "*Emotional child abuse or ill-treatment*" means injury to the psychological capacity or emotional stability of the child caused by acts, threats of acts, or coercive tactics.

(6) "*Employee*" means an individual who is engaged in the performance of this award as a direct employee, consultant, or volunteer of the recipient or any subrecipient.

(7) "*Exploitation*" constitutes any actual or attempted abuse of a position of vulnerability, differential power, or trust, including for the purposes of profiting monetarily, socially, or politically. When carried out for a sexual purpose this constitutes sexual exploitation.

(8) "*Physical child abuse*" means acts or failures to act resulting in injury (not necessarily visible) or unnecessary or unjustified pain or suffering without causing injury, harm, or risk of harm to a child's health or welfare, or death.

(9) "*Sexual abuse*" constitutes any actual or threatened physical intrusion of a sexual nature toward another person whether by force or under unequal or coercive conditions. When carried out against a child by an adult, such conduct is considered sexual abuse even in the absence of force or unequal or coercive conditions.

(b) Requirements. In the performance of this award, the recipient must have and implement a set of publicly available standards, policies, or procedures to prevent,

*Text highlighted in yellow indicates that the material is new or substantively revised.*

detect, address, and respond to allegations of exploitation, sexual abuse, child abuse, and child neglect that:

(1) Prohibit employees, agents, interns, or any other person provided access or contact with beneficiaries, from engaging in any exploitation, sexual abuse, child abuse, and child neglect of any person during the period of performance, supporting or advancing these actions, or intentionally ignoring or failing to act upon allegations of these actions;

(2) Are consistent with the Inter-Agency Standing Committee's Six Core Principles Relating to Sexual Exploitation and Abuse, as amended, available at https://psea.interagencystandingcommittee.org/update/iasc-six-core-principles and the Keeping Children Safe Standards, available at https://www.keepingchildrensafe.global/accountability/;

(3) Require reporting of suspicions or concerns related to violations of the prohibitions in paragraph (b)(1) to the recipient;

(4) Require a "survivor-centered approach" for responding to alleged violations of the prohibitions. Such an approach must ensure the survivor's dignity, experiences, considerations, needs, and resiliencies are placed at the center of the process;

(5) When a child is involved, require a "best interest of the child determination" for responding to alleged violations of the prohibitions. This determination considers the best possible outcome for a vulnerable child who has been exposed to violence, abuse, exploitation, or neglect;

(6) Include remedies for violations;

(7) Monitor subrecipients, employees, agents, interns, or any other person provided access or contact with beneficiaries;

(8) Details the actions that may be taken against subrecipients, employees, agents, interns, or any other person provided access or contact under the award who commit exploitation, sexual abuse, child abuse, and child neglect of any person or who fail to take reasonable steps to prevent it; and

(9) Provide transparency on hiring, screening, and employment practices, including on rehiring or transfer and referencing for subsequent employers.

(c) Compliance Plan. For awards exceeding $500,000, the recipient must develop, implement, and maintain a compliance plan, either in conjunction with or separate from the Trafficking in Persons Compliance Plan, that details risk analysis and mitigation measures that will be implemented during the period of performance of the award to prevent and address exploitation, sexual abuse, child abuse, and child neglect of any person, consistent with the requirements in paragraph (b) of this provision.

44

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(1) The recipient's compliance plan must be appropriate to the size and complexity of the award and to the nature and scope of the activities, including the particular risks presented by the operating context. The plan must include, at a minimum, the following:

(i)     Reasonable measures to reduce the risk of exploitation, sexual abuse, child abuse, and child neglect. Where implementation of projects under this award may involve children, this includes limiting unsupervised interactions with children and complying with applicable laws, regulations, or customs regarding harmful image-generating activities of children;

(ii)    An awareness program to inform employees, agents, interns, or any other person provided access or contact with beneficiaries about the requirements of this provision, including the activities prohibited, the action that will be taken in response to violations, and the mechanism(s) for reporting allegations;

(iii)   A description of how beneficiaries and local community members:

(A) Are made aware of the prohibited activities,

(B) How they may report allegations, and

(C) How (c)(1)(iii)(A) and (B) are carried out in a manner that is inclusive, culturally appropriate, and sensitive to the context;

(iv)    Safe, accessible, and publicly available reporting mechanism(s) that may be integrated with any existing or similar such mechanisms, for anyone to confidentially report exploitation, sexual abuse, child abuse, and child neglect, with appropriate safeguards to protect whistle-blowers and survivors, including express protection against retaliation for reporting, and documented procedures for protecting personally identifiable information (PII) from unauthorized access and disclosure; and

(v)     Appropriate measures to protect survivors of or witnesses to activities prohibited in paragraph (b)(1) of this provision and not prevent or hinder cooperating fully with U.S. Government authorities.

(2) The recipient must provide a copy of the compliance plan to the Agreement Officer upon request.

(d) Notification.

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000069

(1) The recipient must immediately inform, in writing, the Bureau for Management, Office of Management Policy, Budget, and Performance, Responsibility, Safeguarding, and Compliance Division (M/MPBP/RSC) at **disclosures@usaid.gov**, with a copy to the Agreement Officer, and the USAID Office of Inspector General (OIG) whenever the recipient receives credible information from any source that alleges the recipient, subrecipient, employee, agent, intern, or any other person provided access or contact with beneficiaries under the award has engaged in activities prohibited in paragraph (b)(1) of this provision; and

(2) As soon as practicable, the recipient must provide in writing, as specified above:

> (i) additional information on any actions planned or taken in response to the allegation; and
> (ii) any actions planned or taken to assess, address, or mitigate factors that contributed to the incident.

(3) The Agreement Officer authorizes M/MPBP/RSC to correspond with the recipient for further information relating to the notification.

(4) In providing any notifications under this subsection, the recipient should not share PII, unless specifically requested by the Agency or USAID OIG.

(e) Remedies. In addition to other remedies available to the U.S. Government, the recipient's failure to comply with the requirements of paragraphs (b), (c), and (d) of this provision may also result in the Agency initiating suspension or debarment proceedings.

(f) Subrecipients. The recipient must insert the terms of this provision, including this paragraph (f), in all subawards except to require subrecipients to notify the recipient. The recipient must forward such notifications as required in paragraph (d).

<div align="center">[END OF PROVISION]</div>

# M26. MANDATORY DISCLOSURES (AUGUST 2024)

(a) Consistent with **2 CFR §200.113**, applicants, recipients, and subrecipients of a Federal award must promptly disclose whenever, in connection with the award (including any activities or subawards), it has credible evidence of any violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act (31 U.S.C. 3729-3733). Applicant and recipient disclosures must be made in writing to the USAID Office of Inspector General (OIG), with a copy to the cognizant Agreement Officer. Subrecipient and contractor disclosures must be made in writing to the USAID OIG, with a copy to the prime recipient (pass-through entity).

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACMTDAPP_000070

(b) Recipients and subrecipients are also required to report matters related to recipient integrity and performance in accordance with the Standard Provision "Award Term and Condition for Recipient Integrity and Performance Matters (AUGUST 2024)."

(c) Failure to make required disclosures can result in any of the remedies described in **2 CFR §200.339** Remedies for noncompliance, including suspension or debarment (See 2 CFR 180, 2 CFR 780 and 31 U.S.C. 3321).

(d) The recipient must include this mandatory disclosure requirement in all subawards and contracts under this award.

[END OF PROVISION]

## M27. NONDISCRIMINATION AGAINST BENEFICIARIES (NOVEMBER 2016)

(a) USAID policy requires that the recipient not discriminate against any beneficiaries in implementation of this award, such as, but not limited to, by withholding, adversely impacting, or denying equitable access to the benefits provided through this award on the basis of any factor not expressly stated in the award. This includes, for example, race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, disability, age, genetic information, marital status, parental status, political affiliation, or veteran's status. Nothing in this provision is intended to limit the ability of the recipient to target activities toward the assistance needs of certain populations as defined in the award.

(b) The recipient must insert this provision, including this paragraph, in all subawards and contracts under this award.

[END OF PROVISION]

## M28. CONFLICT OF INTEREST (AUGUST 2024)

(a) A conflict of interest in the award, administration, or monitoring of subawards arises when an employee, officer, agent, board member, or any member of their immediate family, their partner, or an organization that employs or is about to employ any of these parties, has a financial or other interest in, or a tangible personal benefit from an entity considered for a subaward. The officers, employees, agents, or board members of the recipient may neither solicit nor accept gratuities, favors, or anything of monetary value from subrecipients or parties to subawards. However, the recipient may set standards for situations where the financial interest is not substantial or a gift is an unsolicited item of nominal value.

(b) The recipient must maintain written standards of conduct covering conflicts of interest and governing the actions of its employees, officers, agents, or board

*Text highlighted in yellow indicates that the material is new or substantively revised.*    SEEMTDAPP_000071

members engaged in the selection, award, and administration of subawards. The standards must prohibit employees, officers, agents, or board members from using their positions for a purpose that presents a real or apparent conflict of interest. The standards of conduct must provide for disciplinary actions to be applied for violations of such standards by employees, officers, agents, or board members of the recipient.

(c) The recipient must also maintain written standards of conduct covering organizational conflicts of interest. Organizational conflict of interest means a situation in which the recipient is unable or appears to be unable to be impartial in conducting a subaward action involving a related organization because of relationships with a parent company, affiliate, or subsidiary organization.

(d) The recipient must have a system or systems in place to identify, address, resolve, and disclose to USAID any conflicts of interest as described in this provision that affect any subaward, regardless of the amount of funding.

(e) The recipient must disclose any conflict of interest, including organizational conflicts of interest, and the recipient's approach for resolving the conflict of interest to the cognizant Agreement Officer for the award within ten (10) calendar days of the discovery of the conflict of interest.

(f) Upon notice from the recipient of a potential conflict of interest and the approach for resolving it, the Agreement Officer will make a determination regarding the effectiveness of the recipient's actions to resolve the conflict of interest within thirty (30) calendar days of receipt of the recipient's notice, unless the Agreement Officer advises the recipient that a longer period is necessary.

(g) The recipient must not request payment from USAID for costs for transactions subject to the conflict of interest pending notification of USAID's determination. The recipient's failure to disclose a conflict of interest may result in cost disallowances by USAID.

(h) For conflicts of interest, including organizational conflicts of interest, involving contracts, the recipient must follow 2 CFR 200.318, general procurement standards.

(i) The recipient and any subrecipients must insert the substance of this provision, including paragraph (i), in all subawards under this award, at any subaward tier.

[END OF PROVISION]

## M29. PROHIBITION ON CERTAIN TELECOMMUNICATION AND VIDEO SURVEILLANCE EQUIPMENT OR SERVICES (AUGUST 2024)

(a) In accordance with the cost principles in 2 CFR § 200.471, obligating or expending costs for covered telecommunications and video surveillance equipment or services

as described in 2 CFR § 200.216 are unallowable. Recipients and subrecipients are prohibited from using award funds, including direct and indirect costs, cost share and program income, for such equipment or services.

(b) Except as provided by paragraph (c), the recipient or subrecipient understands and will comply with the prohibition on certain telecommunication and video surveillance equipment or services. The recipient affirms the understanding of this prohibition by accepting this award and by submitting payment requests and financial reports, as applicable.

(c) This provision implements temporary waivers granted to USAID under Section 889(d)(2) that allow the recipient to use award funds for costs incurred on or after October 1, 2022, through September 30, 2028, for covered telecommunications and video surveillance equipment or services as described in 2 CFR § 200.216, only if the recipient has determined that there is no available alternate eligible source for such equipment or services.

(d) After September 30, 2028, in accordance with 2 CFR § 200.471 costs for all covered telecommunications and video surveillance equipment or services as described in 2 CFR § 200.216 will be unallowable.

(e) The recipient must include this provision in all subawards and contracts issued under this award.

[END OF PROVISION]

## M30. EXCHANGE VISITORS VISA REQUIREMENTS (DECEMBER 2022)

*For any Exchange Visitor Invitational Travel activities, the recipient must comply with this provision (see* ADS 252 *for more information on USAID's policies and internal procedures for Exchange Visitor visa requirements).*

(a)    Definitions:

(1) An *Exchange Visitor (EV)* is any foreign national who is traveling to or is already in the United States as a beneficiary (not provider) of USAID development assistance for any purpose, including invitational travel, and is financed in whole or in part, directly or indirectly, by USAID. All USAID-sponsored EVs must obtain, use, and abide by the terms of the J-1 visa exclusively even if they already have a valid nonimmigrant visa (e.g., B-1/B-2). All Individuals traveling under Invitational Travel (see ADS 522) must also travel on a J-1 visa as a USAID-sponsored EV. Foreign government officials and their immediate family members who qualify for an A diplomatic visa having recognized diplomatic titles, privileges, and immunities are not included in this definition.

49

(2) *Training and Exchanges Automated Management System (TEAMS)* is USAID's data system for the reporting of information on all USAID Exchange Visitor activities. TEAMS is USAID's single repository of EV data. TEAMS is a web-based application that helps Missions, contractors, recipients, and contractor/recipient systems at various locations to collaborate in approving and reporting EVs. The system serves as USAID's data interface with the Department of Homeland Security (DHS) Student and Exchange Visitor Information System (SEVIS).

(b)    Visa Compliance Requirement: In accordance with 22 C.F.R. Part 62, the Department of State has designated USAID as a sponsor for exchange visitor programs. This award constitutes the written agreement between the recipient and USAID that authorizes the recipient to act on behalf of USAID in the conduct of any exchange visitor activities in the Program Description of this award. The recipient must ensure that any EV-sponsored under the award must obtain, use, and abide by the terms of the J-1 visa even if the EV already has a valid non-immigrant visa (e.g., B-1/B-2).

Any exception to the requirement for an EV to obtain, use, and abide by a J-1 visa must be approved by the Mission Director or USAID/W Office Director in accordance with the procedures in ADS 252.

(c)    Program Monitoring and Data Reporting: The recipient must monitor EVs' progress during their program and ensure that problems are identified and resolved quickly. The Agreement Officer's Representative (AOR) will arrange for the TEAMS helpdesk (TEAMS@usaid.gov) to provide the recipient with access to and instructions for using USAID's TEAMS, where the recipient will report and manage EV data.

(d)    Health and Accident Insurance: The recipient must enroll EVs in health and accident insurance coverage that meets or exceeds Department of State and USAID minimum coverage requirements as set forth in 22 CFR 62.14 and ADS 252 Visa Compliance for Exchange Visitors. Any dependent(s) must provide proof of health insurance.

(e)    Immigration Requirements: The recipient must ensure that all EVs obtain, use, and comply with the terms of the J-1 visa, issued in conjunction with a USAID-issued Certificate of Eligibility for J-1 Visa Status (DS-2019).

(f)    Language Proficiency: The recipient must verify that an EV is proficient in English if the individual will undertake a U.S.-based Exchange Visitor program that is conducted in English. Even if accompanied by an interpreter, the EV must have sufficient English language skills to understand and respond to basic questions at the U.S. port of entry. USAID cannot waive this external requirement of English language proficiency determination (see **22 CFR 62.10(a)(2)**).

50

Language competency can be verified through a variety of means including proficiency assessments of interviews, publications, presentations, education conducted in English, and formal testing.

(g)    Pre-arrival Orientation: The recipient must ensure that EVs receive pre-arrival orientation to prepare them for their trip to the United States. Pre-arrival orientation as set forth in 22 CFR 62.10(b) covers program objectives, administrative and policy review, cultural aspects, and training/learning methods, and USAID's conditions of sponsorship.

(h)    Conditions of Sponsorship: The recipient must ensure that all EVs read and sign the Conditions of Sponsorship for U.S.-Based Activities form (AID Form 252-1). The recipient immediately must report to the Responsible Officer any known violations by EVs. The Responsible Officer is the designated official in charge of maintaining USAID's official designation as an EV program sponsor (see ADS 252).

(i)    Fly America: If applicable, the recipient must comply with the Fly America Act requirements for international air travel and transportation required for EVs and any authorized dependents under this award.

[END OF PROVISION]

# M31. CONTRACT AWARD TERM AND CONDITION FOR RECIPIENT INTEGRITY AND PERFORMANCE MATTERS (AUGUST 2024)

**APPLICABILITY**: *This provision must be incorporated into all awards and applies when the total federal share of the award exceeds $500,000 over the period of performance.*

### AWARD TERM AND CONDITION FOR RECIPIENT INTEGRITY AND PERFORMANCE MATTERS (AUGUST 2024)

Reporting of Matters Related to Recipient Integrity and Performance

(a) General Reporting Requirement.

(1) If the total value of the recipient's active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111-212, all information posted in responsibility/qualification

*Text highlighted in yellow indicates that the material is new or substantively revised.*

records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.

(b) Proceedings About Which the Recipient Must Report.

    (1) The recipient must submit the required information about each proceeding that:

        (i)  Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

        (ii)  Reached its final disposition during the most recent five-year period; and

        (iii) Is one of the following:

            (A) A criminal proceeding that resulted in a conviction;

            (B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

            (C) An administrative proceeding that resulted in a finding of fault and liability and the recipient's payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

            (D) Any other criminal, civil, or administrative proceeding if:

                *(1)* It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);

                *(2)* It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on the recipient's part; and

                *(3)* The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.

(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. The recipient does not need to submit the information a second time under grants and cooperative agreements that were received if the recipient already provided the information in SAM.gov because it was required to do so under Federal procurement contracts it was awarded.

(d) Reporting Frequency. During any period of time when the recipient is subject to the requirement in paragraph (a) of this award term, the recipient must report proceedings information in SAM.gov for the most recent five-year period, either to

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000076

report new information about a proceeding that was not reported previously or affirm that there is no new information to report. Recipients that have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

(e) Definitions. For purposes of this award term:
 (1) *Administrative proceeding* means a non-judicial process that is adjudicatory in nature to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.
 (2) *Conviction* means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.
 (3) *Total value of currently active grants, cooperative agreements, and procurement contracts* includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).

[END OF PROVISION]

## M32. OMB APPROVAL UNDER THE PAPERWORK REDUCTION ACT (OCTOBER 2023)

The Paperwork Reduction Act of 1980 (44 U.S.C. chapter 35) imposes a requirement on Federal agencies to obtain approval from the Office of Management and Budget (OMB) before collecting information from ten or more members of the public. The information collection and recordkeeping requirements contained in ADS Chapter 303 and its mandatory references have been approved by OMB.

*Text highlighted in yellow indicates that the material is new or substantively revised.* AEMTDAPP_000077

| Standard Provision | OMB Approval Number | Expiration Date |
|---|---|---|
| Accounting, Audit, and Records | 0412-0510 | 09/30/2025 |
| Debarment and Suspension | 0412-0510 | 09/30/2025 |
| Travel and International Air Transportation | 0412-0510 | 09/30/2025 |
| Ocean Shipment of Goods | 0412-0510 | 09/30/2025 |
| Trafficking in Persons | 0412-0510 | 09/30/2025 |
| USAID Implementing Partner Notices (IPN) Portal Assistance | 0412-0510 | 09/30/2025 |
| Mandatory Disclosures | 0412-0510 | 09/30/2025 |
| Conflict of Interest | 0412-0510 | 09/30/2025 |
| Indirect Costs – Negotiated Indirect Cost Rate Agreement (NICRA) | 0412-0510 | 09/30/2025 |
| Voluntary Population Planning Activities – Supplemental Requirements | 0412-0510 | 09/30/2025 |
| Investment Promotion | 0412-0510 | 09/30/2025 |
| Reporting Host Government Taxes | 0412-0510 | 09/30/2025 |
| Cost Share | 0412-0510 | 09/30/2025 |
| Protection of Human Research Subjects | 0412-0510 | 09/30/2025 |
| Safeguarding Against Exploitation, Sexual Abuse, Child Abuse, and Child Neglect | 0412-0624 | 8/31/2026 |

[END OF PROVISION]

## M33. SYSTEM FOR AWARD MANAGEMENT (SAM.GOV) AND UNIQUE ENTITY IDENTIFIER (UEI) REQUIREMENTS (AUGUST 2024)

*APPLICABILITY: Required in all solicitations and awards. Refer to **ADS 303maz** for additional guidance on processing exceptions to the requirements of this provision.*

**SYSTEM FOR AWARD MANAGEMENT (SAM.GOV) AND UNIQUE ENTITY IDENTIFIER (UEI) REQUIREMENTS (AUGUST 2024)**

(a) **Requirement for System for Award Management.** Unless exempt from this requirement under **2 CFR 25.110**, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If

*Text highlighted in yellow indicates that the material is new or substantively revised.*

applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.

(b) **Requirement for Unique Entity Identifier (UEI).** If the recipient is authorized to make subawards under this Federal award, the recipient:

(1) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.

(2) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.

(c) **Exceptions**.

(1) *Individuals*. The requirements of this provision do not apply to an individual who applies for or receives a prime award or subaward as a natural person (unrelated to any business or nonprofit organization an individual owns or operates).

(2) *Applicants/Recipients*. When authorized in writing by the Agreement Officer, the applicant or recipient may be exempt from certain requirements of this provision. An applicant or the recipient may submit a request to the Agreement Officer for USAID approval of an exception from the requirement to obtain a UEI or register in SAM.gov (or both), if the criteria for one of the exceptions in **2 CFR 25.110** apply. The applicant may be required to submit additional justification or information in support of the request for an exemption.

(3) *Subrecipients*. When authorized in writing by the Agreement Officer, the recipient may be exempt from requiring a UEI from a subrecipient. The recipient may submit a request to the Agreement Officer for USAID approval to exempt a first-tier subrecipient from the requirement to obtain a UEI, if the criteria for one of the exceptions in **2 CFR 25.110** apply.

(4) *Second-tier subrecipients*. The requirements of this provision do not apply to subrecipients of subrecipients (second-tier subrecipients) under Federal awards.

(d) **Definitions.** For the purposes of this provision:

(1) *System for Award Management (SAM.gov)* means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at **https://www.sam.gov**).

(2) *Unique Entity Identifier (UEI)* means the universal identifier assigned by SAM.gov to uniquely identify an entity.

(3) *Entity* is defined at **2 CFR 25.400** and includes all of the following types as defined in **2 CFR 200.1**:

    (i)        Non-Federal entity;
    (ii)      Foreign organization;
    (iii)     Foreign public entity;
    (iv)     Domestic for-profit organization; and
    (v)      Federal agency.

(4) *Subaward* has the meaning given in **2 CFR 200.1**.

(5) *Subrecipient* has the meaning given in **2 CFR 200.1**.

[END OF PROVISION]

# [END OF MANDATORY PROVISIONS]

*Text highlighted in yellow indicates that the material is new or substantively revised.* AEMTDAPP_000080

# *REQUIRED AS APPLICABLE (RAA) STANDARD PROVISIONS FOR NON-U.S. NONGOVERNMENTAL ORGANIZATIONS*

## RAA1. ADVANCE PAYMENT AND REFUNDS (AUGUST 2024)

**APPLICABILITY:** *This provision must be incorporated into awards that authorize advance payments. Advance payments may be authorized when the recipient's accounting and financial management systems meet the standards for funds control and accountability required under the terms and conditions of the award, including the Standard Provision, "Accounting, Record Retention and Access, and Audits," and meet the pre-award responsibility requirements in ADS Chapter 303.*

### ADVANCE PAYMENT AND REFUNDS (AUGUST 2024)

(a) The recipient is not required to maintain separate bank accounts for USAID funds, unless otherwise required. However, when advances are authorized by this award, the recipient must deposit such funds in a reputable bank and be able to account for all funds received, obligated, and expended as well as interest earned on the advances provided by the U.S. Government (USG).

(b) The recipient must maintain advances of USAID funds in interest-bearing accounts, unless one of the following applies:

(1) The recipient receives less than $250,000 in USG funding per year;

(2) The best available interest-bearing account would not reasonably be expected to earn interest in excess of $500 per year on USG cash balances;

(3) The bank would require an average or minimum balance so high that it would not be feasible with the expected USG and non-USG cash resources;

(4) A foreign government or banking system prohibits or precludes interest bearing accounts; or

(5) An interest-bearing account is not readily accessible (for example, due to public or political unrest in a country).

(c) The recipient may retain up to $500 per year of interest earned on USG funds to use for administrative expenses of the recipient. Any additional interest earned on USG funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient was paid through PMS. All other Federal funds must be returned to the USAID payment office specified in this award, or such other location as the payment office advises.

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACMTDAPP_000081

(d) The recipient must request advance payments for anticipated expenditures to carry out the purpose of the award and the requests must be timed as close as is administratively feasible to the actual disbursements by the recipient and the appropriate share of any allowable indirect costs.

(e) To request an advance payment, the recipient must submit (preferably electronically) to the payment office the Standard Form-270 - Request for Advance or Reimbursement, Standard Form-425 Federal Financial Report or Standard Form-1034 Public Voucher for Purchases and Services Other Than Personal. (See http://www.gsa.gov/portal/forms/type/SF for forms.) The recipient must print the statement "Request for Advance" at the top of the form.

(f) In order to obtain the initial advance, the recipient must request an advance for the initial thirty-day period of projected cash disbursement needs immediately upon signing this award. Additional advance payment requests must be submitted at least three weeks prior to the period for which funds are needed, in order to maintain a consistent cash flow. The recipient may submit requests for advances to the paying office specified in this award as often as may be necessary to meet projected expenses. An advance may not exceed 30 calendar days of the organization's projected expenses. Subject to Chief Financial Officer (CFO) or Mission Controller approval (as appropriate), requests may be submitted:

(1) Every 30 calendar days covering a 30 calendar-day period;

(2) Three requests may be submitted covering 30 calendar-day sub-periods of a 90 calendar-day period to be paid automatically every 30 calendar days; or

(3) One request for 90 calendar days may be submitted to be automatically disbursed in 30 calendar-day equal increments.

Requests must state the estimated disbursements to be made during the period covered by the request, the estimated balance of cash on hand from prior advance requests, and the advance amount being requested.

(g) The recipient must submit an SF-270, SF-425, or SF-1034 *(with the words "Liquidation of Advances" printed at the top of the form),* quarterly, no later than 30 calendar days after the end of the quarter, to the paying office specified in this award in order to liquidate outstanding advances. Failure to provide these quarterly reports may result in the suspension, disruption, or termination of additional payments.

Within 120 calendar days following the expiration of this award, the recipient must submit the final financial report using the SF-270, SF-425, or SF-1034 showing total disbursements, total advances received, and any cash remaining on hand, which the recipient must refund to USAID.

(h) When this award expires, the recipient must immediately return all unexpended funds that USAID has advanced to the recipient, unless such advanced funds have already been spent or committed in a legally binding transaction during the period of this award, or are required for administrative close-out costs. Administrative closeout costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s)

(i) USAID reserves the right, at any time, to: (1) withhold or offset payments to, or (2) require refund by, the recipient of any amount that the recipient did not spend according to the terms and conditions of this award or are otherwise determined by the Agreement Officer to be unallowable. USAID retains the right to a refund of all amounts paid under this award until all outstanding audit findings and settlement claims have been resolved between USAID and the recipient.

(j) Cash advances made by the recipient to subrecipients or the recipient's field organizations must conform substantially to paragraphs (a), (b), (c), (d) and (h) of this provision. In the case of paragraph (c), any interest over $500 per year must be remitted through the prime recipient.

[END OF PROVISION]

## RAA2. REIMBURSEMENT PAYMENT AND REFUNDS (AUGUST 2024)

**APPLICABILITY:** *This provision must be incorporated into awards that authorize payment by reimbursement.*

### REIMBURSEMENT PAYMENT AND REFUNDS (AUGUST 2024)

(a) The recipient must submit to the payment office noted in this award, a fully completed and signed SF-1034, Public Voucher for Purchases and Services Other Than Personal and SF-1034A, Continuation of SF-1034, bi-weekly or monthly, but not less frequently than quarterly. The Standard Form-270 Request for Advance or Reimbursement, and Standard Form-425 Federal Financial Report can also be used. Each voucher must be identified by this award number, and must state the total costs for which reimbursement is being requested. The recipient is encouraged to submit reimbursement documentation in electronic form via e-mail attachment to the e-mail address shown for the payment office. Reimbursement documentation may also be submitted by facsimile or in paper form to the payment office fax number or address provided in this award.

(b) The Standard Forms can be obtained from the GSA forms Web site at: http://www.gsa.gov/portal/forms/type/SF or may also be obtained from the USAID payment office.

When this award expires, the recipient must submit the final financial report no later than 120 calendar days after the expiry date. Administrative closeout costs may be

*Text highlighted in yellow indicates that the material is new or substantively revised* SEEMTDAPP_000083

incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s)

(c) Notwithstanding any other term of this award, USAID reserves the right, at any time, to (1) withhold or offset payments to, or (2) require refund by, the recipient of any amount that the recipient did not spend according to the terms and conditions of this award or are otherwise determined by the Agreement Officer to be unallowable. USAID retains the right to a refund of all amounts paid under this award until all outstanding audit findings and settlement claims have been resolved between USAID and the recipient.

[END OF PROVISION]

# RAA3. INDIRECT COSTS – NEGOTIATED INDIRECT COST RATES PROVISIONAL & FINAL (AUGUST 2024)

**APPLICABILITY**: *This provision applies to non-U.S. nongovernmental organizations applying a negotiated indirect cost rate agreement under this award.*

**NEGOTIATED INDIRECT COST RATES – PROVISIONAL & FINAL (AUGUST 2024)**

(a)   Definitions. As used in this provision:

(1) "*Cognizant agency for indirect costs*" means the Federal agency responsible for reviewing, negotiating, and approving cost allocation plans or indirect cost proposals developed under 2 CFR 200 on behalf of all Federal agencies. The cognizant agency for indirect costs is not necessarily the same as the cognizant agency for audit.

(2) "*Final rate*" means an indirect cost rate applicable to a specified past period which is based on the actual costs of the period. A final rate is not subject to adjustment.

(3) "*Indirect costs*" means those costs incurred for a common or joint purpose benefitting more than one cost objective and not readily assignable to the cost objectives specifically benefited, without effort disproportionate to the results achieved. It may be necessary to establish multiple pools of indirect costs to facilitate equitable distribution of indirect expenses to the cost objectives served. Indirect cost pools must be distributed to benefitted cost objectives on a basis that will produce an equitable result in consideration of relative benefits derived. For Institutions of Higher Education (IHE), the term facilities and administrative (F&A) cost is often used to refer to indirect costs.

(4) "*Indirect cost rate proposal*" means the documentation prepared by a recipient to substantiate its request to establish an indirect cost rate as described in appendices III through VII and appendix IX to 2 CFR 200.

60

(5) "*Nonprofit organization*" means any corporation, trust, association, cooperative, or other organization that:

    (i) Is operated primarily for scientific, educational, service, charitable, or similar purposes in the public interest;

    (ii) Is not organized primarily for profit;

    (iii) Uses net proceeds to maintain, improve, or expand the operations of the organization; and

    (iv) Is not an institution of higher education.

(6) "*Provisional rate or billing rate*" means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

(b)    Provisional indirect cost rates must be established for each of the recipient's fiscal years during the term of this award. Pending establishment of revised provisional or final rates, to recover allowable indirect costs under this award, the recipient must apply the rates, to the bases, and for the periods shown in the negotiated indirect cost rate agreement (NICRA).

(c)    Except as otherwise provided in 2 CFR 200.414, *Indirect costs*, paragraph (e) and (f), a recipient which has not previously established a NICRA with a Federal agency must submit its initial indirect cost proposal immediately upon being advised that a Federal award will be made and in no event later than three months after the effective date of the Federal award.

Recipients with established NICRAs must submit a new indirect cost proposal to the cognizant agency for indirect costs within six months after the close of each fiscal year.

The recipient must submit to the Agreement Officer (AO) the proposed provisional and final indirect cost rates with supporting cost data, within the earlier of 30 days after receipt of the audit report or nine months after the end of the audit period. The proposed final rates must be based on the recipient's actual costs during that fiscal year. Negotiations of final indirect cost rates will begin soon after receipt of the recipient's proposal.

(d)    Allowability of costs and acceptability of cost allocation methods will be determined in accordance with the applicable cost principles. The applicable cost principles can be found in the Standard Provision, "Allowable Costs."

(e)     The results of each negotiation will be set forth in a NICRA signed by both parties. Such agreement is automatically incorporated into this award and must specify:

(1) the agreed upon provisional and final indirect cost rates, as applicable,

(2) the bases to which the rates apply, and

(3) the fiscal year for which the rates apply.

The NICRA will not change any monetary ceiling, award obligation, or specific cost allowance or disallowance provided for in this award.

(f)     Pending establishment of final indirect cost rates for any fiscal year, the recipient must be reimbursed either in accordance with its NICRA or at billing rates acceptable to the AO, subject to appropriate adjustment when the final rates for the fiscal year are established. To prevent substantial overpayment or underpayment, the cognizant agency for indirect costs may by mutual agreement adjust the recipient's provisional rates during the recipient's fiscal year.

(g)     In accordance with 2 CFR 200.344(h), the AO is authorized to mutually agree with the recipient to close an award using the current or most recently negotiated rates. However, the recipient is not required to agree to final rates for a Federal award for the purpose of prompt closeout.

(h)     In accordance with 2 CFR 200.414(c)(1), once established, NICRAs must be accepted by all Federal agencies. Similarly, in accordance with § 200.414(d), pass-through entities are subject to the requirements in § 200.332(b)(4) and must accept a subrecipient's NICRA.

(i)     If a dispute arises in a negotiation of an indirect cost rate between the cognizant     agency for indirect costs and the recipient, the dispute must be resolved in accordance with the appeals procedures of the cognizant agency for indirect costs.

[END OF PROVISION]

## RAA4. INDIRECT COSTS – CHARGED AS A FIXED AMOUNT (NONPROFIT) (AUGUST 2024)

**APPLICABILITY**: *This provision is applies to non-U.S. nonprofit organizations under awards when all of the following are true: 1) the recipient has never received a negotiated indirect cost rate agreement; 2) the recipient has chosen not to use the up to 15 percent de minimis rate authorized in 2 CFR 200.414(f); and 3) the indirect costs charged as a fixed amount are not otherwise included as direct costs in the award budget. When using this provision, all indirect costs must be charged as a fixed amount and must be shown as a separate line item in the budget.*

62

**INDIRECT COSTS – CHARGED AS A FIXED AMOUNT (NONPROFIT)
(AUGUST 2024)**

(a)      The recipient will be paid a fixed amount to cover indirect costs, as provided below. Indirect costs are common costs that benefit the day-to-day operations of the organization, including categories such as salaries and expenses of executive officers, personnel administration, and accounting, or that benefit and are identifiable to more than one program or activity, such as depreciation, rental costs, operations and maintenance of facilities, and telephone expenses. In determining the fixed amount, these costs must be prorated equitably and consistently across all programs and activities of the recipient using a base that measures the benefits of that particular cost to each program or activity to which the cost applies. The bases must be established in accordance with reasonable criteria, and be supported by current data. Indirect costs must then be charged to the programs they benefit.

(b)      The fixed amount for indirect costs and a schedule for payments must be incorporated into the award budget. This award must specify the categories of costs, as described in paragraph (a), that are covered by the fixed amount, and the recipient must not charge such costs separately as direct costs. Any deviations require prior written approval by the Agreement Officer (AO).

(c)      USAID will not pay the recipient in excess of the negotiated fixed amount for indirect costs, as authorized in this award. Similarly, where the actual costs are less than the agreed fixed amount for indirect costs included in the award budget, the recipient will not be liable to return the difference to USAID. However, if the total award costs, including direct costs and the indirect costs described in (a), change significantly (that is, by 20 percent or more, in the aggregate), the AO reserves the right to adjust the fixed amount for indirect costs to equitably charge the indirect costs that benefit this award.

[END OF PROVISION]

# RAA5. INDIRECT COSTS – DE MINIMIS RATE (AUGUST 2024)

**APPLICABILITY:** *This provision applies to recipients without a negotiated indirect cost rate agreement that have elected to charge a de minimis rate of up to 15 percent of modified total direct costs under this award. The de minimis rate must not be applied to cost reimbursement contracts issued directly by the Federal Government in accordance with the FAR.*

**INDIRECT COSTS – DE MINIMIS RATE (AUGUST 2024)**

(a) Definitions (per 2 CFR 200):

*Text highlighted in yellow indicates that the material is new or substantively revised* STATEMTDAPP_000087

(1) "*De minimis rate*" means an indirect cost rate of up to 15% that a recipient without a negotiated indirect cost rate agreement (NICRA) may elect to apply to modified total direct costs (MTDC) in accordance with 2 CFR 200.414(f). The de minimis rate does not require documentation to justify its use and may be used indefinitely.

(2) "*Indirect costs*" means those costs incurred for a common or joint purpose benefitting more than one cost objective and not readily assignable to the cost objectives specifically benefited, without effort disproportionate to the results achieved. It may be necessary to establish multiple pools of indirect costs to facilitate equitable distribution of indirect expenses to the cost objectives served. Indirect cost pools must be distributed to benefitted cost objectives on a basis that will produce an equitable result in consideration of relative benefits derived. For Institutions of Higher Education (IHE), the term facilities and administrative (F&A) cost is often used to refer to indirect costs.

(3) "*Modified total direct costs*" means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs and with the approval of the cognizant agency for indirect costs.

(b) The recipient will receive a de minimis rate of up to 15 percent of MTDC to cover indirect costs, as specified below and reflected in the award budget. The recipient is authorized to determine the appropriate rate up to this limit.

(c) The recipient must consistently charge its costs as either indirect or direct costs but must not double charge or inconsistently charge the same cost or categories of costs as both.

(d) Once elected, this rate and methodology must be used consistently for all Federal awards until such time as the recipient elects to negotiate and use a NICRA. The de minimis rate must not be applied to cost reimbursement contracts issued directly by the Federal Government in accordance with the FAR.

[END OF PROVISION]

## RAA6. RESERVED

## RAA7. REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000088

**(AUGUST 2024)**

*APPLICABILITY: This provision is required in all solicitations and awards where the total Federal funding is anticipated to equal or exceed $30,000. This provision is not required when the total amount of Federal funding is less than $30,000; however, the Agreement Officer must amend the award to add this provision, if subsequent increases to the Federal funding result in the award equaling or exceeding $30,000. Refer to **ADS 303maz** for additional guidance on processing any exceptions from the requirements of this provision.*

**REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION (AUGUST 2024)**

(a) **Reporting of first-tier subawards.**

    (1) *Applicability*. Unless the recipient is exempt as provided in paragraph (d) of this provision, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if an amendment increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total obligated amount of the subaward.

    (2) *Reporting requirements*.

        (i)    The recipient must report each subaward described in paragraph (a)(1) of this provision to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at **http://www.fsrs.gov**.

        (ii)    The recipient must report subaward information no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)

        (iii)    The recipient must report all data elements as required by FSRS. When entering the subaward description in FSRS, the recipient must provide a complete description of the subaward activities that is free of acronyms or federal- and agency-specific terminology to inform the public of the purpose of the subaward.

(b) **Reporting total compensation of recipient executives.**

    (1) *Applicability*. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year, if:

        (i)    The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;

*Text highlighted in yellow indicates that the material is new or substantively revised.* DRAFTMTDAPP_000089

(ii)    In the preceding fiscal year, the recipient received:

(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(iii)    The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (**15 U.S.C. 78m(a), 78o(d)**) or section 6104 of the Internal Revenue Code of 1986 after the recipient receives this award. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at **https://www.sec.gov/answers/execomp.htm**.)

(2) *Reporting requirements*. The recipient must report executive total compensation described in paragraph (b)(1) of this provision:

(i)    As part of the recipient's registration profile at **https://www.sam.gov**.

(ii)    No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.)

(c) **Reporting of total compensation of subrecipient executives.**

(1) *Applicability*. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this provision, the recipient must report the total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if–

(i)    The total Federal funding authorized to date under the subaward equals or exceeds $30,000;

(ii)    In the subrecipient's preceding fiscal year, the subrecipient received:

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal

*Text highlighted in yellow indicates that the material is new or substantively revised.*

procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

(iii)  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (**15 U.S.C. 78m(a), 78o(d)**) or section 6104 of the Internal Revenue Code of 1986, after the recipient issues the subaward to the subrecipient. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at **https://www.sec.gov/answers/execomp.htm**.)

(2) *Reporting requirements*. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this provision. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at **https://www.fsrs.gov** no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

## (d)  **Exemptions.**

(1) *Individuals*. The requirements of this provision do not apply to an individual who applies for or receives a prime award or subaward as a natural person (unrelated to any business or nonprofit organization an individual owns or operates).

(2) *Gross income under $300,000*. A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:

(i)  Subawards, and

(ii)  The total compensation of the five most highly compensated executives of any subrecipient.

(3) *Other exceptions*. The requirements of this provision do not apply when the Agreement Officer approves an exception in writing.

## (e)  **Definitions.**

For purposes of this provision:

(1) *Entity* includes:

(i)  Whether for profit or nonprofit:

(A)  A corporation;

*Text highlighted in yellow indicates that the material is new or substantively revised.* ADSFMTDAPP_000091

   (B)   An association;
   (C)   A partnership;
   (D)   A limited liability company;
   (E)   A limited liability partnership;
   (F)   A sole proprietorship;
   (G)   Any other legal business entity;
   (H)   Another grantee or contractor that is not excluded by subparagraph (ii); and
   (I)   Any State or locality;

(ii)   Does not include:

   (A)   An individual recipient of Federal financial assistance; or
   (B)   A Federal employee.

(2) *Executive* means an officer, managing partner, or any other employee holding a management position.

(3) *Subaward* has the meaning given in **2 CFR 200.1**.

(4) *Subrecipient* has the meaning given in **2 CFR 200.1**.

(5) *Total compensation* means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in **17 CFR 229.402(c)(2)**.

[END OF PROVISION]

# RAA8. SUBAWARDS (AUGUST 2024)

**APPLICABILITY:** *This provision is applicable when subawards are expected to be financed under this award.*

**SUBAWARDS (AUGUST 2024)**

(a) *Definitions*

(1) *Subaward* means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with the criteria in 2 CFR 200.331, including an agreement the pass-through entity considers a contract.

68

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(2) *Pass-through entity* means a recipient or subrecipient (including lower-tier subrecipients) that provides a subaward to a subrecipient to carry out part of a Federal program. The authority of the pass-through entity under this provision flows through the subaward agreement between the pass-through entity and subrecipient.

(b) The recipient remains responsible for the work that is subawarded, and therefore, the recipient must comply with the following:

(1) The recipient must determine that the subrecipient possesses the ability to perform successfully under the terms and conditions of a proposed subaward, taking into consideration the subrecipient's integrity, record of past performance, financial and technical resources, and access to other necessary resources.

(2) The recipient must ensure subawards are made in compliance with the Standard Provision "Suspension and Debarment," and the Standard Provision "Preventing Transactions with, or the Provision of Resources or Support to, Sanctioned Groups and Individuals."

(3) All subawards must be issued in writing and contain the following:

(i)    Subrecipient's name, Unique Entity Identifier (UEI), Federal award number;

(ii)    Program description, budget, and period of performance, total amount of subaward, and total obligated amount of subaward;

(iii)    Terms and conditions to define a sound and complete agreement;

(iv)    The Standard Provisions, as applicable (e.g., the provision flows down to the subaward). The recipient must use the Standard Provisions for U.S. Nongovernmental Organizations (NGOs) when the subrecipient is a U.S. entity, Standard Provisions for non-U.S. NGOs when the subrecipient is a non-U.S. entity, and Standard Provisions for Fixed Amount Awards when the subaward type is a fixed amount award. The recipient must insert a statement in the subaward that, where appropriate, in instances where USAID is mentioned in such flow down provisions, the recipient's name will be substituted and where "recipient" appears, the subrecipient's name will be substituted; and

(v)    Other terms that the recipient determines are required to ensure compliance with the terms of this award.

(c) Unless otherwise approved by the USAID Agreement Officer, the recipient must not provide funds to the governments of or entities controlled by the governments of countries ineligible for assistance under the Foreign Assistance Act of 1961, as amended, or under acts appropriating funds for foreign assistance.

69

*Text highlighted in yellow indicates that the material is new or substantively revised.*

[END OF PROVISION]

# RAA9. TRAVEL AND INTERNATIONAL AIR TRANSPORTATION (DECEMBER 2014)

**APPLICABILITY:** *This provision is applicable when costs for international travel or air transportation of cargo are anticipated to be funded by USAID. This provision is not applicable if the recipient is providing for international travel costs with private funds as part of a cost-sharing requirement or with Program Income generated under this award.*

## TRAVEL AND INTERNATIONAL AIR TRANSPORTATION (DECEMBER 2014)

(a)    TRAVEL COSTS

All travel costs must comply with the applicable cost principles and must be consistent with those normally allowed in like circumstances in the recipient's non-USAID-funded activities. Costs incurred by employees and officers for travel, including airfare, costs of lodging, other subsistence, and incidental expenses, may be considered reasonable and allowable only to the extent such costs do not exceed reasonable charges normally allowed by the recipient in its regular operations as the result of the recipient organization's written travel policy and are within the limits established by the applicable cost principles.

In the absence of a reasonable written policy regarding international travel costs, the standard for determining the reasonableness of reimbursement for international travel costs will be the Standardized Regulations (Government Civilians, Foreign Areas), published by the U.S. Department of State, as from time to time amended. The most current Standardized Regulations on international travel costs may be obtained from the Agreement Officer. In the event that the cost for airfare exceeds the customary standard commercial airfare (coach or equivalent) or the lowest commercial discount airfare, the recipient must document one of the allowable exceptions from the applicable cost principles.

(b)    FLY AMERICA ACT RESTRICTIONS

(1)    The recipient must use U.S. Flag Air Carriers for all international air transportation (including personal effects) funded by this award pursuant to the Fly America Act and its implementing regulations to the extent service by such carriers is available.

(2)    In the event that the recipient selects a carrier other than a U.S. Flag Air Carrier for international air transportation, in order for the costs of such international air transportation to be allowable, the recipient must document such transportation in accordance with this provision and maintain such documentation pursuant to the Standard Provision,

*Text highlighted in yellow indicates that the material is new or substantively revised.*

SAEMTDAPP_000094

"Accounting, Audit and Records." The documentation must use one of the following reasons or other exception under the Fly America Act:

(i)     The recipient uses a European Union (EU) flag air carrier, which is an airline operating from an EU country that has signed the US-EU "Open Skies" agreement (**https://www.state.gov/open-skies-partners/)**.

(ii)    Travel to or from one of the following countries on an airline of that country when no city pair fare is in effect for that leg (see https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates-etc/airfare-rates-city-pair-program):

    (A)     Australia on an Australian airline,
    (B)     Switzerland on a Swiss airline, or
    (C)     Japan on a Japanese airline;

(iii)   Only for a particular leg of a route on which no US Flag Air Carrier provides service on that route;

(iv)    For a trip of 3 hours or less, the use of a US Flag Air Carrier at least doubles the travel time;

(v)     If the US Flag Air Carrier offers direct service, use of the US Flag Air Carrier would increase the travel time by more than 24 hours; or

(vi)    If the US Flag Air Carrier does <u>not</u> offer direct service,

    (A)     Use of the US Flag Air Carrier increases the number of aircraft changes by 2 or more,

    (B)     Use of the US Flag Air Carrier extends travel time by 6 hours or more, or

    (C)     Use of the US Flag Air Carrier requires a layover at an overseas interchange of 4 hours or more.

(c)     DEFINITIONS

The terms used in this provision have the following meanings:

(1)     "*Travel costs*'' means expenses for transportation, lodging, subsistence (meals and incidentals), and related expenses incurred by employees who are on travel status on official business of the recipient for any travel outside the country in which the organization is located. "Travel costs" do not include expenses incurred by employees who are not on official

business of the recipient, such as rest and recuperation (R&R) travel offered as part of an employee's benefits package that are consistent with the recipient's personnel and travel policies and procedures.

(2)     "*International air transportation*" means international air travel by individuals (and their personal effects) or transportation of cargo by air between a place in the United States and a place outside thereof, or between two places both of which are outside the United States.

(3)     "*U.S. Flag Air Carrier*" means an air carrier on the list issued by the U.S. Department of Transportation at https://www.transportation.gov/policy/aviation-policy/certificated-air-carriers-list.  U.S. Flag Air Carrier service also includes service provided under a code share agreement with another air carrier when the ticket, or documentation for an electronic ticket, identifies the U.S. flag air carrier's designator code and flight number.

(4)     For this provision, the term "*United States*" includes the fifty states, Commonwealth of Puerto Rico, possessions of the United States, and the District of Columbia.

(d)     SUBAWARDS AND CONTRACTS

This provision must be included in all subawards and contracts under which this award will finance international air transportation.

[END OF PROVISION]

# RAA10. OCEAN SHIPMENT OF GOODS (JUNE 2012)

**APPLICABILITY:** *This provision is applicable for awards and subawards for which the recipient contracts for ocean transportation for goods purchased or financed with USAID funds. In accordance with 22 CFR 228.21, ocean transportation shipments are subject to the provisions of 46 CFR Part 381.*

### OCEAN SHIPMENT OF GOODS (JUNE 2012)

(a) Prior to contracting for ocean transportation to ship goods purchased or financed with USAID funds under this award, the recipient must contact the office below to determine the flag and class of vessel to be used for shipment:

> U.S. Agency for International Development,
> Bureau for Management
> Office of Acquisition and Assistance, Transportation Division
> 1300 Pennsylvania Avenue, NW

*Text highlighted in yellow indicates that the material is new or substantively revised.*

AEMTDAPP_000096

USAID Annex
Washington, DC 20523-7900
Email: **oceantransportation@usaid.gov**

(b) This provision must be included in all subagreements, including subawards and contracts.

[END OF PROVISION]

# RAA11. REPORTING HOST GOVERNMENT TAXES (DECEMBER 2022)

*APPLICABILITY: This provision is applicable to a USAID award that is fully or partially funded with funds appropriated under titles III through VI of the current Department of State, Foreign Operations, and Related Programs Appropriations Act (SFOAA) and prior Acts making appropriations for such purposes, and the award is to be performed wholly or partly in a foreign country. Please insert address and point of contact at the Embassy, Mission, or M/CFO/CMP as appropriate under section (d) of this provision*

## REPORTING HOST GOVERNMENT TAXES (DECEMBER 2022)

(a)  *Definitions.* As used in this provision--

*Foreign government* includes any foreign governmental entity.

*Foreign taxes* include value-added taxes and customs duties but not individual income taxes assessed to local staff.

*Local Staff* means Cooperating Country National employees.

(b)  *Annual Report*

(1)  The recipient must submit a report detailing foreign taxes assessed under this award the prior U.S. Government fiscal year. The report must be submitted annually by April 16.

(2)  A report is required even if the recipient did not pay any foreign taxes during the reporting period. A cumulative report may be provided if the recipient is performing more than one award in the foreign country.

(c)  *Contents of report.* The report must contain:

(1)  Recipient name.

(2)  Contact name with phone number and email address.

(3)  Award number(s).

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(4)    Amount of foreign taxes assessed by each foreign government (listed separately) under this award during the prior U.S. Government fiscal year.

(i)    Taxes assessed on any individual transaction of less than $500 should not be reported.

(ii)    The recipient must report only foreign taxes assessed by a foreign government receiving U.S. assistance under this award. The recipient must not report on foreign taxes assessed by a third-party foreign government.

(5)    Any reimbursements of foreign taxes received by the recipient on the taxes in paragraph (c)(4) of this provision received through the date of the report.

(d)    *Submission of report.* The recipient must submit the report to: [*Agreement Officer must insert address and point of contact at the Embassy or Mission in the country in which the award will be performed, or CFO/CMP for USAID/W-issued awards, as appropriate*], with a copy to the Agreement Officer's Representative.

(e)    *Subawards and contracts.* The recipient must include this reporting requirement in all subawards and contracts issued under this award. The recipient must collect and incorporate into the recipient's report all information received from subawardees and contractors pursuant to this provision.

[END OF PROVISION]

# RAA12. PATENT RIGHTS (DECEMBER 2022)

**APPLICABILITY:** *This provision is applicable whenever the agreement finances research activities, or patentable processes or practices.*

## PATENT RIGHTS (DECEMBER 2022)

(a)    Patent Rights

(1)    Allocation of Principal Patent Rights. The recipient may retain the entire right, title, and interest throughout the world to each subject invention, subject to this provision. With respect to any subject invention in which the recipient retains title, the U.S. Government must have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the U.S. Government the subject invention throughout the world, and to sublicense others to do the same. The recipient agrees to include, within the specification of any United States patent application

and any patent issuing thereon covering a subject invention, the following statement: "This invention was made with U.S. Government support under (identify the agreement awarded by USAID). The U.S. Government has certain rights in this invention."

(2)    Definitions. For purposes of this provision, the following terms will have the following meaning:

(i)    "*Invention*" means any invention or discovery which is or may be patentable or otherwise protectable under Title 35 of the United States Code.

(ii)    "*Subject invention*" means any invention of the recipient conceived or first actually reduced to practice in the performance of work under this award.

(3)    The recipient must disclose each subject invention to the National Institute of Standards & Technology (NIST) iEdison Patent Reporting and Tracking System (**http://www.iedison.gov**) within two months after the inventor discloses it in writing to recipient personnel responsible for patent matters. In addition, the recipient agrees to submit, on request, periodic reports to the Agreement Officer's Representative, no more frequently than annually, on the utilization of a subject invention.

(4)    Conditions When the U.S. Government May Obtain Title. The recipient must convey title to any subject invention to USAID, upon written request, subject to recipient's retention of a nonexclusive, royalty-free license throughout the world, in each subject invention:

(i)    If the recipient fails to file a U.S. patent application or to disclose the subject invention to USAID at least 60 days prior to the statutory period for filing a patent in the United States, fails to file any non-U.S. patent applications within either ten months of the corresponding initial patent application or six months from the date permission is granted by the Commissioner of Patents and Trademarks to file foreign patent applications, or elects not to retain title.

(ii)    In any country in which the recipient decides not to continue the prosecution of any application for, to pay the maintenance fees on, or defend in reexamination or opposition proceeding on a patent on a subject invention.

(b)    Subawards and Contracts: The recipient must include this Standard Provision, suitably modified to identify the parties, in all subawards and contracts, regardless of tier, for experimental, developmental, or research work to be

*Text highlighted in yellow indicates that the material is new or substantively revised.* SACEMTDAPP_000099

performed by a small business firm or nonprofit organization. The recipient must retain all rights provided for the USG in this Standard Provision, and the recipient must not, as part of the consideration for awarding the contract or subaward, obtain more rights in the contractor's or subrecipient's subject inventions than provided in this provision.

[END OF PROVISION]

## RAA13. RESERVED

## RAA14. INVESTMENT PROMOTION (DECEMBER 2022)

*APPLICABILITY: The following provision is required for grants and cooperative agreements when the program includes gray-area activities or investment-related activities where specific activities are not identified at the time of obligation but could be for investment-related activities, as described in **ADS 225** (see 225.3.)*

### INVESTMENT PROMOTION (DECEMBER 2022)

(a)     Except as specifically set forth in this award or otherwise authorized by USAID in writing, no funds or other support provided under this award may be used for any activity that: provides financial incentives and other assistance for U.S. companies to relocate operations abroad if it is likely to result in the loss of U.S. jobs; contributes to violations of internationally recognized workers' rights defined in 19 U.S.C. 2467(4); or provides financial incentives for entities located outside the United States to relocate or transfer jobs from the United States to other countries or provide financial incentives that would adversely affect the labor force in the United States.

(b)     In the event the recipient is requested to provide services in any of the above areas or requires clarification from USAID as to whether an activity would be consistent with the limitation set forth above, the recipient must notify the Agreement Officer and provide a detailed description of the expected impact of the proposed activity. The recipient must not proceed with the activity until advised by USAID in writing that it may do so.

(c)     The recipient must ensure that its employees, subrecipients, and contractors providing trade and investment support services are made aware of the restrictions set forth in this provision and must include it in all subawards and contracts.

[END OF PROVISION]

## RAA15. COST SHARING (AUGUST 2024)

*Text highlighted in yellow indicates that the material is new or substantively revised.*

**APPLICABILITY:** *This provision is applicable when the recipient has agreed or is required to cost share.*

## COST SHARING (AUGUST 2024)

(a) During the period of this award, the recipient agrees to spend an amount of funds from non-U.S. Government sources specified as cost sharing, as provided in the approved budget. Any cost sharing restrictions contained in this award take precedence over the terms of this provision.

(b) The recipient's cost sharing under this award may include program costs incurred by the recipient using its own funds, or program costs financed with cash, services, or property contributed or donated to the recipient from other non-U.S. Government sources, including subrecipients. Not all cost sharing requires cash outlays by the recipient. Examples are depreciation and use charges for buildings and equipment.

(c) The recipient's cost sharing contributions, both cash and in-kind, must meet all of the following criteria:

   (1)  Are verifiable in the recipient's or subrecipient's records;

   (2)  Are not included as contributions for any other U.S. Government award;

   (3)  Are necessary and reasonable for achieving the objectives of this award;

   (4)  Are allowable under subpart E of 2 CFR Part 200;

   (5)  Are not paid by the U.S. Government under another U.S. Government award, except where the program's U.S. Government authorizing statute specifically provides that U.S. Government funds made available for the program can be applied to cost sharing requirements of other U.S. Government programs;

   (6) Are provided for in the approved budget; and

   (7) Conform to other applicable provisions of this award.

(d) The source, nationality, and restricted goods requirements in the Standard Provision "USAID Eligibility Rules for Procurement of Commodities and Services" do not apply to cost share expenditures.

(e) The value of non-U.S. Government in-kind contributions applied to cost sharing is established by the following procedures:

   (1) Unrecovered indirect costs, including indirect costs on cost sharing, may be included as part of cost sharing with the prior approval of USAID or the pass-through entity. Unrecovered indirect cost means the difference between the amount charged to the award and the amount which could have been charged to

*Text highlighted in yellow indicates that the material is new or substantively revised.* SADEMTDAPP_000101

the award under the recipient's or subrecipient's approved indirect cost rate.

(2) Values for recipient or subrecipient contributions of services and property must be established in accordance with the cost principles in Subpart E of 2 CFR Part 200. When USAID, a recipient, or subrecipient authorizes the recipient or subrecipient to donate buildings or land for construction/facilities acquisition projects or long-term use, the value of the donated property for cost sharing must be the lesser of paragraph (e)(2)(i) or (e)(2)(ii) below.

   (i)    The value of the remaining life of the property recorded in the recipient's or subrecipient's accounting records at the time of donation.

   (ii)   The current fair market value. However, when there is sufficient justification, USAID or the pass-through entity may approve using the current fair market value of the donated property, even if it exceeds the value described in paragraph (e)(2)(i) at the time of donation.

(3) Volunteer services furnished by third-party professional and technical personnel, consultants, and other labor may be counted as cost sharing if the service is necessary for the program. Rates for third-party volunteer services must be consistent with those paid for similar work by the recipient or subrecipient. When the required skills are not found in the recipient's or subrecipient's workforce, rates must be consistent with those paid for similar work in the labor market where the recipient or subrecipient competes for the services involved. In either case, fringe benefits that are allowable, allocable, and reasonable may be included in the valuation.

(4) When a third-party organization furnishes the services of an employee, these services must be valued at the employee's regular rate of pay plus an amount of fringe benefits that is reasonable, necessary, allocable, and otherwise allowable, and indirect costs at either the third-party organization's approved federally-negotiated indirect cost rate or, a rate in accordance with 2 CFR Part 200.414(d), provided these services employ the same skill(s) for which the employee is normally paid. Where donated services are treated as indirect costs, indirect cost rates will separate the value of the donated services so that reimbursement for the donated services will not be made.

(5) Donated property from third parties may include items such as equipment, office supplies, laboratory supplies, or workshop and classroom supplies. The assessed value of donated property included as cost sharing must not exceed the property's fair market value at the time of the donation.

(6) The method used for determining the value of donated equipment, buildings, and land for which title passes to the recipient or subrecipient may differ according to the following:

   (i)    If the purpose of the Federal award is to assist the recipient or subrecipient in acquiring equipment, buildings, or land, the aggregate

*Text highlighted in yellow indicates that the material is new or substantively revised.*    SACEMTDAPP_000102

value of the donated property may be claimed as cost sharing.

    (ii)    If the purpose of the award is to support activities that require the use of equipment, buildings, or land, only depreciation charges for equipment and buildings may be made. However, the fair market value of equipment or other capital assets and fair rental charges for land may be allowed if provided in the terms and conditions of this award.

(7) The value of donated property must be determined in accordance with the accounting policies of the recipient or subrecipient with the following qualifications:

    (i)    The value of donated land and buildings must not exceed its fair market value at the time of donation to the recipient or subrecipient as established by an independent appraiser (for example, a certified real property appraiser) and certified by a responsible official of the recipient or subrecipient.

    (ii)    The value of donated equipment must not exceed the fair market value at the time of donation.

    (iii)    The value of donated space must not exceed the fair rental value of comparable space as established by an independent appraisal of comparable space and facilities in a privately-owned building in the same locality.

    (iv)    The value of loaned equipment must not exceed its fair rental value.

  (8)    The fair market value of third-party in-kind contributions must be documented and, to the extent feasible, supported by the same methods used internally by the recipient or subrecipient.

(f) If the recipient expends less than the agreed upon cost sharing as specified in this award, the AO may apply the difference to reduce the amount of USAID funding for the following funding period, require the recipient to refund the difference to USAID when this award expires or is terminated, or reduce the amount of cost sharing required under the award.

(g) In the event of any disallowance of expenditures from USAID award funds, the recipient may substitute expenditures made with funds provided from non-U.S. Government sources, provided they are eligible in accordance with all the Standard Provisions of this award.

[END OF PROVISION]

## RAA16.    PROGRAM INCOME (AUGUST 2024)

*Text highlighted in yellow indicates that the material is new or substantively revised.* SADEMTDAPP_000103

**APPLICABILITY:** *This provision is applicable when program income is expected to be earned under this award. The AO must specify in the schedule of the award the method of applying program income (deduction, addition, cost sharing, or a combination of methods) (see 2 CFR 200.307 and ADS 303.3.10.4).*

## PROGRAM INCOME (AUGUST 2024)

(a) Program income is gross income earned by the recipient or subrecipient that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance except as provided in 2 CFR 200.307. Program income includes but is not limited to: income from fees for services performed, the use or rental of real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal statutes, regulations, or the terms and conditions of the Federal award, program income does not include rebates, credits, discounts, or interest earned on any of them.

(b) Program income must be used for the original purposes, and under the conditions of the award, to further project objectives, program objectives, award activities, and allowable closeout costs. Program income earned during the period of performance may only be used for allowable costs incurred during the period of performance or allowable closeout costs. Program income earned during the period of performance is subject to 2 CFR 200.400(g) and may not be earned or kept as profit. Interest earned on program income during the period of performance is subject to the same conditions as program income.

(c) The recipient must apply the method(s) for use of program income that are specified in the schedule of the award (see 2 CFR 200.307(b)). If the method of applying program income is not specified in the award, the recipient must obtain AO prior approval to use the addition or cost sharing methods. The recipient must also follow the standards in this provision to account for gross income earned from Federally-supported activities under this award.

    (1) If the deduction method is used, the recipient must use the program income for current costs, prior to drawdown of USAID funds under the award.

    (2) If the addition method is used, the total award amount is increased by the amount of program income.

    (3) If the cost sharing method is used, the amount of the award remains the same.

    (4) If different program income methods are applied to different program areas, the recipient or subrecipient must account for and report the program income amounts by method separately.

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(d) Costs incidental to generating program income under this award may be deducted from gross income to calculate program income, provided these costs have not been charged to this award and comply with the standard provision, "Allowable Costs."

(e) The recipient must report program income using the **Federal Financial Report, SF-425**. Program income must be accounted for in the same ratio as USAID's participation in the program. For example, if USAID funded 75 percent of a recipient's program, then the recipient must report 75 percent of any program income earned under the award as "Federal program income earned" on the SF-425.

(f) The recipient may continue to use program income earned after the period of performance of the award to further award objectives, but such program income is not subject to Federal requirements governing program income. However, program income earned after the period of performance of the award may not be earned or kept as profit.

(g) When the terms and conditions of the award require the recipient to report on program income earned after the period of performance, the records for program income earned after the period of performance must be retained for three years from the end of the recipient's or subrecipient's fiscal year in which the program income is earned.

[END OF PROVISION]

## RAA17. FOREIGN GOVERNMENT DELEGATIONS TO INTERNATIONAL CONFERENCES (JUNE 2012)

**APPLICABILITY**: *Include this provision in agreements funded from the following accounts:*

- *Development Assistance, including assistance for sub-Saharan Africa,*
- *Global Health Programs, and*
- *Micro and Small Enterprise Development Program Account.*

*Further information found in the Mandatory Reference for ADS 303, "Guidance on Funding Foreign Government Delegations to International Conferences," (***http://www.usaid.gov/ads/policy/300/350maa***).*

### FOREIGN GOVERNMENT DELEGATIONS TO INTERNATIONAL CONFERENCES (JUNE 2012)

(a) U.S. Government funds under this award must not be used to finance the travel, per diem, hotel expenses, meals, conference fees or other conference costs for any member of a foreign government's delegation to an international conference

*Text highlighted in yellow indicates that the material is new or substantively revised.*

sponsored by a multilateral organization, as defined below, unless approved by the Agreement Officer in writing.

(b) Definitions:

(1)     A *foreign government delegation* is appointed by the national government (including ministries and agencies but excluding local, state and provincial entities) to act on behalf of the appointing authority at the international conference. A conference participant is a delegate for the purposes of this provision, only when there is an appointment or designation that the individual is authorized to officially represent the government or agency. A delegate may be a private citizen.

(2)     An *international conference* is a meeting where there is an agenda, an organizational structure, and delegations from countries other than the conference location, in which country delegations participate through discussion, votes, etc.

(3)     A *multilateral organization* is an organization established by international agreement and whose governing body is composed principally of foreign governments or other multilateral organizations.

[END OF PROVISION]

# RAA18. STANDARDS FOR ACCESSIBILITY FOR THE DISABLED IN USAID ASSISTANCE AWARDS INVOLVING CONSTRUCTION (SEPTEMBER 2004)

**APPLICABILITY:** *This provision must be included in solicitations and in awards involving construction.*

**STANDARDS FOR ACCESSIBILITY FOR THE DISABLED IN USAID ASSISTANCE AWARDS INVOLVING CONSTRUCTION (SEPTEMBER 2004)**

(a)     One of the objectives of the USAID Disability Policy is to engage other U.S. Government agencies, host country counterparts, governments, implementing organizations, and other donors in fostering a climate of nondiscrimination against people with disabilities. As part of this policy USAID has established standards for any new or renovation construction project funded by USAID to allow access by people with disabilities (PWDs).

(b)     USAID requires the recipient to comply with standards of accessibility for people with disabilities in all structures, buildings or facilities resulting from new or renovation construction or alterations of an existing structure.

*Text highlighted in yellow indicates that the material is new or substantively revised.*

(c)      The recipient will comply with the host country or regional standards for accessibility in construction when such standards result in at least substantially equivalent accessibility and usability as the standard provided in the Americans with Disabilities Act (ADA) of 1990 and the Architectural Barriers Act (ABA) Accessibility Guidelines of July 2004. Where there are no host country or regional standards for universal access or where the host country or regional standards fail to meet the ADA/ABA threshold, the standard prescribed in the ADA and the ABA will be used.

(d)      New Construction. All new construction will comply with the above standards for accessibility.

(e)      Alterations. Changes to an existing structure that affect the usability of the structure will comply with the above standards for accessibility unless the recipient obtains the Agreement Officer's advance approval that compliance is technically infeasible or constitutes an undue burden or both. Compliance is technically infeasible where structural conditions would require removing or altering a load-bearing member that is an essential part of the structural frame or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features that are in full and strict compliance with the minimum requirements of the standard. Compliance is an undue burden where it entails either a significant difficulty or expense or both.

(f)      Exceptions. The following construction related activities are excepted from the
requirements of paragraphs (a) through (d) above:

(1)      Normal maintenance, reroofing, painting or wall papering, or changes to mechanical or electrical systems are not alterations and the above standards do not apply unless they affect the accessibility of the building or facility; and

(2)      Emergency construction (which may entail the provision of plastic sheeting or tents, minor repair and upgrading of existing structures, rebuilding of part of existing structures, or provision of temporary structures) intended to be temporary in nature. A portion of emergency construction assistance may be provided to people with disabilities as part of the process of identifying disaster- and crisis-affected people as "most vulnerable."

[END OF PROVISION]

# RAA19. PROTECTION OF HUMAN RESEARCH SUBJECTS (JUNE 2012)

**APPLICABILITY**: *This provision is applicable when human subjects are involved in research financed by this award, as defined in 22 CFR 225 and ADS 200 Mandatory*

*Text highlighted in yellow indicates that the material is new or substantively revised.* SAEMTDAPP_000107

*Reference, "Protection of Human Subjects in Research Supported by USAID." The AO should confer with the Activity Manager to determine if any research with human subjects will be included in the award.*

## PROTECTION OF HUMAN RESEARCH SUBJECTS (JUNE 2012)

(a) The recipient is responsible for safeguarding the rights and welfare of human subjects involved in research under this award, and must comply with the Common Federal Policy for the Protection of Human Subjects as found in Part 225 of Title 22 of the Code of Federal Regulations (22 CFR 225).

(b)    The recipient must assure USAID of its compliance with the requirements set forth in 22 CFR 225 by doing one of the following:

(1)    Obtaining a Federal-Wide Assurance (FWA) from the U.S. Department of Health and Human Services. Instructions on obtaining an FWA can be found on the Office of Human Research Protection Web site **http://www.hhs.gov/ohrp/assurances/assurances/file/index.html**; or

(2)    Submitting to the Agreement Officer's Representative (AOR) for USAID approval, a written assurance which includes a statement of principles governing the recipient's responsibilities, designation of one or more Institutional Review Board (IRB), a list of the IRB members, written procedures which the IRB will follow, and written procedures for ensuring prompt reporting of unanticipated problems to the IRB; or

(3)    Submitting to the AOR for USAID approval, a justification memorandum asserting that research conducted outside the United States provides protections at least equivalent to those in 22 CFR 225.

(c)    Definitions for the purposes of this award:

(1)    *Research* means an activity designed to test a hypothesis, permit conclusions to be drawn, and thereby to develop or to contribute to generalizable knowledge.

(2)    *Human subject* means a living individual about whom an investigator (whether professional or student) conducting research obtains

(i)    Data through intervention or interaction with the individual, or

(ii)    Identifiable private information.

(3)    *Intervention* includes both physical procedures by which data are gathered and the changes to the subject or the subject's environment performed for

*Text highlighted in yellow indicates that the material is new or substantively revised.*

research purposes.

(4)  *Institutional Review Board* means a properly constituted ethical committee which will review the research.

(d)  USAID staff and consultants may independently review and inspect research and research processes and procedures involving human subjects, and based on such findings, USAID may prohibit research which presents unacceptable hazards or otherwise fails to comply with USAID procedures. Informed consent documents must include the following statement:

"Subject's research records may be independently reviewed by USAID staff and consultants to ensure compliance with USAID requirements for protection of human research subjects."

[END OF PROVISION]

# RAA20. STATEMENT FOR IMPLEMENTERS OF ANTI-TRAFFICKING ACTIVITIES ON LACK OF SUPPORT FOR PROSTITUTION (JUNE 2012)

*APPLICABILITY: This provision must be included in any award that*

*(1) uses funds made available to carry out the Trafficking Victims Protection Act of 2000, Division A of P.L. 106-386; and*

*(2) covers a program that targets victims of severe forms of trafficking in persons (as defined below) and provides services to individuals while they are still engaged in activities that resulted from such victims being trafficked.*

*"Severe forms of trafficking in persons" means*

*(1) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or*

*(2) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.*

**STATEMENT FOR IMPLEMENTERS OF ANTI-TRAFFICKING ACTIVITIES ON LACK OF SUPPORT FOR PROSTITUTION (JUNE 2012)**

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000109

By accepting this award, the recipient hereby states that it does not promote, support, or advocate the legalization or practice of prostitution. This statement may be true by virtue of the organization's lack of any policy regarding the issue.

[END OF PROVISION]

## RAA21. ELIGIBILITY OF SUBRECIPIENTS OF ANTI-TRAFFICKING FUNDS (JUNE 2012)

***APPLICABILITY:*** *This provision must be included in any award that uses funds made available to carry out the Trafficking Victims Protection Act of 2000, Division A of P.L. 106-386, for a program that targets victims of severe forms of trafficking in persons. "Severe forms of trafficking in persons" means*

> *(1) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or*

> *(2) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.*

### ELIGIBILITY OF SUBRECIPIENTS OF ANTI-TRAFFICKING FUNDS (JUNE 2012)

The recipient must not provide funds made available to carry out this award to any organization that has not stated in either a grant application, a grant agreement, or both, that it does not promote, support, or advocate the legalization or practice of prostitution. Such a statement is not required, however, if the sub-recipient organization provides services to individuals solely after they are no longer engaged in activities that resulted from such victims being trafficked. If required, the sub-recipient organization's statement may be true by virtue of the organization's lack of any policy regarding the issue.

[END OF PROVISION]

## RAA22. PROHIBITION ON THE USE OF ANTI-TRAFFICKING FUNDS TO PROMOTE, SUPPORT, OR ADVOCATE FOR THE LEGALIZATION OR PRACTICE OF PROSTITUTION (JUNE 2012)

***APPLICABILITY:*** *This provision must be included in any award that uses funds made available specifically under the Trafficking Victims Protection Act of 2000, Division A of P.L. 106-386.*

*Text highlighted in yellow indicates that the material is new or substantively revised.* StateMTDAPP_000110

**PROHIBITION ON THE USE OF ANTI-TRAFFICKING FUNDS TO PROMOTE, SUPPORT, OR ADVOCATE FOR THE LEGALIZATION OR PRACTICE OF PROSTITUTION (JUNE 2012)**

None of the funds made available under this award may be used to promote, support, or advocate the legalization or practice of prostitution. However, this prohibition does not preclude assistance designed to ameliorate the suffering of, or health risks to, victims while they are being trafficked or after they are out of the situation that resulted in such victims being trafficked. The recipient must insert this provision in all subagreements under this award.

[END OF PROVISION]

# RAA23. VOLUNTARY POPULATION PLANNING ACTIVITIES – SUPPLEMENTAL REQUIREMENTS (JANUARY 2009)

**APPLICABILITY**: *This provision is applicable to all awards involving any aspect of voluntary population planning activities.*

**VOLUNTARY POPULATION PLANNING ACTIVITIES – SUPPLEMENTAL REQUIREMENTS (JANUARY 2009)**

(a)    Voluntary Participation and Family Planning Methods:

(1)    The recipient agrees to take any steps necessary to ensure that funds
made available under this award will not be used to coerce any individual to practice methods of family planning inconsistent with such individual's moral, philosophical, or religious beliefs. Further, the recipient agrees to conduct its activities in a manner which safeguards the rights, health, and welfare of all individuals who take part in the program.

(2)    Activities which provide family planning services or information to individuals, financed, in whole or in part, under this award, must provide a broad range of family planning methods and services available in the country in which the activity is conducted or must provide information to such individuals regarding where such methods and services may be obtained.

(b)    Requirements for Voluntary Family Planning Projects

(1)    A family planning project must comply with the requirements of this paragraph.

(2)    A project is a discrete activity through which a governmental or nongovernmental organization or Public International Organization

87

(PIO) provides family planning services to people and for which funds obligated under this award, or goods or services financed with such funds, are provided under this award, except funds solely for the participation of personnel in short-term, widely attended training conferences or programs.

(3)    Service providers and referral agents in the project must not implement or be subject to quotas or other numerical targets of total number of births, number of family planning acceptors, or acceptors of a particular method of family planning. Quantitative estimates or indicators of the number of births, acceptors, and acceptors of a particular method that are used for the purpose of budgeting, planning, or reporting with respect to the project are not quotas or targets under this paragraph, unless service providers or referral agents in the project are required to achieve the estimates or indicators.

(4)    The project must not include the payment of incentives, bribes, gratuities or financial rewards to (i) any individual in exchange for becoming a family planning acceptor, or (ii) any personnel performing functions under the project for achieving a numerical quota or target of total number of births, number of family planning acceptors, or acceptors of a particular method of contraception. This restriction applies to salaries or payments paid or made to personnel performing functions under the project if the amount of the salary or payment increases or decreases based on a predetermined number of births, number of family planning acceptors, or number of acceptors of a particular method of contraception that the personnel affect or achieve.

(5)    A person must not be denied any right or benefit, including the right of access to participate in any program of general welfare or health care, based on the person's decision not to accept family planning services offered by the project.

(6)    The project must provide family planning acceptors comprehensible information about the health benefits and risks of the method chosen, including those conditions that might render the use of the method inadvisable and those adverse side effects known to be consequent to the use of the method. This requirement may be satisfied by providing information in accordance with the medical practices and standards and health conditions in the country where the project is conducted through counseling, brochures, posters, or package inserts.

(7)    The project must ensure that experimental contraceptive drugs and devices and medical procedures are provided only in the context of a scientific study in which participants are advised of potential risks and benefits.

*Text highlighted in yellow indicates that the material is new or substantively revised.* AR-MTDAPP_000112

(8)    With respect to projects for which USAID provides, or finances the contribution of, contraceptive commodities or technical services and for which there is no subaward or contract under this award, the organization implementing a project for which such assistance is provided must agree that the project will comply with the requirements of this paragraph while using such commodities or receiving such services.

(9)

(i)    The recipient must notify USAID when it learns about an alleged violation in a project of the requirements of subparagraphs (b)(3), (b)(4), (b)(5), or (b)(7).

(ii)    The recipient must investigate and take appropriate corrective action, if necessary, when it learns about an alleged violation in a project of subparagraph (b)(6) and must notify USAID about violations in a project affecting a number of people over a period of time that indicate there is a systemic problem in the project.

(iii)    The recipient must provide USAID such additional information about violations as USAID may request.

(c)    Additional Requirements for Voluntary Sterilization Programs

(1)    Funds made available under this award must not be used to pay for the performance of involuntary sterilization as a method of family planning or to coerce or provide any financial incentive to any individual to practice sterilization.

(2)    The recipient must ensure that any surgical sterilization procedures supported, in whole or in part, by funds from this award are performed only after the individual has voluntarily appeared at the treatment facility and has given informed consent to the sterilization procedure. Informed consent means the voluntary, knowing assent from the individual after being advised of the surgical procedures to be followed, the attendant discomforts and risks, the benefits to be expected, the availability of alternative methods of family planning, the purpose of the operation and its irreversibility, and the option to withdraw consent any time prior to the operation. An individual's consent is considered voluntary if it is based upon the exercise of free choice and is not obtained by any special inducement or any element of force, fraud, deceit, duress, or other forms of coercion or misrepresentation.

(3)    Further, the recipient must document the patient's informed consent by:

(i)    a written consent document in a language the patient understands

*Text highlighted in yellow indicates that the material is new or substantively revised.* STATEMTDAPP_000113

and speaks, which explains the basic elements of informed consent, as set out above, and which is signed by the individual and by the attending physician or by the authorized assistant of the attending physician; or

(ii)     when a patient is unable to read adequately a written certification by the attending physician or by the authorized assistant of the attending physician that the basic elements of informed consent above were orally presented to the patient, and that the patient thereafter consented to the performance of the operation. The receipt of this oral explanation must be acknowledged by the patient's mark on the certification and by the signature or mark of a witness who speaks the same language as the patient.

(4)     The recipient must retain copies of informed consent forms and certification documents for each voluntary sterilization for a period of three years after performance of the sterilization procedure.

(d)     Prohibition on Abortion-Related Activities:

(1)     No funds made available under this award will be used to finance, support,
or be attributed to the following activities:

(i) procurement or distribution of equipment intended to be used for the purpose of inducing abortions as a method of family planning;
(ii) special fees or incentives to any person to coerce or motivate them to have abortions;
(iii) payments to persons to perform abortions or to solicit persons to undergo abortions;
(iv) information, education, training, or communication programs that seek to promote abortion as a method of family planning; and
(v) lobbying for or against abortion. The term "*motivate*," as it relates to family planning assistance, must not be construed to prohibit the provision, consistent with local law, of information or counseling about all pregnancy options.

(2)     No funds made available under this award will be used to pay for any
biomedical research which relates, in whole or in part, to methods of, or the performance of, abortions or involuntary sterilizations as a means of family planning. Epidemiologic or descriptive research to assess the incidence, extent or consequences of abortions is not precluded.

(e)     The recipient must insert this provision in all subsequent subagreements, including subawards and contracts, involving family planning or population activities that will be supported, in whole or in part,

90

from funds under this award.

[END OF PROVISION]

# RAA24. CONSCIENCE CLAUSE IMPLEMENTATION (ASSISTANCE) (FEBRUARY 2012)

*APPLICABILITY: This provision must be included in any new assistance award or amendment to an existing award (if not already incorporated into the agreement) obligating FY04 or later funds made available for HIV/AIDS activities, regardless of the program account. Further guidance is found in AAPD 14-04, Section 2.D.*

### CONSCIENCE CLAUSE IMPLEMENTATION (ASSISTANCE) (FEBRUARY 2012)

An organization, including a faith-based organization, that is otherwise eligible to receive funds under this agreement for HIV/AIDS prevention, treatment, or care—

(a)     Shall not be required, as a condition of receiving such assistance—

  (1)     To endorse or utilize a multisectoral or comprehensive approach to combating HIV/AIDS; or

  (2)     To endorse, utilize, make a referral to, become integrated with, or otherwise participate in any program or activity to which the organization has a religious or moral objection; and

(b)     Shall not be discriminated against in the solicitation or issuance of grants, contracts, or cooperative agreements for refusing to meet any requirement described in paragraph (a) above.

[END OF PROVISION]

# RAA25. CONDOMS (ASSISTANCE) (SEPTEMBER 2014)

*APPLICABILITY: This provision must be included in any new Request for Applications (RFA) or Annual Program Statement (APS), and any new assistance award or amendment to an existing award obligating or intending to obligate (in the case of solicitations) FY04 or later funds made available for HIV/AIDS activities, regardless of the program account.*

### CONDOMS (ASSISTANCE) (SEPTEMBER 2014)

Information provided about the use of condoms as part of projects or activities that are funded under this agreement shall be medically accurate and shall include the public health benefits and failure rates of such use and shall be consistent with USAID's fact

*Text highlighted in yellow indicates that the material is new or substantively revised.*

sheet entitled "USAID HIV/STI Prevention and Condoms". This fact sheet may be accessed at: https://www.usaid.gov/document/condom-fact-sheet-april-2015.

The prime recipient must flow this provision down in all subawards, procurement contracts, or subcontracts for HIV/AIDS activities.

[END OF PROVISION]

# RAA26. PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ASSISTANCE)  (SEPTEMBER 2014)

*APPLICABILITY: This provision must be included in any new Request for Applications (RFA) or Annual Program Statement (APS), and any new assistance award or amendment to an existing award obligating or intending to obligate (in the case of solicitations) FY04 or later funds made available for HIV/AIDS activities, regardless of the program account. Further guidance is found in AAPD 14-04, Section 2.E.*

## PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ASSISTANCE) (SEPTEMBER 2014)

(a)      The U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons. None of the funds made available under this agreement may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(b)(1)  Except as provided in (b)(2), by accepting this award or any subaward, a non-governmental organization or public international organization awardee/subawardee agrees that it is opposed to the practices of prostitution and sex trafficking.

(2)  The following organizations are exempt from (b)(1):

(i)  the Global Fund to Fight AIDS, Tuberculosis and Malaria; the World Health Organization; the International AIDS Vaccine Initiative; and any United Nations agency.

(ii)  U.S. non-governmental organization recipients/subrecipients and contractors/subcontractors.

*Text highlighted in yellow indicates that the material is new or substantively revised*

(iii) Non-U.S. contractors and subcontractors if the contract or subcontract is for commercial items and services as defined in FAR 2.101, such as pharmaceuticals, medical supplies, logistics support, data management, and freight forwarding.

(3) Notwithstanding section (b)(2)(iii), not exempt from (b)(1) are non-U.S. recipients, subrecipients, contractors, and subcontractors that implement HIV/AIDS programs under this assistance award, any subaward, or procurement contract or subcontract by:

(i) Providing supplies or services directly to the final populations receiving such supplies or services in host countries;

(ii) Providing technical assistance and training directly to host country individuals or entities on the provision of supplies or services to the final populations receiving such supplies and services; or

(iii) Providing the types of services listed in FAR 37.203(b)(1)-(6) that involve giving advice about substantive policies of a recipient, giving advice regarding the activities referenced in (i) and (ii), or making decisions or functioning in a recipient's chain of command (e.g., providing managerial or supervisory services approving financial transactions, personnel actions).

(c)    The following definitions apply for purposes of this provision:

(1) "Commercial sex act" means any sex act on account of which anything of value is given to or received by any person.
(2) "Prostitution" means procuring or providing any commercial sex act and the "practice of prostitution" has the same meaning.
(3) "Sex trafficking" means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act (22 U.S.C. 7102(9)).

(d)    The recipient must insert this provision, which is a standard provision, in all subawards, procurement contracts or subcontracts for HIV/AIDS activities.

(e)    This provision includes express terms and conditions of the award and any violation of it shall be grounds for unilateral termination of the award by USAID prior to the end of its term.

[END OF PROVISION]

## RAA27. LIMITATION ON SUBAWARDS TO NON-LOCAL ENTITIES (JULY 2014)

**APPLICABILITY:** *For use in all solicitations and resulting awards where eligibility is restricted to local entities in accordance with the Agency's statutory "Local Competition Authority" (see 303.3.6.5.c for additional guidance and 303.6 for the definition of local entity).*

## LIMITATION ON SUBAWARDS TO NON-LOCAL ENTITIES (JULY 2014)

(a)    By submission of an application and execution of the award, the applicant/recipient agrees that at least fifty (50) percent of the cost of award performance incurred for personnel must be expended for employees of the prime/local entity.

(b)    By submission of an application and execution of the award, the Applicant/Recipient represents that it is an individual, a corporation, a nonprofit organization, or another body of persons that:

    (1)    Is legally organized under the laws of;

    (2)    Has as its principal place of business or operations in; and

       (i)    is majority owned by individuals who are citizens or lawful permanent residents of; and

       (ii)    is managed by a governing body the majority of who are citizens or lawful permanent residents of the country in which this award will be primarily performed.

(c)    For purposes of this provision, "*majority owned*" and "*managed by*" include, without limitation, beneficiary interests and the power, either directly or indirectly, whether exercised or exercisable, to control the election, appointment, or tenure of the organization's managers or a majority of the organization's governing body by any means.

[END OF PROVISION]

# RAA28. CONTRACT PROVISION FOR DBA INSURANCE UNDER RECIPIENT PROCUREMENTS (DECEMBER 2022)

APPLICABILITY: *The following provision is required when the recipient is expected to procure services to be performed overseas.*

## DEFENSE BASE ACT (DBA) WORKERS' COMPENSATION INSURANCE FOR PROCUREMENT CONTRACT (DECEMBER 2022)

All contracts made by the recipient under this award for services to be performed overseas must contain the following provision, as applicable.

**WORKERS' COMPENSATION INSURANCE (DEFENSE BASE ACT)**

(a) The Contractor must--

(1) Before commencing performance under this contract, establish provisions to provide for the payment of disability compensation and medical benefits to covered employees and death benefits to their eligible survivors, by purchasing Defense Base Act (DBA) insurance pursuant to the terms of the contract between USAID and USAID's DBA insurance carrier unless the Contractor qualifies as a self-insurer under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 932) as extended by the Defense Base Act (42 U.S.C. 1651, et seq.), or has an approved retrospective rating agreement for DBA. The Contractor must continue to maintain these provisions to provide such Defense Base Act benefits until contract performance is completed.

(2) If USAID or the Contractor has secured a waiver of DBA coverage for contractor's employees who are not citizens of, residents of, or hired in the United States, the contractor agrees to provide such employees with worker's compensation benefits as required by the laws of the country in which the employees are working, or by the laws of the employee's native country, whichever offers greater benefits (see AIDAR 728.305-70(a) for more information on DBA waivers). The Department of Labor has granted partial blanket waivers of DBA coverage applicable to USAID-financed contracts performed in countries listed in the DEFENSE BASE ACT (DBA) WAIVER LIST.

(3) Within ten days of an employee's injury or death or from the date the Contractor has knowledge of the injury or death, submit Form LS-202 (Employee's First Report of Injury or Occupational Illness) to the Department of Labor in accordance with the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 930(a), 20 CFR 702.201 to 702.203).

(4) Pay all compensation due for disability or death within the timeframes required by the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 914, 20 CFR 702.231 and 703.232).

(5) Provide for medical care as required by the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 907, 20 CFR 702.402 and 702.419).

(6) If controverting the right to compensation, submit Form LS-207 (Notice of Controversion of Right to Compensation) to the Department of Labor in accordance with the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 914(d), 20 CFR 702.251).

(7) Immediately upon making the first payment of compensation in any case, submit Form LS-206 (Payment of Compensation Without Award) to the Department of

Labor in accordance with the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 914(c), 20 CFR 702.234).

(8) When payments are suspended or when making the final payment, submit Form LS-208 (Notice of Final Payment or Suspension of Compensation Payments) to the Department of Labor in accordance with the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 914 (c) and (g), 20 CFR 702.234 and 702.235).

(9) Adhere to all other provisions of the Longshore and Harbor Workers' Compensation Act as extended by the Defense Base Act, and Department of Labor regulations at 20 CFR Parts 701 to 704.

For additional information on the Longshore and Harbor Workers' Compensation Act requirements see http://www.dol.gov/owcp/dlhwc/lsdba.htm.

The Contractor must insert the substance of this clause including this paragraph (c), in all subcontracts to which the Defense Base Act applies.

<div align="center">[END OF PROVISION]</div>

# RAA29. RESERVED

# RAA30. RESERVED

# RAA31. NEVER CONTRACT WITH THE ENEMY (AUGUST 2024)

**APPLICABILITY:** *This provision is required in accordance with 2 CFR 183, Never Contract with the Enemy. AOs must include this provision in all assistance solicitations and all awards expected to exceed $50,000 and that are performed outside of the United States, including U.S. territories, and that are in support of a contingency operation as defined in 2 CFR 183.35 in which members of the Armed Forces are or may become actively engaged in hostilities.*

<div align="center">**NEVER CONTRACT WITH THE ENEMY (AUGUST 2024)**</div>

(a) **Prohibition on Providing Funds to the Enemy**

  (1) The recipient must—

   (i)    Exercise due diligence to ensure that no funds, including supplies and services, received under this award are provided directly or indirectly (including through subawards or contracts) to a person or entity who is actively opposing the United States or coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities, which must be completed through 2 CFR 180.300 prior to issuing a subaward or contract; and

*Text highlighted in yellow indicates that the material is new or substantively revised.*

AEMTDAPP_000120

(ii)   Terminate or void in whole or in part any subaward or contract with a person or entity listed in the System for Award Management (SAM.gov) as a prohibited or restricted source pursuant to subtitle E of Title VIII of the NDAA for FY 2015, unless the Federal agency provides written approval to continue the subaward or contract.

(2) The recipient may include the substance of this provision, including paragraph (a)(1) of this provision, in subawards under this grant or cooperative agreement that have an estimated value over $50,000 and will be performed outside the United States, including its outlying areas.

(3) The Federal agency has the authority to terminate or void this grant or cooperative agreement, in whole or in part, if the Federal agency becomes aware that the recipient failed to exercise due diligence as required by paragraph (a)(1) of this provision or if the Federal agency becomes aware that any funds received under this grant or cooperative agreement have been provided directly or indirectly to a person or entity who is actively opposing coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities.

(b) **Additional Access to Recipient Records**

(1) In addition to any other existing examination-of-records authority, the Federal Government is authorized to examine any records of the recipient and its subawards or contracts to the extent necessary to ensure that funds, including supplies and services, available under this grant or cooperative agreement are not provided, directly or indirectly, to a person or entity that is actively opposing the United States or coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities, except for awards awarded by the Department of Defense on or before Dec 19, 2017 that will be performed in the United States Central Command (USCENTCOM) theater of operations.

(2) The substance of this provision, including this paragraph (b)(1), must be included in subawards or contracts under this grant or cooperative agreement that have an estimated value over $50,000 and will be performed outside the United States, including its outlying areas.

[END OF PROVISION]

# [END OF THE STANDARD PROVISIONS]

303mab_100124

*Text highlighted in yellow indicates that the material is new or substantively revised.* DEMTDAPP_000121

Exhibit C

DEFMTDAPP_000122



# ADS Chapter 303

# Grants and Cooperative Agreements to Non-Governmental Organizations

Partial Revision Date: 10/01/2024
Responsible Office: M/OAA/P
File Name: 303_100124

DEFMTDAPP_000123

10/01/2024 Partial Revision

**Functional Series 300 – Acquisition and Assistance**
**ADS 303 – Grants and Cooperative Agreements to Non-Governmental**
**Organizations**
**POC for ADS 303: See ADS 501maa, ADS Chapters and Point of Contact List**

**Table of Contents**

| | | |
|---|---|---|
| **303.1** | **OVERVIEW** | **5** |
| **303.2** | **PRIMARY RESPONSIBILITIES** | **5** |
| **303.3** | **POLICY DIRECTIVES AND REQUIRED PROCEDURES** | **9** |
| **303.3.1** | **Policy Directives** | **9** |
| **303.3.2** | **Required Procedures** | **9** |
| **303.3.3** | **Type of Assistance Instrument** | **9** |
| **303.3.4** | **Exceptions and Deviations** | **10** |
| **303.3.5** | **Public Notice and Advertising** | **13** |
| 303.3.5.1 | Federal Assistance Listings | 14 |
| 303.3.5.2 | Notice of Funding Opportunity (NOFO) | 14 |
| 303.3.5.3 | Notice of Funding Opportunity (NOFO) Format | 15 |
| 303.3.5.4 | Cancellation of a NOFO | 15 |
| 303.3.5.5 | Unsolicited Concept Papers and Applications | 16 |
| **303.3.6** | **Eligibility** | **16** |
| 303.3.6.1 | Eligibility and Merit Review Information | 17 |
| 303.3.6.2 | Merit Review Criteria | 17 |
| 303.3.6.3 | Reviewing Applications | 20 |
| 303.3.6.4 | Eligibility and Preference for Maximum Competition | 23 |
| 303.3.6.5 | Restricted and Unrestricted Eligibility | 24 |
| 303.3.6.6 | Late or Incomplete Submissions | 28 |
| 303.3.6.7 | Conflicts of Interest | 29 |
| **303.3.7** | **The Award Decision** | **30** |
| 303.3.7.1 | Notification | 30 |
| 303.3.7.2 | Request for Additional Information | 30 |
| **303.3.8** | **Pre-Award Certifications, Assurances, Representations, and Other Statements of the Recipient and Pre-Award Terms** | **31** |

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000124

**303.3.9**      **Pre-Award Risk Assessment** ......................................... **31**
303.3.9.1    Pre-Award Surveys ................................................. 36
303.3.9.2    Specific Conditions ............................................... 39

**303.3.10**     **Cost Sharing and Program Income** ........................ **42**
303.3.10.1   Cost Share Determination .................................... 42
303.3.10.2   Cost Sharing in NOFOs ......................................... 43
303.3.10 .3  Meeting Cost Sharing Requirements ................... 44
303.3.10.4   Program Income ................................................. 45

**303.3.11**     **Cooperative Agreements and Substantial Involvement** .................. **46**

**303.3.12**     **Negotiation of the Award** ......................................... **50**

**303.3.13**     **The Award Process and Elements of an Award** ................................... **52**

**303.3.14**     **Duration of Assistance Awards** ............................ **53**

**303.3.15**     **Designation of the Agreement Officer's Representative (AOR)** ........ **54**

**303.3.16**     **Congressional Award Notice System** ................... **58**

**303.3.17**     **Distribution of Awards** ............................................ **58**

**303.3.18**     **Award Administration** .............................................. **59**

**303.3.19**     **Unauthorized Commitments and Expenditures Requiring Prior Approvals** .................................................. **64**

**303.3.20**     **Use of Languages Other than English** .................. **65**

**303.3.21**     **Subawards** ............................................................... **68**

**303.3.22**     **The Role of the Agreement Officer in the Debt Collection Process** .. **71**

**303.3.23**     **Disputes and Appeals** ............................................ **72**
303.3.23.1   Disputes ............................................................... 72
303.3.23.2   Appeals ................................................................ 72

**303.3.24**     **Types of Assistance Instruments** ........................ **73**

**303.3.25**     **Fixed Amount Awards to Non-Governmental Organizations** .............. **77**

**303.3.26**     **Leader with Associate Awards** .............................. **81**

3

**303.3.27**      **Public-Private Partnerships** ................................................. **87**

**303.3.28**      **Participation of Faith-Based and Community Organizations** ............ **87**

**303.3.29**      **Suspension and Debarment** .................................................. **88**

**303.3.30**      **Limitation on Construction under Assistance** ................................ **89**

**303.3.31**      **USAID Implementing Partner Notices (IPN) Portal for Assistance** ..... **90**

**303.3.32**      **Trafficking in Persons (TIP)** .................................................. **91**

**303.3.33**      **Safeguarding Against Exploitation, Sexual Abuse, Child Abuse, and Child Neglect** ................................................................... **93**

**303.3.34**      **Reserved** ............................................................................. **94**

**303.3.35**      **Information Technology and Telecommunication** .......................... **94**
303.3.35.1      Information Technology Under Assistance Awards .............................. 94
303.3.35.2      Covered Telecommunication and Video Surveillance Equipment or Services ............................................................................. 94

**303.3.35.3**    **Electronic Commerce** ............................................................. **95**

**303.4**        **MANDATORY REFERENCES** .................................................. **95**

**303.4.1**      **External Mandatory References** .............................................. **95**

**303.4.2**      **Internal Mandatory References** .............................................. **96**

**303.4.3**      **Mandatory Forms** ................................................................. **98**

**303.5**        **ADDITIONAL HELP** ............................................................... **99**

**303.6**        **DEFINITIONS** ....................................................................... **99**

4

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

## ADS 303 – Grants and Cooperative Agreements to Non-Governmental Organizations

### 303.1     OVERVIEW
Effective Date: 12/23/2019

This chapter describes the Agency's internal guidance, policy directives, required procedures, and standards for the award and administration of USAID grants and cooperative agreements to:

- Institutions of higher education,
- Hospitals,
- Nonprofit non-governmental organizations (NGOs), and
- Commercial organizations.

USAID provides assistance to U.S. or non-U.S organizations, individuals, nonprofits, and for-profit entities. Authorizing legislation (including the **Foreign Assistance Act of 1961, as amended**), other statutes, Government-wide directives and regulations, and Agency policies specify the eligibility requirements for individual assistance programs. The Agency has identified its corporate priorities for, and approach to, assistance in the **USAID Acquisition and Assistance Strategy**.

### 303.2     PRIMARY RESPONSIBILITIES
Effective Date: 12/29/2022

**a.**     The **Bureau for Management, Office of Acquisition and Assistance (M/OAA)** develops and interprets policy on behalf of USAID for the award and administration of grants and cooperative agreements. M/OAA carries out this responsibility in accordance with the requirements of **2 CFR 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards** and USAID's implementing regulation, **2 CFR 700 USAID Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards**, and this ADS chapter.

**b.**     The **M/OAA Director** is also the Assistance Executive and coordinates all matters that OMB or USAID regulations govern or which may require OMB approval. The M/OAA Director has overall responsibility for the Agency's assistance policies, including the approval of Acquisition & Assistance Policy Directives (AAPDs) and Procurement Executive Bulletins (PEBs).

**c.**     The **Agency's Integrated Award Environment (IAE) Financial Assistance Committee for E-Government (FACE) Liaison,** in M/OAA:

- Reviews information for the Federal Assistance Listings (Assistance Listings) for completeness and accuracy and forwards the information to the Office of Management and Budget (OMB) for entry into the available listings maintained by the General Services Administration (GSA);

- Updates Assistance Listings entries annually;

- Submits an annual crosswalk that references program transactions occurring during the year, such as additions, deletions, consolidations of programs, and changes to program titles;

- Assigns Assistance Listing numbers; and

- Prepares the Assistance Listing entry describing the Agency's general program description.

**d.**    The **Agreement Officer (AO)** has legal responsibility for the award. Therefore, only the AO can take action on behalf of USAID to enter into, amend, or terminate an award. The AO is authorized this responsibility either by a warrant issued by the Director, M/OAA, or through a delegation by virtue of their position provided by:

- The Mission Director or other principal officer of a USAID overseas mission (see **ADS 103**),

- The Assistant to the Administrator for the Bureau for Humanitarian Assistance (AtA/BHA), or

- The directors of BHA offices, as re-delegated by the AtA/BHA (see **ADS 103.3.15**).

**e.**    Prior to award, **the Activity Planner** (also referred to as Planner) ensures that an anticipated award reflects the project design and planning documentation prepared in accordance with **ADS 201** and **ADS 300** and supports the Regional/Country Development Cooperation Strategy (R/CDCS) and/or other assistance objectives of the Mission, Bureau, or Independent Office (M/B/IO), or just B/IO if referring to only USAID/W). The Planner:

- Ensures adequate notice and time is provided to the AO to compete and award an assistance instrument by using an annual A&A plan or by obtaining the AO's consent;

6

DEFMTDAPP_000128

- Justifies an exception to eligibility, in accordance with this chapter and as directed by the AO, if eligibility is to be restricted;

- Provides the Agency Liaison with an annual update on the information in the Federal Assistance Listings for which the Planner is responsible (see **303.3.5.1**);

- Complies with **22 CFR 216, Environmental Procedures,** requirements during the design process;

- Coordinates the merit review of applications on behalf of the AO;

- Carries out elements of the pre-award survey and provides a technical analysis of specific costs when asked by the AO;

- Advises the AO whether an application is responsive to the published announcement and otherwise complies with established USAID Development Objectives;

- Determines the expected level of cost sharing, in accordance with specific program requirements and **303.3.10**;

- Processes all necessary request documentation for the AO to consider in awarding a grant or cooperative agreement to a selected applicant. This documentation includes advice on the programmatic aspects of the application, including the applicant's program description with clearly established goals that are realistic, measurable, and represent the highest objective that the recipient can be expected to achieve and for which the recipient will be held accountable;

- Helps the AO determine the potential recipient's level of technical and managerial competence; and

- Performs other duties, as requested by the AO, to ensure prudent management of assistance funds.

f.    After award, the **Agreement Officer's Representative (AOR)**, as designated in writing by the AO, provides programmatic and administrative oversight of the assistance instrument. This authority is not re-delegable other than as specified in the AO's designation letter. The AOR ensures that USAID exercises prudent management over the award and monitors the recipient's progress in achieving the objectives of the program description. The AOR:

- Maintains contact, including through site visits and liaison, with the recipient;

- Reviews and analyzes reports and monitors reporting requirements (see **ADS 540**);

- Verifies timely performance;

- Ensures compliance with the terms and conditions of the award;

- Carries out all responsibilities in the schedule of the award as delegated by the AO and as noted under the "Substantial Involvement" section of Cooperative Agreements;

- Monitors the recipient's financial reports to ensure that the recipient makes progress toward meeting the required cost sharing, when applicable;

- Notifies the AO promptly of any developments that could have a significant impact on the recipient's performance;

- Prepares internal documents to support amendments to the award;

- Assists the AO in the review of proposed Branding Strategies and Marking Plans and monitors the execution of approved Marking Plans;

- Ensures all mitigative environmental measures and conditions in the award are implemented throughout the life of the award and that timely amendments are undertaken as needed with the relevant Bureau environmental officer approval in writing (see **ADS 204, Environmental Procedures**);

- Monitors classified recipients' compliance with the security specifications included in their grants and cooperative agreements, and notifies the AO and the Office of Security of any problems or suspected noncompliance with those requirements (see **ADS 545, Information Systems Security**, **ADS 565, Physical Security Programs (Domestic)**, and **ADS 567, Classified Contracts and Awards Under USAID's National Industrial Security Program**);

- Evaluates the recipient's program effectiveness at the end of the program, and produces a final report on the award for the AO; and

- Performs other duties, as requested or delegated by the AO, to ensure prudent management of assistance funds.

8

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000130

**g.** The **Office of the General Counsel (GC)** or the **cognizant Resident Legal Officer (RLO)** makes the final legal determinations on behalf of the Agency. USAID staff must refer all contacts from an applicant's or a recipient's lawyer to GC or the RLO. Staff must also consult GC or the RLO on significant policy matters.

**h.** **Assistant Administrators** approve termination of awards based on the decision that continued assistance would not be in the national interest of the United States. The use of the term Assistant Administrator throughout this chapter refers to both an Assistant Administrator and an Assistant to the Administrator.

**i.** The **Assistant Administrator, Bureau for Management**, or designee, makes the final decision on any appeals brought under **2 CFR 700.15**, or the Mandatory Standard Provision entitled "Disputes and Appeals" when it involves non U.S. organizations.

## 303.3       POLICY DIRECTIVES AND REQUIRED PROCEDURES

### 303.3.1    Policy Directives
Effective Date: 12/26/2014

**2 CFR 200, Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards**, establishes the requirements that the federal government agencies must follow when administering grants and cooperative agreements to U.S. non-governmental organizations. **2 CFR 700** is the Agency's regulatory implementation and supplement to **2 CFR 200**. **2 CFR 200** and **2 CFR 700** do not directly apply to foreign organizations (non-U.S. non-governmental organizations). However, USAID applies some of these regulations to non-U.S. non-governmental organizations through this ADS chapter and **ADS 303mab, Standard Provisions for Non-U.S. Non-governmental Organizations**.

### 303.3.2    Required Procedures
Effective Date: 12/26/2014

USAID executes all assistance awards in accordance with **2 CFR 200** and **2 CFR 700**. Additionally, Agency policies on specific topics can be found in other sections of the Code of Federal Regulations (CFRs) and the ADS 300 Series. When it is necessary to implement timely changes prior to a formal revision of Agency assistance regulations and policy, the Director, M/OAA will issue **Acquisition and Assistance Policy Documents (AAPDs)**. M/OAA uses **Procurement Executive Bulletins (PEBs)** to issue guidance, best practices, reminders, and answers to frequently asked questions.

### 303.3.3    Type of Assistance Instrument
Effective Date: 12/29/2022

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000131

10/01/2024  Partial Revision

Assistance (grants or cooperative agreements) is used when the principal purpose of the relationship between USAID and the recipient is to transfer anything of value to the recipient to carry out a public purpose of support or stimulation, as authorized by the **Foreign Assistance Act of 1961, as amended (FAA)**. The AO is responsible for making the final decision on the selection of an acquisition or assistance instrument. For further guidance on the differences between assistance and acquisition (contracts), see **ADS 304, Selecting Between Acquisition and Assistance Implementing Instruments**.

During the activity design process, the Activity Planner and the AO make a determination on the duration and type of assistance instrument (see **303.3.14** and **ADS 201, Program Cycle Operational Policy**).

### 303.3.4    Exceptions and Deviations
Effective Date: 10/01/2024

When it is necessary to achieve program objectives under an award or when special circumstances make it in the best interests of the U.S. Government, USAID may pursue deviations or exceptions from:

- Exceptions from:

  - **2 CFR 200**, **2 CFR 700**, or other assistance-related CFR chapters (such as 2 CFR 701), as applicable; and

- Deviations from:

  - The policy directives and required procedures of this chapter and its mandatory references, including:

  - **ADS 303maa, Standard Provisions for U.S. Non-governmental Organizations**;

  - **ADS 303mab, Standard Provisions for Non-U.S. Non-governmental Organizations**; or

  - **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations**.

**a.    Approving Officials**

**(1)**    2 CFR 200, 2 CFR 700, and Other Assistance-Related CFR Exceptions (awards to U.S. organizations and non-U.S. organizations regardless of the award type). Consistent with 2 CFR 700.4, Exceptions, and as

10

delegated in Agency policy at ADS 103.3.9.5.a., the Director, M/OAA may approve an individual exception to **2 CFR 200** (no case-by-case exceptions may be granted to the provisions of Subpart F—Audit Requirements), and may approve individual or class exceptions to **2 CFR 700** for USAID program specific assistance regulations (other than those which implement statutory and executive order requirements). The Office of Management and Budget (OMB) must approve any class exceptions to **2 CFR 200**, other than those which implement Federal statutes or regulations. Note: Due to the OMB approval requirement, potential class exceptions will be subject to careful scrutiny and should have a strong justification to overcome the interest of maximum uniformity under 2 CFR 200. Early consultation with GC/RLO and M/OAA Policy is recommended.

**(2)**    ADS Deviations (awards to U.S. and non-U.S. organizations regardless of the award type). The Mission Director with program responsibility for the assistance award may approve deviations from the requirements of this chapter on a case-by-case basis for an individual award. The Director, M/OAA, may approve individual and class deviations from the requirements of this chapter and its mandatory references. All deviations from ADS 303 policies that implement a statutory or regulatory requirement, i.e., those that are based on the requirements in 2 CFR 200, are subject to approval as described in section **303.3.4.a(1)**.

**b.    Contents of an Exception or Deviation Request**

Exception or deviation requests must contain the information in (1) through (7) below. ADS 303sac, Template for Action Memorandum Requesting Approval of an Exception or Deviation provides a format that complies with the content requirements.

**(1)**    A complete description of the exception or deviation, including whether it is an "individual" deviation (affecting one award) or a "class" deviation (affecting more than one award);

**(2)**    The proposed effective date, and for class exceptions or deviations, the proposed expiration date. Class exceptions or deviations expire two years from the date of approval, unless a shorter period is specified in the request, or approval is rescinded. Expiration of an exception or deviation ends its availability for use in new awards, or modifications to awards that do not already use the exception or deviation. Class exceptions or deviations may not be extended. The AO or the Planner/AOR must prepare and receive approval of a new exception or deviation to replace an expiring exception or deviation, if one is still needed. Once the terms and conditions of an award are approved based on an individual or class exception or deviation, the deviation or exception remains in effect for the

11

duration of the award unless otherwise limited by the terms and conditions of the award or removed by a modification;

**(3)**    The circumstances in which the exception or deviation will be used;

**(4)**    A specific reference to the 2 CFR 200, 2 CFR 700, ADS 303, or ADS 303 mandatory reference section being excepted or deviated from;

**(5)**    An explanation, with relevant background, as to whether any identical or similar exceptions or deviations have been approved in the past;

**(6)**    A complete justification of the exception or deviation including any added or decreased cost to the government; and

**(7)**    As applicable, the name(s) of the recipient(s) and the award number(s).

**c.**    **Consultation Requirements**

The cognizant AO must route exception or deviation requests for consultation with the following offices sufficiently in advance of the desired effective date to accommodate the timelines described below and to allow for consideration and evaluation by the approving official designated in section **303.3.4.a**:

**(1)**    Bureau for Management, Office of Acquisition and Assistance, Policy Division (M/OAA/P). The AO must submit the exception or deviation request, including any additional supporting documents that provide relevant background or historical data, to M/OAA/P at policymailbox@usaid.gov to request comments. M/OAA/P normally responds to the request to provide comments within 10 working days. If the exigency of the situation requires more immediate action, including the need for prompt implementation of new statutory or regulatory requirements, the requesting office may contact M/OAA/P to arrange a shorter review period. The AO must make M/OAA/P's comments part of the deviation request file and forward them to the approving official as part of the exception or deviation request.

**(2)**    Cognizant RLO or GC/A&A. The AO must submit the exception or deviation request, including any additional supporting documents, to the Cognizant RLO or GC/A&A for written consultation.

**d.**    **Documentation and Filing Requirements**

**(1)**    The AO must retain approved individual exceptions or deviations in the award file. Approved class exceptions or deviations must be retained by

12

the issuing office and also in each award file where the exception or deviation is used.

**(2)**    The AO must promptly submit a copy of the approved exception or deviation to M/OAA/P at policymailbox@usaid.gov.

**(3)**    Register of exceptions and deviations. Awarding activities must maintain a register of exceptions and deviations granted from 2 CFR 200, 2 CFR 700, and/or the ADS and assign a control number as follows: For deviations issued by USAID/Washington affecting more than one Mission, the symbol of the awarding activity (e.g. "M/OAA" or for deviations for awards performed in an overseas Mission - the relevant geographic/country code; the abbreviation "DEV"; the abbreviation "ADS303"; the fiscal year; the serial number [issued in consecutive order during each fiscal year] assigned to the particular deviation; and the suffix "c" if it is a class deviation [e.g., M/OAA-DEV-ADS303-24-1, M/OAA-DEV-ADS303-24-2c, 123-DEV-ADS303-24-1]). For exceptions to 2 CFR 200 or 2 CFR 700, the same numbering conventions would apply, but instances of "DEV" would be replaced with "EXC" and instances of "ADS303" would be replaced with 2CFR200 or 2CFR700, as applicable [e.g., M/OAA-EXC-2CFR200-24-1, etc]. The AO must include the control number in the document authorizing the exception or deviation and the control number must be cited in all references to the exception or deviation.

### 303.3.5    Public Notice and Advertising
Effective Date: 12/29/2022

**a.**    USAID has a responsibility to notify the public of its funding priorities in assistance programs (**2 CFR 200.203-204**). The Agency generally fulfills this responsibility by announcing assistance programs in the federal Assistance Listings maintained by the General Services Administration (GSA) at **https://sam.gov** and at **Grants.Gov**.

**b.**    USAID must synopsize and post all funding opportunities and application packages to the **Grants.Gov** site except:

**(1)** Assistance programs that are only published through an entry on the Assistance Listing on the System for Award Management at SAM.gov for a Development Objective;

**NOTE:** USAID, at present, does not publish assistance programs solely through Assistance Listing entries;

13

10/01/2024  Partial Revision

**(2)** Awards that USAID limits to non-U.S. organizations, and which will be for less than $25,000; and

**(3)** Awards for which eligibility is restricted to a single source in accordance with procedures in **303.3.6.5**.

### 303.3.5.1    Federal Assistance Listings
Effective Date: 12/29/2022

**Pub. L. 95-220**, **31 U.S.C. 6104** establishes a catalog of federal domestic assistance (which was formerly known as the CFDA) as the database for all federal programs available to U.S. non-governmental organizations, individuals, educational institutions, and state and local governments. The database is now referred to as federal Assistance Listings and is maintained in the System for Award Management (SAM) at https://sam.gov/. An individual or organization can search this database, find assistance programs, determine if an assistance program matches the individual or organization's requirements, and determine if the individual or organization is eligible for the assistance program. The individual or organization may then contact the office that administers the program and find out how to apply.

Use of the Assistance Listings allows an individual or organization to find information in one location, instead of having to search through many different federal agency websites. All agencies of the U.S. Government, including USAID, must collect, coordinate, and submit information on all current Federal domestic assistance programs.

If the Activity Planner wishes to submit an entry into the Assistance Listings database, the Activity Planner should send the information through the cognizant Bureau program office to the Agency Liaison.

### 303.3.5.2    Notice of Funding Opportunity (NOFO)
Effective Date: 10/01/2024

USAID primarily uses two types of Notices of Funding Opportunity (NOFO): 1) Request for Applications (RFA) and 2) Annual Program Statement (APS). To the extent possible, AOs and Planners should use plain language in NOFOs to ensure the announcement is accessible to diverse communities of eligible applicants.

**a.**    An RFA is used when the intent is to provide assistance for an activity or methodology that supports or is in keeping with USAID's program objectives. AOs should make all NOFOs available for receipt of applications for a minimum of 60 calendar days. AOs should provide longer response periods for sizable activities or more detailed application requirements, to ensure high quality applications. An AO should not make a NOFO available for less than 30 days

14

10/01/2024 Partial Revision

unless there are exigent circumstances supported by a written determination by the AO. For more information, see **2 CFR 200.204**.

**b.**    An APS is used when USAID intends to support a variety of creative approaches towards developing methodologies to assess and implement development objective activities. When used, USAID will publish an APS at least once a year, either with an open-ended response time or a closing date of at least six months after issuance.

### 303.3.5.3    Notice of Funding Opportunity (NOFO) Format
Effective Date: 10/01/2024

When issuing a NOFO, including an RFA or an APS, the AO must follow the established format in **Appendix I to Part 200 – Full Text of Notice of Funding Opportunity**.

The **Notice of Funding Opportunity Guidance and Template** meets these requirements in Appendix I to Part 200 and is only available to Agency staff on the intranet. AOs must generate the funding opportunity in GLAAS.

Generally, the AO must indicate in the NOFO the potential type(s) of assistance instruments to be awarded and whether the resulting grant(s) or cooperative agreement(s) may be fixed amount awards.

Per **2 CFR 200.329**, AOs must not require programmatic progress reports more frequently than quarterly. Any additional reporting must be authorized in accordance with 303.3.4. Observance of these Federal parameters reflects good stewardship of time and resources, consistent with, for example, the Paperwork Reduction Act (PRA). Examples of reports that go beyond those outlined in 2 CFR 200 include daily, weekly, biweekly, and monthly reports on program activity implementation by objective or intermediate results, press review updates, accruals and pipeline analyses, and other ad hoc reporting.

### 303.3.5.4    Cancellation of a NOFO
Effective Date: 07/22/2015

The cancellation of a NOFO costs the U.S. Government and applicants' time, effort, and money. USAID should cancel NOFOs only when cancellation is in the public interest. For example:

**(1)**    When the specific programmatic or focus areas are no longer within the Agency's mission or objectives.

**(2)**    When amendments to the NOFO would be of such magnitude that a new NOFO is desirable.

15

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000137

If USAID cancels a NOFO, USAID will return any applications and will issue a notice of cancellation, either posted electronically as a general notice or sent to all prospective applicants, or both. USAID staff must purge any electronic applications for a cancelled NOFO from primary and backup data storage systems.

The notice of cancellation must:

    **(1)**    Identify the solicitation number and provide the title or the subject matter,

    **(2)**    Briefly explain the reason why USAID cancelled the NOFO, and

    **(3)**    Assure prospective applicants that they will be given an opportunity to apply for any subsequent or future NOFOs for the program, if appropriate.

The AO must document the:

    **(1)**    Circumstances and rationale for the cancellation;

    **(2)**    Applications received, returned, and purged; and

    **(3)**    Cancellation notice and NOFO issuance dates.

**303.3.5.5    Unsolicited Concept Papers and Applications**
Effective Date: 07/29/2021

**ADS 303mbd, Guide to Unsolicited Applications** provides guidance and procedures for receiving and reviewing unsolicited applications.

**303.3.6    Eligibility**
Effective Date: 12/26/2014

In accordance with the Federal Grant and Cooperative Agreement Act (FGCAA), USAID encourages competition in the award of grants and cooperative agreements to identify and fund the programs that best achieve Agency objectives.

The AO guarantees the integrity of the competitive process by ensuring overall fairness and consideration of all eligible applications. The AO also has the ultimate authority to make award decisions for grants and cooperative agreements on behalf of USAID.

The AO must not limit eligibility when awarding grants and cooperative agreements, unless USAID authorizes a restriction on eligibility in accordance with **303.3.6.5**. 2 CFR 200 requires that the Agency publish an announcement seeking applications from all eligible and qualified entities (see **303.3.5**).

16

### 303.3.6.1    Eligibility and Merit Review Information
Effective Date: 10/01/2024

The AO verifies that a NOFO correctly identifies applicant eligibility requirements and merit review information in accordance with the following standards:

a.    **Eligibility Requirements.** Authorizing legislation and governing program requirements specify eligibility requirements for individual grant programs. Generally, and in compliance with the **Foreign Assistance Act of 1961, as amended**, USAID may provide assistance to any U.S. or non-U.S. organization, individual, non-profit, or for-profit entity. When specific program requirements restrict eligibility (for example, Title XII Collaborative Research Support Programs), USAID must identify the restriction in the Assistance Listing, NOFO, or other appropriate notice.

b.    **Merit Review Criteria.** The Planner must propose the merit review criteria for selecting an applicant. However, if the AO determines that the criteria is so restrictive that it severely limits the pool of potential applicants, the AO may request that the Planner change the criteria to broaden the pool of applicants.

c.    **Multi-tiered Review.** The Planner, with the approval of the AO, may establish a solicitation and review system with two or more tiers. The AO may request potential applicants to submit an executive summary or concept paper. The AO may also request corresponding budget information at their discretion. After reviewing these submissions, the Merit Review Committee (MRC) selects the best submissions and conducts a second level solicitation and review with the selected applicants and uses more specific merit review criteria (see section **303.3.6.3**). The AO may conduct additional levels of solicitation and review only if the second level does not adequately identify applicants for the activities to be funded. Section C or Section E of the NOFO must explain the intended multi-tiered review/eligibility process so that potential applicants know what to expect at each phase of the review process.

### 303.3.6.2    Merit Review Criteria
Effective Date: 10/01/2024

a.    The Planner must develop the merit review criteria. The criteria must include the programmatic factors or priorities that affect selection. The number of criteria should be limited to three or four factors. The review criteria in an announcement must provide as much information as practical to allow potential applicants to judge whether it is in their best interest to incur costs to apply for the award. The criteria must address the importance of the programmatic and administrative elements, but must not be unduly restrictive. It is not necessary to quantify the

17

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000139

relative weight of the criteria, but the announcement must identify the relative importance of the criteria. The AO must ensure that the review criteria appropriately address the programmatic and administrative elements before publishing the NOFO. When subawards are anticipated under the resultant award, 2 CFR 200.308(f)(6) states that the Agency should not require prior approval of a change of subrecipient in an award unless the subrecipient's inclusion was a determining factor in the merit review or eligibility process at the NOFO stage. The AO and Planner should consider including subrecipient considerations in NOFO merit review criteria if it may be important to require prior approval of subrecipient changes in the award.

b.      **No Requirement for Prior USAID Experience.** NOFO documents for the award of USAID assistance instruments must not require prior USAID experience.

c.      **Gender issues.** USAID must address gender issues in all USAID-funded activities (see **ADS 205**). In NOFOs (including those for Leader with Associate Awards), the AO must ensure that the NOFO:

●       Integrates gender issues into the solicitation (unless a rationale was provided by the Activity Planner for not addressing gender in the project or activity) in accordance with **ADS 205**. When USAID directs applicants to incorporate gender issues into their applications, the NOFO must state the requirements in the different performance components, e.g., Program Description, key personnel qualifications, if applicable, and monitoring and evaluation requirements.

●       Integrates gender issues into the programmatic selection criteria (e.g., technical understanding and approach, monitoring and evaluation, personnel, etc.) that correspond to the performance requirements stated above, unless an approved rationale for not incorporating gender issues has been included in the NOFO.

If the program/project office provides the AO with a request for a program that does not include the requirements in **ADS 205** for either integrating gender issues in the Program Description <u>or</u> the rationale for why gender is not an issue for the particular assistance program it intends to fund, then the AO must notify the program/project office that no further action will be taken on the request until it meets one of these requirements.

For technical assistance and additional guidance, consult the USAID Mission/Office or Bureau gender specialist or the Office of Gender Equality and Women's Empowerment Hub in the Bureau for Inclusive Growth, Partnerships, and Innovation.

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000140

10/01/2024 Partial Revision

d.    **Volunteers for Prosperity.** **Executive Order 13317** requires that an applicant's use of highly skilled U.S. volunteers be a review factor in the selection of applications for assistance activities to be implemented abroad under the following initiatives:

- The President's Emergency Plan for AIDS Relief (PEPFAR);

- Digital Freedom Initiative;

- Water for the Poor Initiative;

- Trade for African Development and Enterprise Initiative;

- Middle East Partnership Initiative; and

- Other Presidential initiatives as identified in the future.

e.    **Environmental Concerns**. The Activity Planner must ensure that the requirements in **22 CFR 216** for an environmental impact assessment have been met, with written concurrence or approval by the relevant Bureau environmental officer, and are incorporated into the NOFO and award as necessary. When USAID directs applicants to address environmental concerns in an activity, the NOFO must state the requirement. **ADS 204** provides detailed guidance on environmental concerns, and **ADS 201** provides guidance on incorporating **ADS 204** into the planning, achieving, and learning processes.

f.    **Branding and Marking**. It is a Federal statutory and regulatory requirement (see **Section 641, Foreign Assistance Act of 1961, as amended**, and **2 CFR 700.16**) that all overseas programs, projects, activities, public communications, and commodities that USAID partially or fully funds under an assistance award or subaward must be appropriately marked with the USAID identity. Under **2 CFR 700.16**, USAID requires the submission of a Branding Strategy and a Marking Plan by the "apparently successful applicant" prior to award. However, in limited circumstances, the cognizant AO may allow recipients to submit the Branding Strategy and Marking Plan after award subject to a special award condition. AOs and Activity Planners are encouraged to work with their Development Outreach and Communications (DOC) Specialists to consider the impact of deferring the submission of Branding Strategy and Marking Plan.

The proposed Marking Plan may include a request for approval of one or more exceptions to the marking requirements in **2 CFR 700.16**. The AO reviews and approves the Branding Strategy and Marking Plan (including any requests for exceptions), consistent with the provisions "Branding Strategy - Assistance" and

19

"Marking Plan - Assistance" contained in **ADS 303mba, Pre-Award Terms**, and "Marking and Public Communications Under USAID-funded Assistance" contained in **ADS 303maa, Standard Provisions for U.S. Nongovernmental Organizations**, **ADS 303mab, Standard Provisions for Non-U.S. Nongovernmental Organizations**, **ADS 303mat, Standard Provisions for Fixed Amount Awards, 2 CFR 700.16**, and **ADS 320, Branding and Marking**.

Note that in contrast to "exceptions" to marking requirements, waivers to these requirements based on circumstances in the host country must be approved by the cognizant Mission Director or other USAID principal officer [see **2 CFR 700.16(k)(1)**]. Any questions about the applicability of either the Standard Provisions or **2 CFR 700.16** may be directed to General Counsel/Acquisition & Assistance (GC/A&A), or USAID's Senior Advisor for Brand-Management by emailing: **brandingchampions@usaid.gov**.

g.    **Climate Risk Management.** Climate risk management (CRM) is the process of assessing, addressing, and adaptively managing climate risks that may impact the ability of USAID to achieve its program objectives. Climate risks are defined as potential negative consequences due to changing climatic conditions. USAID Operating Units (OUs) must adhere to CRM requirements in project/activity design and implementation as required in **ADS 201mal** unless the project/activity satisfies one of the limited exceptions described in Section 1 of the reference.

Accordingly, the OU should incorporate, as appropriate, the results of the climate risk assessment into the solicitation sections, Program Description and Selection Criteria, which the AO will then incorporate into the formal solicitation. Additionally, per **ADS 201mal**, the climate risk assessment must be documented in the environmental compliance analysis. The **Climate Risk Management Resource Page** contains sample language that technical and program offices can use when creating assistance packages. Additionally, OUs may obtain support from the designated Climate Integration Lead (CIL) in each B/IO and Mission. The full list of CILs and their responsibilities is available on the **Climate Risk Management Resource Page**.

**303.3.6.3    Reviewing Applications**
Effective Date: 10/01/2024

a.    At least two individuals (three or more is preferable) must be appointed to serve on each MRC to review applications. The MRC must review the applications using the review criteria stated in the NOFO. The MRC must keep merit review information and applicant proprietary data confidential.

20

DEFMTDAPP_000142

b.    Committee members must possess the requisite technical knowledge or expertise to review the programmatic merits of the applications – any exceptions must be approved by the AO.

c.    USAID staff (direct-hire and Personal Services Contractor (PSC) employees) must comprise a majority of the members on the MRC. Reviewers from other federal departments and agencies are encouraged to participate on the MRC whenever possible.  Reviewers from outside the U.S. Government may also participate on the MRC.

d.    The AO must take steps to ensure that members of the MRC, both USAID staff and outside reviewers, do not have conflicts of interest with the organizations whose applications are being reviewed or persons representing such organizations with respect to their applications.  The MRC must make all efforts to identify potential conflicts early in the review and selection process. Because resolution of conflicts of interest is fact driven and case specific, the MRC must coordinate with the AO and the cognizant GC or RLO on the issues. A conflict of interest includes, but is not limited to, situations when:

● A member of the MRC, their spouse their minor child, a member of their household, or general partner has a financial interest in an organization that submits an application for the committee's review;

● A member has a "covered relationship" as defined in **5 CFR 2635.502** with an organization that submits an application for the committee's review, or a person representing such organization. This includes situations where the MRC member's spouse, parent, or dependent child is serving or seeking to serve as an officer, director, trustee, general partner, agent, attorney, consultant, contractor or employee of an organization that submits an application for the committee's review and where the MRC member has, within the last year, served as officer, director, trustee, general partner, agent, attorney, consultant, contractor or employee of an organization that submits an application for the committee's review;

● An organization or entity in which an MRC member serves or is seeking to serve, whether or not for compensation, as an officer, director, trustee, general partner, or employee, has a financial interest in an application under the committee's review; and

● An employee of an external organization (e.g., technical advisors in AIDS, child survival, infectious diseases, population, basic education) participates in the review of a potential competitor's application, which allows the MRC

21

DEFMTDAPP_000143

access to financial or other data that may be competitively useful to the reviewer's organization.

e.      When periodic reviews are specified, the Planner must collect the applications as they are received until the MRC can review a reasonable number in accordance with the provisions of the announcement. If the Planner and AO established a specific timeframe for the review of applications in the NOFO, for example, quarterly reviews, and only a small number of applications are received during that time, the AO may consider the applications received to be a reasonable number. The MRC may also include applications it received in response to earlier notices in a periodic review.

f.      For BHA programs, the AtA/BHA may authorize selection of a sole application received, if the director determines that it is not advisable to wait for more applications. The Activity Planner must provide a copy of such an authorization to the AO.

g.      When reviewing applications against a criterion related to gender issues, the Activity Planner must coordinate with IPI's Gender Equality and Women's Empowerment Hub.

h.      If an unsolicited application reasonably fits within an existing NOFO, the AO and Planner may include the application in a relevant review and selection under that NOFO. If it does not, the Planner must provide the AO with an approved written determination to restrict eligibility based on programmatic purposes under **303.3.6.5.d** before the AO can issue an award to the applicant.

i.      The same MRC members should review all applications for each specific award. If this is not possible or if there are established procedures for review by separate MRCs, the Planner must document the reason and the procedure and submit it to the AO for the agreement files.

j.      The AO must provide the MRC with a written review plan that specifies the criteria and methodology for reviewing the applications consistent with the information published in the NOFO.

k.      The MRC must prepare a written merit review memorandum that addresses each application as compared to the established review criteria. The MRC's narrative in the merit review memorandum must include a discussion of its review procedure and detail each application's strengths and weaknesses relative to the merit review criteria. If the NOFO does not indicate the relative importance of the criteria, then all criteria are equally weighted. If the NOFO assigned numerical values to the criteria, then the report must include a discussion of adjectival or

22

DEFMTDAPP_000144

numerical scoring, in addition to the narrative identifying strengths and weaknesses.

**l.**     Upon completion of the MRC's review, the MRC Chair must forward the signed merit review memo to the AO, who must place a copy in the award file.

**m.**     AOs must ensure that the solicitation, selection, award, and administration of USAID grants and cooperative agreements follow all the requirements and guidance of **22 CFR 205, Participation By Religious Organizations In USAID Programs** (see **303.3.28**).

### 303.3.6.4    Eligibility and Preference for Maximum Competition
Effective Date: 11/19/2020

**a.    Applicability**

Competition and the requirements regarding restricting eligibility in this ADS chapter do not apply to awards or amendments that:

**(1)**    Are not Federal financial assistance as defined in **2 CFR 200**. This includes agreements with public international organizations (see **ADS 308**), bilateral development partners (see **ADS 350** and **ADS 351**), and awards or solicitations using other transaction authorities; or

**(2)**    Are entirely funded by non-appropriated funds (for example, gifts received by USAID from bilateral and multilateral donors, host governments, or the private sector).

**b. Preference for Maximum Competition**

Consistent with the Federal Grant and Cooperative Agreement Act of 1977, USAID encourages unrestricted competition in the award of discretionary grants and cooperative agreements. USAID expects unrestricted competition in the award of discretionary grants and cooperative agreements, unless otherwise restricted following the requirements and procedures of sections **303.3.6.4** and **303.3.6.5**.

Competition serves to identify and fund the activities that best achieve Agency objectives. As such, it is USAID policy to allow all eligible organizations to compete for assistance awards unless there is a strong programmatic rationale to restrict eligibility that outweighs the benefits of a competitive process.

Following the **Foreign Assistance Act of 1961, as amended**, USAID may provide assistance to any U.S. or non-U.S. organization, individual, non-profit, or for-profit entity. When specific program requirements call for restricted eligibility, USAID must

23

identify and describe the restriction in the Assistance Listing, NOFO, or other notice, as required by **303.3.5**.

The AO must protect the integrity of the competitive process by ensuring fair and impartial consideration of all applicants. The AO has the ultimate authority to make award decisions for grants and cooperative agreements on behalf of USAID.

### 303.3.6.5    Restricted and Unrestricted Eligibility
Effective Date: 10/01/2024

#### a. Unrestricted Eligibility

Unrestricted eligibility refers to a funding opportunity that is open to all entities excluding prohibited sources (see ADS 310).

#### b. Restricted Eligibility

Restricted eligibility refers to:

- A funding opportunity that is limited to a specific type of entity or otherwise narrows the pool of applicants that may compete for a grant or cooperative agreement;

- An award or other assistance action that is limited to one or a limited number of recipients;

- Amendments to extend an award, other than those authorized by 2 CFR 200.308(e)(2);

- Amendments to increase the total estimated amount of the award; or

- Amendments that change the fundamental scope of the award objectives.

Eligibility must not be restricted for:

- Personal preference, for example, personal relationships with key personnel, the perceived burden of a competitive process, or other non-programmatic rationales;

- Avoidance of mobilization or demobilization costs;

- Lack of adequate planning; or

24

● Concerns about the availability of funds, such as expiring funds.

**c. Restricted Eligibility Based on Pre-Approved Conditions**

The Planner/AOR has the authority to make a determination to restrict eligibility based on one of the following pre-approved conditions. The determination does not need to be a separate document but may be described and approved as part of an Activity Approval Memorandum (AAM) (see **ADS 201**), Selection of Instrument (SOI) memorandum (see **ADS 304.3.6**), other assistance planning documentation, or by amendment to these documents. The cognizant RLO or GC Bureau or Independent Office backstop attorney must clear the determination.

**(1)** Eligibility will be limited to local entities as statutorily defined (see full definition in section **303.6**). For awards using funds from FY21 or earlier, this pre-approved condition may only be exercised consistent with the determinations required under section 7028 of the Consolidated Appropriations Act, 2021 (**P.L. 116-260**) as specified below. These requirements do not apply to awards using funds from FY22 and beyond.

Consistent with section 7028, for awards using funds from FY21 or earlier, this pre-approved condition is only available if:

    **i.**    Prior to the determination to restrict eligibility to local entities, USAID has–

        **A.** Assessed the level of local capacity to effectively implement, manage, and account for programs included in such competition; and

        **B.** Documented the written results of the assessment and decision making; and

    **ii.**    Prior to making an award after restricting eligibility to local entities–

        **A.** Each successful local entity has been determined to be responsible in accordance with the risk assessment procedures in section **303.3.9.1.d** (or, for fixed amount awards, the procedures in section **303.3.25**); and

        **B.** Effective monitoring and evaluation systems are in place to ensure that award funding is used for its intended purpose; and

    **iii.**    No level of acceptable fraud is assumed.

25

**(2)** Eligibility will be limited to organizations that have received less than $25 million in USAID funding, at any tier, over the past five years; or for global health awards the organization has received less than $25 million in U.S. Government funding at any tier, over the past five years. This restriction cannot be used to restrict eligibility to a single organization.

**(3)** The cumulative value of the award is at or below the simplified acquisition threshold. This restriction should generally not be used to restrict eligibility to a single organization; however, if there are unique circumstances that support an award to a single organization then the Planner/AOR must document these circumstances in the appropriate planning documents and include them in the award file.

**(4)** The award is an associate award under a Leader with Associate Award (see section **303.3.26**).

**(5)** The award is for disaster relief, rehabilitation or reconstruction assistance provided under section 491 of the Foreign Assistance Act, or for emergency food aid under Title II of the Food for Peace Act. This restriction to eligibility may be made following the written determination by the AtA/BHA (see **ADS 103**), that unrestricted eligibility is impracticable for awards within their respective areas of responsibility on an award-by-award or disaster-by-disaster basis.

**(6)** An award for which legislation includes a legally binding Congressional directive that specifies that USAID make an award to the particular organization. The determination must include a copy of the statute that identifies the awardee, as well as any information that supports the planned activity.

**(7)** An award made under an Administrator-approved blanket determination or justification to restrict eligibility for an approved class of awards, for example, an Expedited Procedures Package, such as for PEPFAR, conflict-sensitive environments, or other circumstances the Administrator deems appropriate. The cognizant RLO or GC/A&A attorney must clear the determination (see **ADS 302mbo, Guidance for Use of the Authorities under Expedited Procedures Packages (EPPs)**).

The AO must verify that the planner's/AOR's determination is based on one of the above conditions and includes the relevant citation. The AO must place the planner's/AOR's determination including the AO's verification in the award file in the Agency Secure Image Storage and Tracking System (ASIST).

**d. Restricted Eligibility Based On Programmatic Purposes**

26

The cognizant Mission Director (MD), Assistant Administrator (AA), or Head of an Independent Office that reports directly to the Administrator has the authority to make a determination to restrict eligibility based on programmatic purposes. The determination does not need to be a separate document but may be described and approved as part of an AAM (see ADS 201), equivalent activity approval document, SOI memorandum, other assistance planning documentation, or an amendment to the document. The Planner/AOR is responsible for preparing the determination, which must provide the programmatic rationale for restricting eligibility consistent with this section, and support how the rationale outweighs USAID's policy preference for, and the benefits of, an unrestricted competitive process. The authority for the determination is not delegable. The cognizant RLO or GC Bureau or Independent Office backstop attorney must clear the determination.

For a determination to restrict eligibility for an award over $10 million ($20 million for Special Incentive Posts [SIPs]) to a single organization for programmatic purposes, the written determination must also describe the steps taken, including market research, outreach, and public notices, to identify alternatives including engaging with a broader cross-section of development partners as required by Agency policy. This determination must be described and approved as part of an AAM (see ADS 201), equivalent activity approval document, or other assistance planning documentation.

**(1)** Some examples of programmatic rationales for restricting eligibility based on a written determination include:

   i.   Increasing the Agency's partner base by restricting eligibility to organizations that have not previously received a direct award from USAID;

   ii.  Developing the capability of a local entity or locally established entity by making a direct award to such entity that has previously only received subawards or grants under contract (for example, a transition award; see ADS 303mbb);

   iii. Accessing specialized skills or experience through an award to an entity with exclusive or predominant capability based on proprietary resources, specialized facilities, or unique relationship with the national government or other institutions in the cooperating country or intended beneficiaries, where the entity developed that exclusive or predominant capability independent of an ongoing USAID award;

   iv.  Responding to a disaster, violent conflict, political crisis, or other emergency situation that requires an award to be made more rapidly than unrestricted competition can accommodate; or

27

    **v.**  Developing a promising science and technology concept; or a unique, innovative, or proprietary solution addressing a pressing development challenge.

**e.**  Additionally, the Administrator must approve the written determination to restrict eligibility for an award or amendment to a single organization as follows:

- Amendments: The action increases the total estimated amount of a current award by $100 million or more for any of the same activities performed by the recipient. This threshold amount is for the amendment only. For example, if a $60 million award is amended to increase the total estimated cost by $50 million to a new total estimated amount of $110 million then Administrator approval is NOT required, or

- New Awards: The action is a follow-on award of $100 million or more and is for any of the same program activities carried out by the recipient under a previous award. If the follow-on award or the new award was approved under the SOAR process and the determination was included as a part of the SOAR package, then no further Administrator approval is required.

**f.**  If an award is extended beyond ten years from the original award date, the AOR must obtain the Administrator's approval for the extension (see **303.3.14**).

**g.**  The AO must file the final written determination in the award file in ASIST.

**h.**  The AO must publicize the NOFO on the government point of entry (GPE) (currently grants.gov) as required in 2 CFR 200 except when restricting eligibility to a single source in accordance with the procedures in this section (see **303.3.5**).

### 303.3.6.6   Late or Incomplete Submissions
Effective Date: 10/30/2020

USAID may review and consider late or incomplete award applications under a NOFO if:

- USAID's treatment of the material is consistent with the terms of the NOFO,

- All late applications are treated the same, and

- They are reviewed before any agreements are awarded under the NOFO.

The AO must consent in writing to the review of late or incomplete applications.

28

### 303.3.6.7    Conflicts of Interest
Effective Date: 12/29/2022

USAID staff are bound by U.S. regulations governing conflicts of interest. Applicants for and recipients of federal assistance, must disclose to the AO in writing any real or potential conflict of interest.

#### a. Conflicts of Interest for USAID Staff

USAID employees and PSCs must recuse themselves from personal and substantial involvement in a particular matter that could affect their own direct or imputed financial interests, as defined in **18 USC 208**; or create an appearance regarding their own interests or the interests of a person or entity with which they have a "covered relationship" as defined in **5 CFR 2635.502**. In addition, USG staff may not misuse their position for the private gain of themselves, family, friends, or other associates, as defined in **5 CFR 2635.702** (see **303.3.6.3d** for MRC conflicts of interest).

#### b. Applicant and Recipient Conflicts of Interest Requiring Disclosure to the AO

**Pre-award Conflicts of Interest**. AOs must include the Conflict of Interest Pre-Award Term (August 2018) in all NOFOs. This term requires an applicant to notify USAID of any actual or potential conflict of interest that they are aware of that may provide the applicant with an unfair competitive advantage in competing for a financial assistance award.

If the AO determines that a conflict of interest cannot be adequately resolved, the AO must not execute an award to that applicant. The AO then either awards to the next highest ranked eligible applicant or makes no award if there is no other eligible applicant.

**Post-award Conflicts of Interest.** AOs must include the mandatory standard provision, "Conflict of Interest" in all solicitations and awards. This provision requires the recipient to disclose any conflict of interest, including organizational conflicts of interest, in the award, administration, or monitoring of subawards. The recipient must propose an approach for resolving the conflict of interest to the cognizant AO within ten calendar days of the discovery of the conflict of interest.

The AO must review all conflict of interest disclosures, both pre-award and post-award, and the applicant's or recipient's proposed resolution. The AO must determine if the mitigation is adequate. The AO must notify the recipient within 30 days of receipt of the recipient's notice that the disclosures and measures

29

DEFMTDAPP_000151

proposed to resolve the conflict of interest are adequate or inadequate, unless the AO advises the recipient that a longer period is necessary.

### 303.3.7        The Award Decision
Effective Date: 06/01/2006

The AO's decision to fund or not to fund an award is final and not subject to review. Any information that may impact the AO's decision must be directed to the AO.

### 303.3.7.1        Notification
Effective Date: 10/01/2024

**a.**      Only the AO may notify the apparently successful applicant that they are being further considered for an award. It is essential that no one on the MRC make any commitment, expressed or implied, to the selected applicant. Only the AO is authorized to make a commitment on behalf of USAID.

**b.**      USAID must individually notify each applicant in writing on the status of its application. Once USAID decides which applicant the Agency will consider for award, the AO or the Planner (if authority is delegated by the AO) must notify all unsuccessful applicants that they will not be considered further and briefly explain why USAID did not select their application. The letters must be approved by the AO before the Planner sends them to the unsuccessful applicants.

### 303.3.7.2        Request for Additional Information
Effective Date: 12/29/2022

Within 10 working days after an applicant receives notice that USAID will not fund its application, the unsuccessful applicant may send a written request for additional information to the AO.

Additional information may be provided at the discretion of the AO. USAID may respond orally or in writing. The cognizant B/IO should respond to the request within 30 days after consultation with the AO or inform the applicant that more time is necessary. If responding orally, the AO or the technical representative from the B/IO must make a written summary of the response for the agreement file. The AO must be present at and lead any meeting. If responding in writing, the AO must approve any written communication before it is sent to the unsuccessful applicant.

USAID's responses must be limited to the Agency's interest in supporting the applicant's program as described in the application. Comparing one application to another is neither advisable nor helpful to the applicant. The MRC chair and the AO should only give additional information that would be useful to the applicant in preparing future applications.

DEFMTDAPP_000152

If the applicant has questions about the program or about the programmatic review, the MRC chair will provide constructive feedback that may assist the applicant when developing applications in the future. The MRC chair may explain the basis for the decision and the strengths and weaknesses of the application in terms of the published review criteria. When the applicant has questions about process, accountability, and business considerations, the AO will respond. The MRC chair and the AO will jointly respond when the applicant raises both types of questions.

### 303.3.8    Pre-Award Certifications, Assurances, Representations, and Other Statements of the Recipient and Pre-Award Terms
Effective Date: 10/01/2024

**a.**    In addition to the certifications included in the **Standard Form 424** and those included as part of SAM registration, the AO must also obtain the required certifications, assurances, and other statements from both U.S. and non-U.S. organizations prescribed and listed in **ADS 303mav, Certifications, Assurances, Representations, and Other Statements of the Recipient** before making an award and as otherwise required by the regulations listed in this section. The AO must also incorporate the solicitation standard provisions and provide links to the applicable award standard provisions in all solicitations.

At The AO may request the applicant to submit the certifications required in **ADS 303mav** either as part of the application or during negotiations. The AO should consider the administrative burden on all applicants if these certifications must be part of the application, compared to the potential delays in making the award while waiting for certifications from only the apparently successful applicant(s).

If the recipient submits any disclosure(s) regarding support to terrorists and the technical office/OU determines that the AO should move forward with an award, the technical office Director must submit a recommendation to the Director M/OAA for approval, with clearance by the cognizant Assistant General Counsel or RLO.

**b.**    The AO must also incorporate the pre-award terms found in **ADS 303mba, Pre-Award Terms** into the solicitation, as applicable.

### 303.3.9    Pre-Award Risk Assessment
Effective Date: 10/01/2024

The recommendation of an application for award by a Planner or an MRC does not in any way guarantee the award. The AO must evaluate the risks posed by applicants before making the award. The AO must evaluate risk in accordance with the principles the in 2 CFR 200.206 and those established by USAID described below. This includes a

review of the applicant's responsibility and qualification records available in the non-public segment of SAM at https://sam.gov/ (see 2 CFR 200.206 and ADS 303maz, Guidance on UEI, SAM, and FFATA Requirements for Assistance) for awards anticipated to exceed the simplified acquisition threshold. The AO must also consider the quality of the applicant's current and past performance as described below.  The AO and other USAID staff involved in conducting a pre-award risk assessment, including the pre-award survey (303.3.9.1), if any, are encouraged to review USAID's Risk Appetite Statement (RAS) in **ADS 596 mad** and the Agency's 7 Step Risk Management Process at **ADS 596.3.2.D**.

Depending on the result of this pre-award risk assessment, the AO may either:

- Make the award,

- Deny the recommendation of the Planner and not execute the award, or

- Award with "specific conditions" (**2 CFR 200.208** and **303.3.9.2**).

A favorable risk assessment means that the applicant is eligible to receive an award and possesses or can obtain the necessary capacity and resources to carry out the assistance program in accordance with award requirements.

**History of Performance.** Note that while an organization's history of performance on USAID awards should be a factor in determining the level of risk, a history of receiving grants from USAID does not guarantee that there is no risk in providing funds to an organization. Changes in personnel, accounting practices, or financial status may affect an organization's performance on a new award.

An applicant's history of performance can serve as an indicator of the quality of its future performance. An applicant must provide a list of all its contracts, grants, or cooperative agreements involving similar or related programs during the past three years. The reference information for these awards must include the performance location, award number (if available), a brief description of the work performed, and a point of contact list with current telephone numbers. The Planner and AO determine whether to require this information as part of the initial application or later from the apparently successful applicant(s). Requiring the information at a later date may be appropriate when USAID is conducting a multi-tiered review (see **303.3.6.1.d**) (although it only applies to acquisition, AOs may find it useful to apply the principles and guidance in OMB's **Best Practices for Collecting and Using Current and Past Performance Information**).

The MRC chair must validate the applicant's past performance reference information based on existing evaluations to the maximum extent possible, and make a reasonable, good faith effort to contact all references to verify or corroborate the following:

32

- How well an applicant performed,

- The relevancy of the work performed under the program,

- Instances of good performance,

- Instances of poor performance,

- Significant achievements,

- Significant problems, and

- Any indications of excellent or exceptional performance in the most critical areas.

For an award expected to exceed the simplified acquisition threshold, the AO must review the applicant responsibility and qualification records available in the non-public segment of SAM at https://sam.gov/ (see **2 CFR 200.206**). The AO must report in SAM (sam.gov) using CPARs if the Agency does not make a Federal award to an applicant because the AO determines that the applicant does not meet the minimum qualification standards as described in 2 CFR 200.206(a)(2), in accordance with 2 CFR 200.213.

The AO may also use the Contractor Performance Assessment Reporting System (CPARS) or other performance reports if such information on the applicant is available, taking into account the differences between performance under acquisition and performance under assistance.

In addition, if the applicant reported that they have current or past USAID assistance awards, the AO must check ASIST to review Performance Reports/Reviews on those awards.

The Planner and the MRC chair, or anyone delegated by the chair, may contact references other than those provided in the application, if the NOFO states that it is allowed and the individuals have an Non-Disclosure Agreement (NDA) and Conflict of Interest (COI) disclosure on file with the AO.

Additionally, before making an award or amending an award to add incremental funding, increase the total program amount, or extend the period of performance with additional cost, the AO must verify that the successful applicant/recipient:

- Does not have active exclusions in SAM (**sam.gov**);

33

DEFMTDAPP_000155

10/01/2024 Partial Revision

- Does not appear on the Specially Designated Nationals (SDN) and Blocked Persons List maintained by the U.S. Treasury for the Office of Foreign Assets Control, sometimes referred to as the "OFAC List;" and

- Is not listed in the United Nations Security Council Consolidated List.

Prior to providing approval for any subawards, the AO must obtain confirmation from the applicant/recipient that a risk assessment has been conducted for each proposed subrecipient(s) by name, including the applicant's/recipient's verification that the subrecipient(s):

1) Does not have active exclusions in SAM (**sam.gov**);

2) Does not appear on the Specially Designated Nationals (SDN) and Blocked Persons List maintained by the U.S. Treasury for the Office of Foreign Assets Control, sometimes referred to as the "OFAC List" (online at: **http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx**); and

3) Is not listed in the United Nations Security designation list.

Pursuant to **2 CFR 780** and **2 CFR 180**, the Assistant Administrator of the Bureau for Management, or designee, has the authority to grant an exception permitting an organization with active exclusions to receive federal assistance. However, such an exception can only be made in writing and must include a description of the unique circumstances that warrant deviation from the government-wide policy.

The AO must address the risk assessment of the prospective recipient and document all findings in the Assistance Award Memorandum. The AO must also certify in GLAAS that the applicant is not listed as actively excluded in SAM.gov as suspended, debarred, or proposed for debarment.

When awarding a fixed amount award, the following are to be used instead of those specified in this section:

- The procedures in **303.3.25**;

- **ADS 303saj, Fixed Amount Award to Non-Governmental Organizations**; and

- **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist.**

**Organizational Capacity.**

34

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000156

For all other assistance awards, the AO must consider the criteria in section **303.3.9.1** to determine if a pre-award survey must be conducted to help further assess organizational capacity to perform the award in accordance with award requirements. In addition, the following is specific guidance by category for assessing organizational capacity:

**CATEGORY A:** U.S. ORGANIZATIONS THAT HAVE BEEN RECIPIENTS OR CONTRACTORS UNDER USAID OR OTHER U.S. GOVERNMENT (USG) ACQUISITION OR ASSISTANCE INSTRUMENTS

When a U.S. organization has previously received a favorable risk assessment by USAID or another USG Agency, the AO may rely on the following to inform the risk assessment:

- A **Single Audit** or similar audit maintained by M/OAA/Contract Audit and Support Division, Contract Audit Management;

- A signed copy of the applicable statutory and regulatory certifications required in **303.3.8**;

- The quality of the applicant's history of performance on similar USAID projects, including compliance with the terms and conditions of the funding agreement; or

- Other information as necessary, including formal pre-award surveys (see **303.3.8**, **303.3.5.2**, **303.3.9.1** and **303.3.25**).

**CATEGORY B:** NON-U.S. ORGANIZATIONS THAT HAVE BEEN RECIPIENTS OR CONTRACTORS UNDER USAID OR OTHER U.S. GOVERNMENT (USG) ACQUISITION OR ASSISTANCE INSTRUMENTS

When a non-U.S. organization has previously received a favorable risk assessment by USAID or another USG Agency, the AO may rely on the following to inform the risk assessment:

- Audits performed in accordance with **[ADS 591, Financial Audits of USAID Contractors, Grantees, and Host Government Entities 591.3.4.2](#)**;

- A signed copy of the applicable statutory and regulatory certifications required in **303.3.8**;

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000157

- The quality of the applicant's history of performance on similar USAID projects, including compliance with the terms and conditions of the funding agreement; or

- Other information as necessary and appropriate, including pre-award surveys, (see **303.3.8, 303.3.5.2, 303.3.9.1** and **303.3.25**).

**CATEGORY C:** ORGANIZATIONS NEW TO USAID OR ORGANIZATIONS WITH OUTSTANDING AUDIT FINDINGS

If any of the criteria found in section **303.3.9.1** apply, the AO must perform a pre-award survey in conformance with that section. At a minimum, the risk assessment for such an applicant will be based on the same considerations as in categories **a** or **b** of this section, depending on whether it is a U.S. or non-U.S. organization. Additionally, the AO must obtain the following information from these applicants, when available:

- Copies of audited financial statements for the last three years, which a Certified Public Accountant or other auditor satisfactory to USAID has performed;

- Projected budget, cash flow, and organization charts; and

- Copies of applicable policies and procedures (e.g., accounting, purchasing, property management, personnel).

**303.3.9.1    Pre-Award Surveys**
Effective Date: 10/01/2024

**a.    Pre-Award Survey Requirements.** For all assistance awards, if any of the following criteria apply, the AO must establish and convene a formal pre-award survey team (see section **303.3.9.2**) to conduct an examination that will help inform the pre-award risk assessment:

**(1)**    The AO or Planner is uncertain about the prospective recipient's capacity to perform financially or programmatically.

**(2)**    The prospective recipient has never had a USAID grant or cooperative agreement (other than a fixed amount award), or a contract.

**(3)**    The prospective recipient has not received a grant or cooperative agreement (other than a fixed amount award) or a contract from any Federal agency within the last five years.

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000158

**(4)**    The AO has knowledge of deficiencies in the applicant's annual audit (**Single Audit** or equivalent).

**(5)**    The AO determines it to be in the best interest of the U.S. Government.

**b.**    **Contents of the Pre-Award Survey.** A major component of the pre-award survey is the accounting system survey. The pre-award survey team examines the applicant's systems to determine whether the prospective recipient has the necessary organization, experience, and accounting and operational controls in order to achieve the objectives of the program, or whether specific conditions are needed for the accounting systems to be in compliance with applicable regulations and accounting and cost principles.

**(1)**    For a U.S. organization, the AO must ensure that the applicant can meet the requirements of the award, including **2 CFR 200** and the applicable cost principles. The pre-award survey team must conduct a detailed analysis that addresses whether:

**i.**    The applicant's accounting, recordkeeping, and overall financial management systems meet the standards in **2 CFR 200.300-309 and 2 CFR 200.334-338**.

**ii.**    The applicant's system of internal controls is reasonable in accordance with applicable accounting and cost principles. This includes, at a minimum, the segregation of duties, handling of cash, contracting procedures, and personnel and travel policies.

**iii.**    The applicant's property management system, if applicable, meets the property standards in **2 CFR 200.310-316**.

**iv.**    The applicant meets the requirements in **2 CFR 200.331-333** for the administration and monitoring of subawards.

**v.**    The applicant's procurement system, if procurement is significant to the award, meets the standards set forth in **2 CFR 200.317-327**.

**(2)**    For a non-U.S. organization, the AO must ensure that the applicant can meet the requirements of **ADS 303mab, Standard Provisions for Non-U.S. Nongovernmental Organizations** as part of the risk assessment. The pre-award survey team must conduct a detailed analysis to: (1) determine whether the organization has sufficient financial and managerial capacity capability capacity to manage USAID funds, in accordance with U.S. government and USAID requirements, to achieve the intended objectives of the activity, (2) assess the organization's internal control systems and identify areas that may require strengthening and improvement to effectively implement activities, and (3) determine the

37

degree of support and oversight necessary to ensure proper accountability of funds provided to the organization.

In order to achieve these objectives, the AO will determine if the survey team will either:

    a. Use **ADS 303sam, Non-U.S. Organization Pre-Award Survey Guidelines** (NUPAS); **or**

    b. Conduct a detailed analysis in accordance with locally-established or award-specific criteria that achieves the objectives

**(3)** For Fixed Amount Awards, the AO must use the **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist** to ensure the intended recipient will be able to comply with **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations**.

**(4)** For simplified grants, the AO should limit areas of review for the pre-award survey to the most essential elements to determine whether the applicant can adhere to the Mandatory Standard Provisions contained in the Simplified Grant Format.

**c.** **Composition of the Pre-Award Survey Team.** When assembling a formal survey team, the AO must ensure appropriate expertise.

**(1)** A typical team consists of:

    **i.** A technical office team member;
    **ii.** The AO, or a representative from the AO's team;
    **iii.** A financial officer from the Bureau for Management, Office of the Chief Financial Officer, or the Mission or regional controller's office; and
    **iv.** A representative from M/OAA/Contract Audit and Support Division, Contract Audit Management Branch (for Washington-based awards), if possible.

**(2)** Depending on the ability of the Operating Unit to assemble the above team, the survey may be conducted in whole or in part by a local accounting firm approved by the cognizant Regional Inspector General as long as the Scope of Work for such work includes conflict of interest restrictions prohibiting the firm from providing capacity development to entities it surveys.

38

    **(3)**    The survey team reviews the applicant's systems against the standards discussed in paragraph b of this section and submits its findings to the AO for review, consideration, and informing the risk assessment.

**d.  Risk Assessment Decision.**

Before issuing any award, the AO must:

    **(1)**    Review the proposed project description and budget to ensure that they adequately describe the objectives of the project, the activities funded by USAID that will achieve the objectives, and a monitoring system to measure the project's progress. The Planner advises the AO on the professional and technical experience and competence of the applicant and the conformity of the application to USAID criteria.

    **(2)**    Make a written final determination of the applicant's risk in the Assistance Award Memorandum. If the determination is favorable, the AO must state in the memorandum that the applicant:

        **i.**    Has adequate financial resources or the ability to obtain such resources, as required during the performance of the award.

        **ii.**    Has the ability to meet the award terms and conditions, considering all existing prospective recipient commitments, both non-governmental and governmental.

        **iii.**    Has a satisfactory record of performance. Generally, relevant unsatisfactory performance in the past is enough to justify a finding of non-responsibility, unless there is clear evidence of subsequent satisfactory performance or the applicant has taken adequate corrective measures to assure that it will be able to perform its functions satisfactorily.

        **iv.**    Has a satisfactory record of business integrity.

        **v.**    Is otherwise qualified to receive an award under applicable laws and regulations.they will include in the award to mitigate risks.

**303.3.9.2    Specific Conditions**
Effective Date: 10/01/2024

It is the AO's responsibility to minimize the risk to USAID posed by high risk organizations. If, after conducting a comprehensive risk assessment of a potential recipient, the AO is unable to make a favorable risk determination, the AO may either deny the Planner's recommendation and not make the award or award with "specific conditions" (see **2 CFR 200.208**). Specific conditions are additional terms incorporated

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000161

into the award to appropriately mitigate the risk associated with the recipient. If the AO determines that the potential recipient is not likely to be able to achieve the specific conditions and therefore will not receive an award, then the AO must comply with the requirements in 2 CFR 200.213 to report a determination that an applicant is not qualified for a Federal award.

**a. Means to Minimize Risk.** When the AO makes an award, the AO may consider requiring any of the following specific conditions:

**(1)** Requiring payments as reimbursements rather than advance payments;

**(2)** Withholding authority to proceed to the next phase until receipt of evidence of acceptable performance;

**(3)** Requiring additional or more detailed financial reports;

**(4)** Requiring additional project monitoring, which can include site visits;

**(5)** Establishing additional prior approvals; or

**(6)** Requiring the recipient to obtain technical or management assistance.

When the AO determines that more Federal oversight is necessary, the AO may:

- Issue a contract to a third party to provide technical assistance to the recipient,

- Require the recipient to contract for technical assistance,

- Require the recipient to provide technical assistance to the subrecipient, or

- Have USAID staff provide technical assistance directly to the recipient.

**b.** The AO must notify the successful applicant of:

**(1)** The nature of the specific condition(s);

**(2)** The reason why the specific condition(s) are being imposed;

**(3)** The nature of the action needed to remove the specific condition(s), if applicable;

**(4)** The time allowed for completing the actions if applicable; and

40

DEFMTDAPP_000162

10/01/2024  Partial Revision

**(5)** The method for requesting reconsideration of the specific condition(s) imposed.

Any specific conditions must be promptly removed once the conditions that prompted them have been corrected.

**c.    Non-U.S. NGO Recipients**

Because **2 CFR 200** is not legally applicable to awards to non-U.S. organizations, as a matter of USAID policy, the standards in this ADS section must be used for making awards to non-U.S. recipients with specific conditions. Where deficiencies or weaknesses are identified by the AO during the pre-award risk assessment and cannot be corrected prior to award, the AO may make an award that is contingent upon one or more specific conditions in the award. Such specific conditions must mitigate the risks posed by the deficiencies or weaknesses identified and require the recipient to correct the reported deficiencies. Specific conditions for non-U.S. recipients may be of limited duration or may cover the entire period of the award. When specific conditions are used with non-U.S. recipients, the following requirements apply:

**(1)**    The specific conditions must contain language subjecting the recipient to a follow-up review/survey within a reasonable time after award to verify compliance with the conditions;

**(2)**    The continuation of award performance must be predicated on the recipient correcting the reported inadequacies within the timeframe identified in the award;

**(3)**    The Assistance Award Memorandum must document in the risk determination section the rationale for including each specific condition;

**(4)**    The award document must specify:

**i.**    The nature of the specific condition(s),
**ii.**    The nature of the corrective action(s) needed,
**iii.**    The time allowed for completing the corrective action(s); and

**(5)**    The cognizant Operating Unit must develop and carry out a plan for monitoring and supporting the recipient in satisfying any specific conditions.

Whenever possible, specific conditions must be for as limited a time period as necessary to mitigate the identified risks and not for the life of the award.

41

DEFMTDAPP_000163

For specific conditions that do not cover the entire award period, once the specific condition has been satisfied and its conditions have been fully met, the AO must remove the specific condition by formal amendment to the award. For specific conditions that cover the entire period of the award, the specific condition must clearly state that it covers the entire period of the award or must clearly identify the timeframe(s) or milestones at which the inclusion of the specific condition may be reconsidered, amended or removed.

### 303.3.10    Cost Sharing and Program Income
Effective Date: 10/01/2024

Cost sharing (defined in 2 CFR 200.1) becomes a condition of an award when it is part of the approved award budget. The cost share must be verifiable from the recipient's records and can be audited.For U.S. organizations, cost share is subject to the requirements of **2 CFR 200.306** and for non-U.S. organizations it is subject to the Standard Provision, "Cost Sharing". Costs that are unallowable in accordance with the applicable cost principles at the time of the award cannot be accepted as cost share.

If a recipient does not meet its cost share requirement, the AO may: 1) apply the difference in actual cost share amount from the agreed upon amount to reduce the amount of USAID funding for the following funding period; 2) require the recipient to refund the difference to USAID when this award expires or is terminated, or; 3) reduce the amount of cost share required under the award.

### 303.3.10.1    Cost Share Determination
Effective Date: 10/01/2024

Although there is no general legislative requirement that recipients must cost share, cost sharing can be an important element of the USAID-recipient relationship. Note, however, that fixed amount awards must not be used in programs that require cost share.

When used, cost share should be case-specific, and used to support or contribute to the achievement of results. USAID should use cost sharing after considering whether it is appropriate for the recipient in the specific circumstances and, in particular, the programmatic and technical context. There is no set formula for cost sharing. There is not a suggested numeric reference point. Cost sharing should be based on the needs or purpose of the activity. Examples of when cost sharing may be appropriate include but are not limited to:

- When it is critical that the activity continues after USAID assistance ends, cost sharing requirements can help ensure that the recipient establishes adequate alternate sources of funding.

42

DEFMTDAPP_000164

- When an award supports an activity initiated by the recipient or an unsolicited application. Because most USAID funding is reserved for development priorities the Agency has already established, only limited funding may be available for even the best of other programs. USAID may only be able to partially fund these other activities.

- To otherwise give the recipient a financial stake in the success of a program.

In all of these cases, the AO must identify in the NOFO the amount and terms of cost sharing.

The Activity Planner must determine the appropriate cost share for individual grants and cooperative agreements. The Planner must include this determination in the financial analysis of the program prior to issuance of a NOFO. In the case of awards solicited with unrestricted eligibility, the Planner and AO are encouraged to communicate with a broad range of potential applicants regarding appropriate cost sharing prior to issuance of the NOFO. Even after USAID issues a NOFO, it may be appropriate to consider special circumstances and change the cost share requirement. In the case of restricted eligibility awards or an unsolicited application, the AO may wish to discuss or negotiate the cost share with the applicant.

USAID may not use a set formula in determining the level of cost share. The Planner should take several considerations into account when making cost share decisions. For example, it might be difficult for a recipient to meet a cost share requirement during an activity with a short timeframe. A specific program may be risky and discourages potential recipients from providing meaningful contributions. Eligibility may be limited to indigenous organizations with limited resources to cost share.

Unless cost sharing requirement does not apply, the Planner must provide the AO with a memorandum documenting the factors that were considered when determining the amount of cost share.

USAID may require cost sharing regardless of the type of organization, whether non-profit (local nongovernmental organizations, universities, foundations, and others) or commercial organizations, including for-profit businesses. In the case of a non-U.S. recipient, it is important to be flexible when establishing cost sharing requirements at the NOFO stage.

If an activity generates program income, the AO may approve use of program income to meet the cost sharing requirement of an award (see **303.3.10.4**).

### 303.3.10.2    Cost Sharing in NOFOs
Effective Date: 10/01/2024

43

10/01/2024  Partial Revision

If USAID makes a determination to require cost sharing in an award, it must state the requirements in the announcement. If USAID issues a NOFO and the Planner decides that the amount of cost share required should be changed, the Planner must provide an adequate justification and request the AO to issue an amendment to the NOFO, as applicable. Applications that do not meet the minimum cost share requirement, when applicable, are not eligible for award consideration.

Cost sharing may be considered in the merit review only if the funding announcement specifically addresses how it will be considered, e.g., assigning a certain number of additional points to applicants who offer cost sharing, or using cost sharing to break ties among applications with equivalent scores after evaluation against all other factors. Note that excessive reliance on cost sharing during the merit review may unfairly favor larger, better-funded organizations.

### 303.3.10.3    Meeting Cost Sharing Requirements
Effective Date: 12/26/2014

As part of the analysis of the applicant's proposed budget, the AO must review the applicant's proposed cost share contributions for cost realism. The AO must verify that the proposed contributions meet the standards set in **2 CFR 200.306** for U.S. organizations or the Standard Provision "Cost Sharing" for non-U.S. organizations. USAID does not apply its source and nationality requirements or the restricted goods provision established in the Standard Provision "USAID Eligibility Rules for Commodities and Services" to cost share contributions.

In the award budget, cost share must be expressed as a dollar figure rather than a percentage to assist in monitoring the amount. Cost sharing applies throughout the life of an agreement, and the AOR must monitor the recipient's financial reports to ensure that the recipient is making progress toward meeting the required cost share. If it appears that the recipient is not making adequate progress, the AOR must bring this to the attention of the AO. The AO then must initiate discussions with the recipient to resolve the issue. The AO has the authority to reduce the amount of USAID incremental funding in the following funding period or to reduce the amount of the agreement by the difference between the expended amount and what the recipient agreed to provide. If the award has expired or been terminated, the AO may request the recipient to refund the difference to USAID.

In-kind contributions are allowable as cost share in accordance with **2 CFR 200.306** for U.S. organizations and in accordance with the Standard Provision, "Cost Sharing" for non-U.S. organizations. This includes things such as volunteer time; valuation of donated supplies, equipment, and other property; and use of unrecovered indirect costs.

44

10/01/2024 Partial Revision

### 303.3.10.4    Program Income
*Effective Date: 10/01/2024*

**2 CFR 200** defines program income as gross income earned by a recipient that is directly generated by an activity under an award or earned as a result of the award during the period of performance, except as provided in 2 CFR 200.307(c). **2 CFR 200.307(a)** encourages non-Federal entities to earn program income to defray program costs when appropriate.

If program income is anticipated, the AO determines the most appropriate use of such program income and must state in the award how it will be used. **2 CFR 200.307(b)** specifies three approaches that an AO may use:

1)  Deduction - Program income is deducted from the award's total allowable costs to determine net allowable costs. When using the deductive approach, the recipient must use program income for current costs, and the total award amount must be reduced by the amount of program income earned, rather than increasing the funds committed to the project. Example: The award amount was $100,000. $10,000 of program income is earned. The program income must be used to reduce the award amount to $90,000. Total available funds for the program remain at $100,000 ($90,000 from the award and $10,000 from the program income earned). The deduction method is the preferred method to account for program income where program income is deducted from the total allowable costs to determine net allowable costs. This method reduces the Government's overall cost investment and risk.

2)  Addition - Program income is added to the award, increasing the total amount of the award, and is used to further eligible program objectives. Funds may be retained and used to further eligible program objectives during the term of the award. Example: The total award amount was $100,000. $10,000 of program income is generated. The total available funds for the program are now $110,000. This method must not be used without the prior approval of the AO and the approval must be stated in the award. Program income must be used for the purposes and under the conditions of the award.

    The AO must not allow the use of the additive approach to program income if the applicant or recipient has:

    -  An inadequate or deficient cost accounting system, or is otherwise unable to adequately report or account for program income;

    -  A history of frequent, large annual unobligated balances on previous awards; or

45

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000167

- Requested multiple extensions of the final budget period of the project period.

  If the AO determines that any of the above circumstances apply, the AO must not approve the additive approach but may consider another approach. The AO should also consider specific conditions, as specified in **2 CFR 200.207**.

3) Cost share - Program income can be used to meet any cost share requirement of the award. When using this approach, the total amount of the award remains the same. This method must not be used without the prior approval of the AO and the approval must be stated in the award. See also **2 CFR 200.307** and the Standard Provision "Program Income."

After the award the recipient may continue to use program income earned to further award objectives. While program income earned after an award has ended is not subject to Federal requirements governing the disposition of program income during the performance of the award, program income earned after the period of the award is subject to the cost principles of 2 CFR 200.400(g), which states that the non-Federal entity may not earn or keep any profit resulting from Federal financial assistance, unless explicitly authorized by the terms and conditions of the Federal award.

For-profit entities: After the period of the award, as part of the close out process, there must be an agreement on how the program income will be accounted for. For example, after the end of the award, all of the program income must be used for the same program elements and costs as in the award.

The AO must insert the applicable Standard Provision, "Program Income" in awards to both U.S. and non-U.S. NGOs.

A fixed amount award may generate and use program income in accordance with the terms and conditions of the award; however, the requirements of § 200.307 do not apply.

### 303.3.11   Cooperative Agreements and Substantial Involvement
Effective Date: 10/01/2024

a. When making an assistance award, the AO must select, in accordance with **ADS 304**, either a grant or a cooperative agreement as the appropriate implementing instrument. The **Office of Management and Budget Final Guidance on Implementation of the Federal Grant and Cooperative Agreement Act of 1977**, prescribes that Agencies "should limit their involvement in assisted activities to the minimum consistent with program requirements." Therefore, the AO must be satisfied that USAID's proposed involvement in an assistance activity is reasonable and necessary.

46

A cooperative agreement, as distinguished from a grant, provides for substantial involvement between the federal awarding agency and the recipient in carrying out the activity contemplated by the Federal award (**31 U.S.C. 6302-6305**).

**OMB's Final Guidance** also states that substantial involvement is a relative, rather than an absolute concept. Use of a cooperative agreement is primarily based on programmatic factors. USAID always has some administrative involvement in both grants and cooperative agreements for purposes such as monitoring performance, conducting site visits, reviewing reports, or providing approvals, such as those required by 2 CFR 200.308 and 2 CFR 700.16. "Substantial involvement" means involvement between USAID and the recipient that goes beyond such normal award administration and technical assistance (**2 CFR 200**).

In determining whether an award will need substantial USAID involvement, the AO must evaluate the type of overall relationship expected between USAID and the recipient and must not consider a single aspect or proposed involvement.

**b.** The following are elements of the determination of substantial involvement:

   **1.** When a cooperative agreement is the selected award type, the Activity Planner must describe the substantial involvement anticipated during the performance of the award in the SOI Memorandum. The Planner must consult with the AO and describe USAID's interests so that the award appropriately reflects the level of substantial involvement necessary. Additionally, the SOI Memorandum must directly and specifically tie each area of substantial involvement to an activity or activities in the program description to the AO's satisfaction. The AO must concur that the proposed involvement in an assistance activity is programmatically reasonable and necessary before deciding that a cooperative agreement is the appropriate instrument for the activity.

   **2.** The NOFO must describe the "substantial involvement" that USAID expects to have or should provide the reference to where the potential applicant can find that information.

**c.** Factors applicable to both grants and cooperative agreements that are not considered substantial involvement during performance include the following:

   ● Agency approval of recipient plans prior to award;

   ● Normal exercise of Federal stewardship responsibilities during the project period such as site visits, performance reporting, financial reporting, and audit

47

to ensure the recipient accomplishes the objectives, terms, and conditions of the award;

● Unanticipated Agency involvement to correct deficiencies in project or financial performance from the terms of the assistance instrument;

● General statutory requirements understood in advance of the award, such as civil rights, environmental protection, and provision for people with disabilities;

● Agency review of performance after completion; and

● General administrative requirements, such as those included in **2 CFR 200**.

**d.** The difference between technical assistance and substantial involvement:

The Agency may provide technical assistance, guidance, or advice to the recipient during the period of the award to enhance collaboration or engagement with the recipient. Such technical assistance, guidance, or advice is not considered substantial involvement when:

● USAID provides it at the request of the recipient;

● The recipient is not required to follow it; or

● The recipient is required to follow it, but USAID provides it prior to the start of the award, and the recipient understands this prior to the award of the instrument, for example, when more frequent reporting is required, as allowed by 2 CFR 200.328 and 2 CFR 200.329.

**e.** The examples of substantial involvement below are a guide, not a checklist. The AO must determine the appropriate level of substantial involvement based on the programmatic requirements of the award and include only those elements of substantial involvement as needed. Examples of potential areas of substantial involvement during performance include the following:

  **1.** The Agency's approval of the recipient's implementation plans during performance. USAID generally only requires approval of implementation plans annually; however, where changed contexts or new information require a pivot in the activity, USAID may consider changes to an implementation plan. If the AO has delegated authority to the AOR to approve implementation plans, the AOR must review the agreement's terms and conditions to ensure the AOR does not approve inadvertent changes to them.

48

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000170

2.  The Agency's ability to immediately halt an activity if the recipient does not meet detailed performance specifications (for example, construction specifications). These would be provisions that go beyond the suspension remedies of the Federal Government for noncompliance as stated in 2 CFR 200, including non-performance. The award must state that the AO may immediately halt an activity when identified specifications are not met. The award must include the identified specifications when executed. The AO and Recipient must sign a bilateral amendment for any material changes to the specifications in the award.

3.  The Agency's review and approval of one stage of work, before work can begin on a subsequent stage during the period covered by the cooperative agreement.

4.  The Agency's review and approval of substantive provisions of proposed subawards or contracts (see definitions in 2 CFR 200). These would be provisions that go beyond existing policies on Federal review of recipient procurement standards and sole source procurement. **2 CFR 200.308** already requires the recipient to obtain the AO's prior approval for the subaward, transfer, or contracting out of any work under an award. This is generally limited to approving work by a third party under the agreement. If USAID wishes to reserve any further approval rights for subawards or contracts that go beyond existing policies on Federal review of grantee procurement standards, it must specifically state such Agency involvement in the substantial involvement provision of the agreement.

5.  The Agency's involvement in the selection of key recipient personnel that goes beyond the Agency approval of key personnel required by 2 CFR 200.308(f)(2). Such substantial involvement should avoid any apparent or actual conflict of interest and should not appear to circumvent USAID, recipient, subrecipient, or contractor recruitment or hiring processes.

    This substantial involvement does not include provisions in assistance instruments for the participation of a named Principal Investigator for research projects.

6.  The Agency and recipient collaboration or joint participation, such as when the recipient's successful accomplishment of program objectives would benefit from USAID's technical knowledge. There should be sufficient reason for the Agency's involvement and the involvement

49

should be specifically tailored to support identified elements in the program description. Additionally, if the program will establish an advisory committee that provides advice to the recipient, USAID may participate as a member of this committee as well. Advisory committees must only deal with programmatic or technical issues, and not routine administrative matters.

7. Agency monitoring to permit specific kinds of direction or redirection of the work because of the interrelationships with other projects or activities. All such direction or redirection must be within the program description budget, and other terms and conditions of the award.

8. Direct agency *operational involvement* or *participation* to ensure compliance with statutory requirements such as civil rights, environmental protection, and provisions for people with disabilities that exceeds the Agency's role that is normally part of the general statutory requirements understood in advance of the award.

9. Highly prescriptive Agency requirements established *prior to award* that limit the recipient's discretion with respect to the scope of services offered, organizational structure, staffing, mode of operation, and other management processes, coupled with close monitoring or operational involvement during performance over and above the normal exercise of Federal stewardship responsibilities to ensure compliance with these requirements.

f. Only the AO may change or amend the program description, period of the award, total estimated amount or budget, and other terms and conditions of the award; however, the AO may delegate certain elements of substantial involvement to the AOR (see mandatory reference [ADS 303mai, Model Letters and Procedures for Designating the Agreement Officer's Representative (AOR) for Cooperative Agreements and Grants.](#))

### 303.3.12   Negotiation of the Award
Effective Date: 10/01/2024

a. **Review of Proposed Award Budget.** The AO must review the apparently successful applicant's budget to ensure that costs, including cost sharing, are in compliance with OMB's and USAID's policies. The recipient must justify in advance the proposed costs for each element of the program. If the recipient expects to earn program income during the award period, the schedule of the award must specifically state how the income will be applied. (The definition of program income is located in **2 CFR 200** and income application suggestions can be found in **2 CFR 200.307**.)

50

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000172

When reviewing costs, the AO must review the cost breakdown; and evaluate and analyze specific elements of costs for reasonableness and allowability of costs in the budget, including the allowability of the costs under the applicable cost principles. The review of the proposed budget helps the AO determine:

**(1)** The extent of the prospective recipient's understanding of the financial aspects of the program and the recipient's ability to perform the grant activities within the amount requested;

**(2)** Whether the applicant's plans will achieve the program objectives with reasonable economy and efficiency; and

**(3)** Any special conditions relating to costs that are in the award.

The AO must determine the level of the cost review based on the nature of the program, the amount and type of costs involved, and past experience with the applicant. For example, if an assistance award contains construction, then the AO must complete a detailed cost analysis for the construction component.

The AO may request M/OAA/Contract Audit and Support Division (CAS) assistance when reviewing the proposed budget. M/OAA/CAS could address whether the apparently successful applicant's budget is fair and reasonable for the proposed program, and whether the application is consistent with the Agency's cost accounting policies, procedures, and practices. This includes ensuring that the apparently successful applicant's indirect cost rates are consistent with any Negotiated Indirect Cost Rate Agreements (NICRA).

If the apparently successful applicant does not have a current negotiated indirect cost rate, the recipient may choose to charge a de minimis rate up to 15 percent of modified total direct costs (see 2 CFR 200.414(f)). If the prospective applicant chooses the de minimis rate, the AO must incorporate the 15 percent indirect cost rate in the award budget and the recipient must follow the requirements in 2 CFR 200.414(f).

The AO must negotiate with the applicant to resolve any issues related to proposed costs that do not comply with USAID policies before executing the award.

**b.      File documentation.** The **Agency Secure Image and Storage Tracking (ASIST) System** is the Agency's official electronic repository for all Acquisition & Assistance (A&A) award documentation. A&A staff must file all documentation relating to an award, from pre-solicitation through close out, in ASIST. AORs must also maintain their award administration files in ASIST. The requirements and procedures for filing award documents in ASIST, as well as standards for file documentation by award type are available internally at

51

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000173

10/01/2024 Partial Revision

**https://pages.usaid.gov/M/OAA/assistance-resources**.  The ASIST guidelines also contain guidance for maintaining older awards in the paper-based format. The AO must document the negotiation process for a new assistance award or an amendment of an existing award, along with other pre-award determinations in an Assistance Award Memorandum. The Assistance Award Memorandum must be included in the award file together with all applicable supporting documentation.

ADS 511, Essential Records Program requires that all essential records also be maintained in hard copy format. Most assistance awards will not meet the requirements of essential records. If the cognizant B/IO or Mission identifies the award as an essential record, in accordance with the procedures and criteria in ADS 511, AOs and AORs must also maintain the award and AOR files in hard copy. The Agency's Essential Records Program is managed by the Bureau for Management, Office of Management Services, Information and Records Division (M/MS/IRD).

### 303.3.13   The Award Process and Elements of an Award
Effective Date: 10/01/2024

Before making an award, the AO must ensure that:

- The program description clearly identifies the purpose of the program, contains an implementation plan that specifically identifies each element of the program, and specifies the duration of the assistance instrument.

- All elements of the award – including items in the schedule such as period of performance, award amount, place of performance, and program description – clearly and coherently express the specific understandings of both parties.

- The Branding Strategy and Marking Plan meet regulatory and USAID policy requirements. If the Administrator, or delegate, has provided a written determination for use of an additional or substitute logo or seal and tagline representing a presidential initiative or other high level interagency federal initiative, the AO must identify the alternate branding to be used in the award (see **2 CFR 700.16** or, for non-U.S. organizations, see the provision entitled "Marking and Public Communications Under USAID-Funded Assistance").

- All representations and certifications are completed and current.

- All "specific conditions" are identified (see **303.3.9.2**).

52

- The award complies with all applicable CFR requirements and Executive Orders in the mandatory references (**303.4**), the Standard Provisions, other ADS chapters, and other USAID guidance, as appropriate.

To avoid ambiguities and ensure the recipient's agreement, the AO must include in the award document all mandatory standard provisions and only those "Required as Applicable" standard provisions that are intended to be a term and condition of the award. The AO must determine which "Required as Applicable" standard provisions to include in the award using the guidance found in Applicability Statements of each "Required as Applicable" standard provision and the applicable mandatory references and additional help documents included with this chapter.

Before the award is signed, the AO must ensure that all of the elements of a legally binding agreement are present. These are:

- Competent parties,

- Proper subject matter,

- Sufficient consideration,

- Mutual understanding, and

- Agreement on the terms of the assistance instrument.

The AO's signature serves to obligate funds under a grant or cooperative agreement (see **ADS 621, Obligations**), as long as the AO accepts the recipient's application without substantial modification or negotiates any changes with the applicant. The AO will provide a copy of the grant or cooperative agreement to the recipient to ensure it agrees with the terms and conditions of the award. If the AO makes any substantive change to the program description or the budget or adds terms to the agreement that were not addressed during negotiations, such as a Substantial Involvement Understanding or "specific conditions" (see **2 CFR 200.207** and **303.3.9.2** and **303.3.11**), the AO must obtain the applicant's written agreement to the changes or additional terms before obligating funds.

Prior to signing an award, the AO must ensure that the entire award e is processed and generated in GLAAS, available only internally at https://pages.usaid.gov/GLAAS. The Assistance Award Memorandum must be documented accordingly. When the award is signed by all relevant parties, the AO or negotiator must upload a scanned copy of the fully executed award into ASIST.

### 303.3.14   Duration of Assistance Awards
Effective Date: 12/29/2022

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000175

10/01/2024 Partial Revision

The period of performance of an assistance award must not extend for more than five years at any one time, and not more than ten years from the original award date. For a total period of performance greater than ten years, the AO in collaboration with the AOR must prepare a written determination with a strong programmatic rationale to support the extended period of performance. The cognizant Mission Director (MD), Assistant Administrator (AA), or Head of an Independent Office, and the cognizant RLO or GC Bureau or Independent Office backstop attorney must clear the determination before it goes to the Administrator for approval. Extensions other than those authorized by 2 CFR 200.308(g)(2) are subject to the eligibility requirements of section **303.3.6.5**.

### 303.3.15    Designation of the Agreement Officer's Representative (AOR)
Effective Date: 12/29/2022

An Agreement Officer's Representative (AOR) assists in the programmatic monitoring or administration of an award. The AOR designation is specific to a particular individual for the specified award. This authority is independent of any other roles, responsibilities, and duties the designee may fulfill in their technical capacity.

The OU must nominate an AOR for each grant or cooperative agreement as early in the assistance planning process as practical. The AO must designate the AOR (and alternate, if applicable) and must not finalize an award until after they have signed the AOR designation letter in accordance with **ADS 303mai, Model Letters and Procedures for Designating the Agreement Officer's Representative (AOR) for Cooperative Agreements and Grants** and received the signed AOR acknowledgement.

At the time of the award, the AO must identify the AOR by name in the Schedule of the award and enter the AOR's name in GLAAS. When the award is executed, the AO must distribute the signed designation letter to the recipient, the paying office, the AOR and alternate, and other relevant parties. The signed designation letter must also be maintained in the award file.

In the event the AOR changes during the period of the award, the AO must re-issue the designation letter to the new AOR and receive the new AOR's acknowledgement. The AO must prepare a unilateral amendment in GLAAS to update the AOR designation, provide a copy of the signed designation letter along with the amendment to the recipient, the paying office and other relevant parties, and maintain a signed copy in the award file.

Before the AO designates the AOR and alternate AOR, the nominated individuals must have met the eligibility, certification and training requirements in a. and b. below.:

**a.    Eligibility and Appointment**

54

**(1)** In order to be eligible for designation as an AOR or an alternate AOR, the nominee must:

- Be authorized to perform inherently governmental functions. The nominee must work for USAID as a(n):

    - Direct-hire employee,

    - Employee of another U.S. Government agency through an interagency agreement or on detail, or

    - PSC (U.S. citizen or national, Foreign Service National or Third Country National).

- Have an unlapsed COR certification in the Federal Acquisition Institute Cornerstone OnDemand (FAI CSOD) system and meet the Agency-specific mandatory training requirements described below. The FAI CSOD system will show the status of an unlapsed COR certification as "certified," based on the individual's progress in completing required continuous learning points (CLPs). (Note: FAI CSOD only certifies CORs, but USAID has incorporated FAC-COR certification requirements into its AOR Designation requirements, as more fully described in b. below).

    - Possess knowledge, training, and experience commensurate with the responsibilities to be delegated.

**b.    AOR Eligibility and Agency-Specific Training Requirements**

It is USAID policy that candidates for AOR designation must meet eligibility requirements that are based on (1) FAC-COR certification and training requirements applicable to CORs and (2) Agency-specific training, as determined by the USAID Acquisition Career Manager (ACM) in M/OAA's Professional Development and Training Division. FAC-COR certification requirements are available on the USAID intranet at **PDT Division's website**.

In addition to the training required for initial FAC-COR certification or maintenance of an existing certification, individuals must provide to the AO proof of having completed the following Agency-specific mandatory training requirements, or predecessor courses, appropriate to the AOR level determined by the AO as appropriate for the specific award. The AOR nominee must provide this documentation to the AO before the AO may issue the designation letter (see **ADS 303mai**):

AOR Level I:

55

DEFMTDAPP_000177

- USAID 110 Assistance*,

- USAID 103 – PDT ASIST Overview,

- USAID 101 – USAID Accruals On-Line Training, and

AOR Level II:

- All Agency-specific Level 1 Requirements listed above, and

- USAID 201 Assistance*.

M/OAA's Professional Development and Training Division (M/OAA/PDT) maintains a record of the qualifying predecessor courses. Predecessor courses will only be accepted if certification was completed no later than September 30, 2022. Thereafter, only those courses listed above will be accepted.

In order to maintain eligibility to carry out the delegated AOR responsibilities, the AOR must complete eight CLPs every two years for Level I or 40 CLPs every two years for Level II during the window indicated in FAI CSOD. Specific courses may be assigned to AORs for CLPs. If the AOR fails to complete the required CLPs the AOR's eligibility will lapse and the individual will no longer have the authority to perform the functions of an AOR.

**(1) Exceptions to Eligibility and Agency-Specific Training Requirements:**

The following individuals may be designated as AORs without completion of the FAC-COR certification program and most of the Agency-specific training requirements:

- Warranted Contracting/Agreement Officers;

- Procurement Management Certification Program (PMCP) certified individuals; and

- Federal Acquisition Certification in Contracting (FAC-C) certified individuals.

However, the above individuals must still request and be granted FAC-COR certification in FAI CSOD and complete the USAID 101-USAID Accruals On-Line Training before the AO can designate the individuals as AORs.

**c.    Issuing the AOR Designation Letter**

56

AOs must use the Standardized Designation Letter, essentially as written, to appoint an AOR. AOs may tailor the letter in accordance with guidance provided in **ADS 303mai, Model Letters and Procedures for Designating the Agreement Officer's Representative (AOR) for Cooperative Agreements and Grants**.

The AO may also designate an alternate AOR to perform AOR duties during the absence of the AOR. The alternate must meet the AOR eligibility requirements and be appointed by designation letter, preferably the same letter as the AOR.

### d.      Limitations on AOR Authorities

AOR authority does not include communicating with the recipient, either in writing or verbally, or otherwise committing to changes that affect the program, cost, period of performance, or other terms and conditions of the award. Only an AO has the authority to take such actions. The Standardized Designation Letter further states the specific limitations of the AOR designation.

AORs may enlist the assistance of others to:

- Conduct fact finding;

- Provide analyses or interpretations of programmatic requirements; and

- Make recommendations, among other assistance that may be sought.

However, the AOR remains accountable for the delegated responsibilities and is the only person authorized to carry out the functions described in the AOR designation letter.

The AOR is not authorized to further delegate this authority. If neither the AOR nor the alternate is available to perform their duties, the AOR must direct the recipient to the AO for guidance. No other individuals are authorized to approve recipient payment requests or perform other AOR functions.

### e.      Revocation of an AOR Designation

The AOR designation is effective for the duration of the award unless otherwise specified or is subsequently revoked by the AO in accordance with **ADS 303mai, Model Letters and Procedures for Designating the Agreement Officer's Representative (AOR) for Cooperative Agreements and Grants.** The AO is responsible for monitoring the AOR's performance in administering the award, which includes maintaining proper files of communications with the recipient, actions taken within the designated authorities, and properly filing related documentation in ASIST.

57

AOs have the authority to revoke a designation letter in writing at any time if an individual's performance as an AOR is unsatisfactory.

### 303.3.16    Congressional Award Notice System
Effective Date: 02/20/2009

The Congressional Award Notice System requires the AO to notify the Bureau for Legislative and Public Affairs (LPA) when they make certain awards to U.S. organizations.

**a.**    AOs must follow the notice procedures in **ADS 302man, Congressional Award Notice**. This requires the AO to provide notice to LPA AFTER signing but BEFORE releasing, or allowing to be released, an announcement of the awards listed below. This restriction on announcing the award applies to notifying the awardee that the award has been signed. For further details, see **ADS 302man** Section II, Other Considerations.

**b.**    Types of awards that require notice include the following:

**(1)**    Awards of any value to an organization that has not previously received an award from USAID.

**(2)**    Any award with which there was Congressional correspondence during the pre-award stage. The Bureau for Legislative and Public Affairs (LPA) will alert the AO that such correspondence has occurred, and the AO will flag the award as falling under these notice criteria and procedures.

**(3)**    Any award for a particular program or geographic region that the operating unit or LPA identifies as being of particular interest to Congress, the Agency, or the general public; for example, earthquake relief in Haiti or the international HIV/AIDS program might be of particular interest. LPA will coordinate with its liaison in the operating unit to identify these awards and will alert the operating unit, the AO, or both of them at the earliest opportunity before the award decision.

**(4)**    Grants, cooperative agreements, and any amendment to them with a total estimated amount or increase in the total estimated amount of US $500,000 or more, respectively. Amendments providing only incremental funding (and involving no increase to the award amount) are not included.

### 303.3.17    Distribution of Awards
Effective Date: 06/01/2006

58

Generally, distribution of awards is at the discretion of the AO. At the minimum, a copy of the agreement document and all amendments to the award must be part of the official award file and provided to the:

- Recipient,

- AOR,

- Office responsible for payment under the agreement, and

- Accounting station, if it is different from the office responsible for payment.

### 303.3.18   Award Administration
Effective Date: 10/01/2024

Award administration includes all interactions concerning the award between USAID officials and the recipient from the time the award is made until the end of USAID support. The specific nature and extent of award administration varies from award to award in the normal exercise of Federal responsibilities. It ranges from reviewing and analyzing performance reports and performing site visits to specific elements of substantial involvement by USAID under a cooperative agreement.

The Agency's role in administration is limited to measuring and evaluating the recipient's progress and any appropriate substantial involvement. The Agency and its representatives must not control or try to control the recipient's or any subrecipient's day-to-day management of the program.

a.    **Administrative Duties.** The AO and AOR share in the oversight of an assistance award. It is essential that they work as a team in order to administer the grant or cooperative agreement effectively. While there is a clear division of responsibility between the functions, AO and AOR functions are closely related and cannot be performed in isolation from each other. Both the AO and AOR's actions must be limited to monitoring the recipient's progress in achieving the objectives of the program description and verifying that the activities being funded by USAID conform to the terms and conditions of the award.

Upon receipt of the final report (due no later than 120 calendar days after the period of performance per 2 CFR 200.329(c)), the AOR must conduct a timely review of the recipient's performance. Once completed, the AOR must submit the performance review to the AO for review. The **Performance Review** template meets these policy requirements and is only available to Agency staff on the intranet.

59

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000181

The AO, and AOR as delegated, provide oversight of the financial management aspects of the award through reviews of reports, correspondence, site visits, or other appropriate means. When necessary, the AO will request or arrange for special audits. The AO is responsible for all award suspensions and terminations, except for terminations based on national interest, which the Assistant Administrator has authority over.

If program income is anticipated to be earned under the award, it should be addressed in Section D of the NOFO (RFA or APS) and documented in the award. As part of an AOR's financial management responsibilities, the AOR is responsible for monitoring program income throughout the life of the award. (See **2 CFR 200.307** or, for non-U.S. organizations, see the provision "Program Income.")

The AO should give a post-award orientation to the recipient and AOR to clarify the roles and responsibilities of the USAID officials who will administer the award. The AO may delegate specific authority to the AOR and must notify the recipient in writing of the delegation, either in the schedule of the award or by letter. The AO must ensure that the award does not include administrative approvals that are in conflict with the regulations and policies of **2 CFR 200** and **2 CFR 700**, **ADS 303maa, Standard Provisions for U.S. Nongovernmental Organizations**, and **ADS 303mab, Standard Provisions for Non-U.S. Nongovernmental Organizations**. If the AOR becomes aware of any other administrative requirements imposed on the recipient, the AOR must immediately notify the AO.

The AO is the records custodian for all official communication that constitutes an amendment of the award. The AOR must keep the AO informed of the recipient's performance. The AOR must ensure that the AO receives copies of all performance and financial status reports, as appropriate. The AOR reviews all performance and financial reports for adequacy and responsiveness. When reports are not on time, inadequate, or some other problem becomes apparent, the AOR advises the AO to take the necessary action.

The AOR must ensure that the recipient complies with the document submission requirements in the Mandatory Standard Provision in their particular award (see **ADS 303maa, M21**, **ADS 303mab, M8**, and **ADS 303mat, M1**). The Standard Provisions implement the DEC submission requirements in **ADS 540, USAID Development Experience Information**, specifically section **540.3.2.5, Documentation Grantees Submit to the Development Experience Clearinghouse (DEC)**. Documentation that is not considered development experience material is described in **ADS 540.3.2.6, Documentation Agency Contractors Must Not Submit**. **ADS 540.3.2.11**, Where to Submit Development Experience Documentation, provides the Web site and mailing address for

60

submitting material. Additionally, the AOR must ensure that recipients submit data to the Development Data Library in accordance with **ADS 579**.

When an amendment to the award is necessary, the AOR must prepare the necessary internal documentation to support the amendment and meet the satisfaction of the AO.

**b.**     **Site Visits.** Site visits are an important part of effective award administration because they usually allow a more effective review of the project. Joint visits by the AO and the AOR are encouraged. When the AO or AOR makes a site visit, the AO or AOR must write a brief report highlighting the findings and file the report in the official award file in ASIST.

**c.**     **Award Amendments and Programmatic Changes.**

Any amendments to the award must be made in accordance with **2 CFR 200**.

**1.**     Unilateral Amendments

An unilateral amendment means an "administrative change" by a written amendment that does not affect the substantive rights of the parties. Only the AO needs to sign a unilateral amendment. The AO may execute the following types of unilateral amendments without any further approvals:

- Incremental funding actions;

- An extension authorized by **2 CFR 200.308(g)(2)**; and

- Other administrative changes, like changes to the AOR, award administration office, payment office, and other non-substantial changes.

**2.**     Bilateral Amendments

Bilateral amendments are those that change the stated terms of the award and require the AO to amend the award. A bilateral amendment is an amendment signed by the AO and the recipient. Bilateral amendments reflect the agreement of the parties to change a term or terms of the award when it is in the mutual interest of both the Agency and the recipient. Bilateral amendments include changes that:

- Extend the period of the award beyond what is authorized in **2 CFR 200.308(g)(2)**;

DEFMTDAPP_000183

- Increase the Total Estimated Amount or revise the budget (subject to approval requirements of sections **303.3.6.4** and **303.3.6.5**);

- Alter the explicit purpose or objectives of the award; or

- Establish new or different program objectives.

**3.** Programmatic Changes

Not all programmatic changes affect the terms of the award itself or require amendments to it. As stated in the Program Cycle Principles in ADS 201.3.1.2, "USAID must be able to readily adapt programs in response to changes in context and new information." The AOR is responsible for using Collaborating, Learning, and Adapting (CLA) approaches to maximize program results. As such, the AOR, as delegated by the AO, may approve revisions to the recipient's implementation plan as formally requested by the recipient and when consistent with ADS 303.3.11's guidance on technical assistance or substantial involvement. Such requests could arise through formal processes, such as annual or semi-annual work planning, or informal processes, such as "pause-and-reflect" opportunities.

Examples of revisions may include the following:

- Adding or changing the number or type of interventions, or discontinuing particular interventions described in the implementation plan that are no longer effective or critical to achieving the programmatic objective; and

- Adding or changing the geographic focus of particular interventions, provided that it is not outside the geographic scope defined in the award.

**d.    Terminations.**

AOs must notify the Suspending and Debarring Official (SDO) and the Bureau for Management, Office of Management Policy, Budget, and Performance Responsibility, Safeguarding, and Compliance Division (M/MPBP/RSC) in writing at least five days prior to proceeding with a termination based on failure to comply with the terms and conditions of an award. The AO must provide the following information to the SDO at **compliance@usaid.gov**:

- Recipient's name;

- Unique Entity Identifier (UEI);

- Full Street Address;

62

- Award number;

- Period of Performance;

- AO and AOR names;

- Award value; and

- Reason for termination.

The AO must report the following in SAM (sam.gov) using CPARs:

- If the Agency does not make a Federal award to an applicant because the AO determines that the applicant does not meet the minimum qualification standards as described in 2 CFR 200.206(a)(2), in accordance with 2 CFR 200.213
- A termination for material failure to comply in accordance with 2 CFR 200.340, including any termination for failure to comply with Never Contract with the Enemy, in accordance with 2 CFR 183.20

- Failure to comply with closeout requirements, in accordance with 2 CFR 200.344

**e.    Novations.**

USAID may, when in its interest, recognize a recipient's assignment of a grant or cooperative agreement to a third party when the assets involved in the performance of the award are transferred with the award.

1.  Assistance awards are not assignable absent written consent from the Agency. Such consent must be memorialized in a novation agreement between the Agency, the recipient, and the third party. An AO with the authority to approve a novation may choose to recognize the third party as the successor in interest to the award, if such recognition is in the Agency's interest, conforms with all applicable laws, and the third party's interest in the award arises out of the transfer of:

    i.   All of the recipient's assets, or

    ii.  The entire portion of the assets necessary to perform the project described in the award.

2.  When the AO determines that it is not in the Agency's interest to consent to the novation of an award from the original recipient to a third party, the original

63

recipient remains subject to the terms of the award, and the AO may exercise all legally available remedies under 2 CFR 200.339 through 200.343, or that may be otherwise available, should the original recipient not continue to carry out the award's program.

3.  The AO may require submission of any documentation in support of a request for novation, including but not limited to documents identified in 48 CFR Subpart 42.12. The AO may use the format in 48 CFR 42.1204 as guidance for novation agreements identified in paragraph (a) of this section.

Unless otherwise stated in the award, the AO for novation purposes is in M/OAA/CAS (see ADS 101).

### 303.3.19    Unauthorized Commitments and Expenditures Requiring Prior Approvals
Effective Date: 12/29/2022

a.    **Unauthorized Commitments.** When a USAID official, who does not have the authority to do so, acts in a way that leads a recipient or potential recipient acting in good faith to believe that USAID has committed to make a specific award; change the amount of an existing award; or, revise an existing award budget, program description, or any of the terms and conditions of the award, the official has made an unauthorized commitment. It is against U.S. Government and USAID policy to enter into unauthorized commitments.

When the AO believes that an unauthorized commitment should be ratified and recommends payment, and the cognizant General Counsel or Resident Legal Officer concurs with the recommendation, the AO submits an action memorandum through the M/OAA/Evaluation Division to the Director, M/OAA, for ratification. The memorandum must show:

- Evidence that the grant would otherwise have been proper, if made by an appropriate AO;

- The AO reviewing the unauthorized commitment must determine the cost to be reasonable;

- The provided program has furthered USAID's objectives;

- The findings of facts essential to the situation, arranged chronologically with cross references to supporting enclosures;

- The nature of the unauthorized commitment and funds citation;

64

- Funds are available and were also available at the time the unauthorized commitment was made;

- The recommended disposition; and

- A written statement from the person who made the unauthorized commitment. This statement must detail how the mistake occurred, what training the individual has received from the AO on proper procedures since the incident, and what steps will be taken to prevent future unauthorized commitments.

Only the Director, M/OAA, has the authority to ratify unauthorized commitments.

b.    **Expenditures Requiring Prior Approval.** Recipients must comply with prior approval requirements that are established in the agreement. Failure to comply with prior approval requirements generally causes USAID to deem the costs unallowable.

When it is in the best interest of the Federal Government and funds are available, the AO may review the facts and circumstances of the expenditure made without prior approval and approve the expense if the:

- Expenditures must be otherwise allocable, allowable, and reasonable.

- AO could have approved the expenditures at the time that they were made.

- AO has the authority to approve the same type of expenditure at the time of the request for approval.

- Approval promotes efficient implementation of USAID's program, or

- Facts and circumstances of the expenditure show that the recipient was not grossly negligent and did not intend to circumvent USAID requirements.

The recipient must submit a written request to the AO addressing the criteria set out above and the AO must make a written determination.

### 303.3.20   Use of Languages Other than English
Effective Date: 10/01/2024

65

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000187

**a.  Authority**

In accordance with 2 CFR 200.111, AOs may authorize the use of languages other than English for NOFOs, applications, and certain other award-related documentation in accordance with the requirements and limitations described in this section 303.3.20.

**b.  General Requirements**

In addition to the general requirements below for authorizing use of a language other than English, see c. through e. for requirements and limitations for specific document types.

**(1)**     Prior to authorizing use of languages other than English, the AO in consultation with the OU determines whether the Mission has the resources available to process documents in the languages other than English.

**(2)**     To authorize use of languages other than English, the AO must specify in the NOFO or the terms and conditions of the award, as applicable: 1) the acceptable language(s), and 2) the types of documents that can be accepted in other languages in response to the NOFO or during performance of the award. The AO must also state if English translations are required in addition to document submissions in other than English.

**(3)**     To authorize use of languages other than English under an existing award that requires submissions in English, the AO must issue a amendment to the award to specify the change in language requirements (i.e., the acceptable language(s) and the types of documentation that can be accepted) and should update the standard provisions to the latest version available if the standard provisions incorporated into the award pre-date August 7, 2024.

**c.  NOFOs.** USAID may translate NOFOs when translations may serve to increase the pool of applicants or the participation of a specific community.

**(1)**     **Controlling Language.** USAID may translate NOFOs to a language other than English if the AO maintains an official controlling English language version of the NOFO, including the terms and conditions, in the award file.

**(2)**     **Required Statement in NOFO.** All NOFOs translated to a language other than English must include the following statement (such as in Section D.1 "General Content and Form of Application"): "In the event of inconsistency

66

between any terms of this NOFO and any translation into another language, the English language version will control."

**d.  Awards.** USAID should consider issuing award documentation in a language other than English when a significant portion of the recipient or subrecipient's employees anticipated to administer the award are not fluent in English and would benefit from a version of the award in another language. The AO may also encourage applicants to budget for direct translation costs, if needed, by including a statement in the NOFO.

**(1)  Controlling Language.** Awards may be issued in or translated to a language other than English if the AO maintains an official controlling English language version of the award, including the terms and conditions, in the award file.

**(2)  Required Statement in Award.** All awards translated to a language other than English must include the following statement in the award terms (such as in Attachment A, Schedule): "In the event of inconsistency between any terms of this award and any translation into another language, the English language version will control."

**e.  Applications.** AOs may authorize the submission of applications and pre-application documents (such as concept papers) in a language other than English without requiring a translation.

**f.  Submissions During Award Performance.**

**(1)  Correspondence.** The AO may authorize the submission of correspondence in a language other than English without requiring English translations if such correspondence is not required to be submitted to the DEC or DDL. Such correspondence includes approval requests submitted in accordance with the terms of the award, requests for technical assistance or guidance, and other routine emailed or mailed communications related to award administration.

**(2)  Material Required to be Submitted to the DEC or DDL.** The AO should not authorize the submission of material that must be submitted to the DEC or DDL in a language other than English without also requiring an English translation.

**(3)  Financial Reports and Submissions to U.S. Government-Wide Systems.** AOs cannot authorize the following to be submitted in a language other than English:

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000189

      i.   Financial reports, including financial audit reports, or

     ii.   Submissions to U.S. Government-wide systems, including UEI, SAM registration, reporting of executive compensation (www.sam.gov), or subaward reporting via the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) (www.fsrs.gov).

### 303.3.21  Subawards
Effective Date: 10/01/2024

**Note Regarding Source and Nationality Rules:**

1. **22 CFR 228** does not apply to the selection and award of subawards as defined at **2 CFR 200**.

2. **22 CFR 228** "Procurement of Commodities and Services Financed by USAID Federal Program Funds" is the regulation that governs the source and nationality of goods and services procured with USAID funds. This regulation applies to USAID-financed goods and services procured by a recipient and subrecipients (see the provision entitled "USAID Eligibility Rules for Goods and Services" in the Standard Provision for U.S. Nongovernmental Organizations and Standard Provisions for Non-U.S. Nongovernmental Organizations). **22 CFR 228** provides those circumstances to which Source and Nationality rules do not apply.

**a.**    **Prior Approval of Subaward Activities**

Only the AO, or the AOR (if delegated the authority), may provide prior approval of subaward activities, including fixed amount subawards. The AO or the AOR is responsible for the requirements in this section a.

Prior to providing subaward approval (see 2 CFR 200.308(f)(6)), the AO (or AOR) must obtain confirmation from the recipient that a risk assessment has been conducted for the proposed subrecipient(s) by name, including the recipient's verification that the subrecipient(s):

1) Does not have active exclusions in SAM (**www.sam.gov**);

2) Does not appear on the Specially Designated Nationals (SDN) and Blocked Persons List maintained by the U.S. Treasury for the Office of Foreign Assets Control, sometimes referred to as the "OFAC List" ; and

3) Is not listed in the United Nations Security Council designation list.

68

DEFMTDAPP_000190

Note that if subaward activities are proposed in the application, and the prospective recipient has otherwise provided the information required above and as specified in the NOFO, then the AO may include the approved subaward activities in the award. A change of subrecipient only requires prior approval if the AO includes the requirement in the terms and conditions of the award. In general, AO should not require prior approval of a change of subrecipient unless the inclusion of the specific subrecipient was a determining factor in the merit review or eligibility process at the selection and award phase (303.3.6.2). This requirement does not apply to procurement transactions for goods and services.

A recipient must seek AO approval to use fixed amount subawards. If approved, U.S. organizations subject to 2 CFR 200 may issue fixed amount subawards of up to $500,000 each. This ceiling does not apply to non-U.S. recipients who are not subject to 2 CFR 200.

**b.    Subawards to PIOs and Partner Government Entities**

If programmatically appropriate, a recipient may enter into a subaward with a Public International Organization (PIO) (ADS 308), and in exceptional circumstances with a partner government entity (also known as a partner government implementing entity as defined in **ADS 220**).

Subawards that provide funds to partner government entities for activities to be implemented by the government entity must meet the conditions, requirements, and approvals outlined in this section. The requirements in this section do not apply to subawards to a partner government entity solely for "in-kind" contributions, technical assistance, or other activities provided by the recipient to or on behalf of the partner government entity.

**c.    Approval of Subawards to Partner Government Entities**

Prior to an AO approving a subaward that provides funds to a partner government entity for activities to be implemented by that entity, the AO must verify that these types of subawards have been approved either in:

**(1)**    The Activity Approval Memo (or AAM amendment) (**ADS 201**); or

**(2)**    A Determination and Finding (D&F), as outlined below.

**(a)**    If the Operating Unit (OU) has not addressed subawards to partner government entities in the AAM (or AAM Amendment), the OU must prepare a D&F that documents:

69

(i)   How a subaward to a partner government entity is consistent with the results of the eligibility and risk assessment conducted under ADS 220, among other criteria;

(ii)   How the subaward will contribute to sustainability other than in cases where immediate development results outweigh sustainability goals;

(iii)  That there are no alternative means to achieve the foreign assistance purpose other than through subawards to partner government entities; and

(iv)  That any partner government subrecipient financial risks identified by the recipient will be mitigated or addressed in the subaward.

**(b)**  The D&F must be prepared by the OU and cleared by the RLO/GC, AO, and M/CFO/Mission Controller. The D&F must be approved by the Mission Director for subawards under Mission executed awards, and by the cognizant Pillar Bureau Assistant Administrator, in consultation with the relevant Regional AAs, for subawards under USAID/Washington executed awards. The OU must provide a copy of the approved D&F to the AO to be included in the award file.

**(c)**  The subaward must include language that captures the audit, monitoring, reporting, and oversight requirements in the recipient's award. This is not subject to deviation. The subaward must also include the appropriate flow down requirements from the prime award.

**d.    Applicable Standard Provisions**

A U.S. recipient organization providing a cost reimbursement subaward to a non-U.S. subrecipient organization must include in the subaward the Standard Provisions for Non-U.S. Nongovernmental Organization (see ADS 303mab). A non-U.S. recipient organization providing a cost reimbursement subaward to a U.S. subrecipient organization must include in the subaward the Standard Provisions for U.S. Nongovernmental Organizations. A recipient (U.S. or non-U.S. nongovernmental organization) providing a fixed amount subaward to a U.S. or non-U.S. subrecipient organization must include in the subaward the Standard Provisions for Fixed Amount Awards. For subawards to PIOs, the recipient must include in the subaward the Standard Provisions for Cost-Type Awards to PIOs in **ADS 308, Awards to Public International Organizations**.

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000192

For subawards to partner government entities, in addition to the requirements in section 303.3.21.c above, the recipient must flow down the appropriate terms and conditions to meet the requirements of the prime award. When questions arise concerning the appropriate provisions for subawards to partner government entities, the AO must consult with the cognizant attorney in GC or the cognizant RLO. An approved deviation (**303.3.3**) is required before the recipient may deviate from the terms and conditions of its award from USAID; however no deviation will be authorized from the audit, monitoring, reporting, and oversight mandatory and applicable standard provisions and requirements in **303.3.21c.**

e.     **Defense Base Act Insurance**

The Defense Base Act (DBA) does not apply to grants and cooperative agreements nor to subawards under these instruments. Although the DBA rate USAID negotiates for contracts does not apply to grants and cooperative agreements, recipients who desire to purchase DBA coverage may negotiate rates at the discretion of the insurance carrier.

Recipients must require contractors who are awarded procurement contracts under the assistance instruments to obtain DBA coverage for their employees performing services overseas (see the Required As Applicable Standard Provision entitled "Contract Provision for DBA Insurance under Recipient Procurements" in ADS 303maa and 303mab).

See AAPD 22-01 Defense Base Act (DBA) Insurance for additional information regarding USAID's DBA requirements.

### 303.3.22    The Role of the Agreement Officer in the Debt Collection Process
Effective Date: 08/22/2013

**The Federal Claims Collection Act of 1966 and the Debt Collection Improvement Act of 1996 (DCIA)** mandates that agencies comply with standard, Government-wide debt collection procedures and centralize the Government-wide collection of delinquent debt. USAID's policy on debt collection can be found in **22 CFR 213**, Claims Collection; **2 CFR 200.346**, **Collection of Amounts Due**; and **ADS 625, Accounts Receivable and Debt Collection** (see **ADS 303san, Agreement Officer's Role in Debt Collection** for additional guidance).

The AO is responsible for determining if a debt is owed by the recipient and the amount of the debt owed. Preferably, the amount of the debt will be determined by a negotiated settlement between the AO and the recipient. However, if the parties do not agree on the amount, the AO must unilaterally determine the amount of the debt (see  **625.3.4.1 Claims Originating Under Acquisition and Assistance Instruments and 625.3.4.2**

71

**Claims Originating Under Financial Audit**.) If the recipient disagrees with the AO's determination, see **303.3.23** below.

The AO must promptly issue a demand letter for payment of such debt. A proper written notice ensures the Agency has a legally enforceable debt. The initial demand letter must include the appropriate information and due process procedures contained in 22 CFR 213.8 - Written Demand for Payment Notice. Even if the debt is or will be the subject of a bilateral amendment or the recipient has agreed to repay the debt, the AO must issue a demand letter as soon as the AO has determined that an actual debt is due. The AO must send a copy of each demand letter to the cognizant billing office immediately upon issuance, and request acknowledgement of receipt. Collection of the debt is the responsibility of the billing office (Mission Controller or M/CFO/WFS).

If the recipient requests approval of installment payments, see **22 CFR 213.19 Installment Payments** for relevant regulations and procedures.

### 303.3.23    Disputes and Appeals
Effective Date: 06/18/2012

**2 CFR 700.15** and the **ADS 303mab, Standard Provision for Non-U.S. Nongovernmental Organizations** "Disputes and Appeals" establishes that the AO decides any dispute between the recipient and USAID arising under the assistance award. The AO's decision is final unless the recipient appeals the decision as outlined below.

### 303.3.23.1    Disputes
Effective Date: 10/01/2024

The AO must give the recipient a written final decision within sixty (60) calendar days of receiving notice from the recipient of a dispute. If the AO is not able to reach a final decision within that time, the AO must notify the recipient that the Agency requires more time to consider the dispute. The AO must place a copy of the final decision in the award files.

### 303.3.23.2    Appeals
Effective Date: 10/24/2023

If the recipient disagrees with the AO's final decision, the recipient may appeal the AO's decision to the Assistant Administrator, Bureau for Management, or designee. The appeal must be in writing and must be email time stamped or postmarked within thirty (30) calendar days of receipt of the AO's final decision. The recipient must include all relevant and material evidence to support its position and must provide a copy of the appeal to the AO. If USAID has issued a Bill of Collection, the Bill of Collection may be suspended in accordance with **ADS 625** pending resolution of the appeal.

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000194

Immediately upon receiving an appeal, the Assistant Administrator, Bureau for Management, or designee, and the AO must forward the appeal to M/MPBP/RSC at **compliance@usaid.gov**. M/MPBP/RSC will:

- Consult with other divisions within M/OAA as needed before preparing a recommendation for the deciding official; and
- Coordinate a review by GC/A&A and/or GC/LE.

Within sixty (60) calendar days of receiving the appeal, M/MPBP/RSC must notify the recipient of the status (i.e., denied, approved, or more time is needed).

## 303.3.24    Types of Assistance Instruments
Effective Date: 10/01/2024

AOs must structure assistance awards in the manner that best achieves programmatic results while complying with regulation and policy. The AO has flexibility in determining the type of award instrument in accordance with the methods for structuring assistance awards found in **2 CFR 200**, **2 CFR 700**, and this ADS chapter, including:

- Renewal Awards;

- Simplified Grants;

- Fixed Amount Awards (see **2 CFR 200** for definition); and

- Leader with Associate Awards.

During the Planning Phase, the AO and the Activity Planner make a determination on the duration and type of instrument (see **ADS 201, Program Cycle Operational Policy**). The Foreign Assistance Act of 1961, as amended (FAA), authorizes the Agency "… to make grants to make and perform agreements … in furtherance of the purposes and within the limitations of the Act." The Federal Grants and Cooperative Agreements Act requires that a grant agreement must not be used to acquire property or services for the direct use or the direct benefit of the United States Government.

When the AO has determined that an award will be an assistance instrument, the AO must then determine whether it should be a grant or cooperative agreement (see **2 CFR 200** for the full definition of a cooperative agreement and a grant).

### a. Renewal Awards

A renewal award (grant or cooperative agreement) allows an award to adapt, within the five-year maximum period of performance, to changing contexts, lessons learned during implementation, and performance by related activities within a project that affect the overall effectiveness of the initial award. A renewal award provides a specific level of support for an initial specified period of time or an initial set of programmatic activities and milestones, with a statement of intent in the NOFO of the possibility of a subsequent award to provide additional support for the project for succeeding periods, activities, or milestones. The Agency may renew these awards provided funds are available, the results achieved warrant further support, and the recipient meets any other renewal conditions specified in the award. Renewal awards are also known as "continuation grants." A renewal award allows for the continuation of an award beyond its initial period, but not to exceed the total period of performance specified in the original award. Renewal awards may also allow for the continuation of an award beyond initial activities or initial milestones. A renewal award requires the recipient to reapply at a specified point(s) during performance to continue the award. As part of the re-application, the Agency may revise the award and define further activities within the general program description of the award.

Determining whether a renewal award is appropriate

Use of a renewal award allows an activity to be approved for a multi-year period (up to five years), or for additional activities or milestones within the five-year period. This approach allows for adaptability of an activity, through redirection and establishment of new targets. However, this approach may be more labor intensive for both the Operating Unit and the recipient as the award has to be renewed for the additional period or activities. The AO should consider whether the benefits of this approach to a particular activity outweigh the additional administrative burden; for example, when performance targets cannot be established at the initial award but will be set on an annual basis. This approach may help the Agency and recipients to respond to contextual changes and lessons learned in, for example, highly fragile, high-risk, or conflict-sensitive environments.

Publicizing

The NOFO must establish the initial period of the award, describe the timeframe for the recipient to request renewal, and specify the period of performance covered by the initial period and all renewal periods. The NOFO and any resulting award must specify when the recipient must submit the renewal application(s). The NOFO and any resulting award must specify the process and criteria for renewal, and the content of the recipient's request for renewal. **2 CFR 200 Appendix I**, identifies Section B of the NOFO as the place to address whether applications for renewal of existing awards must be considered along with applications for new Federal awards.

Renewals

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000196

10/01/2024  Partial Revision

The AO may renew the award following the process and criteria established in the NOFO and the award. The AO must not renew the award on a non-competitive basis beyond a five-year period of performance or other renewal conditions without a restricted eligibility determination as required in **303.3.6.5**.

Renewals with limited competition

The AO may also renew an award by using a process for limited competition among a specified group of recipients. For example, the Agency may make the initial award to multiple recipients and the AO could provide for an award renewal only for the recipient(s) determined most successful in the initial award.

Timing of renewals

The Agency must not schedule renewals more frequently than annually, and the AO must designate a renewal timeframe that provides sufficient time for reviewing the renewal request prior to the scheduled expiration of the award period. The AO should generally not establish an initial award period of less than two years so the recipient has sufficient time to start up and achieve initial results; however, the initial award period will depend on the nature of the activity. If the Agency does not renew an award, the AO must allow sufficient time for the recipient to complete the program responsibly before expiration. The start date of the renewal period must be concurrent with the original expiration date to prevent a break in the activities or funding. If the renewal expands the award's activities, AO must renew the award to allow sufficient time for the successful completion of the expanded activities.

Process and criteria for renewal

The NOFO and any resulting award must include a statement that funding of any renewal period or expansion of activities is contingent on the following:

- Availability of funds;

- Satisfactory progress towards meeting the award objectives;

- Submittal of required reports; and

- Compliance with the terms and conditions of the award, including the conditions for renewal.

The AO may renew the award through an amendment for a subsequent period of performance or additional activities. The AO must require the recipient to submit a new

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000197

**SF-424** and a new set of certifications, assurances, representations, and other statements (see **303.3.8, Pre-Award Certifications, Assurances, Representations, and Other Statements of the Recipient and Pre-Award Terms**) with the request for renewal or renewal application. The AO must also follow all other pre-award requirements prior to executing the renewal. The initial award and the renewal together must be consistent with **303.3.14**.

Before the AO can approve the renewal and amend the agreement, the AOR must review the renewal application(s) and document that:

- The recipient has met performance and progress in a satisfactory way and still merits support;

- Program activities are still relevant to the Agency's objectives;

- The renewal will support either the same work, or work that is within the programmatic activities of the current award or is closely related to the current programmatic activities;

- The renewal supports the same long-term goal, with new specific targets, milestones, outputs, or indicators; and

- The recipient meets the required risk-assessment requirements.

The cognizant AOR should discuss renewal applications with the recipient prior to submission.

### b. Simplified Grants

A deviation is not required from the requirements of **2 CFR 200** or the policies of this chapter in order to use a simplified grant format for small awards on a cost reimbursement basis as described below. A grant using the simplified grant format generally does not include all of the standard provisions used for USAID grants. AOs must use the simplified grant format to apply the appropriate standard provisions. For Fixed Amount Awards, see **303.3.25**.

USAID may authorize advance payments if the conditions for advance payments in **ADS 636, Program Funded Advances** and **2 CFR 200** Subpart D apply.

The AO may use the simplified grant format, if the grant meets all of the following conditions:

1. The assistance instrument is a grant, not a cooperative agreement.

76

2. The total grant amount does not exceed the simplified acquisition threshold as defined in 2 CFR 200.

3. The recipient will not purchase any goods or services, except as authorized pursuant to **22 CFR 228** or **ADS 310, Source and Nationality Requirements for Procurement of Commodities and Services Financed by USAID** or any applicable waivers, and the recipient will not purchase any single item that has a useful life over one year and a cost of $5,000 or more.

4. The recipient has signed pre-award certifications as required in **303.3.8**.

5. The grant requires the recipient to allow USAID access to its records for up to three years after the end date of the grant, and the recipient will refund USAID for any funds it receives for any costs that did not meet the terms and conditions of the grant.

6. The grant does not anticipate any subawards.

7. All costs under the grant are direct costs. This format is not authorized for awards that include indirect costs.

8. The grant must be included in any audit required by **2 CFR 200 Subpart F** or **ADS 591.3.2**.

### 303.3.25    Fixed Amount Awards to Non-Governmental Organizations
Effective Date: 10/01/2024

A fixed amount award is a type of grant or cooperative agreement in which USAID provides a specific level of funding and for which the Agency does not base payment upon the actual costs incurred by the recipient. This type of Federal award reduces some of the administrative burden and record-keeping requirements for both the recipient and USAID. Accountability is based primarily on performance and results.

A fixed amount award is appropriate when 1) the program scope has measurable goals and objectives and 2) accurate cost, historical, or pricing data is available to establish a fixed amount budget based on a reasonable estimate of actual costs.

Payments under fixed amount awards are based on meeting measurable goals and objectives. The payment structure may be set up in a variety of ways, including:

(1) In several partial payments. The amount of each agreed payment as well as the "milestone" or event triggering the payment are agreed to in advance and specified in the award;

77

(2) On a unit price basis. The defined unit(s) or price(s) are agreed in advance and specified in the Federal award; or,

(3) In one payment at the completion of the Federal award.

The AO must use the cost principles in 2 CFR 200 Subpart E as a guide when negotiating the award's payment structure, including any milestones, to ensure that costs that make up the fixed amount do not include unallowable costs. When issuing a fixed amount award to a U.S. organization, AOs must state in the award the applicability of 2 CFR 200 and 2 CFR 700.

The AO may follow the guidance in **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations** for structuring payments to provide the recipient with the necessary financial liquidity for the performance of the activity.

USAID may also authorize advance payments when recipients meet the conditions for advance payments in **ADS 636**, **2 CFR 200 Subpart D**, and if providing liquidity through milestone payments is not sufficient to meet implementation requirements.

The procedures in this ADS section, **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations**, and **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist** must be used in lieu of those specified in **303.3.9** to conduct a risk assessment. The criteria in the section of the Checklist for pre-award financial review for advances, adequately address the conditions for advances in **ADS 636** and **2 CFR 200 Subpart D**.

At the end of a fixed amount award, the recipient must certify in writing to the Federal awarding agency that the project was completed as agreed to in the award, or identify those activities that were not completed, and that all expenditures were incurred in accordance with 2 CFR 200.403. When the required activities were not carried out, including fixed amount awards paid on a unit price basis under 200.201(b)(1)(ii), the amount of the Federal award must be reduced by the amount that reflects the activities that were not completed in accordance with the Federal award. When the required activities were completed in accordance with the terms and conditions of the Federal award, the recipient is entitled to any unexpended funds and they are not considered profit.

a.    **Factors for Determining the Use of a Fixed Amount Award**

In order for an AO to use a fixed amount award, the following conditions apply:

**(1)** The award complies with the conditions for fixed amounts awards found at 2 CFR 200.201.

78

**(2)** The AO, technical office, and M/CFO (Washington) or Controller (overseas) have complied with the requirements of **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist,** including ensuring that the recipient has signed pre-award certifications, as specified in **ADS 303.3.8**.

**(3)** The prospective recipient, technical office, and AO must be able to identify and measure programmatic accomplishments or results in establishing award milestones or another payment structure. For further guidance, see **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations**.

**(4)** The AO, with the advice of the technical office and M/CFO (Washington) or the Controller (overseas), must assess the risk factors that could prevent the proposed recipient from completing the activity or require substantial revisions to the award's payment structure, including any milestones. The operating unit must not use the fixed amount award if an unacceptably high risk of failure or substantial changes in the award's payment structure are expected as the recipient implements its program. The AO and technical office must document the risk assessment and may use the guidance in **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations.**

**(5)** Accurate cost information must be available to allow the AO to determine and negotiate the fixed amount of the grant or cooperative agreement and payment structure. The fixed amount should include all reasonable costs, as determined by the AO. For further guidance concerning the cost information required and payment structuring, see **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations** and **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist**.

**(6)** The AO must document the rationale for selecting the fixed amount award.

**(7)** Generally, the duration of the fixed amount award must not exceed three years to ensure that the budget is based on a reasonable estimate of actual costs. However, if a longer award is required, then the fixed amount award must be structured to follow the renewal award process in section **303.3.24.a**. This allows the award's payment structure, including any milestones and associated costs, to be revisited and amended for the renewal period.

**(8)** The fixed amount award must not include the purchase of any real property.

**b.    Standard Provisions for Fixed Amount Awards**

79

**(1)** The AO must ensure that the fixed amount award includes all of the mandatory provisions from **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations**. In addition, the AO must ensure the fixed amount award includes ONLY the applicable "Required, As Applicable" provisions from **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations**.

**(2)** The AO must use the **ADS 303sal, Sample Fixed Amount Award** as a template.

**c.    Amending the Payment Structure**

With a fixed amount award, payment is not based on actual costs and the fixed amount is not subject to adjustment. However, the AO may amend the award's payment structure during the award's performance period, if the original payment structure or milestones are no longer feasible or appropriate due to circumstances beyond the control of the recipient. The AO may terminate the award if the AO concludes that multiple or substantial amendments indicate that continuing the award is no longer in the best interests of the Agency.

**d.  Substantial Involvement in Fixed Amount Cooperative Agreements**

When substantial involvement is anticipated under a fixed amount cooperative agreement, the Planner and AO must select the areas of substantial involvement and include them in the NOFO (see section **303.3.11**).

Because fixed amount awards are based on measurable goals and objectives, the Planner and AO must exercise caution in selecting the appropriate areas of substantial involvement to ensure that the recipient can achieve the award's goals and objectives and meet the payment structure independent of the Agency's substantial involvement in the award.

**e.  Disposition of Equipment or Property**

Recipients must not procure real property under a fixed amount award. Real property means land, including land improvements, structures and appurtenances thereto, but excludes movable machinery and equipment. Personal property is any tangible or intangible property other than real property.

Depending on the activities funded and any milestones established by the fixed amount award, a recipient may procure equipment or personal property in order to accomplish a milestone. The distinction between whether purchase of the equipment or personal property is a milestone or is one possible means by which the recipient may accomplish

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000202

a milestone is important for certain aspects of the award. Unless a milestone is itself the purchase of the equipment or personal property, milestones must not list equipment or personal property a recipient may potentially purchase to accomplish the milestone, but the costs of such equipment or personal property may be included in the budget from which milestone payment amounts are estimated and negotiated. Regardless of whether the equipment or personal property is listed in or as a milestone, the fixed amount award must state that title to the equipment or personal property vests in the recipient upon acquisition with the condition that the recipient must use the equipment or personal property for the award as long as it is needed for such.

If a milestone under a fixed amount award requires the recipient to procure equipment or personal property, and such requirement is specifically provided in the milestone, then:

(1)     The award must require that the purchase be in accordance with **22 CFR 228**, **ADS 310**, **ADS 312, Eligibility of Commodities** and any applicable waivers,

(2)     The "Required, As Applicable" provisions from the **ADS 303mat, Mandatory Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations** applicable to the purchase of the equipment or personal property must be included in the fixed amount award, and

(3)     The award must include disposition instructions for the equipment or property. For additional guidance, see **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations**.

### 303.3.26   Leader with Associate Awards
Effective Date: 10/01/2024

A Leader with Associate (LWA) Award involves the issuance of a Leader Award that covers a specified worldwide activity. The Leader Award includes language that allows a Mission or other office to make one or more separate awards, called Associate Awards, to the Leader Award recipient without using restricted eligibility. The Associate Award must be within the terms and scope of the program description of the Leader Award and support a distinct local or regional activity.

LWA Awards must not be confused with Indefinite Delivery Indefinite Quantity (IDIQ) Contracts that are used in acquisition or any of the procedures used under an IDIQ. As examples, a Leader Award cannot be made without a program description and a budget with sufficient funds to carry out the program description in the Leader Award, and Associate Awards are not made using procedures similar to the fair opportunity procedures for IDIQ task order awards.

81

10/01/2024  Partial Revision

**a.**     Justification for Use of a Leader with Associate Instrument

The SOI Memo provided by the OU in accordance with **ADS 304** must justify the use of an LWA and describe in detail why the proposed LWA is necessary and why a non-LWA grant or cooperative agreement will not achieve the program objectives. The justification in the memo must include one or more of the following:

- The specific, quantifiable, and demonstrable economies of scale or responsive timing to be achieved through use of the LWA,

- Whether any specific, identified needs in non-presence countries can best be addressed through an LWA, or

- How the LWA will achieve the Agency goal of centralizing knowledge or expertise or demonstrating global technical leadership in a specific technical area.

If the LWA has a combined ceiling (Leader and all Associate Awards) of $75 million or more, the SOI Memo's justification must also:

- Specify what specialized technical skills are required to plan and manage the activities that are not available in the field, or

- Demonstrate that an anticipated and frequent need to respond to compelling urgent programmatic requirements cannot be foreseen in terms of location, timing, or magnitude and can best be met through the use of a LWA.

If "buy-ins" (i.e. mission funding into the Leader or centrally managed Associate Awards) will be permitted under the LWA, the SOI Memo must propose a ceiling on the size of individual "buy-ins." This ceiling must also be included in the NOFO and the award. The memo must also include an analysis of why buy-ins are more advantageous to the Agency than individual Associate Awards. "Buy-ins" may be justified by a discussion of one or more of the following conditions:

- The highly technical or specialized nature of the program and the lack of field staff with the required expertise to plan or manage such activities, or

- An anticipated frequent need to respond to truly urgent programmatic requirements that cannot be foreseen in terms of location, timing, or magnitude, or

- Needs in non-presence countries

82

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000204

For any proposed individual buy-in ceiling in excess of $1 million, the Planner must provide compelling justification in the SOI Memo documenting why an individual associate award is not appropriate.

**b.**    Competition of Leader Award

The AO must issue a NOFO for every LWA Award following the procedures in **303.3.5.2**. AOs must not award LWAs based on an APS, unsolicited applications or with restricted eligibility, unless a deviation is authorized in accordance with the requirements of **303.3.4**. The RFA must state that the competition covers both the initial Leader Award and all subsequent Associate Awards, and specify a ceiling on the total amount of funding for all Associate Awards.

**c.**    Total Amount and Funding

The AO must specify the Total Estimated Amount of the Leader Award and the ceiling on the cumulative total amount of funding for Associate Awards in the NOFO and the Leader Award. These amounts must not be exceeded without a determination to restrict eligibility, in accordance with **303.3.6.5**. Each Associate Award must specify the total award amount for that instrument. Likewise, the NOFO must state that there is no guarantee regarding the number or amount of Associate Awards.

The NOFO and resulting Leader Award must state whether missions will be permitted to provide funding through "buy-ins" to the Leader Award or centrally-managed Associate Awards. If "buy-ins" will be permitted, a ceiling on individual "buy-ins" under the Leader or Associate Awards must be established within the terms of the Leader Award.

Leader and Associate Awards are separately obligated instruments. An obligation under the Leader Award is not transferable to Associate Awards (nor transferable from the Associate Awards to the Leader Award or other Associate Awards) without a deobligation and reobligation of funds in accordance with **ADS 621**.

**d.**    Pre-Award Requirements for Associate Awards

Once an AO selects a recipient pursuant to an NOFO for an LWA Award, the eligibility for any Associate Award issued within the terms and conditions of the Leader Award will be limited to the recipient of the Leader Award. The AO's risk determination of the recipient for the Leader Award applies to Associate Awards. However, before awarding an Associate Award, the AO must verify that the applicant does not:

83

DEFMTDAPP_000205

10/01/2024  Partial Revision

● Have active exclusions in SAM (**www.sam.gov**);

● Appear on the Specially Designated Nationals (SDN) and Blocked Persons List maintained by the U.S. Treasury for the Office of Foreign Assets Control, sometimes referred to as the "OFAC List"; and

● Appear on the United Nations Security Council designation list.

The AO for the Associate Award must not require additional documentation concerning the recipient's financial or other management systems, unless there is reason to believe that the recipient does not meet the criteria in **303.3.9**.

The AO must obtain the required certifications (see **303.3.8**) prior to the execution of the Leader Award. Before the AO may award an Associate Award, the recipient must affirm that those certifications remain valid or provide new certifications (see **ADS 303mad, Affirmation of Certifications**).

USAID may issue more than one Leader Award for a program under the NOFO if the Bureau determines that it is appropriate. However, USAID must not compete Associate Awards among the different recipients of the Leader Awards.

The AO has the discretion to issue one or more Associate Awards to a Leader Award recipient or to issue more than one Associate Award under different Leader Awards for a program. When a Leader Award recipient works with a consortium or subrecipients, any Associate Awards under the Leader Award must be issued to the Leader Award recipient, not to any of the consortium or subrecipient members. The recipient of the Leader Award may make subawards to the consortium members as necessary for the program. The Leader Award must include a requirement for the recipient to provide a programmatic report, either semi-annually or annually, to the AOR that summarizes activities undertaken, progress made/results achieved, trends, or problems under both the Leader Award and all Associate Awards.

**e.**   Length of Award

The initial period of performance for a Leader Award must not exceed five years. AOs may extend a Leader Award for up to a cumulative period of ten years for purposes of the Leader Award activities using a determination to restrict eligibility based on **303.3.6.5**. AOs may issue Associate Awards at any time during the period of performance of the Leader Award. The initial period of performance for an Associate Award must not exceed five years. AOs may extend individual Associate Awards for a cumulative period of up to ten years using a determination to restrict eligibility based on **303.3.6.5**, but not more than five

84

DEFMTDAPP_000206

years beyond the expiration of the Leader Award. AOs must not extend a Leader or Associate Award more than five years into the future at any given time.

USAID does not fund activities under the Leader Award after its expiration date. After completion of the activities under the Leader Award, if funds are available, the AOR may request that the recipient provides a report on lessons learned.

**f.**     Procedures for Issuing an Associate Award

After the AO awards the Leader Award, the AO notifies all Agency AOs that the Leader Award is in ASIST. The Leader Award must include necessary guidance or instructions regarding issuance of Associate Awards. AOs may issue Associate Awards for activities within the programmatic scope of the Leader Award. Leader Awards are also posted on the USAID Business and Acquisition and Assistance Intranet site (**https://pages.usaid.gov/M/OAA/assistance-resources**).

Before requesting an AO to issue an Associate Award, the Planner must consult with the AOR of the Leader Award. The AOR of the Leader Award must concur that the program description for an Associate Award is within the program description and does not extend beyond the scope of the program area, project goal, project purpose, sub-purposes, outputs and overall results framework of the Leader Award. After receiving the AOR's concurrence, either the AO, or the Planner with the AO's consent, may request the Leader Award recipient to provide an application. The request includes a background statement; a brief program description outlining the area of activity; host country involvement; funding; any period limitation; and, description of why the activity falls under the Leader Award. The RFA for an Associate Award must request a response to the program description and an associated budget.

An SF-424 is not required. The Planner must review the application and provide comments to the AO responsible for the Associate Award. The AO issuing the Associate Award must ensure that the Associate Award is within the scope of the Leader Award when reviewing the recipient's proposed costs and negotiating the final award. The AO has the decision authority whether or not to award the Associate Award.

The AO may execute an Associate Award as a grant or a cooperative agreement, independent of whether the Leader Award is a grant or cooperative agreement. If an Associate cooperative agreement is selected, the AO must specify the terms of any substantial involvement in the award. Such substantial involvement must be consistent with the requirements of **303.3.11** and the program description for the particular Associate Award. The AO must use the standard grant or cooperative agreement award format for the Associate Award.

85

The AO must include appropriate language in the schedule of the Associate Award to require the recipient to provide all program and financial reports to the AOR of the Associate Award with copies of all programmatic reports to the AOR of the Leader Award. The schedule of the Associate Award must also specify:

- The Authorized Geographic Code for procurement, if it is different from the Leader Award;

- Any cost sharing requirements; and

- Any additional standard provisions, such as Title to and Care of Property (Cooperating Country), that may not be included in the Leader Award, but are necessary to the Associate Award.

**g.**    Amendments to Associate Awards

Amendments to associate awards may be restricted to the recipient of the Associate Award, only if the amendment does not extend beyond the scope of the program area, project goal, project purpose, sub-purposes, outputs and overall results framework, period of performance, total amount and other terms and conditions of the Leader Award. If the scope of an amendment to the associate award extends beyond the areas listed in the preceding sentence then the amendment must comply with the requirements found in ADS 303.3.6.5.

Any proposed buy-in under a Leader or centrally-managed Associate Award must have a detailed description of the work to be done, its timing, and estimated cost/budget. All documentation must be submitted to the AO and the relevant Bureau by July 1 for the buy-in obligation to be completed by the end of the fiscal year.

**h.**    File Documentation

The AO's file documentation for Associate Awards must include

- A copy of the Planner's consultation with the AOR for the Leader Award;

- The request for the recipient's application;

- The recipient's application with affirmation of certifications found in **303.3.8**;

- An Assistance Award Memorandum, including a cost review; and

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000208

10/01/2024  Partial Revision

● A copy of the final Associate Award (a copy must be sent to the AOR for the Leader Award) and a copy of the Leader Award.

### 303.3.27   Public-Private Partnerships
Effective Date: 01/19/2021

Public-Private Partnerships including Global Development Alliances (GDAs) awards and private sector engagements and other Global Development Lab instruments, provide resource leverage (see below) from sources outside USAID. Public-Private Partnerships may result in the award of a grant or cooperative agreement. The Planner should consult closely with the Office of Innovation and Development Alliances, Global Partnerships Division (IDEA/PS), the Assistance Executive, the Office of the General Counsel or RLO when developing the program description for these types of awards. Additional guidance may be found at the **GDA Web site** (available on the USAID internal website only).

Leveraging represents all of the non-USAID resources (excluding cost sharing) that are expected to be applied to a program. Leveraging is limited to awards that result from Public-Private Partnerships. Leveraging includes resources that third-parties bring to the program without necessarily providing them to the recipient of the USAID assistance award. These parties may include the host government, private foundations, businesses, or individuals. The recipient is not responsible for meeting the leveraging amounts/resources and leveraging is not subject to audit.

Assistance awards that result from Public-Private Partnerships may include cost sharing. If the award includes cost sharing, the recipient must meet the cost-sharing amount and requirements, and the cost-sharing is subject to audit.

For more information regarding leveraging, please refer to the **GDA home page**.

### 303.3.28   Participation of Faith-Based and Community Organizations
Effective Date: 06/07/2024

a.  AOs must ensure all awards are issued in accordance with **Executive Order 13279, Equal Protection for the Laws for Faith-Based and Community Organizations, Executive Order 14015, Establishment of the White House Office of Faith-Based and Neighborhood Partnerships**, and **22 CFR 205, Participation by Religious Organizations in USAID Programs**.

b.  All eligible organizations, including faith-based, must be able to apply on an equal footing for USAID financial assistance. Consistent with **22 CFR 205.1(b)**, AOs must ensure that NOFOs include language indicating that faith-based organizations are eligible on the same basis as any other organization and subject to the protections and requirements of federal law.

87

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000209

**c.** When limiting eligibility using procedures in section **303.3.6.5**, USAID must not restrict eligibility solely to favor or disfavor either faith-based or secular organizations. Consistent with **22 CFR 205.1(o)**, AOs must not structure NOFOs or awards in a way as to advantage or disadvantage faith-based organizations affiliated with historic or well-established religions or sects in comparison with other religions or sects.

**d.** AOs must ensure that any NOFOs that require organizations to have nonprofit status specifically indicate this requirement in the eligibility section of the solicitation. An applicant can show its nonprofit status in accordance with the requirements at **22 CFR 205.1(k)**.

**e.** If an organization submits a request for religious accommodation, the AO must consult with GC/RLO when processing and responding to the request. All requests for religious accommodation must be considered in accordance with **22 CFR 205.1(c)**.

**f.** Any waiver from the requirements of this section (**303.3.28**) in whole or in part, on a case-by-case basis, must be in accordance with **22 CFR 205.1(n)**.

**g. Clarification Regarding Proper Implementation and Use of Data**

The requirements for equal opportunity for faith-based organizations found in **Executive Order 13279, Equal Protection for the Laws for Faith-Based and Community Organizations** and **22 CFR 205, Participation by Religious Organizations in USAID Programs** do not provide for set-asides or evaluation preferences for faith-based organizations, and data collected must not be used for purposes of funding decisions. The AO must not:

**i.** Restrict eligibility as noted in section c., or provide evaluation preferences for faith-based organizations in NOFOs.

**ii.** Include participation of faith-based organizations as a specific evaluation factor or requirement for award. However, AOs may include faith-based organizations as an example of one of the many types of organizations whose participation could potentially enhance the quality and impact of development assistance programs.

**h.** AOs must include the Mandatory Standard Provision, "Equal Participation by Faith-Based Organizations (June 2024)," in all solicitations and awards.

**303.3.29    Suspension and Debarment**
Effective Date: 10/24/2023

DEFMTDAPP_000210

10/01/2024 Partial Revision

In accordance with **2 CFR 780** and **2 CFR 180**, the Suspending and Debarring Official (SDO) may suspend or debar individuals and entities from participating in government-funded grants, cooperative agreements and other assistance programs when such action is in the public interest.

a.  M/MPBP/RSC, in consultation with GC/LE provides direct support and recommendations to the SDO in all matters relating to recipient disclosures, suspension, and debarment. The Office of General Counsel, Litigation and Enforcement (GC/LE) serves as the primary attorney for the Agency's Suspension and Debarment Official. In that role, GC/LE provides advice on a full range of enforcement matters as well as issues regarding contractor and grantee responsibility and issues of corporate compliance and internal controls. In support of the SDO and M/MPBP/RSC, GC/LE provides advice on suspension and debarment actions.

b.  AOs must notify M/MPBP/RSC in writing at **compliance@usaid.gov** when they become aware of any of the causes of suspension or debarment, regarding recipients and subrecipients, as specified in **2 CFR 780** and **2 CFR 180.**

c.  Upon receiving notification from the AO that a recipient may have engaged in actions that could lead to suspension or debarment, M/MBPB/COMP will:

- Consult with GC/LE, as necessary;

- Consult with other offices within USAID as required to prepare a recommendation for the SDO; and

- Coordinate suspension or debarment actions with the Interagency Suspension and Debarment Committee (ISDC) and/or the Office of Inspector General.

d.  When, in accordance with **2 CFR 780** and **2 CFR 180**, the SDO decides to initiate a suspension and /or debarment action, M/MPBP/RSC will:

- Issue a written notice of suspension or proposed debarment action to the recipient and any affiliates involved upon review of the action by GC/LE; and

- Enter the recipient's exclusion information into SAM at **www.sam.gov**.

### 303.3.30    Limitation on Construction under Assistance
Effective Date: 08/29/2023

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000211

The Agency's infrastructure projects are increasingly a critical component of development programs. However, the limited management oversight the Agency can legally assert over recipients under assistance awards minimizes the Agency's ability to ensure that the design and construction activities are carried out properly. As such, Operating Units and AOs must adhere to the Administrator-approved policy and procedures that limit the use of assistance awards to accomplish construction activities (**ADS 303maw, USAID Implementation of Construction Activities**).

Provision Limiting Construction Activities in Awards

AOs must include the mandatory standard provision, "Limiting Construction Activities ( "August 2023)" in all solicitations and awards. If the assistance award permits construction activities based on the policy above (or as authorized by an exception or waiver), the AO must insert the description and location(s) of the specific construction activities under section **(d)** of the provision. If the award does not include construction activities, the AO must insert "Construction is not eligible for reimbursement under this award" in section **(d)** of the provision.

### 303.3.31    USAID Implementing Partner Notices (IPN) Portal for Assistance
Effective Date: 07/21/2014

a.      The USAID Implementing Partner Notices Portal for Assistance (also referred to as "IPN Portal") streamlines USAID's process of providing universal bilateral amendments for awards to recipients for their signature. The IPN Portal is also available to provide notices to USAID recipients who register with the IPN Portal. The IPN Portal posts proposed universal bilateral amendments for USAID awards, which can be accessed electronically by registered partners AOs and A&A specialists. The IPN Portal for Assistance is located at **https://sites.google.com/site/usaidipnforassistance/**.

b.      When necessary, the IPN Portal Administrator, as designated by the Director, M/OAA, will generate bilateral award amendments and notices, and post the amendments/notices to the IPN Portal. Examples of such amendments include required ADS 303 provision updates affecting all awards (or classes of awards to be specified in the amendment). The Portal Administrator will provide advance notice to AOs that an update is being prepared for posting in the IPN Portal.

This policy applies to all awards except:

- Associate Awards under LWAs,

- Awards to PIOs and bilateral development partners, and

- Interagency agreements.

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000212

IPN Portal amendments must not change the:

- Amount of obligated funds,

- Total estimated award amount,

- Program Description, or

- Period of performance.

**c.**     Proposed bilateral amendments provided through the IPN Portal are not effective until the Recipient and the AO sign the amendment. Additional policy guidance and specific instructions for registering with the IPN Portal can be found in **ADS 303max, USAID Implementing Partner Notices (IPN) Portal**. AOs and A&A specialists are responsible for registering with the IPN Portal, processing the IPN Portal amendments under their respective awards, and completing GLAAS requirements in accordance with this policy.

**d.**     AOs must insert the applicable provision "**USAID Implementing Partner Notices (IPN) Portal for Assistance (July 2014)**" from **ADS 303maa, Standard Provisions for U.S. Nongovernmental Recipients** or **ADS 303mab, Standard Provisions for Non-U.S. Nongovernmental Organizations,** and **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations** in all solicitations and resulting awards.

### 303.3.32  Trafficking in Persons (TIP)
Effective Date: 10/01/2024

#### a. Requirements

The mandatory standard provision on trafficking in persons ensures USAID compliance with various legislative requirements intended to ensure that U.S. Government acquisition and assistance actions are not tainted by trafficking in persons, such as the Trafficking Victims Protection Act of 2000 and Section 1704(a) of the National Defense Authorization Act for Fiscal Year 2013 (Pub. L. 112-239, enacted January 2, 2013). The provision reflects the U.S. Government's policy against human trafficking and lists specific trafficking in persons-related prohibitions and requirements that are mandatory for both U.S. and non-U.S. recipients.

#### b. Certification Requirement and Compliance Plan

If the estimated value of services required to be performed under the award outside of the United States exceeds $500,000, additional trafficking-related

91

requirements apply to the solicitation and award. Specifically, the AO must require the applicant/recipient to certify that it has implemented a compliance plan to prevent trafficking prior to the award and annually during the period of performance.

1. The AO must require the apparently successful applicant to submit the certification "Certification Regarding to the Trafficking in Persons" before the award is made. The certification is included in **ADS 303mav, Certifications, Assurances, Representations and Other Statements of the Recipient**.

2. The mandatory standard provision on trafficking in persons further requires the recipient to submit the certification annually during the award's period of performance.

3. Unless specifically requested by the AO, the recipient is not required to submit, the trafficking compliance plan required in the TIP standard provision.

## c. Violations and Remedies

If an AO receives credible information from any source that the recipient, subrecipient, contractor; or any agent of the recipient, subrecipient, or contractor, is engaged in prohibited activities related to trafficking in persons (as defined by the mandatory standard provision on trafficking in persons), the AO must immediately notify both the Office of the Inspector General (OIG) and M/MPBP/RSC at **disclosures@usaid.gov**. AOs must consult ADS 113mab, Guidance on Receiving and Responding to Allegations of Misconduct Related to Safeguarding in USAID Programs. The AO may also direct the recipient to take specific steps to abate an alleged violation or enforce the requirements of the recipient's compliance plan. If necessary, the OIG will conduct an investigation of the alleged offense.

## d.    OIG Referrals of Substantiated Allegations

Upon receipt of an OIG report that provides support for the allegations, M/MPBP/RSC will be responsible for expeditiously conducting an administrative proceeding, consistent with ADS 113mab, allowing the recipient an opportunity to respond to the report. After the proceeding, the Suspending and Debarring Official (SDO) will make a final determination as to whether the allegations are substantiated and will notify the AO. The AO, in consultation with M/MPBP/RSC will consider taking one or more of the following remedial actions:

92

1. Requiring the recipient to remove an employee from the performance of work under the award;

2. Requiring the recipient to terminate a contract or a subaward;

3. Suspending payments under the award until such a time as the recipient of the award has taken appropriate remedial action;

4. Terminating the award, in accordance with 2 CFR 200 and 2 CFR 700 for U.S. Organizations, or the Award Termination and Suspension Standard Provision for Non-U.S. Organizations.

The AO, in consultation with M/MPBP/RSC, may consider whether the recipient had a compliance plan in place, and whether the recipient was in compliance with that plan at the time of the violation as mitigating factors in determining which remedies, if any, should apply. The AO and Director, M/OAA may consider the failure of the recipient to stop an alleged violation or enforce the requirements of the compliance plan when directed by the AO as an aggravating factor in determining which remedies, if any, should apply.

The SDO has the authority, at any time before or after the final determination as to whether the allegations are substantiated, to use the suspension and debarment procedures to suspend, propose for debarment, or debar the recipient, if appropriate, considering the factors above.

AOs must enter all substantiated allegations of trafficking in persons-related violations into SAM.gov using the Contractor Performance Assessment Reporting System (CPARS). Immediately upon entering the information, the AO must also transmit copies of all relevant documents to M/MPBP/RSC at **disclosures@usaid.gov**, including a brief explanation of the actions taken and the date the information was posted in SAM.gov.

### 303.3.33  Safeguarding Against Exploitation, Sexual Abuse, Child Abuse, and Child Neglect
Effective Date: 10/24/2023

The mandatory standard provision "Safeguarding Against Exploitation, Sexual Abuse, Child Abuse and Child Neglect" requires that recipients have a set of publicly available standards, policies, or procedures to prevent, detect, address, and respond to allegations of exploitation, sexual abuse, child abuse, and child neglect. For awards exceeding $500,000, the provision requires the recipient to develop, implement, and maintain a compliance plan, either in conjunction with or separate from the Trafficking in Persons Compliance Plan. The provision also requires recipients to report misconduct to M/MPBP/RSC at **disclosures@usaid.gov**, with a copy to the AO and the OIG.

93

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000215

If the AO is informed of such misconduct, the AO must immediately report the information to M/MPBP/RSC at **disclosures@usaid.gov** and the OIG. AOs must also consult ADS 113mab, Guidance on Receiving and Responding to Allegations of Misconduct Related to Safeguarding in USAID Programs.

### 303.3.34    Reserved
Effective Date: 02/04/2021

### 303.3.35    Information Technology and Telecommunication

### 303.3.35.1    Information Technology Under Assistance Awards
Effective Date: 10/01/2024

Agency staff must not procure IT and IT services for Agency use through an assistance award (see **ADS 509, Management and Oversight of Agency Information Technology Resources**). In accordance with the FGCAA and ADS 304, grants and cooperative agreements transfer a thing of value to the recipient to carry out a public purpose, unlike contracts, which are for the direct benefit or use of the Agency.

Activity Planners must not include IT and IT services for the Agency's use or direct benefit in the program description for an assistance award. There are no exceptions, waivers, or deviations to this statutory prohibition. Additionally, AOs must ensure that the NOFO and the resulting awards do not include IT and IT services for the Agency's use or direct benefit.

The IT and IT services for use by, or on behalf of, the Agency cannot be obtained through a grant or cooperative agreement; in such a case a direct contract is the appropriate instrument. The Planners must consult **ADS 302** and **ADS 509** for requirements, including mandatory requirements for M/CIO approval.

### 303.3.35.2    Covered Telecommunication and Video Surveillance Equipment or Services
Effective Date: 07/01/2022

Effective August 13, 2020, a recipient may not procure covered telecommunication equipment or services for the implementation of their program using award funds.

2 CFR 200.216, applicable to US organizations, and the standard provision "Prohibition on Certain Telecommunication and Video Surveillance Services or Equipment" applicable to non-US NGOs, implement Section 889(b) of the John S. McCain National Defense Authorization Act (NDAA) for Fiscal Year 2019 (**Pub. L. 115-232**) that prohibits the use of award funds, including direct and indirect costs, cost share and program income, to procure covered telecommunication and video surveillance services or

94

equipment. The statute covers certain telecommunications equipment and services produced or provided by Huawei Technologies Company or ZTE Corporation, Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities).

Unless otherwise authorized in a special award requirement or standard provision in the award, such covered telecommunication equipment or services are unallowable costs as specified in 2 CFR 200.471. As such, the recipient must not use any award funds for such costs, including direct or indirect costs, cost share, or program income generated under the award, for covered telecommunications equipment or services as specified in 2 CFR 200.216. The Section 889 prohibitions do not apply to awards made prior to August 13, 2020.

### 303.3.35.3    Electronic Commerce
Effective Date: 10/01/2024

The Agency accepts electronic signatures in various formats. USAID encourages the use of electronic commerce through the Agency's eSign Portal located at https://esign.usaid.gov/dsportal/home.  The agency head has determined that the eSign Portal is capable of ensuring authentication and confidentiality commensurate with the risk and magnitude of the harm from loss, misuse, or unauthorized access to or modification of the information. USAID uses Login.gov for secure sign in. USAID will accept electronic signatures to include awards, amendments and other award documentation that requires an official signature..

## 303.4    MANDATORY REFERENCES

### 303.4.1    External Mandatory References
Effective Date: 11/19/2020

a.   **2 CFR 180, OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)**

b.   **2 CFR 200, Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (effective as of November 12, 2020)**

c.   **2 CFR 200, Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (effective as of August 13, 2020)**

d.   **2 CFR 200, Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (effective prior to August 13, 2020)**

e.   **2 CFR 700, USAID Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards**

95

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000217

f.    **2 CFR 780, Non-Procurement Debarment and Suspension**

g.    **5 CFR 1320, Controlling Paperwork Burdens on the Public**

h.    **22 CFR 205, Participation by Religious Organizations in USAID Programs**

i.    **22 CFR 216, Environmental Procedures**

j.    **22 CFR 227, New Restrictions on Lobbying**

k.    **22 CFR 228, Procurement of Commodities and Services Financed by USAID Federal Program Funds**

l.    **31 USC 6301- 6308, Federal Grant and Cooperative Agreement Act**

m.    **System for Award Management**

n.    **Executive Order 13279, Equal Protection of the Laws for Faith-Based and Community Organizations**

o.    **Executive Order 13280, Responsibilities of the Department of Agriculture and the Agency for International Development With Respect to Faith-Based and Community Initiatives**.

p.    **Executive Order 13317, Volunteers for Prosperity**

q.    **Foreign Assistance Act of 1961, as amended**

r.    **OMB Final Guidance "Implementation of Federal Grant and Cooperative Agreement Act of 1977" (43 FR 36860, August 18, 1978)**

s.    **Paperwork Reduction Act**

t.    **Specially Designated Nationals (SDN) and Blocked Persons List**

### 303.4.2   Internal Mandatory References
Effective Date: 10/24/2023

a.    **Acquisition and Assistance Policy Bulletins (AAPDs)/Contract Information Bulletins (CIBs)**

b.    **ADS 103, Delegations of Authority**

96

10/01/2024  Partial Revision

c.    **ADS 113mab, Guidance on Receiving and Responding to Allegations of Misconduct Related to Safeguarding in USAID Programs**

d.    **ADS 201, Program Cycle Operational Policy**

e.    **ADS 204, Environmental Procedures**

f.    **ADS 206, Prohibition of Assistance to Drug Traffickers**

g.    **ADS 260, Geographic Codes**

h.    **ADS 300, Agency Acquisition and Assistance (A&A) Planning**

i.    **ADS 300mat, Guidance for Broad Agency Announcements**

j.    **ADS 302man, Congressional Award Notice Procedures**

k.    **ADS 302mbo, Guidance for Use of the Authorities under the Expedited Procedures Packages (EPPs)**

l.    **ADS 303maa, Standard Provisions for U.S. Nongovernmental Organizations**

m.    **ADS 303mab, Standard Provisions for Non-U.S. Nongovernmental Organizations**

n.    **ADS 303mad, Affirmation of Certifications**

o.    **ADS 303mai, Model Letters and Procedures for Designating the Agreement Officer's Representative (AOR) for Cooperative Agreements and Grants**

p.    **ADS 303mak, Fixed Amount Award Entity Eligibility Checklist**

q.    **ADS 303mat, Standard Provisions for Fixed Amount Awards to Nongovernmental Organizations**

r.    **ADS 303mav, Certifications, Assurances, Representations and Other Statements of the Recipient**

s.    **ADS 303maw, USAID Implementation of Construction Activities**

t.    **ADS 303max, USAID Implementing Partner Notices (IPN) Portal**

97

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000219

u.    **ADS 303maz, USAID Policy Guidance on Exemptions to Assistance Reporting Under the Federal Funding Accountability and Transparency Act of 2006 (FFATA)**

v.    **ADS 303mba, Pre-Award Terms**

w.    **ADS 303mbb, Process for Transition Awards**

x.    **ADS 303mbd, Guide to Unsolicited Applications**

y.    **ADS 303mbx, Simplified Grant Format Template**

z.    **ADS 304, Selecting the Appropriate Acquisition and Assistance (A&A) Instrument**

aa.   **ADS 312, Eligibility of Commodities**

ab.   **ADS 318, Intellectual Property Rights**

ac.   **ADS 320, Branding and Marking**

ad.   **ADS 350maa, Guidance on Funding Foreign Government Delegations to International Conferences**

ae.   **ADS 458, Training and Career/Professional Development**

af.    **ADS 511, Essential Records Program**

ag.   **ADS 540, USAID Development Experience Information**

ah.   **ADS 591, Financial Audits of USAID Contractors, Grantees, and Host Government Entities**

ai.    **ADS 625, Accounts Receivable and Debt Collection**

aj.    **Procurement and Assistance Procedures for the HIV/AIDS and Infectious Disease Initiatives (available on the USAID internal website only)**

### 303.4.3    Mandatory Forms
Effective Date: 02/15/2012

a.    **SF-270, Request for Advance or Reimbursement**

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000220

10/01/2024  Partial Revision

**b.**     **SF-271, Outlay Report and Request for Reimbursement for Construction Programs**

**c.**     **SF-424, Application for Federal Assistance**

**d.**     **SF-424a, Budget Information, Non-Construction Programs**

**e.**     **SF-425, Federal Financial Report**

**f.**     **SF-425a, Federal Financial Report Attachment**

**303.5**     **ADDITIONAL HELP**
           Effective Date: 07/22/2015

**a.**     **ADS 302sat, Guidance on Closeout Procedures for A&A Awards**

**b.**     **ADS 303sac, Action Memorandum Requesting Approval of Deviation**

**c.**     **ADS 303sae, Operational Security – General Information**

**d.**     **ADS 303sai, Profit Under USAID Assistance Instruments**

**e.**     **ADS 303saj, Fixed Amount Awards to Non-Governmental Organizations**

**f.**     **ADS 303sal, Fixed Amount Award Template**

**g.**     **ADS 303sam, Non-U.S. Organization Pre-Award Survey Guidelines and Support**

**h.**     **ADS 303san, Agreement Officer's Role in Debt Collection**

**i.**     **Cross Reference Index**

**j.**     **Policy Paper, Women in Development**

**k.**     **Procurement Executive Bulletins (PEBs)** *(Only available to USAID employees.)*

**303.6**     **DEFINITIONS**
           Effective Date: 06/22/2023

**Agreement Officer (AO)**
A person with the authority to (1) enter into, administer, terminate, and close out assistance agreements, and (2) make related determinations and findings on behalf of

99

USAID. An AO may only act within the scope of a duly authorized warrant or other valid delegation of authority. The term "Agreement Officer" includes persons warranted as "Grant Officers." It also includes certain authorized representatives of the AO acting within the limits of their authority as delegated by the AO. (**Chapter 303** and **304**)

**Assistance**
Financial support to accomplish a public purpose, including grants, cooperative agreements and other agreements in the form of money, or property in lieu of money, by the Federal Government to an eligible recipient. The term does not include technical assistance, the provision of services instead of money; other assistance in the form of loans, loan guarantees, interest subsidies, or insurance; direct payments of any kind to individuals; or, contracts which are required to be entered into and administered under procurement laws and regulations. (**Chapter 303** and **304**)

**Assistance Executive**
The Director, Office of Acquisition and Assistance (M/OAA/OD), or designee in USAID/W who

- Acts as the Agency's coordinator for all assistance matters (that is, financial assistance that provides support to a non-governmental entity to accomplish a public purpose), which may require OMB approval (such as deviations to OMB regulations);

- Makes the final determination of the choice of implementation instrument when there is disagreement between the contracting activity and the Development Objective team. (**Chapter 303** and **304**)

**Award**
A form of implementing mechanism through which USAID transfers funds to an implementing partner, generally selected through a competitive process resulting in a contract, grant, or cooperative agreement. (**Chapter 201 and 303**)

**Leverage**
Significant resources mobilized from non-U.S. Government sources. USAID seeks the mobilization of resources of other actors on a 1:2 or greater basis (i.e., 50 percent of the proposed value of the award). Leveraged resources may include grants/awards from non-U.S. Government organizations and other donor governments. (**Chapters 201**, **303**, **623**)

**Local Entity**
As defined in Section 7077 of Public Law 112-74, the Consolidated Appropriations Act, 2012 (P.L. 112-74), as amended by Section 7028 of the Consolidated Appropriations Act, 2014 (P.L. 113-76), and included by reference in subsequent appropriations acts, local entity means an individual, a corporation, a nonprofit organization, or another body of persons that—

100

10/01/2024 Partial Revision

(1) is legally organized under the laws of;

(2) has as its principal place of business or operations in;

and

(3) is

(A) majority owned by individuals who are citizens or lawful permanent residents of; and

(B) managed by a governing body the majority of who are citizens or lawful permanent residents of

a country receiving assistance.

For purposes of this definition, "majority-owned' and "-managed by" include, without limitation, beneficiary interests and the power, either directly or indirectly, whether exercised or exercisable, to control the election, appointment, or tenure of the organization's managers or a majority of the organization's governing body by any means."

**Locally Established Partner (LEP)**
A U.S. or international organization that works through locally-led operations and programming models. LEPs:

- Have maintained continuous operations in-country for at least five years and materially demonstrate a long-term presence in a country through adherence or alignment to the following:

  - Local staff should comprise at least 50 percent of office personnel,
  - Maintenance of a dedicated local office,
  - Registration with the appropriate local authorities,
  - A local bank account, and
  - A portfolio of locally-implemented programs.

- Have demonstrated links to the local community, including:

  - If the organization has a governing body or board of directors, then it must include a majority of local citizens;
  - A letter of support from a local organization to attest to its work; and
  - Other criteria that an organization proposes to demonstrate its local roots.

(**Chapters 201** and **303**)

101

**Non-U.S. Organization**
A foreign organization  as defined  in **2 CFR 200**.1 **(Chapter 303)**

**Planner**
The designated  person responsible for developing and maintaining a written Individual Acquisition  Plan (IAP), or for the planning function in those acquisitions (FAR 7.101) or assistance  actions not requiring a written plan. The Planner may be the Project Manager, where a project approach is used (**ADS 201**), or the intended  Contracting Officer/Agreement Officer Representative (COR/AOR), among other examples. The Planner works with the CO/AO to carry out the planning function. Operating Units (OUs) must ensure that a Planner is identified for a particular procurement. Though OUs have the discretion to determine the appropriate individual based on the organizational structure and functions of the unit, the Planner must be an individual  with sufficient authority in the OU to ensure that planning complies with this chapter, FAR acquisition planning requirements,  and OMB/OFPP Policy Letter 11-01 Performance of Inherently Governmental and Critical Functions. (**Chapters 300**, **302**, 303)

**Recipient**
An organization  that receives direct financial assistance (a grant or cooperative agreement) to carry out an assistance  program on behalf of USAID, in accordance with the terms and conditions of the award and all applicable laws and regulations.  The term recipient does not include subrecipients  or individuals  that are participants or beneficiaries of the award. (**Chapters 303**, **304**, **305**, **591**)

**Transition Award**
A transition  award is an assistance  award to a local entity or locally established  partner (collectively referred to as local subrecipients) that is or has been a subrecipient  under a USAID assistance  award. A transition  award can only be made when the following conditions  have been met:

   a) The recipient of the transition  award is a local subrecipient  that has not previously received a direct award from USAID;

   b) The initial award required  the recipient to develop the capacity of the local subrecipient(s) to become more capable of receiving a direct award from USAID or other donors; and

   c) The initial award recipient recommended the local subrecipient for a potential transition  award based on explicit criteria contained in the initial award. (**Chapter 303**)

102

10/01/2024  Partial Revision

303_100824

*Text highlighted in yellow indicates that the adjacent material is new or substantively revised.*

DEFMTDAPP_000225

ADS Chapter 303

# Exhibit D

DEFMTDAPP_000226



## U.S. Department of State
# FEDERAL ASSISTANCE AWARD

| 1. Recipient Name<br>JOURNALISM DEVELOPMENT NETWORK INC | 2. Assistance Type: |
|---|---|
| 3. Address<br>1220 L STREET, NW SUITE 100 BOX # 497<br>WASHINGTON, DC<br>20005-4018<br>USA | ☐ Cooperative Agreement<br><br>☐ Fixed Amount Award<br><br>■ Grant<br><br>☐ Property Grant<br><br>☐ Voluntary Contribution |
| 4. Recipient POC: HORTAMA<br>Phone Number: 2024703510<br>Email: drew@occrp.org | |

| 5. Type of Entity<br>U.S. Non-Profit Organization | 6. Unique Entity Identifier<br>█████████ | 7. EIN/ TIN<br>********** |
|---|---|---|
| 8. Assistance Listing Number<br>19.705 | 9. Statutory Authority for Assistance<br>Foreign Assistance Act | 10. Award Number<br>SINLEC22GR0342 |
| 11. Period of Performance<br>Start Date 2022-09-01      End Date 2026-08-31 | | 12. Amendment Number<br>M002 |
| 13. Accounting and Appropriation Data<br>See following page | | 14. Funds Certified By<br>████████ |

| Funding Distribution | | | |
|---|---|---|---|
| 15. | Total Prior Costs | New Costs | Total Cost |
| U.S. Share of Costs | $999,778.30 | $1,300,000.00 | $2,299,778.30 |
| Recipient Share of Costs | $0.00 | $0.00 | $0.00 |
| Total Costs | $999,778.30 | $1,300,000.00 | $2,299,778.30 |

**16. Purpose of the Federal Award Activity**

Extending period of performance, adding $1.3 million to the grant, and budget realignment.

**17. Specific Award Conditions**
☐ Attached

| Agreement | |
|---|---|
| The recipient agrees to execute the work in accordance with the Notice of Award, the approved application incorporated herein by reference or as attached, and 2 CFR Parts 200 and 600 including any subsequent revisions. | |
| 18a. Recipient Name Andrew Sullivan | 19a. Grants Officer Name ████████ |
| 18b. Recipient Signature<br><br>*Andrew Sullivan (electronically signed)* | 19b. Grants Officer Signature<br><br>████████ |

| 18c. Title<br>Recipient Signator | 18d. Date (dd-mmm-yyyy)<br>2024-08-09 | 19c. Bureau/Office/Post<br>DEPARTMENT OF STATE -<br>MGMT SYSTEMS DIV<br>(INL/RM/MS) | 19d. Date (dd-mmm-yyyy)<br>2024-08-06 |
|---|---|---|---|

By signing this Federal award, the recipient acknowledges that it will comply with Federal regulations, the Terms and Conditions, and any Special Award Conditions associated with this award. Receipt of the recipient's signature and return of the Federal Award Coversheet is required within ten (10) business days of the Grants Officer's signature. Please return to the Grants Officer address indicated here:

DEFMTDAPP_000227

DS-1909
12-2014

Page: 1 of 2
SINLEC22GR0342-M002

# Continuation of Accounting and Appropriation Data

| Fiscal Details | Amount |
|---|---|
| 1900-2019-2020-1911901022000J-0227-INL--0702-SINLEC22GR0342-4121-IN52E316---INLBL-0227016000-1--SINLEC22GR0328-TX1-DR.2 | $0.00 |
| 1900-2021-2022-1911121022000J-0227-INL-0702--SINLEC22GR0342-4121-IN52E316---INLBLCRI-0227216000-1---TX1-DR.2 | $348636.00 |
| 1900-2022-2023-1911231022000J-0227-INL-0702--SINLEC22GR0342-4121-IN52E316---INLBLCRI-0227316000-1---TX1-DR.2 | $951364.00 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

DEFMTDAPP_000228

# U.S. DEPARTMENT OF STATE
# AWARD PROVISIONS



During the period of performance, the Recipient must comply with:

- The Award Provisions below;
- The Department of State Standard Terms and Conditions for Federal Awards, which are incorporated by reference and made part of this Federal Award. Electronic copies containing the complete text are available at: https://www.state.gov/about-us-office-of-the-procurement-executive/;
- The applicable sections of 2 CFR §200 and 2 CFR §600; and
- All assurances and certifications made during the application process.

1)  FEDERAL AWARD IDENTIFICATION NUMBER (FAIN):
    SINLEC22GR0342-M002

2)  FEDERAL SHARE OF AWARD:
    a. Amendment Amount: $1,300,000
    b. Cumulative Award Total: $2,299,778.30

3)  PURPOSE AND OBJECTIVES OF AWARD:
    a. Purpose:
       OCCRP (hereinafter referred to as the Recipient), is hereby provided an amendment to its federal award titled "*Strengthening Capacity of Investigative Journalists in Malta and Cyprus to Uncover Crime and Corruption.*"

       **The purpose of this amendment is to** *1) add additional funds 2) revise the SOW 3) budget realignment 4) extend the period of performance*

       The Recipient shall carry out this award in accordance with the original terms and conditions, and any revisions to which both parties agree in writing. The Recipient's proposal and any subsequent negotiated revisions are hereby incorporated by reference.
    b. Objectives and Expected Outcomes:
       The Recipient agrees to perform the project and meet the specific objectives outlined below in *ATTACHMENT A - Scope of Work.*

ATTACHMENT A

# Scope of Work

THE ORGANIZED CRIME AND CORRUPTION REPORTING (OCCRP)

*Strengthening Capacity of Investigative Journalists in Malta and Cyprus to Uncover Crime and Corruption*

Updated May, 2024

THE ORGANIZED CRIME AND CORRUPTION REPORTING (OCCRP)

*Strengthening Capacity of Investigative Journalists in Malta and Cyprus to Uncover Crime and Corruption*

Under this Grant, the Department of State, International Narcotics and Law Enforcement Affairs (INL), provided an initial grant of $999,778.30 to the Organized Crime and Corruption Reporting Project (OCCRP) for its proposal entitled "*Strengthening Capacity of Investigative Journalists in Malta and Cyprus to Uncover Crime and Corruption.*" INL will extend the period of performance for an additional two years and increase the budget by $1.3 million.

OCCRP shall provide all necessary services, equipment and facilities necessary to accomplish this Grant.

PROJECT DESCRIPTION

Independent media in Malta and Cyprus face a number of challenges that make it difficult to carry out investigative journalism. OCCRP proposes a project that will address these issues to improve the context in which journalists work and increase the investigative capacity of local journalists to uncover crime and corruption in Malta and Cyprus as well as in the wider Southern Europe and Mediterranean region.

GOAL

The goal of this project is to strengthen investigative reporting and reporting networks in Malta and Cyprus to ensure greater capacity among journalists to expose corruption, inform citizens, and empower the public to advance greater government accountability and transparency. Proposed objectives are 1) To increase the capacity of investigative journalists and improve the quality of investigative reporting on organized crime and corruption; 2) To establish a regional network of investigative journalists working in Malta and Cyprus that are connected to regional and global networks; 3) To facilitate the sharing of information and techniques between journalists, law enforcement, and civil society; and 4) To increase the audience for investigative content.

# Exhibit E



**U.S. Department of State**
# FEDERAL ASSISTANCE AWARD

| 1. Recipient Name<br>JOURNALISM DEVELOPMENT NETWORK INC | 2. Assistance Type: |
|---|---|
| 3. Address<br><br>1220 L STREET, NW SUITE 100 BOX # 497<br>WASHINGTON, DC  20005-4018<br>UNITED STATES | ☑ Cooperative Agreement<br>☐ Fixed Amount Award<br>☐ Grant |
| 4. Recipient POC: Andrew Sullivan<br>Phone Number 202-470-2510<br>Email drew@occrp.org | ☐ Property Grant<br>☐ Voluntary Contribution |

| 5. Type of Entity<br>U.S. Non-Profit Organization (501(c) (3)) | 6. Unique Entity Identifier | 7. EIN/ TIN<br>********* |
|---|---|---|
| 8. Assistance Listing Number<br>19.345 | 9. Statutory Authority for Assistance<br>Foreign Assistance Act | 10. Award Number<br>SLMAQM21CA3486 |
| 11. Period of Performance<br>Start Date 23-Sep-2021    End Date 31-Mar-2025 | | 12. Amendment Number<br>M001 |

| 13. Accounting and Appropriation Data | 14. Funds Certified By |
|---|---|
| 1900-2022-2023-19722310370013-1051-DRL--2762-SLMAQM21CA3486-4122------<br>-2023FDSTRIE7813-SLMAQM21CA3486-RX2-DR.6    $493,827.00 USD<br>1900-2020-2021-19720110370013-1051-DRL--2762-SLMAQM21CA3486-4122------<br>-2021FDSTRIE7813-SLMAQM21CA3486-RX2-DR.6    $0.00 USD | |

### Funding Distribution

| 15. | Total Prior Costs | New Costs | Total Cost |
|---|---|---|---|
| U.S. Share of Costs | $1,975,308.00 USD | $493,827.00 USD | $2,469,135.00 USD |
| Recipient Share of Costs | $0.00 USD | $0.00 USD | $0.00 USD |
| Total Costs | $1,975,308.00 USD | $493,827.00 USD | $2,469,135.00 USD |

**16. Purpose of the Federal Award Activity**
This amendment is issued to extend the period of performance until March 31, 2025; revise the Scope of Work; and add additional federal funding to continue program activities. All other terms and conditions will remain unchanged.

**17. Specific Award Conditions**
☑ Attached

### Agreement

The recipient agrees to execute the work in accordance with the Notice of Award, the approved application incorporated herein by reference or as attached, and 2 CFR Parts 200 and 600 including any subsequent revisions.

| 18a. Recipient Name<br>Andrew Sullivan | 19a. Grants Officer Name |
|---|---|
| 18b. Recipient Signature<br>Andrew Sullivan (electronically signed) | 19b. Grants Officer Signature |
| 18c. Title<br>Recipient Signator | 18d. Date (dd-mmm-yyyy)<br>27-Sep-2023 | 19c. Bureau/Office/Post<br>OFC OF PROCUREMENT<br>EXECUTIVE (A/OPE) | 19d. Date (dd-mmm-yyyy)<br>27-Sep-2023 |

By signing this Federal award, the recipient acknowledges that it will comply with Federal regulations, the Terms and Conditions, and any Special Award Conditions associated with this award. Receipt of the recipient's signature and return of the Federal Award Coversheet is required within ten (10) business days of the Grants Officer's signature. Please return to the Grants Officer address indicated here ███@state.gov

DEFMTDAPP_000232

# U.S. Department of State
# Award Provisions



During the period of performance, the Recipient must comply with:
- The Award Provisions below;
- The Department of State Standard Terms and Conditions for Federal Awards, which are incorporated by reference and made part of this Federal Award. Electronic copies containing the complete text are available at: https://www.state.gov/about-us-office-of-the-procurement-executive/
- The applicable sections of 2 CFR §200 and 2 CFR §600; and
- All assurances and certifications made during the application process.

## 1) FEDERAL AWARD IDENTIFICATION NUMBER (FAIN):
SLMAQM21CA3486-M001

## 2) FEDERAL SHARE OF AWARD:
$2,469,135.00 USD

## 3) PURPOSE AND OBJECTIVES OF AWARD:

**a. Purpose:**
JOURNALISM DEVELOPMENT NETWORK INC (hereinafter referred to as the Recipient), is hereby provided a federal award, the purpose of which is to:

This amendment is issued to extend the period of performance until September 30, 2025; revise the Scope of Work; and add additional federal funding to continue program activities. All other terms and conditions will remain unchanged.

The Recipient shall carry out the Agreement in accordance with its proposal dated: 27-Aug-2023, and any revisions to which both parties agree to in writing. The Recipient's proposal and any subsequent negotiated revisions are hereby incorporated by reference.

**b. Objectives and Expected Outcomes:** The Recipient agrees to perform the program and meet the specific objectives below:

See Attached Revised Scope of Work

## 4) CONTACT INFORMATION:

a. Grants Officer:
Name:                ███ ██
Post/Bureau:         BUREAU OF DEMOCRACY, HUMAN RIGHTS AND LABOR (DRL)
Section:
Street Address:      ██████████-████
                     ATTN: Federal Assistance (A/OPE/AQM/IP)
Zip Code:            ████
E-mail:              █████@state.gov
Telephone:           ██████████

DEFMTDAPP_000233

**DRL Scope of Work**

| | |
|---|---|
| **Grantee:** | Journalism Development Network, Inc. DBA Organized Crime and Corruption Reporting Project (OCCRP) |
| **Title of Project:** | Building an Investigative Journalism Community in the Pacific Islands |
| **Goal or Statement of Work:** | The goal of this project is to cultivate an investigative reporting industry in the Pacific Islands and ensure that the region's journalists have the capacity to expose corruption, inform citizens, and empower key stakeholders to push for greater transparency and accountability. |
| **Objective 1:** | To increase the capacity and skills of journalists in the Pacific Islands and to identify future leaders. |
| **Activities:** | Activity 1.1: Co-host up to four trainings in follow-the-money investigative journalism for local and outside journalists who cover the region<br><br>Activity 1.2: Host advanced trainings for up to 10 select journalists who have completed follow-the-money training |
| **Objective 2** | To produce and disseminate quality investigative content that exposes organized crime and corruption in the wider Asia-Pacific region. |
| **Activities:** | Activity 2.1: Select media outlets and reporters receive intense 'training by doing' from OCCRP investigative editors while partnering on stories<br><br>Activity 2.2: Produce high-quality regional investigative stories<br><br>Activity 2.3: Work with regional partners to collect and analyze public datasets, such as company registries, in OCCRP's secure Aleph database<br><br>Activity 2.4: Support the expansion of the PNGi and PACIFICi Portals |
| **Objective 3:** | To develop a practicing network of local and regional investigative journalists. |
| **Activities:** | Activity 3.1: Host regional meetings of investigative reporters for both skills development and collaborative work on cross-border investigations<br><br>Activity 3.2: Bring Pacific journalists and core OCCRP staff to international journalism conferences<br><br>Activity 3.3: Connect regional journalists with OCCRP's global network of member centers and publishing partners<br><br>Activity 3.4: Identify and support local journalists interested in creating dedicated investigative centers or investigative units within local independent media outlets |

| | Activity 3.5: Provide fellowships for journalists to work with OCCRP on investigations. |
|---|---|

DEFMTDAPP_000235

Exhibit F

DEFMTDAPP_000236



June 16, 2016

Mitchell Warren
Executive Director
AVAC
423 West 127th Street, 4th Floor
New York, NY 10027

Cooperative Agreement Number: AID-OAA-A-16-00031
Title: **HIV Vaccine and Biomedical Prevention Research Project – Objective 3**

Dear Mr. Warren,
Pursuant to the authority contained in the Foreign Assistance Act of 1961, as amended, the U.S. Agency for International Development (hereinafter referred to as "USAID" or "Grantor") hereby provides to AVAC (hereinafter referred to as "Grantee," or "Recipient"), the sum set forth in Section A.3 of this Agreement to provide support for the Coalition to Accelerate and Support Prevention Research (CASPR), as described in Attachment B of this Agreement entitled "**HIV Vaccine and Biomedical Prevention Research Project** – Objective 3".

This Cooperative Agreement is effective June 20, 2016. Obligation is made as of the date of this agreement (see page 2) and shall apply to commitments made by the Recipient in furtherance of program objectives for the period described in Section A.2 of this Agreement. USAID shall not be liable for reimbursing the Recipient for any costs in excess of the obligated amount.

This Cooperative Agreement is awarded to the Recipient on condition that the funds will be administered in accordance with the terms and conditions as set forth in the attachments listed under my signature below, which together constitute the entire award document, and to which your organization has agreed.

Please sign the second page of this cover letter to acknowledge your receipt of this award and e-mail a scanned copy of the signed page to both ▓▓▓▓▓▓▓▓ at ▓▓▓@usaid.gov and ▓▓▓▓▓▓ at ▓▓▓@usaid.gov.



Agreement Officer
M/OAA/GH

Attachments:
  A. Schedule
  B. Program Description
  C. Standard/Mandatory Provisions

DEFMTDAPP_000237

**ACKNOWLEDGED:**

BY:

NAME:       Mitchell Warren

TITLE:      Executive Director

DATE:       June 16, 2016

## ACCOUNTING AND APPROPRIATION DATA

### A. GENERAL

| | |
|---|---|
| A.1 Total Estimated Amount (Federal): | $19,995,889.00 |
| A.2 Total Obligated USAID Amount: | $3,000,000.00 |
| A.3 Total Cost-Sharing Amount (Non-Federal): | $4,020,400.00 |
| A.4 Activity Title: | HIV Vaccine and Biomedical Prevention Research Project – Objective 3 |
| A.5 Recipient: | AVAC |
| A.6 Tax I.D. Number | |
| A.7 DUNS Number: | 115320884 |
| A.8 LOC Number: | N/A |

### B. SPECIFIC (TBD)

| | | |
|---|---|---|
| B.1 GLAAS Requisition Number: | REQ-GH-16-000165 | REQ-GH-16-000165 |
| B.2 Accounting Template: | GH-HIV-Prog Funds | GH-HIV-Prog Funds |
| B.3 BBFY: | 2015 | 2015 |
| B.4 EBFY: | 2016 | 2016 |
| B.5 Fund: | GH-C-AIDS | GH-C-AIDS |
| B.6 Operating Unit: | GH/OHA | GH/OHA |
| B.7 Program Area: | A11 | A11 |
| B.8 Distribution Code: | 936-8402-M | 936-8402-V |
| B.9 Program Element: | A047 | A047 |
| B.10 Team/Division | None | None |
| B.11 BGA: | 997 | 997 |
| B.12 SOC: | 4100301 | 4100301 |
| B.13 Amount: | $2,000,000.00 | $1,000,000.00 |

2

DEFMTDAPP_000238

See Program Planning Reports in A.5(b)(1) on page 8 of this Agreement for details on submitting your draft branding strategy and marking plan. See also ADS 320.3.3 Marking Branding and Marking Requirements for Assistance Awards http://www.usaid.gov/sites/default/files/documents/1868/320.pdf.

### A.17   Termination

If at any time USAID determines that continuation of all or part of the funding for a program should be suspended or terminated because such assistance would not be in the national interest of the United States or would be in violation of an applicable law, then USAID may, following notice to the recipient, suspend or terminate the award in whole or in part and prohibit the recipient from incurring additional obligations chargeable to the award other than those costs specified in the notice of suspension. If a suspension is put into effect and the situation causing the suspension continues for 60 calendar days or more, then USAID may terminate the award in whole or in part on written notice to the recipient and cancel any portion of the award which has not been disbursed or irrevocably committed to third parties.

### A.18   Disputes

(a) Any dispute under or relating to a grant or agreement will be decided by the USAID Agreement Officer. The Agreement Officer must furnish the recipient a written copy of the decision.

(b) Decisions of the USAID Agreement Officer will be final unless, within 30 calendar days of receipt of the decision, the recipient appeals the decision to USAID's Senior Deputy Assistant Administrator, Bureau for Management. Appeals must be in writing with a copy concurrently furnished to the Agreement Officer.

(c) In order to facilitate review of the record by the USAID's Senior Deputy Assistant Administrator, Bureau for Management, the recipient will be given an opportunity to submit written evidence in support of its appeal. No hearing will be provided.

(d) Decisions by the Senior Deputy Assistant Administrator, Bureau for Management, will be final.

### A.19 Post-Award Agreement Administration

(a)  Cognizant USAID Agreement Officer Representative (AOR)

The AOR for this Cooperative Agreement will be designated in a separate memorandum from the Agreement Officer to the AOR, a copy of which will be provided to the Recipient and the payment office specified below.

(b) Agreement Officer:

E-mail:            @usaid.gov

(c) Payment Office:

M/CFO/CMP
E-mail:    @usaid.gov

(d) Recipient Point of Contact:

DEFMTDAPP_000239

## B. ATTACHMENT B – PROGRAM DESCRIPTION

### Executive Summary

Recent breakthroughs in HIV treatment and prevention research have created unprecedented opportunities to curb new infections, save lives and reduce long-term global investments for the HIV response. Some of the biomedical approaches today include expanded HIV testing and linkage to effective treatment and prevention, including antiretroviral treatment (ART) for people living with HIV, Option B-Plus, voluntary medical male circumcision (VMMC), male and female condoms, and, more recently, oral pre-exposure prophylaxis (PrEP).

Even as existing tools are rolled out, dynamic research is ongoing. The AIDS vaccine field is pursuing vaccine-induced and passive immunization of broadly neutralizing antibodies (bNAbs) against HIV, with the first large test-of-concept trial of antibody-mediated prevention set to begin later this year. The suite of trials designed to build on results of the RV144 trial that showed proof of concept for an HIV vaccine, with a possible efficacy study planned to initiate later this year, and other vaccine strategies potentially launching in the next 12-18 months. The antiretroviral(ARV)-based prevention pipeline includes two efficacy trials of an ARV-containing vaginal ring on the verge of results and two long-acting injectable ARVs approaching go/no-go decisions for a possible efficacy trial.

In an ideal world, existing tools would scale up with impact via programs that also help identify prevention gaps to be filled by upstream research—and that research would be well-funded and integrated into global and national conversations about long-term plans to end the AIDS epidemic. But HIV persists as an epidemic because the world is not ideal, with decisions often framed as *either/or* choices, where the best way forward is *both/and*. The core challenge for the field of HIV prevention in the coming five years is to pursue scale-up of available tools, while sustaining momentum in R&D—and to do so in the context of a shrinking envelope of global resources available for the overall HIV response.

The **Coalition to Accelerate and Support Prevention Research (CASPR)** is designed to address this challenge through a robust network of strategic partnerships and an interconnected array of activities, all oriented towards the support, strengthening and impact of Africa-focused and -led biomedical prevention research, implementation and advocacy. ***The ultimate goal of this project is to support the development and sustainability of an Africa-centered network dedicated to advancing advocacy, policy, regulatory, community engagement and communications efforts that help accelerate biomedical HIV prevention research.***

To achieve this goal, AVAC has assembled an array of experienced partners with established expertise working in the core areas of this Project. AVAC is uniquely positioned to coordinate CASPR as the only advocacy organization that tracks and works on all areas of biomedical HIV prevention, and that has substantive engagement with every stage of the research process, from basic science to implementation. Over the past 20 years, AVAC has established itself as the go-to source for materials and dialogues that help ensure complex science is translated to communities, and the nuances of civil society concerns—particularly those of people most at risk of HIV and in need of HIV prevention—are well-understood by the scientific community.

One of AVAC's strengths is its ability to forge strong, truly collaborative relationships with stakeholders at every level. The CASPR partners represent the leaders in their fields—prevention research, advocacy, communications, and policy and community engagement—and are united by a commitment to share information, develop joint strategies and respond rapidly to developments in the field.

CASPR will be carried out with oversight and direction provided by members of two "Partnership Pillars"—Scientific and Advocacy, Policy & Communications. Specifically, two advisory committees with overlapping membership will be constituted to ensure synergy, efficiency and impact. The majority of members are based in

DEFMTDAPP_000240

and work primarily in sub-Saharan Africa, and will have an explicit mandate of ensuring that the Project is African-owned and -led at every stage.

Project activities are grouped into four major objectives: Advocacy; Research Translation; Research Preparedness; and Policy Engagement. Additional cross-cutting activities focused on gender integration, capacity building and monitoring and evaluation support this four-pronged strategy. In each area, CASPR builds on experience and adds innovation to address the current context.

- **Advocacy:** Key innovations include linking *prevention research advocacy to global and national approaches to ending AIDS and to campaigns for increased domestic financing for health in sub-Saharan Africa;* a new virtual *Advocacy Institute*; and a new *Network of African HIV Advocates* that will serve as a focal point for African-led, sustainable advocacy.
- **Research Translation**: Notable in its *expansion of a pan-prevention communications focus* that has been identified as a critical service provided by AVAC and partners, as well as the establishment of the *African HIV Media Network.*
- **Research Preparedness**: Innovative in the *expansion of the Good Participatory Practice framework*, including the development of regional Africa-based Centers of Excellence and *making GPP more gender-sensitive*, via tools, stakeholder engagement and training that meet the needs of young women, adolescent girls and sexual minorities.
- **Policy Engagement**: An unprecedented level of coordination between research partners, governments and civil society to design and implement an interconnected set of activities responsive to the *information, skills and technology needs* of influencers and decision makers, including platforms for regulatory harmonization, dissemination of research plans and results, development of tailored data for decision making at country level via epidemiological modeling and target product profile (TPP) development, all designed by Partners with extensive country-level experience. *Policy makers, regulators, decision-makers and other stakeholders will know and/or be able to decide: what is happening, why it matters, what matters most in a given timeframe, and how to act for impact.*

All of this work will be supported by a fully-integrated monitoring, evaluation and learning plan (ML&E) plan that, along with Project-supported data-tracking efforts (e.g., Resource Tracking, the PxRD database of trials, media tracking) will allow CASPR to be fully responsive to developments based on its own activities, and the broader field, with the ultimate goal of identifying and implementing the biomedical options needed to bring the epidemic to a conclusive, sustainable end.

DEFMTDAPP_000241

AID-OAA-A-16-00031

## A. SCHEDULE  C  –  STANDARD  PROVISIONS  FOR  U.S.  NONGOVERNMENTAL ORGANIZATIONS

### Mandatory Standard Provisions for U.S. Nongovernmental Organizations

#### C.1    Applicability of 2 CFR 200 And 2 CFR 700 (December 2014)

a.  All provisions of 2 CFR 200, 2 CFR 700, and all Standard Provisions attached to  this agreement are applicable to the recipient and to subrecipients which meet  the definition of "Recipient" in part 2 CFR 200.86, unless a section specifically  excludes a subrecipient from coverage. The recipient must assure that subrecipients have copies of all the attached standard provisions.
b.  For any subawards made with Non-U.S. subrecipients the recipient must include  the applicable "Standard Provisions for Non-US Nongovernmental  Organizations." Recipients are required to ensure compliance with monitoring  procedures in accordance with 2 CFR 200 and 2 CFR 700.

[END OF PROVISION]

#### C.2    Ineligible Countries (May 1986)

Unless otherwise approved by the USAID Agreement Officer, funds will only be  expended for assistance to countries eligible for assistance under the Foreign  Assistance Act of 1961, as amended, or under acts appropriating funds for foreign  assistance.

[END OF PROVISION]

#### C.3    Nondiscrimination (June 2012)

No U.S. citizen or legal resident shall be excluded from participation in, be denied the  benefits of, or be otherwise subjected to discrimination on the basis of race, color,  national origin, age, disability, or sex under any program or activity funded by this award  when work under the grant is performed in the U.S. or when employees are recruited  from the U.S.

Additionally, USAID is committed to achieving and maintaining a diverse and  representative workforce and a workplace free of discrimination.  Based on law,  Executive Order, and Agency policy, USAID prohibits discrimination, including  harassment, in its own workplace on the basis of race, color, religion, sex (including pregnancy and gender identity), national origin, disability, age, veteran's status, sexual  orientation, genetic information, marital status, parental status, political affiliation, and  any other conduct that does not adversely affect the performance of the employee. In addition, the Agency strongly encourages its recipients and their subrecipients and  vendors (at all tiers), performing both in the U.S. and overseas, to develop and enforce comprehensive nondiscrimination policies for their workplaces that include protection for  all their employees on these expanded bases, subject to applicable law.

[END OF PROVISION]

#### C.4    Amendment of Award (June 2012)

This award may only be amended in writing, by formal amendment or letter, signed by  the Agreement Officer (AO), and in the case of a bilateral amendment, by the AO and  an authorized official of the recipient.

[END OF PROVISION]

# Exhibit G

DEFMTDAPP_000243

| AWARD/CONTRACT | 1. This Contract is a Rated Order under the Defense Priorities and Allocations System (DPAS) - Code of Federal Regulations - at 15 CFR 700. | RATING | | PAGE OF PAGES 1 \| 123 |
|---|---|---|---|---|

| 2. CONTRACT (Procurement, Instruction, Identification) NUMBER | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NUMBER |
|---|---|---|
| 72052125C00001 | See Block 20C | REQ-521-24-000021 |

| 5. ISSUED BY | CODE | 720521 | 6. ADMINISTERED BY (If other than Item 5) | CODE | N/A |
|---|---|---|---|---|---|

USAID/Haiti
00000

6. ADMINISTERED BY: Not Applicable

SCD-C

| 7. NAME AND ADDRESS OF CONTRACTOR (Number, Street, County, State and ZIP Code) | 8. DELIVERY |
|---|---|

CHEMONICS INTERNATIONAL, INC.
1275 NEW JERSEY AVE SE STE 200
WASHINGTON DC 20003-5115

8. DELIVERY
☐ FREE ON BOARD (FOB) ORIGIN   ☒ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN ▶ | ITEM

| CODE | | FACILITY CODE | |
|---|---|---|---|

| 11. SHIP TO/MARK FOR | CODE | HAITI | 12. PAYMENT WILL BE MADE BY | CODE | HAITI |
|---|---|---|---|---|---|

USAID/Haiti
Boulevard 15 Octobre, Tabarre 41
Tabarre, Haiti

USAID/Haiti
Office of Financial Management
Boulevard 15 Octobre, Tabarre 41
Tabarre, Haiti

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION UNDER THE UNITED STATES CODE AT: | 14. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| ☐ 10 U.S.C. 3204 (a) ( )    ☐ 41 U.S.C. 3304 (a) ( ) | See Schedule |

| 15A. ITEM NUMBER | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | Continued | | | | |

| | | | | 15G. TOTAL AMOUNT OF CONTRACT ▶ | $24,899,806.00 |
|---|---|---|---|---|---|

**16. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE (S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| | A | SOLICITATION/CONTRACT FORM | | X | I | CONTRACT CLAUSES | 95 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 6 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS | |
| X | C | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT | 14 | X | J | LIST OF ATTACHMENTS | 102 |
| X | D | PACKAGING AND MARKING | 45 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 47 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 48 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 59 | | L | INSTRSUCTIONS, CONDITIONS, AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 64 | | M | EVALUATION FACTORS FOR AWARD | |

**CONTRACTING OFFICER WILL COMPLETE ITEM 17 (SEALED-BID OR NEGOTIATED PROCUREMENT) OR 18 (SEALED-BID PROCUREMENT) AS APPLICABLE**

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _____ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ SEALED-BID AWARD (Contractor is not required to sign this document.) Your bid on Solicitation Number _____ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your bid, and (b) this award/contract. No further contractual document is necessary. (Block 18 should be checked only when awarding a sealed-bid contract.)

| 19A. NAME AND TITLE OF SIGNER (Type or print) | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| Anna Slother, President, USG Business Line | |

| 19B. NAME OF CONTRACTOR | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
|---|---|---|---|
| CHEMONICS INTERNATIONAL, INC. BY _(signature)_ (Signature of person authorized to sign) | 12/6/2024 | BY _____ (Signature of the Contracting Officer) | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 26 (Rev. 12/2022)
Prescribed by GSA - FAR (48 CFR) 53.214(a)

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED | PAGE | OF |
|---|---|---|---|
| | 72052125C00001 | 2 | 123 |

NAME OF OFFEROR OR CONTRACTOR

CHEMONICS INTERNATIONAL, INC.

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Period of Performance: 11/20/2024 to 11/19/2028 | | | | |
| 0001 | To Initiate first obligation for the Justice program | | | | 24,899,806.00 |
| | Accounting Info: BBFY: 2022 EBFY: 2023 Fund: DV OP: HAITI Prog Area: DR.1 Dist Code: 521-M BGA: 521 SOC: 4100100 Funded: $3,009,581.00 Accounting Info: BBFY: 2022 EBFY: 2023 Fund: ES-PSF OP: HAITI Prog Area: DR.1 Dist Code: 521-M BGA: 521 SOC: 4100100 Funded: $800,000.00 | | | | |

DEFMTDAPP_000245

AUTHORIZED FOR LOCAL REPRO

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

**SECTION I - CONTRACT CLAUSES**

**I.1     NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE**

The following contract clauses pertinent to this section are hereby incorporated by reference (by Citation Number, Title, and Date) in accordance with the clause at FAR 52.252-2 "CLAUSES INCORPORATED BY REFERENCE". See https://acquisition.gov/far/index.html for electronic access to the full text of a FAR clause.

| NUMBER | TITLE | DATE |
|---|---|---|
| | **FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1)** | |
| 52.202-1 | DEFINITIONS | JUN 2020 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | MAY 2014 |
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO GOVERNMENT | JUN 2020 |
| 52.203-7 | ANTI-KICKBACK PROCEDURES | JUN 2020 |
| 52.203-8 | CANCELLATION, RECESSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY | MAY 2014 |
| 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | MAY 2014 |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | JUN 2020 |
| 52.203-13 | CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT | NOV 2021 |
| 52.203-14 | DISPLAY OF HOTLINE POSTER(S) | NOV 2021 |
| 52.203-16 | PREVENTING PERSONAL CONFLICT OF INTEREST | JUN 2020 |
| 52.203-17 | CONTRACTOR EMPLOYEE WHISTLEBLOWER RIGHTS AND REQUIREMENTS TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS | JUN 2020 |
| 52.203-19 | PROHIBITION ON REQUIRING CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS OR STATEMENTS | JAN 2017 |
| 52.204-4 | PRINTED OR COPIED DOUBLE-SIDED ON POSTCONSUMER FIBER CONTENT PAPER | MAY 2011 |
| 52.204-10 | REPORTING EXECUTIVE COMPENSATION AND FIRST-TIER SUBCONTRACT AWARDS | JUN 2020 |
| 52.204-13 | SYSTEM FOR AWARD MANAGEMENT MAINTENANCE | OCT 2018 |
| 52.204-14 | SERVICE CONTRACT REPORTING REQUIREMENTS | OCT 2016 |
| 52.204-16 | COMMERCIAL AND GOVERNMENT ENTITY CODE REPORTING | AUG 2020 |
| 52.204-18 | COMMERCIAL AND GOVERNMENT ENTITY CODE | |

|         | MAINTENANCE                                           | AUG 2020 |
|---------|-------------------------------------------------------|----------|
| 52.204-19 | INCORPORATION BY REFERENCE OF REPRESENTATIONS AND CERTIFICATIONS | DEC 2014 |
| 52.204-23 | PROHIBITION ON CONTRACTING FOR HARDWARE, SOFTWARE, AND SERVICES DEVELOPED OR PROVIDED BY KASPERSKY LAB AND OTHER COVERED ENTITIES | NOV 2021 |
| 52.204-25 | PROHIBITION ON CONTRACTING FOR CERTAIN TELECOMMUNICATIONS AND VIDEO SURVEILLANCE SERVICES OR EQUIPMENT | NOV 2021 |
| 52.207-5 | OPTION TO PURCHASE EQUIPMENT | FEB 1995 |
| 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | NOV 2021 |
| 52.209-9 | UPDATES OF PUBLICLY AVAILABLE INFORMATION REGARDING RESPONSIBILITY MATTERS | OCT 2018 |
| 52.209-10 | PROHIBITION ON CONTRACTING WITH INVERTED DOMESTIC CORPORATIONS | NOV 2015 |
| 52.210-1 | MARKET RESEARCH | NOV 2021 |
| 52.215-2 | AUDIT AND RECORDS – NEGOTIATION | JUN 2020 |
| 52.215-8 | ORDER OF PRECEDENCE – UNIFORM CONTRACT FORMAT | OCT1997 |
| 52.215-23 | LIMITATIONS ON PASS-THROUGH CHARGES | JUN 2020 |
| 52.216-7 | ALLOWABLE COST AND PAYMENT | AUG 2018 |
| 52.216-8 | FIXED FEE | JUN 2011 |
| 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS | OCT 2018 |
| 52.219-9 | SMALL BUSINESS SUBCONTRACTING PLAN | NOV 2021 |
| 52.219-16 | LIQUIDATED DAMAGES – SUBCONTRACTING PLAN | SEP 2021 |
| 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES | FEB 1997 |
| 52.222-2 | PAYMENT FOR OVERTIME PREMIUMS | JULY 1990 |
| 52.222-21 | PROHIBITION OF SEGREGATED FACILITIES | APR 2015 |
| 52.222-26 | EQUAL OPPORTUNITY | SEP 2016 |
| 52.222-29 | NOTIFICATION OF VISA DENIAL | APR 2015 |
| 52.222-50 | COMBATING TRAFFICKING IN PERSONS | NOV 2021 |
| 52.223-2 | AFFIRMATIVE PROCUREMENT OF BIOBASED PRODUCTS UNDER SERVICE AND CONSTRUCTION CONTRACTS | SEP 2013 |
| 52.224-1 | PRIVACY ACT NOTIFICATION | APR 1984 |
| 52.224-2 | PRIVACY ACT | APR 1984 |
| 52.224-3 | PRIVACY TRAINING | JAN 2017 |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | FEB 2021 |
| 52.228-3 | WORKER'S COMPENSATION INSURANCE (DEFENSE BASE ACT) | JUL 2014 |
| 52.228-7 | INSURANCE – LIABILITY TO THIRD PERSONS | MAR 1996 |
| 52.230-2 | COST ACCOUNTING STANDARDS | JUN 2020 |

| 52.230-3 | DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING | |
| | PRACTICES | JUN 2020 |
| 52.230-6 | ADMINISTRATION OF COST ACCOUNTING STANDARDS | JUN 2010 |
| 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS) | MAY 2014 |
| 52.232-17 | INTEREST | MAY 2014 |
| 52.232-18 | AVAILABILITY OF FUNDS | APR 1984 |
| 52.232-22 | LIMITATION OF FUNDS | APR 1984 |
| 52.232-25 | PROMPT PAYMENT | JAN 2017 |
| 52.232-25 | ALTERNATE I | FEB 2002 |
| 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS) | JAN 2017 |
| 52.232-33 | PAYMENT BY ELECTRONIC FUNDS TRANSFER – SYSTEM | |
| | FOR AWARD MANAGEMENT | OCT 2018 |
| 52.232-39 | UNENFORCEABILITY OF UNAUTHORIZED OBLIGATIONS | JUNE 2013 |
| 52.233-1 | DISPUTES | MAY 2014 |
| 52.233-2 | ALTERNATE I | DEC 1991 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| 52.233-3 | ALTERNATE I | JUN 1985 |
| 52.233-4 | APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM | OCT 2004 |
| 52.236-3 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK | APR 1984 |
| 52.236-5 | MATERIAL AND WORKMANSHIP | APR 1984 |
| 52.236-6 | SUPERINTENDENCE BY THE CONTRACTOR | APR 1984 |
| 52.236-7 | PERMITS AND RESPONSIBILITIES | NOV 1991 |
| 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS | APR 1984 |
| 52.242-2 | PRODUCTION PROGRESS REPORTS | APR 1991 |
| 52.242-3 | PENALTIES FOR UNALLOWABLE COSTS | SEP 2021 |
| 52.242-4 | CERTIFICATION OF FINAL INDIRECT COSTS | JAN 1997 |
| 52.242-13 | BANKRUPTCY | JUL 1995 |
| 52.243-2 | CHANGES – COST REIMBURSEMENT | AUG 1987 |
| 52.243-2 | ALTERNATE I | APR 1984 |
| 52.244-2 | SUBCONTRACTS | JUN 2020 |
| 52.244-5 | COMPETITION IN SUBCONTRACTING | DEC 1996 |
| 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS | JAN 2022 |
| 52.245-1 | GOVERNMENT PROPERTY | SEP 2021 |
| 52.245-9 | USE AND CHARGES | APR 2012 |
| 52.246-25 | LIMITATION OF LIABILITY – SERVICES | FEB 1997 |
| 52.247-1 | COMMERCIAL BILL OF LADING NOTATIONS | FEB 2006 |
| 52.249-6 | TERMINATION (COST-REIMBURSEMENT) | MAY 2004 |
| 52.249-14 | EXCUSABLE DELAYS | APR 1984 |
| 52.252-2 | CLAUSES INCORPORATED BY REFERENCE | FEB 1998 |
| 52.253-1 | COMPUTER GENERATED FORMS | JAN 1991 |

**USAID ACQUISITION REGULATION (AIDAR) 48 CFR CHAPTER 7**

| | | |
|---|---|---|
| 752.202-1 | DEFINITIONS | JAN 1990 |
| 752.209-71 | ORGANIZATIONAL CONFLICTS OF INTEREST DISCOVERED AFTER AWARD | JUN 1993 |
| 752.211-70 | LANGUAGE AND MEASUREMENT | JUN 1992 |
| 752.227-14 | RIGHTS IN DATA – GENERAL | OCT 2007 |
| 752.228-7 | INSURANCE-LIABILITY TO THIRD PERSONS | JUL 1997 |
| 752.7001 | BIOGRAPHICAL DATA | JUL 1997 |
| 752.7002 | TRAVEL AND TRANSPORTATION | JAN 1990 |
| 752.7006 | NOTICES | APR 1984 |
| 752.7008 | USE OF GOVERNMENT FACILITIES OR PERSONNEL | APR 1984 |
| 752.7010 | CONVERSION OF U.S. DOLLARS TO LOCAL CURRENCY | APR 1984 |
| 752.7011 | ORIENTATION AND LANGUAGE TRAINING | APR 1984 |
| 752.7014 | NOTICE OF CHANGES IN TRAVEL REGULATION | JAN 1996 |
| 752.7015 | USE OF POUCH FACILITIES | JUL 1997 |
| 752.7025 | APPROVAL | APR 1984 |
| 752.7027 | PERSONNEL | DEC 1990 |
| 752.7028 | DIFFERENTIALS AND ALLOWANCES | JUL 1996 |
| 752.7029 | POST PRIVILEGES | JUL 1993 |
| 752.7031 | LEAVE AND HOLIDAYS | OCT 1989 |
| 752.7033 | PHYSICAL FITNESS | JUL 1997 |
| 752.7034 | ACKNOWLEDGMENT AND DISCLAIMER | DEC 1991 |
| 752.7035 | PUBLIC NOTICES | DEC 1991 |
| 752.7036 | USAID IMPLEMENTING PARTNER NOTICES (IPN) PORTAL FOR ACQUISITION | JUL 2014 |
| 752.7037 | CHILD SAFEGUARDING STANDARDS | AUG 2016 |
| 752.7038 | NONDISCRIMINATION AGAINST END-USERS OF SUPPLIERS OR SERVICES | OCT 2016 |
| 752.7101 | VOLUNTARY POPULATION PLANNING ACTIVITIES | JUN 2008 |

## CLAUSES/PROVISION INCORPORATED IN FULL TEXT

**I.2    BASIC SAFEGUARDING OF COVERED CONTRACTOR INFORMATION SYSTEM (JUNE 2016)**

(a) Definitions. As used in this clause—

Covered contractor information system means an information system that is owned or operated by a contractor that processes, stores, or transmits Federal contract information.

Federal contract information means information, not intended for public release, that is provided by or generated for the Government under a contract to develop or deliver a product or service to the Government, but not

including information provided by the Government to the public (such as on public websites) or simple transactional information, such as necessary to process payments.

Information means any communication or representation of knowledge such as facts, data, or opinions, in any medium or form, including textual, numerical, graphic, cartographic, narrative, or audiovisual (Committee on National Security Systems Instruction (CNSSI) 4009).

Information system means a discrete set of information resources organized for the collection, processing, maintenance, use, sharing, dissemination, or disposition of information ( 44 U.S.C. 3502).

Safeguarding means measures or controls that are prescribed to protect information systems.

(b) Safeguarding requirements and procedures.

(1) The Contractor shall apply the following basic safeguarding requirements and procedures to protect covered contractor information systems. Requirements and procedures for basic safeguarding of covered contractor information systems shall include, at a minimum, the following security controls:

(i)      Limit information system access to authorized users, processes acting on behalf of authorized users, or devices (including other information systems).

(ii)     Limit information system access to the types of transactions and functions that authorized users are permitted to execute.

(iii)    Verify and control/limit connections to and use of external information systems.

(iv)    Control information posted or processed on publicly accessible information systems.

(v)     Identify information system users, processes acting on behalf of users, or devices.

(vi)    Authenticate (or verify) the identities of those users, processes, or devices, as a prerequisite to allowing access to organizational information systems.

(vii)   Sanitize or destroy information system media containing Federal Contract Information before disposal or release for reuse.

(viii)  Limit physical access to organizational information systems, equipment, and the respective operating environments to authorized individuals.

(ix)    Escort visitors and monitor visitor activity; maintain audit logs of physical access; and control and manage physical access devices.

(x)     Monitor, control, and protect organizational communications (*i.e.*, information transmitted or received by organizational information systems) at the external boundaries and key internal boundaries of the information systems.

(xi)    Implement subnetworks for publicly accessible system components that are physically or logically separated from internal networks.

(xii)   Identify, report, and correct information and information system flaws in a timely manner.

(xiii)  Provide protection from malicious code at appropriate locations within organizational information systems.

(xiv)  Update malicious code protection mechanisms when new releases are available.

(xv)   Perform periodic scans of the information system and real-time scans of files from external sources as files are downloaded, opened, or executed.

(2) *Other requirements.* This clause does not relieve the Contractor of any other specific safeguarding requirements specified by Federal agencies and departments relating to covered contractor information systems generally or other Federal safeguarding requirements for controlled unclassified information (CUI) as established by Executive Order 13556.

(c) *Subcontracts.* The Contractor shall include the substance of this clause, including this paragraph (c), in subcontracts under this contract (including subcontracts for the acquisition of commercial products or commercial services, other than commercially available off-the-shelf items), in which the subcontractor may have Federal contract information residing in or transiting through its information system.

<div align="center">(End of clause)</div>

**I.3     FAR 52.223-9 ESTIMATE OF PERCENTAGE OF RECOVERED MATERIAL CONTENT FOR EPA-DESIGNATED ITEMS (MAY 2008)**

(a) Definitions. As used in this clause-

Postconsumer material means a material or finished product that has served its intended use and has been discarded for disposal or recovery, having completed its life as a consumer item. Postconsumer material is a part of the broader category of "recovered material."

"Recovered material " means waste materials and by-products recovered or diverted from solid waste, but the term does not include those materials and by-products generated from, and commonly reused within, an original manufacturing process.

(b) The Contractor, on completion of this contract, shall -

(1)  Estimate the percentage of the total recovered material content for EPA-designated item(s) delivered and/or used in contract performance, including, if applicable, the percentage of post-consumer material content; and

(2)  Submit this estimate to:

<div style="margin-left: 3em;">

██████████
United States Agency for International Development (USAID)
U.S. Embassy in Haiti
Blvd. 15 Octobre, Tabarre 41
Port-au-Prince, Haiti
</div>

<div align="center">(End of clause)</div>

**I.4      FAR 52.247-67 SUBMISSION OF TRANSPORTATION DOCUMENT FOR AUDIT (FEB 2006)**

(a) The Contractor shall submit to the address identified below, for prepayment audit, transportation documents on which the United States will assume freight charges that were paid-

  (1) By the Contractor under a cost-reimbursement contract; and

  (2) By a first-tier subcontractor under a cost-reimbursement subcontract thereunder.

(b) Cost-reimbursement Contractors shall only submit for audit those bills of lading with freight shipment charges exceeding $100. Bills under $100 shall be retained on-site by the Contractor and made available for on-site audits. This exception only applies to freight shipment bills and is not intended to apply to bills and invoices for any other transportation services.

 (c) Contractors shall submit the above referenced transportation documents to-
      U.S. Agency for International Development
      USAID/Haiti
      Office of Financial Management
      Boulevard 15 Octobre, Tabarre 41
      Port-au-Prince, Haiti
      Email: usaidhaitivouchers@usaid.gov

(End of clause)


**I.5      52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

https://www.acquisition.gov/far/part-52

(End of clause)


**I.6      52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)**

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within **2 days**.

(End of clause)

**[END OF SECTION I]**

Exhibit H

DEFMTDAPP_000253



Mark Hetfield
CEO
HIAS Inc.
1300 Spring Street, Suite 500
Silver Spring MD 20910-3616

E-mail:      mark.hetfield@hias.org
PoC Email: carrie.taneyhill@hias.org

Subject:       Grant No. 720BHA24GR00159

Dear Mr. Hetfield:

Pursuant to the authority contained in the Foreign Assistance Act of 1961, as amended, the U.S. Agency for International Development (hereinafter referred to as "USAID" or "Grantor") hereby provides to HIAS Inc. (hereinafter referred to as "**HIAS Inc.**," "Grantee," or "Recipient" or "non-Federal entity) the sum set forth in Section 1.3 of this Agreement to provide support for a program entitled "Multisectoral assistance and life-saving protection services for most vulnerable and at-risk Venezuelans affected by the crisis in Venezuela," as described in Attachment 2 of this Agreement entitled "Program Description."

This Agreement is effective and obligation is made as of the date of this letter and shall apply to expenditures and obligations made by the Recipient in furtherance of program objectives for the period described in Section 1.2 of this Agreement. USAID shall not be liable for reimbursing the Recipient for any costs in excess of the obligated amount.

This Agreement is awarded to the Recipient on condition that the funds will be administered in accordance with the terms and conditions as set forth in the attachments listed under my signature below, which together constitute the entire award document, and to which your organization has agreed.

Please sign the second page of this cover letter to acknowledge your receipt of this award and forward a scanned copy of only the signed page to bha.grantsunit.admin@usaid.gov.

Sincerely,



Date: 2024.07.17 15:30:14 -04'00'

Agreement Officer
Office of Acquisition and Assistance
M/OAA

Attachments:
1. Schedule
2. Program Description
3. Standard Provisions
4. Branding Strategy and Marking Plan

ACKNOWLEDGED:                 **HIAS Inc**

By:

Name:                                        Mark Hetfield

Title:                                        President and CEO

Date:                                        7/19/2024

## ACCOUNTING AND APPROPRIATION DATA

### A. GENERAL

| | | | |
|---|---|---|---|
| A.1. | Total Estimated USAID Amount | : | $18,500,000.00 |
| A.2. | Total Obligated USAID Amount | : | $10,000,000.00 |
| A.3. | Cost-Sharing Amount (Non-Federal) | : | $0.00 |
| A.4. | Agreement Officer's Representative (AOR) | : | See Section 1.12 |
| A.5. | Tax I.D. Number | : | |
| A.6. | Unique Entity Identifier | : | |
| A.7. | LOC Number | : | N/A |
| A.8. | USAID CFDA Number | : | 98.001 |
| A.9. | Award Number | : | 720BHA24GR00159 |

### B. SPECIFIC

| | | | |
|---|---|---|---|
| B.1.(a) | REQ Number | : | REQ-BHA-24-000643 |
| B.1.(b) | Control Number | : | AL20242650 |
| B.1.(c) | Fund | : | FD-X24-ISR |
| B.1.(d) | Operating Unit | : | BHA/ALAC |
| B.1.(e) | Program Area | : | HA.1 |
| B.1.(f) | Distribution Code | : | 529-W |
| B.1.(g) | BGA | : | 529 |
| B.1.(h) | SOC | : | 4100201 |
| B.1.(i) | Obligated Amount | : | $10,000,000.00 |

DEFMTDAPP_000255

## ATTACHMENT 3 – STANDARD PROVISIONS

(Note: Throughout this Agreement, the following terms may be used interchangeably: (a) "Grant Officer" and "Agreement Officer;" (b) "Grantee," "Recipient," and "Awardee;" (c) "Grant," "Cooperative Agreement," "Agreement," and "Award;" (d) Agreement Officer's Representative ," "Cognizant Technical Officer," "Project Officer," and "Activity Manager;" (e) "Subaward," "Subgrant," and "Subagreement;" and (f) "Subrecipient," "Subgrantee," and "Subawardee." All references to dollars ($) mean U.S. dollars or the equivalent thereof in another currency. References to "USAID," without an indication of the specific position or individual within USAID, shall mean "Agreement Officer" unless otherwise indicated or delegated to another USAID position or individual by the Agreement Officer.)

DEFMTDAPP_000256

**a) MANDATORY STANDARD PROVISIONS FOR U.S. NONGOVERNMENTAL ORGANIZATIONS**

**M1.    APPLICABILITY OF 2 CFR 200 and 2 CFR 700 (NOVEMBER 2020)**

a.    All provisions of 2 CFR 200 and 2 CFR 700 in effect on the date of this award, and all Standard Provisions attached to this agreement are applicable to the recipient and to subrecipients that meet the definition of "Non-Federal Entity" in part 2 CFR 200.1, unless a section specifically excludes a subrecipient from coverage. The recipient must assure that subrecipients have copies of all the attached standard provisions.

b.    For any subawards made with Non-U.S. subrecipients the recipient must include the applicable "Standard Provisions for Non-US Nongovernmental Organizations." Recipients are required to ensure compliance with monitoring procedures in accordance with 2 CFR 200 and 2 CFR 700.

[END OF PROVISION]

**M2.    INELIGIBLE COUNTRIES (MAY 1986)**

Unless otherwise approved by the USAID Agreement Officer, funds will only be expended for assistance to countries eligible for assistance under the Foreign Assistance Act of 1961, as amended, or under acts appropriating funds for foreign assistance.

[END OF PROVISION]

**M3.    NONDISCRIMINATION (JUNE 2012)**

No U.S. citizen or legal resident shall be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination on the basis of race, color, national origin, age, disability, or sex under any program or activity funded by this award when work under the grant is performed in the U.S. or when employees are recruited from the U.S.

Additionally, USAID is committed to achieving and maintaining a diverse and representative workforce and a workplace free of discrimination. Based on law, Executive Order, and Agency policy, USAID prohibits discrimination, including harassment, in its own workplace on the basis of race, color, religion, sex (including pregnancy and gender identity), national origin, disability, age, veteran's status, sexual orientation, genetic information, marital status, parental status, political affiliation, and any other conduct that does not adversely affect the performance of the employee.

In addition, the Agency strongly encourages its recipients and their subrecipients and vendors (at all tiers), performing both in the U.S. and overseas, to develop and enforce comprehensive nondiscrimination policies for their workplaces that include protection for all their employees on these expanded bases, subject to applicable law.

[END OF PROVISION]

**M4.    AMENDMENT OF AWARD (JUNE 2012)**

This award may only be amended in writing, by formal amendment or letter, signed by the Agreement Officer (AO), and in the case of a bilateral amendment, by the AO and an authorized official of the recipient.

[END OF PROVISION]

**M5.    NOTICES (JUNE 2012)**

Any notice given by USAID or the recipient is sufficient only if in writing and delivered in person, mailed or e-mailed as follows:

DEFMTDAPP_000257

# Exhibit I

DEFMTDAPP_000258

# Grant and Cooperative Agreement

CHOOSE ONE:
- [X] COOPERATIVE AGREEMENT
- [ ] GRANT

| CHOOSE ONE: | [ ] EDUCATION | [ ] FACILITIES | [ ] RESEARCH | [X] SDCR | [ ] TRAINING |
|---|---|---|---|---|---|

| 1. GRANT/COOPERATIVE AGREEMENT NUMBER<br>72061725CA00003 | 2. SUPPLEMENT NUMBER | 3. EFFECTIVE DATE<br>11/25/2024 | 4. COMPLETION DATE<br>11/23/2029 |
|---|---|---|---|

| 5. ISSUED TO<br>NAME/ADDRESS OF RECIPIENT (No., Street, City/County, State, Zip)<br>MANAGEMENT SCIENCES FOR HEALTH<br>4201 WILSON BLVD STE 500<br>ARLINGTON VA 22203-4428 | 6. ISSUED BY   USAID/Uganda<br>Mailing Address:   00000 |
|---|---|

| 7. TAXPAYER IDENTIFICATION NO. (TIN) | 9. PRINCIPAL INVESTIGATOR/ORGANIZATION'S PROJECT OR PROGRAM MGR. (Name & Phone)<br>Wilberforce Owembabazi |
|---|---|
| 8. COMMERCIAL & GOVERNMENT ENTITY (CAGE) NO. | |

**10. RESEARCH, PROJECT OR PROGRAM TITLE**
USAID Strengthening Local Health Systems

**11. PURPOSE**
To strengthen key elements of Ugandan health systems focusing on health care financing , human resources for health , health management information systems (HMIS) and community health systems.

**12. PERIOD OF PERFORMANCE (Approximately)**
11/25/2024 through 11/23/2029

| 13A. | AWARD HISTORY | 13B. | FUNDING HISTORY |
|---|---|---|---|
| PREVIOUS | $0.00 | PREVIOUS | $0.00 |
| THIS ACTION | $55,000,000.00 | THIS ACTION | $8,451,010.00 |
| CASH SHARE | $0.00 | TOTAL | $8,451,010.00 |
| NON-CASH SHARE | $0.00 | | |
| RECIPIENT SHARE | $0.00 | | |
| TOTAL | $55,000,000.00 | | |

**14. ACCOUNTING AND APPROPRIATION DATA**
See Schedule

| PURCHASE REQUEST NO.<br>REQ-617-24-000028 | JOB ORDER NO. | AMOUNT | STATUS |
|---|---|---|---|

**15. POINTS OF CONTACT**

| | NAME | MAIL STOP | TELEPHONE | E-MAIL ADDRESS |
|---|---|---|---|---|
| TECHNICAL OFFICER | | | | |
| NEGOTIATOR | | | | |
| ADMINISTRATOR | ▮▮▮▮ | | ▮▮▮▮ | @usaid.gov |
| PAYMENTS | | | | |

**16. THIS AWARD IS MADE UNDER THE AUTHORITY OF :**
The Foreign Assistance Act of 1961, as amended.

| 17. APPLICABLE STATEMENT(S), IF CHECKED: | 18. APPLICABLE ENCLOSURE(S), IF CHECKED: |
|---|---|
| [ ] NO CHANGE IS MADE TO EXISTING PROVISIONS<br>[ ] FDP TERMS AND CONDITIONS AND THE AGENCY-SPECIFIC REQUIREMENTS APPLY TO THIS GRANT | [X] PROVISIONS   [ ] SPECIAL CONDITIONS<br>[ ] REQUIRED PUBLICATIONS AND REPORTS |

| UNITED STATES OF AMERICA | COOPERATIVE AGREEMENT RECIPIENT |
|---|---|

| CONTRACTING/GRANT OFFICER<br>▮▮▮▮ Date: 2024.11.25 17:10:30 +03'00' | DATE<br>11/21/2024 | DocuSigned by:<br>▮▮▮▮<br>8347EE32ABE9473... | DEFMTDAPP 000259 | DATE<br>11/25/2024 |



November 21, 2024

Gordon Kihuguru
Vice President & Chief Financial Officer
Management Sciences for Health (MSH)
4201 Wilson Boulevard, Suite 500
Arlington, VA 22203, USA
Tel: +1-703-667-3959
GKihuguru@msh.org

**Reference:**    USAID Strengthening Local Health Systems

**Subject:**    Cooperative Agreement No. 72061725CA00003

Dear Mr. Gordon Kihuguru:

Pursuant to the authority contained in the Foreign Assistance Act of 1961, as amended, the U.S. Agency for International Development (USAID) hereby awards Management Sciences for Health (MSH), hereinafter referred to as the "Recipient," the sum of **$55,000,000** to provide support for the program described in the Schedule of this award and in Attachment B, entitled "Program Description."

This Cooperative Agreement is effective and the obligation of **$8,451,010** is made as of **November 21, 2024,** and must apply to expenditures made by the Recipient in furtherance of program objectives during the period beginning on **November 25, 2024,** and ending **November 23, 2029** (the "Period of Performance").  USAID will not be liable for reimbursing the Recipient for any costs in excess of the Total Estimated Amount.

This Cooperative Agreement is made to the Recipient, on the condition that the funds will be administered in accordance with the terms and conditions as set forth in **Attachment A - Schedule**, **Attachment B - Program Description**, **Attachment C - Standard Provisions**, **Attachment D - Branding Strategy and Marking Plan**, **Attachment E - Gender, Youth and Social Inclusion Plan**, **Attachment F - Local Development Partners Group Policy**, **Attachment G - Local Capacity Development and Transition Plan**, and **Attachment H - Sustainability Plan and Analysis** all of which your organization has agreed to.

Please sign page 2 of this document to acknowledge your review and acceptance of the terms and conditions of the Cooperative Agreement and return to the Agreement Officer.

U.S. Agency for International Development

DEFMTDAPP_000260

direct consultant fees. These costs have always been a part of the base; however, it was not included in the written description)

(c) Total incurred costs excluding General and Administrative expenses, pass through grants, and equipment.

### A.6     REPORTING AND EVALUATION

#### 1.   Performance Monitoring and Reporting

The Recipient must submit the implementation and reporting documents detailed below electronically to the Agreement Officer Representative (AOR). The Recipient must use USAID provided templates when drafting each document. The required content and length for each document must be mutually agreed between the Recipient and the AOR.

In addition, the Recipient must electronically submit to the Office of Financial Management (OFM), the Agreement Officer (AO), and the AOR the final documents to one of the following:

Online: https://dec.usaid.gov/dec/content/submit.aspx

By mail (for pouch delivery):

USAID Development Experience Clearinghouse M/CIO/ITSD/KM/DEC
RRB M.01-010
Washington, DC 20523-6100


For questions on DEC submissions, contact USAID Data Services at dataservicesrequest@usaid.gov.

The title page of all reports forwarded to USAID must include a descriptive title, the author's name, grant number, the project number and title, the grantee's name, the name of the USAID office, and the publication or issuance date of the report.

If necessary, other reporting will be made in response to specific requests from the AOR to comply with USAID's reporting cycle.

#### (a) Start-Up Workshop

The Recipient must hold a start-up workshop, no later than **30 days from the date of execution of this Agreement** that includes USAID staff, any sub-awardees, representatives from other USAID activities working in the same sector or geographic location, any relevant Government of Uganda officials, and any other relevant partners or stakeholders. The intent of this start-up workshop is to guide development of the Recipient's first year work plan and AMELP (see below for details), as well as to ensure that the Activity aligns with other USAID activities and Government of Uganda priorities and expectations. The forum and format for this workshop must be mutually agreed between the Recipient and the AOR.

#### (b) Annual Work Plan

The work plan details how the Recipient will use the respective year to effectively achieve the award's objectives. The work plan serves as a detailed guide to program implementation and, once approved, represents an agreement as to the nature and timing of discrete tasks and interventions. Discrete tasks include training events, workshops and seminars, outreach events, and information dissemination activities such as publications and reports. The Recipient should cost these tasks (i.e., a costed work plan) whose aggregated costs should be within the allocated budget for the work plan year. It is essential that the document be concise so as to ensure that it will be a simple reference tool for the implementer to track progress against the approved implementation schedule, and for USAID to monitor and evaluate performance through the work plan year and to ensure that award objectives are accomplished on time, on budget, and in accordance with expectations.  Each annual plan will form the basis for an annual management review conducted by USAID and program staff to assess program directions, priorities, achievements, and prior year implementation results, as well as management and implementation impediments, and to make recommendations for revisions, as appropriate.

The Recipient must electronically submit, no later than **60 days from the execution date of this Agreement**, the draft first year work plan to the AOR for review and approval. The first work plan must include the period from the effective date of the award through September 30, 2025. Subsequently, annual work plans will be prepared annually and submitted electronically for AOR approval, no later than **September 1st** of each year.  Annual work plans must be based on the USAID fiscal year (October 1 to September 30) and must include detailed information regarding subaward activity.

Annual work plans must include detailed information regarding the work that each sub awardee will be carrying out during the respective year. These plans must also include detailed information regarding organizational capacity strengthening support that the Recipient will provide local partners, in preparation for transition awards.

### (c) Activity Monitoring, Evaluation, & Learning Plan (AMELP)

The AMELP is a management tool that enables the contractor and USAID to track whether desired results are being achieved and project implementation is being adapted to changing conditions. The Recipient must work closely with the AOR and USAID Monitoring Evaluation and Learning (MEL) Specialist to develop the AMELP using the provided USAID template format. This plan should define critical performance indicators, targets, data collection methods and the Recipient's plans for analyzing, utilizing and sharing information for reporting, accountability, learning and adaptation. The AMELP must also include the Activity's approach for establishing effective procedures for collecting and responding to feedback from beneficiaries and reporting to USAID a summary of beneficiary feedback and how the implementing partner and the Mission addressed it.

The Recipient must electronically submit a life-of-activity AMELP no later than **90 days from the execution date of the Agreement.** The Recipient must submit an annual update to the AMELP **no later than November 1 of each year US Fiscal Year thereafter**.

### (d) Baseline Report

The Recipient is responsible for conducting a baseline status report on indicators - all people-level data must be disaggregated by sex at the minimum, other relevant levels of disaggregation may be included as agreed with USAID in the activity's AMELP. Based on the baseline report, the Recipient will validate the baseline data and targets described in the PD and finalize key performance indicators and targets in consultation with USAID/Uganda. The baseline will also inform the revision of year one work plan and development of subsequent annual work plans and AMELP. USAID will have substantial involvement in the writing of the baseline's scope of work and monitor progress of data collection.

### (e) Collaborating, Learning, Adapting (CLA)

Collaborating, Learning, and Adapting (CLA) is a set of systematic and intentional practices that help improve development effectiveness. Collaboration enables cross-sector integration, convergence, and effective interventions to maximize development resources and enhance development results. The Recipient must collaborate with USAID-supported activities in common regions and sectors of operation, as directed by the AOR, and engage with stakeholders (defined collaboratively with the USAID AOR) to deliver integrated services to target populations. The Recipient must also participate in any coordination platforms established by USAID, where relevant and as directed by the AOR.

The Recipient must plan for intentional learning to inform activity adaptations. Sources of learning include reviewing the Activity's theory of change and related assumptions and risks; site monitoring visits, including joint, cross-sectoral site monitoring visits planned by USAID, the Recipient and/or other USAID partners; evaluations and assessments. The Recipient must make a plan for disseminating identified learning to various stakeholders and submit final approved copies to the Development Experience Clearinghouse (DEC).

### (f) Quarterly Performance Reporting

The Recipient must submit quarterly reports, **no later than January 31, April 30, and July 31 of each year of the Period of Performance**, beginning **April 30, 2025**. The quarterly reports must reflect progress and activities of the preceding quarter (September 30 - December 31; January 1 - March 31; and April 1 - June 30, respectively). Progress and activities from the fourth fiscal year quarter (July 1 - September 30) must be incorporated into each Annual Performance Report (see below).

A Quarterly Report is a narrative report that must include a summary table of results. These reports must be systematically uploaded into the Development Information Solution (DIS). The report must contain a comparison of actual accomplishments to the objectives established for the performance period; reasons why established goals were not met; and additional pertinent information. The Recipient must also present quarterly results at USAID-hosted sharing events, upon request of USAID. The Recipient must consult with the AOR on the format and content of quarterly reports.

Quarterly performance reports must include detailed information regarding the work that each sub awardee completed during the respective year. These plans must also include

detailed information regarding the organizational capacity strengthening support that the Recipient provided local partners, in preparation for transition awards.

### (g)  Annual Reporting

The Recipient must submit annual reports **no later than October 31st of each year,** beginning **October 31, 2025**. Annual reports must include a narrative report and a summary table of results. Where applicable, these reports should include success stories. These reports must be systematically uploaded into DIS. The report must contain a comparison of actual accomplishments to the objectives established for the performance period; reasons why established goals were not met; and additional pertinent information. For all results that either exceed or fall short of the annual target by 10% or more, a brief (1 to 3 sentences) narrative explanation must be included that explains the deviation.

Additionally, annual performance reports must include detailed information regarding the work that each sub awardee completed during the respective year. These plans must also include detailed information regarding the organizational capacity strengthening support that the Recipient provided local partners, in preparation for transition awards.

### (h)  Geographic Information Systems (GIS) and Activity Location Data

To accompany the Quarterly Performance Report, the Recipient will submit project and activity location data, as instructed by USAID/Uganda and using the information provided by USAID/Uganda. Recording a discreet location for project and activity locations is essential in establishing an effective method of managing, analyzing, and communicating project and activity information. The Recipient must work closely with the AOR to determine necessary information to collect, which may include:

- Type of activity
-  Photograph of activity
- Location of activity, Point features (latitude, longitude)
-  Location, including name of the village
- District name for activity location
- Facility type (home, school, health facilities, etc.)

The Geographic Data must be projected to the Geographic Coordinate System World Geodetic System 1984 (GCS WGS 1984). All data must use the World Geodetic System 1984 (WGS 1984) datum. The location and activity specific data will be recorded and managed by the Recipient. It must be submitted to the AOR and GIS Specialist in any of the following formats: .CSV file, MS Excel spreadsheet, MS Access database, or GIS-ready shapefile (.shp)/geodatabase.

Utilizing GIS technology, geographic data and analysis is integral to geographically targeting aid investments, monitoring & evaluating overall aid effectiveness, and upholding the Agency's open data and transparency goals. Geospatial analysis is a top priority of the USAID/Uganda to be incorporated into the learning agenda and M&E work to build resilience. In alignment with the US Government commitment to transparency and open

## ATTACHMENT C - MANDATORY STANDARD PROVISIONS

**M1.    APPLICABILITY OF 2 CFR 200 and 2 CFR 700 (OCTOBER 2024)**

(a) The versions of 2 CFR 200 and 2 CFR 700 in effect on the date of this award or amendment, and all Standard Provisions attached to this agreement, are applicable to the award, except for as noted in paragraph (b) below.

(b) If the award is being issued or amended between August 7, 2024, and September 30, 2024, all parts of the "2024 Revisions" of 2 CFR 200 (89 FR 30046 dated April 22, 2024), the 2 CFR 700 in effect on the date of this award or amendment, and all Standard Provisions attached to this agreement are applicable to the award.

[END OF PROVISION]

**M2.    INELIGIBLE COUNTRIES (MAY 1986)**

Unless otherwise approved by the USAID Agreement Officer, funds will only be expended for assistance to countries eligible for assistance under the Foreign Assistance Act of 1961, as amended, or under acts appropriating funds for foreign assistance.

[END OF PROVISION]

**M3.    NONDISCRIMINATION (AUGUST 2024)**

(a) No U.S. citizen or legal resident shall be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination on the basis of race, color, national origin, age, disability, sex, sexual orientation or gender identity, under any program or activity funded by this award when work under the award is performed in the U.S. or when employees are recruited from the U.S.

(b) Additionally, USAID is committed to achieving and maintaining a diverse and representative workforce and a workplace free of discrimination. Based on law, Executive Order, and Agency policy, USAID prohibits discrimination, including harassment, in its own workplace on the basis of race, color, religion, sex (including pregnancy, sexual orientation, gender identity, or transgender status), national origin, age (40 or older), physical or mental disability, genetic information, marital or parental status, veteran status, membership in an employee organization, political affiliation, or involvement in protected equal employment opportunity (EEO) activity.

(c) In addition, the Agency strongly encourages its Recipients and subrecipients, as well as vendors (at all tiers), performing both in the U.S. and overseas, to develop and enforce comprehensive nondiscrimination policies for their workplaces that include protection for all their employees on these expanded bases, subject to applicable law.

[END OF PROVISION]

**M4.    AMENDMENT OF AWARD (JUNE 2012)**

This award may only be amended in writing, by formal amendment or letter, signed by the Agreement Officer (AO), and in the case of a bilateral amendment, by the AO and an authorized official of the Recipient.

[END OF PROVISION]

**M5.    NOTICES (JUNE 2012)**

(a) Any notice given by USAID, or the Recipient is sufficient only if in writing and delivered in person, mailed or emailed as follows:

(1) To the USAID Agreement Officer, at the address specified in this award; or

(2) To the Recipient, at the Recipient's address shown in this award, or to such other address specified in this award.

[END OF PROVISION]

**M6.    SUBAWARDS AND CONTRACTS (AUGUST 2024)**

(a) Subrecipients and contractors have no relationship with USAID under the terms of this award. All required USAID approvals must be directed through the Recipient to USAID.

(b) When flowing down the Standard Provisions in a subaward, the Recipient must use the applicable Standard Provisions (e.g., Standard Provisions for U.S. Nongovernmental Organizations (NGOs) when the subrecipient is a U.S. entity, Standard Provisions for non-U.S. NGOs when the subrecipient is a non-U.S. entity, and Standard Provisions for Fixed Amount Awards when the subaward type is a fixed amount award). The Recipient must insert a statement in the subaward that, where appropriate, in instances where USAID is mentioned in such flow down provisions, the Recipient's name will be substituted and where "Recipient" appears, the subrecipient's name will be substituted.

(c) Recipients must comply with subaward monitoring procedures in accordance with 2 CFR 200,2 CFR 700, and the applicable Standard Provisions.

(d) Notwithstanding any other term of this award, subrecipients and contractors have no right to submit claims directly to USAID. USAID assumes no liability for any third party claims against the Recipient.

[END OF PROVISION]

Exhibit J

DEFMTDAPP_000267



## U.S. Department of State
# FEDERAL ASSISTANCE AWARD

| 1. Recipient Name | 2. Assistance Type: |
|---|---|
| AMERICAN BAR ASSOCIATION<br>DBA AMERICAN BAR ASSOCIATION FUND FOR JUSTICE AND EDUCATION | ☑ Cooperative Agreement |

| 3. Address | |
|---|---|
| 1050 CONNECTICUT AVE., N.W., SUITE 400<br>WASHINGTON, DC  20036<br>UNITED STATES | ☐ Fixed Amount Award<br><br>☐ Grant |

| 4. Recipient POC: Mary Margaret Dineen | |
|---|---|
| **Phone Number** 1.202.662.1977 | ☐ Property Grant |
| **Email** marymargaret.dineen@americanbar.org | ☐ Voluntary Contribution |

| 5. Type of Entity<br>U.S. Non-Profit Organization (501(c) (3)) | 6. Unique Entity Identifier ▓▓▓ | 7. EIN/ TIN<br>********** |
|---|---|---|

| 8. Assistance Listing Number<br>19.345 | 9. Statutory Authority for Assistance<br>Foreign Assistance Act | 10. Award Number<br>SAQMIP23CA0140 |
|---|---|---|

| 11. Period of Performance<br>Start Date 22-Sep-2023        End Date 30-Sep-2026 | 12. Amendment Number |
|---|---|

| 13. Accounting and Appropriation Data | 14. Funds Certified By |
|---|---|
| 1900-2022-2023-19__2311210000-1051-DRL--2762-SAQMIP23CA0140-4122------<br>-2023FDSTRIE7811-SAQMIP23CA0140-AGO-DR.1        $3,000,000.00<br>                                               USD | ▓▓▓ |

| Funding Distribution | | | |
|---|---|---|---|
| 15. | Total Prior Costs | New Costs | Total Cost |
| U.S. Share of Costs | | $3,000,000.00 USD | $3,000,000.00 USD |
| Recipient Share of Costs | | $0.00 USD | $0.00 USD |
| Total Costs | | $3,000,000.00 USD | $3,000,000.00 USD |

**16. Purpose of the Federal Award Activity**

create a robust dialogue around judicial processes, decision-making, and constitutionalism in Angola, as well as to support judges directly with capacity-building activities, improving judicial independence and effectiveness

**17. Specific Award Conditions**
☑ Attached

| Agreement |
|---|
| The recipient agrees to execute the work in accordance with the Notice of Award, the approved application incorporated herein by reference or as attached, and 2 CFR Parts 200 and 600 including any subsequent revisions. |

| 18a. Recipient Name<br>Vladimir Gurin | 19a. Grants Officer Name<br>▓▓▓ |
|---|---|
| 18b. Recipient Signature<br>Vladimir Gurin (electronically signed) | 19b. Grants Officer Signature<br>▓▓▓ |

| 18c. Title<br>Director - Grant Operations and Com | 18d. Date (dd-mmm-yyyy)<br>27-Sep-2023 | 19c. Bureau/Office/Post<br>OFC OF PROCUREMENT<br>EXECUTIVE (A/OPE) | 19d. Date (dd-mmm-yyyy)<br>22-Sep-2023 |
|---|---|---|---|

By signing this Federal award, the recipient acknowledges that it will comply with Federal regulations, the Terms and Conditions, and any Special Award Conditions associated with this award. Receipt of the recipient's signature and return of the Federal Award Coversheet is required within ten (10) business days of the Grants Officer's signature. Please return to the Grants Officer address indicated here: ▓▓▓ @STATE.GOV

DEFMTDAPP_000268

# U.S. Department of State
# Award Provisions



During the period of performance, the Recipient must comply with:
- The Award Provisions below;
- The Department of State Standard Terms and Conditions for Federal Awards, which are incorporated by reference and made part of this Federal Award. Electronic copies containing the complete text are available at: https://www.state.gov/about-us-office-of-the-procurement-executive/
- The applicable sections of 2 CFR §200 and 2 CFR §600; and
- All assurances and certifications made during the application process.

## 1) FEDERAL AWARD IDENTIFICATION NUMBER (FAIN):
SAQMIP23CA0140

## 2) FEDERAL SHARE OF AWARD:
$3,000,000.00 USD

## 3) PURPOSE AND OBJECTIVES OF AWARD:

### a. Purpose:
AMERICAN BAR ASSOCIATION (hereinafter referred to as the Recipient), is hereby provided a federal award, the purpose of which is to:

With a coalition of Angolan legal professional organizations, civil society, academics, and select government stakeholders, this project will create a robust dialogue around judicial processes, decision-making, and constitutionalism in Angola, as well as to support judges directly with capacity-building activities, improving judicial independence and effectiveness.

The Recipient shall carry out the Agreement in accordance with its proposal dated: 18-Jul-2023, and any revisions to which both parties agree to in writing. The Recipient's proposal and any subsequent negotiated revisions are hereby incorporated by reference.

### b. Objectives and Expected Outcomes:  The Recipient agrees to perform the program and meet the specific objectives below:

See Attached Scope of Work

## 4) CONTACT INFORMATION:

a. Grants Officer:

| | |
|---|---|
| Name: |  |
| Post/Bureau: | A/OPE/AQM/IP |
| Section: | |
| Street Address: |  |
| Zip Code: | |
| E-mail: | @state.gov |
| Telephone: | |

DEFMTDAPP_000269

Performance Reports must be submitted to the Grants Officer and Grants Officer Representative via SAMS Domestic.

The Recipient acknowledges that the Department of State may make site visits as determined by the Grants Officer.

## 13) SUBSTANTIAL INVOLVEMENT:

The Department of State will be substantially involved in carrying out the following aspects of this cooperative agreement:
Obtain DRL approval before any work with the Supreme Military Court, or any other government institution not in the original proposal.

## 14) WAIVER OF ACKNOWLEDGMENT OF DEPARTMENT OF STATE SUPPORT AND BRANDING AND MARKING REQUIREMENTS:

The Department of State Standard Terms and Conditions for Federal Awards requires that materials produced under a federal award be marked appropriately to acknowledge the support of the U.S. Department of State. However, the Department of State has determined that for the purposes of this award, the Recipient is not required to publicly display Department of State and/or U.S. government branding and marking for materials produced under this award, nor insert the disclaimers required in the Standard Terms and Conditions.

## 15) ADDITIONAL BUREAU/POST SPECIFIC REQUIREMENTS:

This award has been deemed sensitive and is not subject to the Federal Funding Accountability and Transparency Act (FFATA).

F: Indicators:

Number of civil society organizations (CSOs) receiving USG assistance engaged in advocacy interventions (DR.4.2-2 / DRL.5)
Number of human rights defenders trained and supported (DR.6.1-2 / DRL.1)
Number of judicial personnel trained trained with USG assistance (DR.1.3-1 // DRL.11)

## 16) SPECIFIC CONDITIONS:

N/A

## 17) SPECIAL PROVISION FOR PERFORMANCE IN A DESIGNATED COMBAT AREA:

N/A

## 18) STATE DEPARTMENT LEAHY AMENDMENT VETTING REQUIREMENTS:

N/A

## 19) REPORTING TAXES ON FOREIGN ASSISTANCE FUNDS:

The Recipient is required to submit a report detailing foreign taxes assessed under this award during the prior U.S. Government fiscal year (10/01 - 09/30). The report must be submitted to the Grants Officer on an annual basis by February 15. The Recipient

DSFMTDAPP_000270

# Exhibit K

DEFMTDAPP_000271



## U.S. Department of State
# FEDERAL ASSISTANCE AWARD

| 1. Recipient Name | 2. Assistance Type: |
|---|---|
| AMERICAN BAR ASSOCIATION<br>DBA AMERICAN BAR ASSOCIATION FUND FOR JUSTICE AND EDUCATION | ☐ Cooperative Agreement |

| 3. Address | |
|---|---|
| 1050 CONNECTICUT AVE., N.W., SUITE 400<br>WASHINGTON, DC 20036<br>UNITED STATES | ☐ Fixed Amount Award<br>☑ Grant<br>☐ Property Grant |

| 4. Recipient POC: Mary Margaret Dineen | |
|---|---|
| **Phone Number** 202/662-1977 | ☐ Voluntary Contribution |
| **Email** marymargaret.dineen@americanbar.org | |

| 5. Type of Entity | 6. Unique Entity Identifier | 7. EIN/ TIN |
|---|---|---|
| U.S. Non-Profit Organization (501(c) (3)) | ▉ | ********** |

| 8. Assistance Listing Number | 9. Statutory Authority for Assistance | 10. Award Number |
|---|---|---|
| 19.345 | Foreign Assistance Act | SAQMIP23GR0142 |

| 11. Period of Performance | 12. Amendment Number |
|---|---|
| Start Date 26-Sep-2023    End Date 30-Sep-2025 | |

| 13. Accounting and Appropriation Data | 14. Funds Certified By |
|---|---|
| 1900-2022-2023-19722310370013-1051-DRL--2762-SAQMIP23GR0142-4121------<br>-2023FDSTRIE7813-SAQMIP23GR0142-TZA-DR.5    $987,654.00<br>USD | ▉ |

### Funding Distribution

| 15. | Total Prior Costs | New Costs | Total Cost |
|---|---|---|---|
| U.S. Share of Costs | | $987,654.00 USD | $987,654.00 USD |
| Recipient Share of Costs | | $0.00 USD | $0.00 USD |
| Total Costs | | $987,654.00 USD | $987,654.00 USD |

**16. Purpose of the Federal Award Activity**
To reduce restrictions on freedom of expression and bolster the safeguarding of related fundamental rights in Tanzania where an erosion of civil liberties has occurred under previous administrations.

**17. Specific Award Conditions**
☑ Attached

### Agreement

The recipient agrees to execute the work in accordance with the Notice of Award, the approved application incorporated herein by reference or as attached, and 2 CFR Parts 200 and 600 including any subsequent revisions.

| 18a. Recipient Name | 19a. Grants Officer Name |
|---|---|
| Vladimir Gurin | ▉ |
| **18b. Recipient Signature** | **19b. Grants Officer Signature** |
| Vladimir Gurin (electronically signed) | ▉ |

| 18c. Title | 18d. Date (dd-mmm-yyyy) | 19c. Bureau/Office/Post | 19d. Date (dd-mmm-yyyy) |
|---|---|---|---|
| Director - Grant Operations and Com | 27-Sep-2023 | OFC OF PROCUREMENT EXECUTIVE (A/OPE) | 26-Sep-2023 |

By signing this Federal award, the recipient acknowledges that it will comply with Federal regulations, the Terms and Conditions, and any Special Award Conditions associated with this award. Receipt of the recipient's signature and return of the Federal Award Coversheet is required within ten (10) business days of the Grants Officer's signature. Please return to the Grants Officer address indicated here: ▉ @state.gov

DEFMTDAPP_000272

# U.S. Department of State
# Award Provisions



During the period of performance, the Recipient must comply with:
- The Award Provisions below;
- The Department of State Standard Terms and Conditions for Federal Awards, which are incorporated by reference and made part of this Federal Award. Electronic copies containing the complete text are available at: https://www.state.gov/about-us-office-of-the-procurement-executive/
- The applicable sections of 2 CFR §200 and 2 CFR §600; and
- All assurances and certifications made during the application process.

## 1) FEDERAL AWARD IDENTIFICATION NUMBER (FAIN):
SAQMIP23GR0142

## 2) FEDERAL SHARE OF AWARD:
$987,654.00 USD

## 3) PURPOSE AND OBJECTIVES OF AWARD:

**a. Purpose:**
AMERICAN BAR ASSOCIATION (hereinafter referred to as the Recipient), is hereby provided a federal award, the purpose of which is to:

Reduce restrictions on freedom of expression (FOE) and bolster the safeguarding of related fundamental rights in Tanzania, where an erosion of civil liberties has occurred under previous administrations. ABA ROLI, alongside local Tanzanian partner organizations, will advance this goal through supporting coalitions of FOE advocates, raising awareness and understanding of FOE rights, strategic litigation, and dialogues convening journalists, CSOs, and lawyers with policymakers. ABA ROLI's capacity building initiatives will target under-represented regions and stakeholders from marginalized and vulnerable communities while integrating sustainability throughout each activity.

The Recipient shall carry out the Agreement in accordance with its proposal dated: 21-Jul-2023, and any revisions to which both parties agree to in writing. The Recipient's proposal and any subsequent negotiated revisions are hereby incorporated by reference.

**b. Objectives and Expected Outcomes:**  The Recipient agrees to perform the program and meet the specific objectives below:

See attached Scope of Work.

## 4) CONTACT INFORMATION:

DEFMTDAPP_000273