IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE THE PRELIMINARY INJUNCTION**

The Court should deny Plaintiffs' Motion to Enforce the Preliminary Injunction for three reasons: (1) Defendants are complying with this Court's preliminary injunction; (2) the requested relief improperly would necessitate disclosure of deliberative information; and (3) prudential concerns weigh decisively against granting the motion.

## BACKGROUND

This Court on March 10, 2025 issued a preliminary injunction (the "Order") that, *inter alia*, enjoined "Defendants from unlawfully impounding congressionally appropriated foreign aid funds," and ordered Defendants to "take all steps necessary" to effectuate the injunction. 2025 WL 752378, at *23 (D.D.C. Mar. 10, 2025). At that time, the Court rejected as overbroad Plaintiffs' proposed relief—an order that Defendants continue to contract with them—recognizing that "both the Constitution and Congress's laws have traditionally afforded the Executive discretion on how to spend within the constraints set by Congress." *Id*. The Court instead confined the relief to an "order" that "Defendants to make available for obligation the full amount of funds Congress appropriated under the relevant laws." *Id*. (internal citation omitted).

Defendants appealed the preliminary injunction, Doc. 72, and moved to expedite so the Court of Appeals could decide the appeal by August 15, 2025. Unopposed Mot. to Expedite at 3, No. 25-5097 (D.C. Cir. Apr. 28, 2025). In the meantime, Defendants via their status reports have described their efforts to comply with the preliminary injunction, including as to the provision regarding appropriations. The reports informed the Court of efforts to evaluate the appropriate next steps in consultation with the Office of Management and Budget and in light of the planned USAID reorganization. *See, e.g.*, Status Report, Doc. 102, ¶ 7 (June 12, 2025).

Under the Further Consolidated Appropriations Act of 2024, the currently available foreign assistance funds Congress appropriated to USAID and State subject to the preliminary injunction remain available to be obligated through at least until the end of the current fiscal year, which is September 30, 2025. *See, e.g.,* Pub. L. 118-47, 138 Stat. 460, 740 (March 23, 2024).

AVAC Plaintiffs' motion to enforce the preliminary injunction's provision as to appropriations, filed June 13, 2025, identifies no reason for modification or alteration of that provision during the pendency of the expedited appeal. The motion seeks an order requiring Defendants to file, on an unexplained timetable ("within five days"), a "plan for compliance with the preliminary injunction." Proposed Order re: Enf. Mot., Doc. 104-1.

## ARGUMENT

### I.  Defendants Are Complying with This Court's Preliminary Injunction

The appropriations provision of the preliminary injunction rests on this Court's interpretation of the Further Consolidated Appropriations Act of 2024 (FCAA) and the Impoundment Control Act (ICA). 2025 WL 752378, at *14. While Defendants in their pending appeal challenge the preliminary injunction, granting relief on AVAC Plaintiffs' motion to enforce would be inappropriate given Plaintiffs' failure to meet their burden of establishing that Defendants would be unable to obligate those funds that would otherwise expire on September 30, 2025, or take other

lawful action with respect to those funds. To date, Defendants have complied with the preliminary injunction, and the pertinent statutes, by evaluating the appropriate next steps in consultation with OMB and in light of the planned reorganization of USAID and State. *See, e.g.*, Status Report, Doc. 102, ¶ 7 (June 12, 2025).

AVAC Plaintiffs' motion to enforce is predicated on misunderstandings about Defendants' efforts and the appropriations process. As explained below, the ICA contemplates a process by which Congress and the Executive Branch engage in inter-Branch dialogue over the expenditure of appropriated funds. Even for those funds that would expire as of September 30, 2025, the ICA does not require Defendants to obligate funds at this point in the fiscal year. Thus, Defendants are not unlawfully impounding congressionally appropriated funds under either the FCAA or the ICA, and the funds at issue here remain available for obligation.

Under the FCAA, the currently available foreign assistance funds Congress appropriated to USAID and State subject to the preliminary injunction remain available to be obligated through at least until the end of the current fiscal year, which is September 30, 2025. *See, e.g.*, Pub. L. 118-47, 138 Stat. 460, 740 (March 23, 2024). As a matter of course in all federal agencies, appropriated funds are routinely obligated over the course of the fiscal year, as the year progresses. Based on USAID's and State's historical experience, funds commonly remain available to be obligated toward the end of the fiscal year, *i.e.*, several months before the end of the period of availability set by Congress in an appropriations statute. Furthermore, sufficient time remains for USAID and State to obligate any presently unobligated funds, or take other appropriate action consistent with applicable law, with respect to those funds before the end of the current fiscal year. *See* Declaration of Jeremy Lewin, ¶¶ 5-7 (June 23, 2025) (attached hereto). Even an adverse decision from the D.C. Circuit by August 15, 2025 would provide adequate time for Defendants to take such actions

3

with respect to unobligated funds. *See id.* ¶ 7. And Defendants "have already undertaken preparations to be ready to obligate expiring foreign assistance funds on a short timeline as necessary." *Id.* ¶ 6.

As for the ICA, Defendants' evaluation of the appropriate next steps within the time available under the FCAA remains lawful. First, Congress expressly directed the Executive to apportion, or reapportion, appropriated funds to determine *when* to make them available to agencies to carry out federal law. *See* 31 U.S.C. § 1512.

Second, the ICA establishes a structure allowing the President and Congress to engage in an inter-Branch dialogue when the President determines not to obligate appropriated funds. At a high level, the President is directed to transmit a special message to Congress when he "determines" that "budget authority should be rescinded for fiscal policy or other reasons." 2 U.S.C. § 683(a); *see also id*. § 686(a). After that message is sent, Congress may consider whether to rescind the budget authority in question. And if Congress has not rescinded "all or part of the amount proposed to be rescinded" within "45 calendar days of continuous session of the Congress" after receipt of the message, *id*. §§ 682(3), 683(b), then the amount proposed to be rescinded "shall be made available for obligation," *id*. § 683(b). That final provision requiring the covered appropriations to be made available for obligation thus takes effect only following Congress's receipt of the contemplated message and the elapsing of 45 days.

Thus, the ICA allows for a process by which appropriated funds may be lawfully rescinded. But, at this point, the inter-Branch process contemplated by the statute as to the FY 2024 funds implicated by the motion to enforce has not even begun, much less concluded.

Plaintiffs nevertheless assert that Defendants are "running out the clock" (AVAC Enf. Mot. 5), and aver that the Government has plans to propose further rescissions "when it is too late for them

4

to be spent …" (AVAC Enf. Mot. 5 & note 2).  Those speculative assertions are based on a news article, not evidence.  Plaintiffs do not purport to describe the Government's actual rescission plans, whether such plans would involve relevant funding sources, or whether funds could still be obligated regardless of a rescission.

In any event, even apart from their impermissibly speculative character, Plaintiffs' assertions are incorrect.  The text of the ICA places no limit on how late in the fiscal year a President may propose funds for rescission (via submission consistent with the ICA) and may withhold funds pending Congressional consideration of such a rescission proposal.  The Government Accountability Office (GAO) has previously acknowledged this feature of the ICA, noting that withholdings for the 45-day period following a special message are within the President's authority under the statute.  *See* GAO B-115398 (Aug. 12, 1976) (conceding the President may transmit special messages to withhold the budget authority near their date of expiration for the duration of the 45-day period, and opining that Congress must take affirmative action to prevent the withheld funds from expiring); *see also* GAO B-115398 (Aug. 27, 1976) (noting that withheld funds may expire, without stating whether the funds were properly withheld or reporting that they must be made available for obligation); GAO B-115398 (Oct. 26, 1977) (similar); GAO B-220532 (Sept. 19, 1986) (reclassifying deferral as rescission proposal, recognizing potential for funds to expire before being able to be obligated for intended purpose).  *But see* GAO B-330330, *Impoundment Control Act—Withholding of Funds through Their Date of Expiration* 11 (Dec. 10, 2018) (overruling previous opinions insofar as they are "based on the premise that Congress could amend the ICA to provide Congress with a unilateral mechanism to reject a rescission proposal").[1]

---

[1] The opinions cited are available from GAO as follows:  https://www.gao.gov/products/b-115398.33-2 (Aug. 12, 1976); https://www.gao.gov/assets/b-115398.33-d19688.pdf (Aug. 27,

Additionally, the ICA's silence on when in the fiscal year the President may propose rescissions and withhold budget authority stands in stark contrast to how the ICA governs Presidential deferrals of funds. That authority allows the President to delay the obligation or outlay of budget authority for certain statutorily prescribed reasons, but not beyond the end of the fiscal year. *See* 2 U.S.C. § 684(a) ("A deferral may not be proposed for any period of time extending beyond the end of the fiscal year in which the special message proposing the deferral is transmitted to the House and the Senate."). Thus, the text of the ICA indicates that Congress considered the possible effects of withholding funds close to the end of the fiscal year and decided to limit such withholdings only with respect to deferrals, not with respect to rescissions.

In short, Defendants' continued evaluation of the appropriate next steps for the relevant funds complies with this Court's order to refrain from "unlawfully impounding congressionally appropriated foreign aid funds . . . ." 2025 WL 752378, at *23.

## II. The Requested Relief Would Force Defendants to Reveal Deliberative Process Information

Plaintiffs ask the Court to order Defendants to file a plan for compliance with the preliminary injunction on a timetable Plaintiffs have devised. But such an order would improperly override the Government's deliberative process privilege. Courts routinely protect such deliberative information to ensure the quality of administrative decisionmaking, reasoning that officials will not communicate candidly among themselves if tentative plans under discussion become subjects for discovery and front-page news. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). Thus, courts are bound to "protect[] 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions

---

1976); https://www.gao.gov/products/ogc-78-2 (Oct. 26, 1977); https://www.gao.gov/assets/ogc-86-22.pdf (Sept. 19, 1986); https://www.gao.gov/assets/b-330330.pdf (Dec. 10, 2018).

and policies are formulated.'" *Campaign Legal Ctr. v. U.S. Dept. of Justice*, 34 F.4th 14, 19 (D.C. Cir. 2022) (quoting *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021)). The deliberative process privilege covers information that is both predecisional and deliberative. *See U.S. Fish & Wildlife Serv. v. Sierra Club.*, 592 U.S. 261, 268 (2021).

Here, the relief Plaintiffs seek would have Defendants disclose a nonfinal appropriations obligation plan that would be plainly predecisional and deliberative, and that hence would fall within the deliberative process privilege. As the D.C. Circuit has explained, "the President," not an administrative agency, "makes the final decision concerning what budget requests should be submitted to the Congress." *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1497 (1984). And "the President is not bound in any way by the funding levels sought by the various agencies. Rather, their budgetary 'decisions' constitute advice and suggestions for the President, albeit ones that are likely to frame the ultimate budgetary choices made by him." *Id.* Similarly, here, the proposed uses of USAID and State's foreign assistance appropriations that Plaintiffs seek to probe are, at most, internal plans on which the agencies have not reached decision. And, relatedly, as OMB carries out its statutorily delegated apportionment authority under 31 U.S.C. §§ 1512 and 1513, which is among OMB's core functions, OMB's discussions with State and USAID about how the appropriated funds are apportioned throughout the fiscal year, are also predecisional and deliberative. So the release of a nonfinal plan concerning the apportionment of those funds, as Plaintiffs seek, would, among other things, harm OMB's processes for obtaining information from agencies and formulating advice concerning, and making decisions about, apportionments. That is, ordering Defendants to file a plan now when decisions have yet to be finalized would counter decades of court recognition that administrative decisionmaking should not be done "in a fishbowl." *Envt'l Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973).

### III. Prudential Concerns Militate Against Entertaining Plaintiffs' Motion

Defendants' appeal from the preliminary injunction has proceeded on an expedited basis, and is now fully briefed, with oral argument calendared for July 7, 2025. No. 25-5097 (D.C. Cir. May 20, 2025). Both Plaintiffs and the Government have asked that the D.C. Circuit decide the appeal by August 15, 2025. Unopposed Mot. to Expedite at 3, No. 25-5097 (D.C. Cir. Apr. 28, 2025). That schedule would allow for resolution before September 30, 2025 (the end of the fiscal year). Given the expedition of the appeal, the Government has not been forced to seek a stay of the preliminary injunction from the D.C. Circuit.

Again, Plaintiffs identify no reason for modification or alteration of the preliminary injunction's provision as to appropriations during the pendency of the expedited appeal, and they make no showing that Defendants would be unable to obligate any funds that would expire on September 30, 2025, or otherwise take other action consistent with law with respect to those funds. Given the expedited appeal, this Court should refrain from taking any additional steps, including granting a motion to enforce, while the D.C. Circuit is weighing the validity of the preliminary injunction and preparing to issue a quick decision.

And should this Court decide to grant relief on the motion to enforce, the Government respectfully requests that the Court stay such an order for a short time to permit the Government to consider whether to seek appellate relief from such order.

Notably, if the D.C. Circuit were to reverse or vacate the preliminary injunction, any actions taken now would be unnecessary and wasteful. *See, e.g.*, *Athridge v. Iglesias*, 464 F. Supp. 2d 19 (D.D.C. 2006) (District Court consideration of matter already on appeal would cause "confusion and the waste of time and judicial resources…"). If the D.C. Circuit affirms the preliminary injunction, Defendants will have adequate time to fully comply prior to September 30, 2025. *See* Lewin Decl. ¶¶ 5-7.

Additionally, any actions ordered now leading to the obligation or disbursement of funds to Plaintiffs would needlessly create harms to the Government that likely could not be unwound. Even apart from the Government's sovereign interests, the motion seeks to require the Government, on Plaintiffs' preferred timetable, to disclose a plan for making available for obligation the full amount of foreign assistance funds appropriated under the relevant appropriations statute. But because the pertinent provision of the preliminary injunction is not limited to funding for programs in which any Plaintiff has participated, such a plan would largely be irrelevant to the particular Plaintiffs.

None of the cases Plaintiffs cite support their requested relief. AVAC Enf. Mot. 5. Nor do those cases involve similar circumstances, with an appeal pending that will imminently address the same issue for which Plaintiffs seek an order to enforce. For example, in *Yanofsky v. Dep't of Com.*, No. 16-cv-95, 2019 WL 5110502 (D.D.C. Apr. 25, 2019), the court denied a FOIA plaintiff's motion seeking an order, post-summary judgment, to force the agency to release records. And *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626 (D.C. Cir. 1987), involved a five-year long effort to force the Occupational Health & Safety Administration to issue regulations the agency had previously promised to issue.

## CONCLUSION

For the reasons stated, the Court should deny AVAC Plaintiffs' motion to enforce.

Dated: June 23, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
Joshua N. Schopf
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: Indraneel.Sur@usdoj.gov

*Counsel for Defendants*