# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| AIDS VACCINE ADVOCACY COALITION, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 25-cv-400 |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF STATE, et al., | ) ) ) ) | |
| *Defendants*. | ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE THE PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 1

    I.    Defendants Have Not Complied with the Preliminary Injunction. ..................................... 1

    II.   The Deliberative Process Privilege is Inapplicable. ............................................................ 7

    III.  The Pending Appeal Does Not Excuse Noncompliance ....................................................... 9

    IV.  Civil Contempt is Warranted. ................................................................................................ 10

CONCLUSION .................................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*American Rivers v. United States Army Corps of Engineers*,
    274 F. Supp. 2d 62 (D.D.C. 2003) .................................................................................... 12

*Bureau of National Affairs v. United States Department of Justice*,
    742 F.2d 1484 (D.C. Cir. 1984) ........................................................................................... 8

*City of New Haven v. United States*,
    634 F. Supp. 1449 (D.D.C. 1986) ....................................................................................... 5

*City of New Haven v. United States*,
    809 F.2d 900 (D.C. Cir. 1987) ............................................................................................. 5

*Department of State v. AIDS Vaccine Advocacy Coalition*,
    145 S. Ct. 753 (2025) ......................................................................................................... 10

*Hillman v. American Federation of Government Employees*,
    2022 WL 2817750 (D.D.C. July 19, 2022) ....................................................................... 12

*In re Grand Jury Subpoena No. 7409*,
    No. 18-41, 2018 WL 8334866 (D.D.C. Oct. 5, 2018) ........................................................ 9

*Landmark Legal Foundation v. Environmental Protection Agency*,
    272 F. Supp. 2d 70 (D.D.C. 2003) ............................................................................... 10, 11

*Maness v. Meyers*,
    419 U.S. 449 (1975) ............................................................................................................. 9

*Petroleum Information Corp. v. United States Department of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ....................................................................................... 7, 8

*Public Citizen, Inc. v. Office of Management & Budget*,
    598 F.3d 865 (D.C. Cir. 2010) ............................................................................................. 8

*Quarles v. United States*,
    587 U.S. 645 (2019) ............................................................................................................. 5

*Reporters Committee for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ............................................................................................... 8

*Shillitani v. United States*,
    384 U.S. 364 (1966) ........................................................................................................... 11

*United States v. United Mine Workers*,
   330 U.S. 258 (1947) .................................................................................................. 9

**Statutes**

2 U.S.C. § 682(1) ............................................................................................................. 4

2 U.S.C. § 683(a) ............................................................................................................. 3

2 U.S.C. § 683(b) ............................................................................................................. 3

2 U.S.C. § 684(b) ............................................................................................................. 4

31 U.S.C. § 1512 .............................................................................................................. 3

31 U.S.C. § 1512(c)(1) ..................................................................................................... 3

**Other Authorities**

App. to Vacate, *Department of State v. AIDS Vaccine Advocacy Coalition*,
   No. 24A (Feb. 26, 2025) ........................................................................................... 10

Charles Kenny, *USAID Contracting Has Shut Down. There's Little Evidence State is Taking Up the Slack*, Ctr. for Global Development (June 12, 2025),
   https://tinyurl.com/yvms4rb8 ..................................................................................... 7

GAO, *Institute of Museum and Library Services—Applicability of the Impoundment Control Act to Reduction of Agency Functions*, B-337375 (Jun. 16, 2025),
   https://tinyurl.com/ykv7n7zr ................................................................................. 2, 4

Jennifer Scholtes et al., *Congress Finally Gets Trump's Request to Codify DOGE Cuts to NPR, PBS, Foreign Aid*, Politico (June 3, 2025),
   https://tinyurl.com/mrn6fefn ...................................................................................... 6

Transcript of Interview with OMB Director Russell Vought, CNN (June 1, 2025),
   https://tinyurl.com/mshh6u7a .................................................................................... 6

United States Senate, Committee on Appropriations, *A Review of the President's Special Message of June 3, 2025* (Jun. 25, 2025),
   https://tinyurl.com/4bjfvz2a ....................................................................................... 6

Defendants' opposition to Plaintiffs' motion to enforce the preliminary injunction reveals, once again, Defendants' open defiance of this Court's orders. Not only does their opposition fail to establish that Defendants have taken (or plan to take) a single step to cease their unlawful impoundment of congressionally appropriated funds, in violation of the unambiguous command , ECF 60 at 48, they now have also defied this Court's June 16, 2025, minute order to "include specific details about what steps they have taken to date to come into compliance" with the preliminary injunction of the preliminary injunction as well as "specific details about what steps Defendants intend to take prior to September 30, 2025, to ensure compliance with the preliminary injunction." Plaintiffs' motion should be granted, and, on this record, a finding of contempt is warranted.

## ARGUMENT

**I.     Defendants Have Not Complied with the Preliminary Injunction.**

As in the status reports they have filed since April 3, Defendants claim in their opposition that compliance with the preliminary injunction requires only their continued "evaluati[on]" of "appropriate next steps." Opp. at 3. That proposition is absurd.

**A.** The preliminary injunction, like the temporary restraining order (TRO) that preceded it, is "clear." ECF 30 at 2. This Court concluded that the Executive had "depart[ed]" from the "firmly established constitutional partnership" with Congress by "unilaterally deem[ing] that funds Congress appropriated for foreign aid will not be spent." ECF 60 at 2. The Court therefore issued a preliminary injunction enjoining Defendants from "unlawfully impounding congressionally appropriated foreign aid funds" and ordering them to "make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further

1

Consolidated Appropriations Act of 2024," and to "take all steps necessary to effectuate this order." *Id.* at 48.

Defendants seek to circumvent this Court's unambiguous order enforcing the Constitution by claiming that they are not impounding funds so long as it remains theoretically possible for them to obligate expiring funds before the end of the current fiscal year. *See* Opp. at 3. Their argument is wrong. To start, it ignores that impoundment is not limited to a failure to obligate appropriated funds before they expire. An unauthorized deferral is also an impoundment. *See* GAO, *Institute of Museum and Library Services—Applicability of the Impoundment Control Act to Reduction of Agency Functions*, B-337375 (Jun. 16, 2025), at 8–9, https://tinyurl.com/ykv7n7zr. In addition, their response ignores that this Court has already rejected the contention that "the notion that the Executive has simply 'paused' appropriations" avoids the constitutional problem. ECF 60 at 36. That "contention," the Court explained, was "belied by public statements indicating that this action has been taken to save taxpayer money and end USAID for policy reasons, which Defendants have not disputed when given the opportunity." *Id.*; *see id.* at 31–32 (determining that "the record here shows that Defendants … have no intent to spend" the funds and that "Defendants have not disputed this is their intent"); *id.* at 32 n.13. Defendants' argument that they *theoretically* could obligate the funds thus overlooks a critical basis for this Court's preliminary injunction: undisputed evidence that they *plan not* to do so. Defendants' consistent refusal to identify *any* concrete steps that they have taken to reobligate the foreign-assistance funds that were the subject of the injunction only underscores that this Court correctly understood Defendants' intent. What the Court held to be likely unconstitutional in March remains unconstitutional today. The difference between then and now is that Defendants' refusal to obligate foreign-assistance funds now also contravenes an order of this Court.

2

**B.** Defendants' suggestion that their continued withholding of funds—despite being clearly prohibited by the preliminary injunction—is somehow authorized by statute lacks merit.

Defendants' brief reference to the Anti-Deficiency Act, 31 U.S.C. § 1512, does not support their continuing impoundment. *See* Opp. at 4. Indeed, this Court already addressed the applicability of that Act when issuing the preliminary injunction. In arguing for the injunction, Plaintiffs explained that, under the Anti-Deficiency Act, "the executive branch may reserve appropriated funds 'only … to provide for contingencies; … to achieve savings made possible by or through changes in requirements or greater efficiency of operations; or … as specifically provided by law.'" ECF 13-1 at 17 (quoting 31 U.S.C. § 1512(c)(1)). "Defendants ha[d] not identified any contingencies or sources of law that justify holding appropriated foreign aid funds in reserve and … Defendants' claim that a funding freeze will support efficiency gains is unsupported by any evidence or reasoned analysis." *Id.* As the Court summed it up, the Act "prohibits officials from establishing a 'reserve' except in specific circumstances (which Defendants do not claim are present here)." ECF 60 at 32 n.14. In these circumstances, far from supporting Defendants' position, the Anti-Deficiency Act makes explicit that Defendants' continued withholding of funds is illegal.

Next, Defendants focus on the ICA, Opp. at 4, but that statute also provides them no support. As this Court noted, the ICA:

> explicitly prohibits the President from impounding appropriated funds without following certain procedures. For permanent impoundments or "rescissions," Congress specified that if the President "determines that all or part of any budget authority will not be required to carry out the full objectives or scope of programs for which it is provided" or "should be rescinded for fiscal policy or other reasons," he must "transmit to both Houses of Congress a special message" addressing the amount, reasons, impact, and other information related to the proposed recission of funds. 2 U.S.C. § 683(a). The act requires that the funds in question be made available for obligation unless Congress rescinds the appropriation within forty-five days. *Id.* § 683(b). The act also imposes procedural requirements,

3

>including a special message to Congress, where the President seeks to temporarily impound or "defer" funds. *Id.* §§ 682(1), 684(a).

ECF 60 at 31. The Court went on to observe that "it is uncontested that Defendants have not undertaken the procedures required for the impoundment of congressionally appropriated aid, whether permanent or temporary, by the Impoundment Control Act." *Id.* at 32. Because they *still* have not undertaken those procedures as to the relevant appropriations, Defendants are still unlawfully impounding funds today—and have been for months.

Defendants' suggestion that they may continue to impound funds as long as they do not *begin* the processes contemplated by the ICA for rescissions, *see* Opp. at 4, is both atextual and contrary to the purposes that the ICA seeks to vindicate. To start, in focusing on the ICA's procedures for rescissions, Defendants fail to grapple with the provisions of the ICA that strictly circumscribe the circumstances in which the Executive can temporarily impound funds through a deferral. *See* 2 U.S.C. § 684(b) (explicitly prohibiting deferral of budget authority except "to provide for contingencies," "to achieve savings made possible by or through changes in requirements or greater efficiency of operations," or "as specifically provided by law"); *see* GAO, B-337375 at 10 n.33 ("The ICA does not allow deferrals for policy-based reasons[.]"). None of those circumstances are present here. And as this Court has held, Defendants have not engaged in the required procedures for deferral under the Act, *see* 2 U.S.C. § 684(a). ECF 60 at 32 ("[I]t is uncontested that Defendants have not undertaken the procedures required for the impoundment of congressionally appropriated aid, whether permanent or temporary."). Defendants do not argue otherwise.

Further, ignoring the ICA's restrictions on deferral and reading the law to allow the President to withhold obligation indefinitely, unless he decides to request a rescission, *see* Opp. at 4, is irreconcilable with statutory purpose. "[T]he ICA was passed at a time when Congress was

4

united in its furor over presidential impoundments and intent on reasserting its control over the budgetary process." *City of New Haven v. United States*, 809 F.2d 900, 906 (D.C. Cir. 1987). "[T]he '*raison d'etre*' of the entire legislative effort was to assert *control* over presidential impoundments." *Id.* at 907 (quoting *City of New Haven v. United States*, 634 F. Supp. 1449, 1454 (D.D.C. 1986)). A review of the legislative history makes this purpose crystal clear. *See generally City of New Haven*, 634 F. Supp. at 1454–59 (reviewing the Act's legislative history, and concluding that "[a] clearer case of congressional intent—obsession would be more accurate—is hard to imagine … Without a ready device to quash any impoundment of which it disapproved—temporary or permanent—Congress was of no mind to concede to any President a warrant to impound at all."). Yet, under Defendants' reading, the recission procedures outlined in the ICA would never be needed. The President could simply withhold funds and allow them to expire, unobligated, without ever having to request rescission (and risking that Congress would refuse his request). Defendants' reading of the ICA—unsupported by precedent and inimical to the Act's purposes—should be rejected. The Court "should not lightly conclude that Congress enacted a self-defeating statute." *See Quarles v. United States*, 587 U.S. 645, 654 (2019). And in any event, Defendants' unpersuasive arguments that impoundment is lawful provide no basis for defying a valid court order, particularly where that order is predicated on a conclusion that impoundment is likely *un*lawful.

**C.** Defendants all but confirm their intent to submit a rescission proposal less than 45 days before the relevant funds expire, thereby circumventing the ICA procedures and allowing the funds to expire without congressional authorization. *See* Pls' Mot. to Enforce at 5 & n.2 (noting that Defendants appear to be "running out the clock"). They state that "Defendants *should* have sufficient time to obligate foreign assistance funds that would otherwise expire on September 30,

5

2025, if the process begins by *August 15, 2025*," Lewin Decl., ECF 106-1, at ¶ 7 (emphasis added)—a date that, likely not coincidentally, is 45 days before a significant portion of the unlawfully impounded funds expire. Although they dismiss Plaintiffs' concern about this unlawful course of action as "based on a news article," Opp. at 5, Defendants miss that the article quotes the public comment of Russell Vought, Director of the United States Office of Management and Budget, that the White House could send rescission requests "later in the [fiscal] year, to be able to bank some of these savings, without the [rescission] bill actually being passed." Jennifer Scholtes et al., *Congress Finally Gets Trump's Request to Codify DOGE Cuts to NPR, PBS, Foreign Aid*, Politico (June 3, 2025), https://tinyurl.com/mrn6fefn; *see also* Transcript of Interview with OMB Director Russell Vought, CNN (June 1, 2025), https://tinyurl.com/mshh6u7a.

In fact, in a recent hearing before the Senate Appropriations Committee, Director Vought was asked whether he would pledge not to "submit rescissions within 45 days of the end of the fiscal year." United States Senate, Committee on Appropriations, *A Review of the President's Special Message of June 3, 2025* (Jun. 25, 2025), https://tinyurl.com/4bjfvz2a at 1:34:34–1:34:57. His response: "I'm not making that commitment." *Id.*; *see also id.* at 1:09:50–1:10:22 (statement of Director Vought that "[W]e believe that we have under the law numerous options with regard to how to achieve savings, including rescissions that are timed at the end of the fiscal year.").

The risk that, absent action by this Court, Defendants' continued non-compliance will enable them to evade the Constitution altogether, then, is not empty or abstract—it is all but certain.

**D.** Finally, Defendants are wrong that continued delay until August 15 preserves even the theoretical possibility of eventual compliance. Their assertion that "the process to award contracts and grants, and then obligate funds for those contracts and grants can generally be completed in six weeks," Lewin Decl., ECF 106-1 at ¶ 6, is meritless. Although Jeremy Lewin bases the

6

assertion on his "experience," *id.*, that experience is limited to his "serv[ice] as a policymaker at the Department of State and USAID since shortly after President Trump's inauguration in January 2025," *id.* at ¶ 2—a total of five months, during which USAID has issued hardly any awards at all. *See* Charles Kenny, *USAID Contracting Has Shut Down. There's Little Evidence State is Taking Up the Slack*, Ctr. for Global Development (June 12, 2025), https://tinyurl.com/yvms4rb8. And his assertion is belied by internal government documents, which show that—at a former staffing capacity that far exceeds today's—USAID's timeline to issue a competitive contract was at least 268 days, and the timeline to issue a competitive grant or cooperative agreement was at least 150 days. *See* Jeff Doe Decl., Attachment A, p. 15. The timeline to completely revamp U.S. foreign assistance along new Presidential priorities would be considerably longer than that, because such a significant shift would require strategic development, formulation of an acquisition and assistance plan, and market research, *id.* ¶¶ 7–11—none of which Defendants claim to have started, let alone completed.

## II. The Deliberative Process Privilege is Inapplicable.

Defendants contend that the deliberative process privilege excuses their non-compliance with the Court's June 16, 2025, minute order directing them to "include specific details about what steps they have taken to date to come into compliance" as well as "specific details about what steps Defendants intend to take prior to September 30, 2025, to ensure compliance with the preliminary injunction." Opp. at 6–7. But the deliberative process privilege does not apply at all to a court-ordered compliance plan.

"Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). And it "may only be invoked for

7

documents that are both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). Here, specific details about the steps the government has taken, if any, to come into compliance with the preliminary injunction are purely a matter of historical fact and have nothing to do with agency decision-making. And steps the government plans to take to comply with a Court order cannot "reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment." *Petroleum Info. Corp.*, 976 F.2d at 1435. A plan for compliance is, necessarily, post-decisional—a consummation of a deliberative process. *See Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) ("A document that does nothing more than explain an existing policy cannot be considered deliberative."). If Defendants' troubling argument to the contrary were accepted, they could violate the law with impunity because a federal court could never assess whether its lawful orders were being followed or whether there were any indications the government intended to follow those orders in the future.

Arguing otherwise, Defendants cite case law about the President's authority to make budgetary requests to Congress. Opp. at 7 (citing *Bureau of Nat. Affs. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1497 (D.C. Cir. 1984)). The uncontroversial proposition that, in formulating a proposed budget, the President is not bound by agency funding suggestions has absolutely nothing to do with the question whether, once a budget has been *passed* by Congress, the President has authority to withhold information about his compliance with the law. All told, this Court should read Defendants' refusal to state their compliance plan for what it is: a tacit admission that Defendants do not plan to comply.

### III. The Pending Appeal Does Not Excuse Noncompliance.

The preliminary injunction is not stayed, as Defendants concede. Opp. at 8. Absent a stay, Defendants must comply with this Court's order, notwithstanding that they continue to challenge a basis for that order on appeal. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."). But when asked to articulate any concrete steps Defendants have taken toward compliance during the *three months* the injunction has been in effect, Defendants declined to do so. Defendants should not be permitted to unilaterally grant themselves a stay they never sought and then ask, months later, that this Court ratify their choice.

Defendants' argument that, if the D.C. Circuit were to reverse or vacate the preliminary injunction, "any actions taken now would be unnecessary and wasteful," Opp. at 8, shows their hand. Compliance with Court orders is not optional. *Maness*, 419 U.S. at 459 ("The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" (quoting *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947)). The possibility that a party adversely affected by a court order may prevail on appeal "is present in every appeal and is not one that has persuaded any court that, absent a stay, a district court is without jurisdiction to enforce its orders pending appeal." *In re Grand Jury Subpoena No. 7409*, No. 18-41, 2018 WL 8334866, at *2 (D.D.C. Oct. 5, 2018) (citing "voluminous and convincing" precedent).

9

This Court should also decline Defendants' request that it issue a stay of any relief granted on Plaintiffs' present motion to enforce. Opp. at 8. This Court has held and reiterated multiple times that the suspension of congressionally appropriated foreign assistance funds has caused Plaintiffs irreparable harm and is likely unlawful. *See* ECF 17, 30, 34, 39, 60. And although Defendants continue to claim that disbursement of funds could harm them, their previous effort to stay the TRO on that basis was rejected by this Court. *See* ECF 39 at 6–7 (noting that the purpose of the TRO was to restore the status quo, and that "[a] stay pending appeal would run directly contrary to that purpose and, indeed, would have the opposite effect of rendering the Court's TRO … a nullity"). Likewise, Defendants made the same argument they conjure now in requesting that Supreme Court vacate this Court's order enforcing the TRO—and that request was rejected by the Supreme Court. *See Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753 (2025); *see also* App. to Vacate, *Dep't of State v. AIDS Vaccine Advoc. Coal.*, No. 24A (Feb. 26, 2025) at 20–25.

## IV.    Civil Contempt is Warranted.

Defendants have not complied with the preliminary injunction. *See* Part I, *supra*. They have now also affirmatively declined to comply with this Court's June 16 minute order directing them to take the relatively modest step of indicating the steps they have taken so far to comply with the preliminary injunction in the months since the order was issued and to indicate any future steps they plan to take to ensure that the funds are expended prior to September 30. On this record, this Court should exercise its "inherent power to protect its integrity and to prevent abuses of the judicial process by holding those who violate its orders in contempt and ordering sanctions for such violations." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003); *see* Pls' Mot. to Enforce at 6.

10

There is "no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "For contempt to issue, two conditions must be present: (1) the existence of a reasonably clear and specific order … and (2) violation of that order by the defendant." *Landmark Legal Found.*, 272 F. Supp. 2d at 75. Both conditions are present here. This Court was clear—more than three months ago—that Plaintiffs faced "largely uncontested" irreparable harms from Defendants' unconstitutional acts and that Defendants had failed to "offer a defensible interpretation of the separation of powers." ECF 60 at 11–12. That conclusion led the Court to issue an unambiguous order enjoining Defendants from unlawful impoundment and directing them to "make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs." *Id.* at 48. Defendants chose to violate that order. Indeed, they admit that they have continued to withhold funds from obligation, arguing only that they have "sufficient time" in the future to "obligate any presently unobligated funds." Opp. at 3. The June 16 minute order was likewise clear and clearly violated.

This brazen noncompliance is in keeping with Defendants' history—already lengthy in this litigation—of treating this Court's orders as optional. Defendants' failure to comply with the February 13 TRO required Plaintiffs in both this case and in *Global Health Council v. Trump*, No. 25-cv-402 (*GHC*), to return to the Court on multiple occasions seeking compliance. *See* ECF 26 (Mot. to Enforce and for Civil Contempt); 2/25 H'rg Trans. at 25 (renewing motion to enforce and for civil contempt); *GHC* ECF No. 29 (Mot. to Enforce); *GHC* ECF 36 (Emergency Renewed Mot. to Enforce). Likewise, Plaintiffs have repeatedly sought this Court's intervention to address Defendants' persistent failure to comply with the preliminary injunction. *See* ECF 68 at 8–11 (seeking limited discovery in light of noncompliance); ECF 70 at 3–4 (seeking production of the

administrative record in light of noncompliance); 5/7 Hr'g Trans. at 36 (noting that Defendants have taken "literally zero steps" to comply). This "procedural background—specifically, [Defendants'] repeated noncompliance with this Court's orders"—creates a strong basis for imposition of sanctions. *Hillman v. Am. Fed. of Gov't Emps.*, 2022 WL 2817750, at *1 (D.D.C. July 19, 2022).

This Court should not countenance further noncompliance. "If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority and to compel compliance with lawfully issued directives." *Am. Rivers v. U.S. Army Corps of Eng'rs*, 274 F. Supp. 2d 62, 70 (D.D.C. 2003). Here, that action should take the form of a "conditional order finding [Defendants] in contempt and threatening to impose a specified penalty unless [Defendants] compl[y] with prescribed conditions set forth in a 'purgation order.'" *Id.* at 65. If those conditions are not fulfilled, the Court should execute the threatened penalty. *Id.*

## CONCLUSION

Plaintiffs' motion to enforce should be granted, and this Court should hold Defendants in contempt and impose sanctions for their continued non-compliance.

Dated: June 27, 2025               Respectfully submitted,

/s/ Lauren E. Bateman
Lauren E. Bateman (D.C. Bar No. 1047285)
Allison M. Zieve (D.C. Bar No. 424786)
Nicolas A. Sansone (D.C. Bar No. 1686810)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

12