UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AIDS VACCINE ADVOCACY COALITION, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 25-cv-400 |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF STATE, et al., | ) ) ) ) | |
| *Defendants*. | ) ) | |

**DECLARATION OF JEFF DOE**

I, Jeff Doe, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I wish to remain pseudonymous because I fear that the Administration will retaliate against me for whistleblowing if my identity is revealed.

3. I am a Contracting and Agreement Officer (CO/AO) at the U.S. Agency for International Development (USAID). In that position, I am responsible for conducting a procurement process compliant with applicable law, regulations, and guidance, including the Federal Acquisition Regulations (FAR) and the Uniform Guidance (2 C.F.R. § 200).

4. As a result, I have first-hand knowledge of the procurement processes that necessarily must be followed for USAID or other government agencies to disburse Congressionally appropriated money through funding instruments such as contracts, grants, and cooperative agreements.

5. The process of entering into a contract is referred to as "acquisition," while the process of disbursing funds through cooperative agreements or grants is referred to as "assistance." The basic steps in a procurement process are the same for acquisition and assistance. For simplicity, I will generally use the terminology for awarding grant assistance throughout this declaration.

6. The process for awarding grant assistance to implement foreign assistance activities cannot happen overnight. Procurement regulations, policies, and practices are designed specifically to safeguard taxpayer money and prevent fraud, waste, and abuse. Each step in the process exists to ensure that grant- or cooperative agreement-funded activities accord with U.S. foreign policy and congressional priorities; have realistic, achievable goals; and are priced reasonably; and that grants and cooperative agreements are awarded impartially, without favoritism or bias.

7. The first step in the process is that each USAID country development office (referred to as a "mission") develops an overarching Country Development Cooperation Strategy (CDCS) to formalize priorities within the context of the host country. The CDCS ensures that activities are designed in accordance with U.S. foreign policy priorities, congressional funding priorities, and foreign assistance priorities. It is also tailored to the challenges and resources available in the host country, to ensure that priorities are realistic and achievable. This process involves substantial input from partner governments and from industry, civil society, and development partners. In my experience, this step can take six months to several years to complete.

8. Once a CDCS framework is in place, USAID creates an Acquisition and Assistance (A&A) plan, and then designs activities intended to achieve the goals of the CDCS. This design

process takes a significant amount of time because an A&A plan requires significantly more detail than a CDCS, and additional engagement with local stakeholders and counterparts.

9. Once an A&A plan is in place, the design team, along with the CO/AO, must determine which mechanism, either acquisition (contract) or assistance (grant or cooperative agreement), is appropriate to implement the work.

10. During this design process, USAID also conducts market research to explore different ways to achieve our development objectives and to gather information about local capacity, the participation of small business, and the feasibility of our anticipated requirements. Market research is not optional; it is required by federal regulation. *See* FAR 10.001; 2 C.F.R. § 200.202(b).

11. Market research may be conducted via gathering and synthesizing existing reports, attending industry conferences, holding informal meetings, or, most commonly, publishing a Request for Information (RFI). An RFI is usually a public notice advertised on sam.gov and/or grants.gov (often both) that indicates that the U.S. government is interested in doing work in a specific area or doing a specific type of program, and requests information from industry on organizational capability and interest. RFIs can also request that industry provide comments on a draft statement of work (a formal document that outlines a proposed program's scope, timeline, and cost) or program description.

12. Once the design phase is complete, USAID prepares and issues a solicitation. Typically, solicitations are posted on sam.gov and/or grants.gov. Solicitations describe not only the requirements of the activity, but also the regulatory framework of the eventual contract, how USAID will evaluate submissions, and how an eventual selection will be made.

13. Once a competitive solicitation is publicly posted, organizations interested in working with USAID are invited to submit an application in response to the solicitation. An application will describe how the applicant will implement the program and is expected to include a significant level of detail on timelines, staffing, and specific interventions. An application can be extremely time-consuming and labor-intensive to prepare. As a result, a solicitation is generally active for a minimum of 30 days, but may be active for 45, 60, or even 90 days to allow enough time for applicants to submit a thorough application.

14. Once applications are submitted, a Merit Review Committee (MRC) at USAID reads, evaluates, and documents them. The committee then makes a selection recommendation.

15. After the MRC issues a selection recommendation, CO/AOs have several options to move the award forward. The quickest way is to issue the award based on the submitted application without changes; the CO/AO should do so only if there is no need for the government to negotiate or otherwise materially modify the application. Frequently, even if the application requires no substantial changes, it is necessary to ask clarifying questions to ensure an accurate and common understanding of the details of the application. This process is important because it minimizes misunderstanding, resulting in a more efficient start up and implementation of the award.

16. Sometimes, more than one organization has submitted an acceptable application. In such cases, the CO/AO may ask questions of more than one applicant. Sometimes, there is an iterative process through which a CO/AO works with a potential award recipient to modify the application. These can both be time consuming processes. But they are necessary to ensure efficient use of taxpayer dollars, because it is costly in time and money to substantially modify an award after the award is issued.

17. Once an application is accepted, USAID will make the award to the selected organization. This involves drafting the final award, which then must be reviewed by the recipient. It often takes several weeks for recipients to read through their award documents, ask clarifying questions, and resolve all issues before proceeding to signature.

18. Comprehensive timelines for the award of contracts, grants, and cooperative agreements, according to the type of mechanism and level of competition, are codified in USAID's operational policy guidelines, referred to as the "Automated Directive System" (ADS). The timeline from the 2024 version of the is included as Attachment A to this declaration.

19. The standard timeline to issue a competitive contract is 268 days. The timeline to issue a competitive grant or cooperative agreement is 150 days.

20. It is possible to issue awards on a non-competitive basis on a shorter timeline, such as a non-competitive contract (151 days), or a non-competitive grant or cooperative agreement (90 days). But whether it is permissible in practice to limit competition depends on many factors discussed above, such as the selection of award instrument, level of competition required, and market capabilities.

21. In addition to the need to complete the steps described above, the timeline for the entire procurement process also depends on having appropriately qualified staff to contribute to technical requirements and goals, oversee and document a fair and transparent procurement process, and finalize awards in accordance with U.S. law and regulation. USAID is the only U.S. government agency that, until recently, has had the requisite technical expertise worldwide to oversee procurements for development assistance at a meaningful level. Recently, though, nearly 100% of USAID staff has been laid off.

22.     Fiscal Year 2024 appropriations must be obligated into an award by September 30, 2025, which is less than 4 months away. To reopen a competitive process for funding that had previously been allocated to awards that have now been terminated would require a minimum timeline of 5–9 months between conceptualization and finalization. This timeline is also dependent on staffing. Currently, the staff who would normally finalize technical requirements to ensure effectiveness of programs, or oversee these procurement processes to ensure compliance and to guard against fraud, waste, and abuse, have been laid off.

23.     Based on my experience, I can say with certainty that it is not possible now to initiate a competitive procurement process to issue new foreign assistance awards by September 30, 2025.

Executed on June 27, 2025.

/s/ Jeff Doe  
Jeff Doe

# Attachment A

CO/AOs are responsible for approving the publication of actions in the Business Forecast and for coordinating with their technical offices to update the A&A Plan for the Business Forecast on a continual basis. While Requesting OUs/Planners must keep CO/AOs informed at all times on the status of actions that should be or have been included in the Business Forecast, only CO/AOs have the system authorization to check "Yes" in the A&A Plan for it to be published in the Business Forecast. If the type of instrument is unknown, CO/AOs may select "TBD," rather than switching the award type after publication on the Business Forecast. CO/AOs must post activities on the Business Forecast as early as possible in the planning and design process, taking into account the B/IO activity approval process and practicalities of the situation. After the CO/AO updates the status in the action field of the A&A Plan indicating the solicitation has closed, the opportunity is automatically removed from the Business Forecast.

If an opportunity is being canceled, the Requesting OU must note the reason for the cancellation in the description and leave it on the Business Forecast for at least one month to notify the public.

The Business Forecast and information pertaining to its use is available at: https://pages.usaid.gov/M/OAA/agency-business-forecast-preparation-guidance.

### 300.3.1.4    Selecting the Appropriate Instrument
Effective Date: 04/02/2013

Contracting/Agreement Officers must determine the appropriate instrument for each award in accordance with the principal purpose of the award as required by the **Federal Grant and Cooperative Agreement Act** and the policies outlined in **ADS 304, Selecting the Appropriate Acquisition and Assistance (A&A) Instrument**.

### 300.3.2    Agency A&A Yearly Planning Schedule and Fiscal Year Closing Date
Effective Date: 07/13/2022

The Agency Acquisition and Assistance Plan closes on the third Monday in July of each fiscal year. Actions added to the Agency A&A Plan after the closing date will be treated with a lower priority than any actions already included in the Plan and could result in these actions not being completed by the end of the fiscal year unless an adjustment is made in the A&A Plan to accommodate them.

The closing date helps ensure the CO/AO concurs that actions listed in the Plan meet the appropriate procurement action lead time (PALT) for the particular type of action will be awarded by the date included in the milestone schedule (see **300.3.5**) and will be entered in the Agency A&A Plan.

In addition, any expiring funds associated with actions submitted after the closing date will be subject to reallocation to other funding requirements. The closing date does not apply to increases in funding amounts for those awards already listed in the Plan but not yet awarded.

Expiring funds designated for field support to Pillar Bureau awards must be planned and authorized in the Field Support system no later than May 30 of each year. The field support database will not accept funds after this date.

| Action | Bureau/Office | Due Date |
| --- | --- | --- |
| Commitment of Expiring Funds Completed | Operating Units | NLT March 29 |
| Expiring funds designated for field support planned and authorized in the Field Support Database | Mission Operating Units and Regional Bureau Program Offices | NLT May 30 |
| Submission of all documentation required for Fiscal Year End actions to CO/AO | All Operating Units | NLT May 30 |
| Field support sub-obligations authorized in the Field Support Database | Mission Operating Units | NLT June 30 |
| A&A Plan FY closing date | All Operating Units | Third Monday in July |
| Obligation of expiring funds | COs/AOs | NLT July 15 |
| Field support New Obligation Authority (NOA) funds authorized in Field Support Database | Regional Bureau Program Offices (based on input from Mission Operating Units) | NLT July 31 |
| End of fiscal year | | September 30 |

*The above dates are for each fiscal year.*

### 300.3.3    Procurement Action Lead Time (PALT)
Effective Date: 03/05/2024

Contracting/Agreement Officers and technical offices must work together to establish realistic milestone schedules for full and open competitive actions of $10 million or more in the Agency A&A Plan and tailor them to fit the individual action. The A&A Plan includes mandatory PALT milestones for the CO/AO to report and maintain. Additionally, the A&A Plan includes optional PALT milestone reporting. These schedules are an important accounting of the individual milestone events for actions to ensure timely awards.

*Text highlighted in yellow indicates that the material is new or substantively revised.*

The M Bureau will project and record the timeframes related to such pre-solicitation items as activity/project approval. The dates agreed to by the technical and program offices with their CO/AO on these items are considered pre-solicitation planning activities; also referred to as Pre-PALT dates. The M Bureau will also track and monitor these Pre-PALT dates as milestones, and they will be part of the Milestone Plan.

The program and technical offices must include their CO/AO in the design stage of their actions. If the design stage identifies that IT or IT resources are required in support of a contract, the program and technical offices must contact M/CIO at **ITAuthorization@usaid.gov** to pre-vet requirements and obtain conditional approval to proceed. The program and technical offices must also submit draft documentation with all applicable timeframes (for example, when the activity will be approved, when the statement of work (SOW), including evaluation criteria, instructions to offerors/applicants and an independent Federal Government cost estimate, will be provided) to the CO/AO, as early as possible in the planning process. The COs/AOs, in turn, will work with the cognizant technical staff on the dates that the CO/AO must enter for the solicitation through the award phase.

The estimated timeframes or PALTs for COs/AOs to award select actions are provided below. All timeframes are stated in calendar days.

In accordance with **OFPP Memorandum, Reducing PALT Using Modern Business Practices, January 14, 2021**, for purposes of benchmarking timely procurements and the responsiveness of federal acquisition activity, PALT is defined as the time between the date on which an initial solicitation is issued and the date of the award. The CO must enter the "Solicitation Issue Date" in FPDS-NG to calculate PALT. GLAAS does not auto-populate the solicitation issue date in FPDS-NG.

A complete GLAAS request must include the name of the Buyer before release. It must also include the following documents to the maximum extent practicable, but is not limited to:

- An approved Activity Approval Memorandum (AAM), where required (**ADS 201**), or equivalent documents (may be provided outside the GLAAS request attachments);

- The justification memo to the CO/AO recommending the choice of instrument;

- Statement of Work, Statement of Objectives or Performance-Based Work Statement for acquisition, or a Program Description for assistance, to be included in Section C of the solicitation or Section A of the Notice of Funding Opportunity (NOFO), respectively. This is also sometimes referred to by the umbrella term, "Activity Description" (see **ADS 201**);

*Text highlighted in yellow indicates that the material is new or substantively revised.*

- Solicitation language designating indicators that the contractor or recipient will be required to collect and report as part of the contractual deliverables or assistance performance goals. Where applicable, these indicators should be derived from the Mission-wide Performance Management Plan (PMP);

- Independent Government Cost Estimate;

- Proposal submission instructions to the offeror or applicant;

- Technical evaluation or selection criteria (for a competitive action) to be used by the Technical Evaluation/Selection Committee;

- For acquisitions, a branding strategy;

- For Notice of Funding Opportunities (NOFOs) that will result in a cooperative agreement, language on the type of substantial involvement that is anticipated between USAID and the recipient (**ADS 304**);

- An approved environmental compliance document such as an Initial Environmental Examination (IEE), Request for Categorical Exemption (RCE), or Environmental Impact Assessment (EA) (per **ADS 201**, **ADS 204**, and **22 CFR 216**);

- For acquisitions, documentation that procurements above the simplified acquisition threshold comply with the requirements of the Office of Federal Procurement Policy Letter 11-01, and the **Inherently Governmental and Critical Functions Template**;

- For acquisitions, a written Individual Acquisition Plan (IAP) if required per FAR Part 7;

- Market research documentation;

- Climate Risk Assessment, if required (per **ADS 201** and **ADS 201mal, Climate Risk Management for USAID Projects and Activities)**;

- For all prospective A&A activities intended to support the energy sector or support energy infrastructure, documentation of the required screening and (if applicable) exemption (per **ADS 201** and **ADS 201mbb, Energy Assistance Guidance** (note this document is only available on the Agency's internal website)); and

- Any other documents needed for special clearances, *e.g.,* source nationality/waivers, restricted commodities, limited competition or restricted eligibility, NSDD-38, IT approvals, and any others.

*Text highlighted in yellow indicates that the material is new or substantively revised.*

03/05/2024 Partial Revision

The CO/AO will advise the project/technical staff on the specific documentation required for the type of action planned.

PROCUREMENT ACTION LEAD TIMES BY TYPE OF ACTION

| ACTION | TIMEFRAME (Calendar Days) |
|---|---|
| Unilateral Contract Modification | 15 days |
| Administrative Contract Modification | 31 days |
| Bilateral Contract Modification | 91 days |
| Cooperative Agreement (Non-Competitive) | 90 days |
| Cooperative Agreement (Competitive) | 150 days |
| Cooperative Agreement Modification | 71 days |
| Cooperative Agreement (Technical Office Competition) | 90 days |
| Definitive Contract (Competitive) | 268 days |
| Definitive Contract (Limited Sources) | 268 days |
| Definitive Contract (Sole Source) | 151 days |
| Definitization of Letter Contract | 151 days |
| Indefinite Quantity Contract | 327 days |
| Grant (Competitive) | 150 days |
| Grant (Non-Competitive) | 90 days |
| Grant (Technical Office Competition) | 90 days |
| Grant Amendment | 71 days |
| Inter-Agency Agreement | 90 days |
| Inter-Agency Agreement (Modification) | 60 days |
| Letter Contract | 61 days |
| New Work - Bilateral Contract Modification | 91 days |
| Priced Orders (task orders under BPA's or IQC's) | 75 days |
| Priced Order Non-Competitive | 48 days |
| Termination for Convenience (settlement) | 143 days |
| Termination for Default (settlement) | 143 days |
| Termination for Convenience | 21 days |
| Termination for Default | 21 days |
| Unpriced Bilateral Contract Modification | 103 days |
| Unpriced Order | 39 days |
| Personal Services Contract | 145 days |
| Personal Services Contract Modification | 45 days |
| Purchase Order (non-Competitive) | 48 days |
| Purchase Order (Competitive) | 75 days |
| Purchase Order Modification | 31 days |
| Award Fee Modification | 32 days |
| Basic Ordering Agreement | 159 days |
| Option Exercise Modification | 61 days |

For any award that must be obligated by September 30 of the current fiscal year, the program/technical office must submit the request with the supporting documents required for the specific type of action to the cognizant CO/AO with sufficient time according to the above PALTs and the timeframes listed in **300.3.2**. The action must

*Text highlighted in yellow indicates that the material is new or substantively revised.*