IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |

**[PROPOSED] DEFENDANTS' SURREPLY REGARDING PLAINTIFFS'
MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**

Defendants submit this surreply in response to new declarations AVAC Plaintiffs filed after Defendants filed their opposition and to which Defendants had no previous opportunity to respond. The new declarations concern two aspects of the parties' briefing on AVAC Plaintiffs' motion to "enforce" the preliminary injunction.

*First*, after Defendants filed their notice (Doc. 110) on *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025), AVAC Plaintiffs responded on July 7, 2025 with three new declarations, one per Plaintiff, on which they predicate arguments that the full amounts of entire appropriations accounts, totaling billions of dollars, are validly subjected to the appropriations provision of this Court's preliminary remedy. AVAC Resp. 1-3 (Doc. 113). But the conclusory assertion by each of the three Plaintiffs that it is "willing and able to compete" for awards *from* various appropriation accounts cannot mean, as a practical matter, that Plaintiffs would benefit from a court order concerning the *entirety* of those accounts, where the funds appropriated far exceed the value of any of the three Plaintiffs' particular awards. Although no "enforcement" remedy is warranted, particularly in light of the pending expedited D.C. Circuit

appeal which will soon resolve the lawfulness of the preliminary injunction, any such "enforcement" remedy directed to entire appropriations accounts would exceed the fundamental limits on equitable relief the Supreme Court clarified in *CASA*.

*Second*, some arguments in AVAC Plaintiffs' reply of June 27, 2025 (Doc. 109) on their motion are predicated on a new declaration from a pseudonymous declarant ("Jeff Doe") (Doc. 109-1). AVAC Plaintiffs rely on their new declaration (Reply 7), *inter alia*, to attempt to generate factual disputes on the pertinent timelines. The Court should reject the new declaration as unreliable. The pseudonymous declarant offers only conclusory statements based on his alleged experience, but even as vaguely described in the declaration that experience is necessarily isolated. Simply dressing up his disagreements with agency leadership about the national interest and agency priorities as the product of that purported experience provides no basis for accepting his views as reliable fact.

**1. Plaintiffs' New Declarations Cannot Sustain Provisional Relief As To Non-Parties**

The *CASA* Court clarified the narrow scope of equitable relief that could be afforded to non-parties and clarified that the remedial question "is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *See* 2025 WL 177363, at *11 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), for teaching that: "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*"). AVAC Plaintiffs then filed new declarations seeking to justify their continued bid for a sweeping remedy reaching non-parties. To that end, the AVAC Plaintiffs' new declarations aver that each of

them is "willing and able to compete" for awards from funds appropriated to State and USAID accounts.

In particular: CVT's declarant attests that "[g]iven CVT's experience, staff, and expertise, CVT is willing and able to compete for federal foreign assistance award *funding that may be obligated* through appropriations to" USAID and to State for various purposes Roehm enumerates. Roehm Decl. ¶ 2 (Doc. 113-1) (emphasis added). JDN's declarant similarly attests that "[g]iven JDN's experience, staff, and expertise, JDN is willing and able to compete for federal foreign assistance *awards from*" State "that fund programs for fighting corruption, from State and USAID for the promotion of global democracy, and from USAID for work" overseas. 5th Sullivan Decl. ¶ 2 (Doc. 113-2) (emphasis added). And—although AVAC's "award has not been terminated" (AVAC Am. Compl. ¶ 62)—AVAC's declarant similarly attests that "[g]iven AVAC's experience, staff, and expertise, AVAC is willing and able to compete for federal foreign assistance award *funding that may be obligated through* appropriations to fund the President's Emergency Plan for AIDS Relief (PEPFAR)," including funds appropriated to State. 5th Warren Decl. ¶ 2 ( Doc. 113-3) (emphasis added).

That is, each Plaintiff attests that it has the ability to "compete for . . . funding" (Roehm Decl. ¶ 2; 5th Warren Decl. ¶ 2), or "awards from" (5th Sullivan Decl. ¶ 2) State and USAID, and those attestations are constrained by the "experience, staff, and expertise" of each Plaintiff, *see id.* But, importantly, *no* Plaintiff avers that it has "experience, staff, and expertise" sufficient to make that Plaintiff "willing and able to compete" for *all of the funds* appropriated to any pertinent State or USAID account. If anything, CVT's declaration, in describing the alleged effects on CVT of the challenged "pause" on foreign assistance funding in January 2025, underscores the practical obstacles preventing Plaintiffs from competing for the entirety of such funds. Roehm Decl. ¶ 16.

3

There, the declarant attests that the "pause" affected not only "programmatic staff" but also other personnel "supported in part by indirect funding associated with" pertinent awards, including "human resources, technology, communications, finance, development, and risk management departments." *Id.* The obvious inference from that description is that, for a Plaintiff to implement a State or USAID award, the entity needs not only programmatic staff, but also sufficient "human resources, technology, communications, finance, development, and risk management" staff that allow the programmatic staff to carry out the work each award funds. Again, no declarant attests that any Plaintiff has sufficient programmatic or supporting staff sufficient to enable any Plaintiff to compete for millions of dollars in appropriated funds more than each Plaintiff previously was awarded.

The new declarations thus cannot sustain the contention (AVAC Resp. 1-3) that the appropriations-related requirement of the preliminary injunction in this suit is permissibly "enforced" as to the *entire* amount of the funds appropriated to various State and USAID accounts—which includes billions of dollars in funds for "treatment" and "research on" HIV/AIDS, and hundreds of millions of dollars in the other accounts on which AVAC Plaintiffs concentrate. Although the Court should deny AVAC Plaintiffs' motion to enforce in full, neither the new declarations nor any other evidence from AVAC Plaintiffs supports their request for any preliminary relief beyond, at most, a remedy tailored to the "experience, staff, and expertise" of the three Plaintiffs in this suit. Roehm Decl. ¶ 2; 5th Sullivan Decl. ¶ 2. And contrary to AVAC Plaintiffs' effort to rely on the existence of multiple Plaintiffs *in the GHC action* (AVAC Resp. 3),

under *CASA*, the presence of different Plaintiffs in a different suit is inconsequential for the "complete relief" inquiry in this suit.

Rather, as clarified in *CASA*, 2025 WL 177363, at *11, any further remedial orders as to obligation of appropriated funds would properly be limited to amounts corresponding to the amounts that previously funded terminated awards. Anything more than that, which AVAC Plaintiffs seek in an apparent effort to address non-parties, would exceed the Court's "equitable authority under the Judiciary Act." 2025 WL 177363, at *8. (That remedial limitation is not a question of Article III standing, *see id.* at *6 n.4., so AVAC Plaintiffs err in citing the Government's discussion of Article III standing in competitor suits as somehow supporting their bid for grasping relief. AVAC Resp. 1.)

Moreover, while some of the funds appropriated in the Further Consolidated Appropriations Act of 2024 remain available until September 30, 2025 (whereas other funds remain available until later dates or until expended), no declarant describes which of Plaintiffs' awards must be funded from the appropriated funds available until September 30, 2025. To the contrary, as one example, one of CVT's five largest USAID grants, No. 720BHA24GR00036, was funded with International Disaster Assistance "no-year" funds with no specified end to their period of availability. *See, e.g.*, Pub. L. No. 118-47, div. F, 138 Stat. 460, 742 (at-issue funds "remain available until expended"). As another example, two of CVT's State grants, Nos. SPRMCO24CA0109 ($2,576,000) and No. SPRMCO24CA0182 ($2,000,000), were funded with State's Migration and Refugee Assistance (MRA) funds, which also are "no-year" funds. *See, e.g.*, *id.*, 138 Stat. at 744 (at-issue funds "remain available until expended"). Notably, given that $3,928,000,000 is appropriated, in the FCAA, to that account, *see id.*, State estimates that those two grants to CVT constitute only 0.1% of that total value the FCAA appropriated to that account.

As those examples illustrate, the declarants furnish no support for the contention that the asserted "enforcement" remedy is necessary for all of the awards to the instant Plaintiffs at this juncture.

Nor should the Court accept AVAC Plaintiffs' description of the relevant appropriations statutes as accurately within the scope of the Court's preliminary relief. In that regard, although Plaintiffs contend that the relief should extend to "[a]pproximately $6.3 billion to the Department of State for refugee and entrant assistance" (AVAC Resp. 3 (citing 138 Stat. at 664)), the appropriations provision cited concerns funds appropriated to the Department of Health and Human Services, which is not a party to this suit. The appropriations language AVAC Plaintiffs cite inaptly is found in Title II of Division D of the Further Consolidated Appropriations Act, 2024; that Division concerns the Departments of Education and Labor along with HHS and related agencies. 138 Stat. at 628 (Div. D heading); *id.* at 649 (Tit. II heading). By contrast, State and USAID appropriations are in Division F of Title III of that statute.

### 2. The Pseudonymous "Jeff Doe" Declaration Should Be Disregarded

As to the declaration AVAC Plaintiffs filed to support their reply: To begin with, they have again failed to justify deploying a pseudonymous declarant. Consistent with the "strong presumption in favor of public access to judicial proceedings," *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017), courts traditionally require a person seeking to use a pseudonym in court filings to make a showing akin to "good cause" for that course, *see Doe v. Von Eschenbach*, No. 06-cv-2131, 2007 WL 1848013 at *2 (D.D.C. June 27, 2007); *cf. Chang v. Republic of S. Sudan*, 548 F. Supp. 3d 34, 37 (D.D.C. 2021) ("court may . . . *for good cause*, 'require redaction of additional information'" from filings) (quoting Fed. R. Civ. P. 5.2(e)(1)) (emphasis added). But the declarant offers on that point merely the bald assertion that he "fear[s] that the Administration will retaliate against" him "for whistleblowing if" his "identity is revealed." Jeff Doe Decl. ¶ 2. The declarant does not describe any particular events or

6

circumstances that would make such a "fear" objectively reasonable, leaving nothing but his subjective and self-serving say-so, which is inadequate by any standard, and certainly cannot count as "good cause."

In any event, the declarant provides little more than his own "say so" as a basis for crediting his factual assertions and his legal conclusions couched as factual assertions. Although the declarant describes himself as a USAID "Contracting and Agreement Officer" and purports to have unspecified "experience" (Jeff Doe Decl. ¶¶ 3, 23), he never describes the particular characteristics of his actual agency work experience, such as how long he served in that role or any other information about his professional training and experience. But without the benefit of an actual description of the declarant's purported "experience," or any asserted basis for knowledge about *current* operating conditions at USAID and State given the in-progress reorganization Defendants have recently described, the reliability of his account of the agency's contracts and grants processes cannot be meaningfully assessed. And absent such a description, there is no reason to give any weight to his claims of "certainty" on current or future procurement processes. Jeff Doe Decl. ¶ 23.

Ultimately, the evident function of the declaration is a transparent attempt to controvert the declaration of agency leadership Defendants offered in opposing the motion. Doc. 106-1. But it is the responsibility of agency leadership, not subordinate staff, to chart agency priorities and the national interest consistent with the views of the President. The quarrel of just one unnamed subordinate who evidently disagrees with agency leadership about agency priorities is not a basis for assigning any weight to AVAC Plaintiffs' views espoused through the pseudonymous declaration.

Dated: July 10, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: Indraneel.Sur@usdoj.gov

*Counsel for Defendants*