IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**DEFENDANTS' MOTION FOR CLARIFICATION**

1. Defendants respectfully move under Federal Rule of Civil Procedure 65(d), for an order clarifying that the Order of July 21, 2025 and the Preliminary Injunction of March 10, 2025 do not restrain Defendants from taking action with respect to agreements based on their exercise of authorities under statutes, regulations, and other legal authorities, including but not limited to (1) taking action to enforce the terms of particular contracts, including with respect to expirations, modifications, or terminations pursuant to contractual provisions; (2) taking action pursuant to executive orders other than Executive Order No. 14169 of January 20, 2025; and (3) taking action, including terminations before the Court's issuance of the Temporary Restraining Order of February 13, 2025 to which counterparties to contracts or agreements consent.

2. The grounds for the motion are set forth in the accompanying memorandum. A proposed order is also attached.

3. Plaintiffs indicated through counsel they oppose the relief requested herein.

Dated: August 11, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General, Civil Division

ALEXANDER K. HAAS
Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: Indraneel.Sur@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION**

The Court's Order of July 21, 2025 (Order) granted in part and denied in part motions to enforce the preliminary injunction of March 10, 2025 (PI). As relevant here, the Order ruled that "Defendants may not give effect to terminations issued prior to February 13, 2025, and must promptly take steps to come into compliance as to the awards at issue." Order at 2, 9. In doing so, the Order rejected Defendants' argument that Defendants could continue to give effect to pre-TRO terminations so long as they were ratified thereafter. Defs. Opp. to GHC Pls. Mot. to Enf. 22-25 (GHC Doc. 99). Following efforts to meet and confer with Plaintiffs, Defendants now seek clarification about that aspect of the Order, and how to apply it to particular awards that Plaintiffs assert fall within the scope of the Order.

1

Under Local Civil Rule 7(m), counsel for Defendants conferred with counsel for Plaintiffs, who stated on August 11, 2025 that Plaintiffs oppose the relief requested herein.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). "To prevent uncertainty and confusion on the part of the enjoined party, an injunction must provide 'explicit notice of precisely what conduct is outlawed.'" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) (per curiam) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)); *see United States v. Philip Morris USA Inc.*, 682 F. Supp. 3d 32, 45 (D.D.C. 2023). Furthermore, any "injunction must be 'narrowly tailored to remedy the harm' that it addresses." *Philip Morris*, 682 F. Supp. 3d at 46 (quoting *J.D. v. Azar*, 925 F.3d 1291, 1336 (D.C. Cir. 2019)). Thus, "courts in this circuit have encouraged parties to request clarification when they are uncertain about the scope of a ruling or its application 'in a concrete context or particular factual situation.'" *Id.* at 45 (quoting *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 168, 168-69 (D.D.C. 2011)).

## ARGUMENT

Defendants request clarification to ensure that their interpretation of the Order is consistent with the Order, the PI, and the prior orders to which the PI explicitly referred. Defendants respectfully request that this Court clarify the Order and the PI in three respects.

*First*, the Court should confirm and clarify that the Order and PI do not require Defendants to restore awards terminated before February 13 if Defendants, through post-TRO application of individual award terms and Defendants' authorities under statutes, regulations, and other legal authorities, determined that those awards should be terminated. Rather, in those circumstances, the date of termination should simply be altered from the date of the (enjoined) pre-TRO

termination to the date of the (permissible) post-TRO termination. That would fully implement this Court's Order that Defendants not "give effect" to the pre-TRO terminations, while still respecting Defendants' right to terminate individual awards consistent with their terms and applicable law.

After all, this Court has repeatedly reiterated that its orders do not restrain Defendants "from taking action" as to the awards at issue "to enforce the terms of particular contracts, including with respect to expirations, modifications, or terminations pursuant to contractual provisions" (TRO of Feb. 13, 2025, 766 F. Supp. 3d 74, 85), based on Defendants' underlying "authorities under statutes, regulations, and other legal authorities" (Order of Feb. 20, 2025, 768 F. Supp. 3d 1, 4), meaning that Defendants are not restrained "from taking actions based on the particular terms of individual contracts" (PI Op. of March 10, 2025, 770 F. Supp. 3d 121, 141). It is therefore untenable to construe the Court's Order as prohibiting Defendants from terminating individual awards simply because they had originally been terminated before February 13.

Instead, the proper understanding of this Court's PI and Order is that Defendants cannot give legal effect to the pre-TRO terminations, such as by treating those terminations as effective as of the pre-TRO date. But if Defendants later (after February 13) conducted a review of an individual award and determined that it should be terminated based on award-specific application of its terms and pertinent statutes, regulations, and other authorities, then there is no impediment to giving effect to the termination as of that latter (post-TRO) date. The date of termination is significant, because it may affect the reasonable and allocable costs to which the awardee is entitled for the pre-termination period—meeting a concern about allocable costs GHC Plaintiffs described as underpinning their request. *See* GHC Pls. Reply 24 (GHC Doc. 101). But if an award has been

lawfully terminated based on individualized decision-making after February 13, neither the PI nor the Order requires Defendants to restore that award now.

Nevertheless, in conferring with Defendants since the Order, GHC Plaintiffs have taken the position that Defendants must "restore" the awards that were originally terminated before February 13—regardless of what may have occurred since. Indeed, they provided Defendants on July 23 and July 26 with lists of awards that they say are covered by the Order, including many awards that are expressly identified as having been re-terminated or otherwise modified *after* February 13. Again, an interpretation of the Order requiring restoration is untenable.

Most obviously, it conflicts with the Court's prior orders, which repeatedly respected the validity of award-specific decisions. *See, e.g.*, TRO, 766 F. Supp. at 85; Order of Feb. 20, 2025, 768 F. Supp. 3d at 4; Order of Feb. 22, 2025, 768 F. Supp. 3d at 28. Moreover, if the Order truly required Defendants to "restore" terminated contracts for payment of money, it would exceed the APA's waiver of sovereign immunity. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (question whether grant was terminated properly is one for Court of Federal Claims); *see also Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643, 2025 WL 1865160, at **7-14 (D.D.C. July 7, 2025).[1] Also, that would provide a windfall to awardees, who voluntarily entered into contracts and grants that they knew contained clauses or were controlled by relevant regulations and law

---

[1] Although the Court previously concluded that *California* did not require dissolving the PI's requirement that Defendants make payments for past work, the Court did not at that time consider whether *California* precludes an order to restore individually terminated agreements. And, in more recently rejecting a contention that *California* applied to a challenge to a policy implemented through grants, the Court remarked that such a "policy challenge—which does not rely on the terms of *or seek reinstatement of any particular contractual instrument*," was not "a contract claim." *Am. Gateways v. U.S. Dep't of Just.*, No. 25-cv-1370, 2025 WL 2029764, at *7 (D.D.C. July 21, 2025) (emphasis added). On such reasoning, reading the Order to require "reinstatement" of particular "contractual instruments" would steer directly into the *California* ruling.

4

that permitted Defendants to withdraw whenever "such assistance would not be in the national interest of the United States" or "if an award no longer effectuates the program goals or agency priorities" or for convenience when "in the Government's interest." *See* 2 C.F.R. § 700.14; *id.* § 200.340(a)(4); 48 C.F.R. § 52.249-1; *id.* §§ 49.502(a)–(b), 52.249-4, 52.249-6(a)(1)).

And it would create substantial practical difficulties. For example, some of the terminated awards related to events or services that have since passed. In other instances, the awardees have not performed their obligations under the contracts. "Restoring" an award that the awardee and the agency mutually understood were terminated months ago will raise a host of hurdles and impose heavy burdens on the agencies—and potentially even expose awardees to unexpected consequences if they have not performed.

Given that backdrop, the Court should clarify that an interpretation of the Order and the PI under which the awards at issue can never be terminated and must invariably be "restored" is incorrect. Indeed, Plaintiffs' apparent interpretation would significantly curtail the individual-award-level decisions that the Court's previous orders explicitly preserved, and would impose new and drastic restrictions on Defendants' contractual and regulatory termination rights. Instead, the Court should confirm that Defendants comply with the Order by ensuring that they do not treat any of the relevant awards as having been terminated before February 13.[2]

---

[2] Defendants are aware that Plaintiffs' amended complaints have alleged that Defendants' award terminations are invalid because the decisional process was allegedly insufficient. *See, e.g.*, GHC Am. Compl. ¶¶ 101-02, 104; AVAC Am. Compl. ¶ 58. But that was not the theory on which this Court granted the PI; rather, the Court considered and rejected Plaintiffs' contention that post-TRO award terminations must be overturned, concluding "that Plaintiffs are unlikely to succeed on their APA challenge as to the large[-]scale terminations in the process that followed the Court's TRO," and declined to direct Defendants "to revoke all terminations and suspensions issued since January 20." 770 F. Supp. 3d at 143.

5

*Second*, the Court should confirm and clarify that the Order and PI do not restrain Defendants from implementing any pre-TRO termination to which the awardee has manifested consent (including through communications post-dating the Order). Where an awardee has consented to a pre-TRO termination, that consent should be respected and given effect so that the parties to the award can continue to bring an orderly conclusion to their relationship under the agreement's terms, honoring the expectation of the parties to each such award. A contrary interpretation of the Order and PI—that is, one requiring Defendants to deem invalid even those pre-TRO terminations to which awardees have manifested consent—would disturb the expectations of the agencies as well as those awardees, and waste agency and awardee resources in attempting to reestablish a funding relationship which the parties have agreed to discontinue. Such a result would be untethered from any showing in the record justifying that disturbance. Rather than disputing the validity of terminations to which awardees consent, GHC Plaintiffs argued for an order "prohibiting Defendants from effectuating terminations issued prior to February 13 *without the awardee's consent*." Mot. to Enf. 2 (Doc. 97-1) (emphasis added).

Moreover, although GHC Plaintiffs may not have consented to any pre-TRO terminations, that would not, as a remedial matter, warrant disregarding such consents by non-Plaintiffs. In challenges to agency action, the D.C. Circuit has explained that "[j]udicial remedies should be 'no more burdensome to the defendant than necessary to provide complete relief' to the plaintiffs or petitioners." *See Bd. of Cnty. Comm'rs of Weld Cnty., Colorado v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), and further quoting *California v. Texas*, 593 U.S. 659, 672 (2021), for teaching that "remedies operate with respect to specific parties rather than on legal rules in the abstract") (citation modified)). And as the Supreme Court has now made plain, "[u]nder" the complete-relief principle, "the question is not whether an

6

injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief to *the plaintiffs before the court.*" *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2557 (2025). As to non-Plaintiffs—that is, awardees not before the Court—it would be more burdensome to the agencies than necessary to invalidate manifested consents.

*Third*, the Court should confirm and clarify that the PI and Order do not apply to awards that were terminated for reasons unrelated to the executive order challenged in these suits and addressed in the TRO and the PI, namely Executive Order 14169 of January 20, 2025. 90 Fed. Reg. 8619 (published Jan. 30, 2025). The Court's previous orders did not suggest that the TRO and the PI restrained unrelated terminations. *Compare* 770 F. Supp. 3d at 155 (PI provision specifying that restrained Defendants "and their agents are enjoined from enforcing or giving effect to" specified sections State memorandum under "and any other directives that implement" specified sections of EO 14169), *with* 766 F. Supp. 3d at 77, 78-79, 85 (TRO provisions specifying similar bounds, after describing Plaintiffs as "challenging the issuance and implementation of" EO 14169). And Defendants have never understood them to apply to unrelated terminations. Nonetheless, Plaintiffs' recently provided lists of putatively implicated awards includes at least a handful that were demonstrably and contemporaneously terminated for other reasons, separate and apart from EO 14169. The Court should therefore clarify that its PI and Order do not speak to those awards.

## CONCLUSION

For the reasons stated above and in Defendants' prior briefing, the Court should clarify the Order and the PI as requested.[3]

---

[3] Alternatively, the relief requested herein would be appropriate if the motion were construed as seeking reconsideration of the Order under Rule 54(b). A "district court has inherent

7

<table>
<tr><td>Dated: August 11, 2025</td><td>Respectfully submitted,<br><br>BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division<br><br>YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney General<br>Civil Division<br><br>ERIC J. HAMILTON<br>Deputy Assistant Attorney General<br>Civil Division<br><br>ALEXANDER K. HAAS<br>Director<br>Federal Programs Branch<br><br>*/s/ Indraneel Sur*<br>INDRANEEL SUR (D.C. Bar 978017)<br>Senior Counsel<br>JOSHUA N. SCHOPF<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>P.O. Box 883<br>Washington, DC 20044<br>Phone: (202) 616-8488<br>Email: indraneel.sur@usdoj.gov<br><br>*Counsel for Defendants*</td></tr>
</table>

---

authority to reconsider its interlocutory orders as justice requires." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018) (citation modified). And because the Order did not address the Court's prior decrees allowing application of award provisions and regulations, it reflects a "clear error" calling for reconsideration. *See id*.

8