IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

## **DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

1. Defendants respectfully move under Federal Rule of Civil Procedure 65 and Federal Rule of Appellate Procedure 8 for a stay of this Court's Orders of September 3, 2025 pending disposition of Defendants' appeal to the United States Court of Appeals for the District of Columbia Circuit for the reasons stated in the accompanying memorandum of law.

2. Under Local Civil Rule 7(m), counsel for Defendants corresponded with counsel for Plaintiffs, who stated on September 4, 2025 that AVAC and GHC Plaintiffs do not consent to the relief requested herein.

Dated: September 4, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General, Civil Division

ALEXANDER K. HAAS
Director

/s/ Indraneel Sur
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: Indraneel.Sur@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br>*Plaintiffs*, <br><br>v. <br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br>*Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br>*Plaintiffs*, <br><br>v. <br><br>DONALD J. TRUMP, *et al.*, <br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

The D.C. Circuit on August 13, 2025 ruled for the Government in its appeal from the preliminary injunction of March 10, 2025, concluding that Plaintiffs lacked a cause of action to press their private-party claims requiring obligation of funds appropriated in the Further Consolidated Appropriations Act of 2024 (FCAA), Pub. L. No. 118-47, div. F, tits. III-IV, 138 Stat. 460, 740-50. *GHC v. Trump*, No. 25-5097, __ F.4th __, __, 2025 WL 2480618, at *1 (D.C. Cir. Aug. 13, 2025) (reissued Aug. 28, 2025. The D.C. Circuit vacated the relevant portion of the preliminary injunction and remanded for proceedings consistent with its opinion. *Id*. at *14. This Court on September 3, 2025 issued a Memorandum Opinion and Order that essentially reinstalled the preliminary injunction in both suits—while extending the decree to "prior appropriations acts," not just the FCAA. Order, AVAC Doc. 145, GHC Doc. 139.

Defendants have appealed from that Order (AVAC Doc. 146, GHC Doc. 140), and now respectfully move for a stay of that Memorandum Opinion and Order pending issuance of the Court of Appeals' mandate in Defendants' appeal. The effect of the Order is to require Defendants to "make available for obligation and obligate" pertinent funds whose period of availability ends on September 30, including approximately $4 billion in taxpayer funds that are the subject of rescission proposals within the President's special message to Congress on August 28 under the Impoundment Control Act—the very statute the D.C. Circuit held Plaintiffs lack a cause of action to enforce under the Administrative Procedure Act. And the Order gives short shrift to the reality that Defendants are in the process of obligating approximately $6.5 billion in pertinent expiring funds, which substantially offsets Plaintiffs' unsubstantiated claims of irreparable harm. Each of the relevant factors[1] supports prompt relief from the interim and other relief granted in the Order,

---

[1] The traditional four-factor standard for issuance of a stay requires examining: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

1

for all of the reasons stated in Defendants' brief in opposition to the GHC Plaintiffs' motion of August 29 for a temporary restraining order, preliminary injunction, and summary judgment. GHC Doc. 135.

## ARGUMENT

*1.* As to likelihood of success:  Defendants are likely to succeed on the merits of the appeal. The Order erred in rejecting each of the arguments Defendants made against the interim relief GHC Plaintiffs requested.  (The Order granted the AVAC Plaintiffs' preliminary injunction motion without the filing of a response to that motion by Defendants; under the local rules such a response would have been due on September 8.)  Solely for purposes of the instant stay motion only, Defendants highlight two of the critical errors reflected in the Order—the first as the preclusion of APA review, the second as to the merits of Plaintiffs' statutory contentions.

*First*, as to preclusion of review:  The D.C. Circuit held that Plaintiffs could not bring the claims they previously pressed under the APA, because the APA does not supply a cause of action when another statute "preclude[s] judicial review" either through its text or structure, 5 U.S.C. § 701(a)(1), as the ICA does.  *See GHC*, 2025 WL 2480618, at **9-11.  The Order nevertheless allows Plaintiffs, who are private parties unable to point to any statute that requires that Defendants directly pay them any money, to advance their vision of the ICA, purportedly using the APA cause of action, by requiring Defendants to obligate funds that are described in rescission proposals the President transmitted to Congress on August 28 with his special message under the ICA.

But Plaintiffs' new APA theory, purportedly predicated on the appropriations statutes, including the FCAA, 138 Stat. 740-750, is precluded by the ICA, just as their previous theory was.

---

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

2

Preclusion of an APA claim can arise through "express language" in another statute, or through "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). And Congress may "preclude[] all judicial review" or may instead limit judicial review to a particular channel or type of case. *Id.* (citation omitted).

Here, Congress in the ICA set out a detailed scheme to govern interbranch disputes regarding the expenditure of appropriated funds—and the Order erroneously allows Plaintiffs to undermine that scheme by requiring obligation of funds that Congress is considering for rescission as proposed via the President's special message.

After Congress enacts an appropriation, the statute directs the President to notify Congress when he proposes to defer or rescind the appropriated funds. 2 U.S.C. §§ 683(a), 684(a). *Congress* may then determine how to respond given the circumstances of the proposal: further discussion and negotiation could ensue; Congress could express its disapproval of the proposal; Congress could legislate further; or Congress could decline to respond at all. *See* 2 U.S.C. § 688. Further, the ICA contemplates an express enforcement mechanism, providing that the Comptroller General can sue, but only 25 days after providing Congress with a statement explaining the "circumstances giving rise to the action contemplated," so that Congress has a chance to avoid litigation. 2 U.S.C. § 687.

If Congress does not "complete[] action on a rescission bill rescinding all or part of the amount proposed to be rescinded" within 45 days of continuous session after receiving the message, the ICA provides that the amount proposed to be rescinded "shall be made available for obligation." 2 U.S.C. § 683(b); *see* 2 U.S.C. § 682(3).

That detailed scheme of give-and-take between the political branches and congressional notification before suit necessarily forecloses private parties from seeking judicial review and subverting interbranch negotiations while jumping over the Comptroller General. Nothing in the D.C. Circuit's decision *rejecting* Plaintiffs' previous theory of enforcing the ICA via the APA supports a determination that Plaintiffs via the APA can obtain a judicial order undermining the President's rescission proposals under the ICA by requiring Defendants to "make available for obligation and obligate" pertinent funds that are within those rescission proposals.

Allowing the instant Plaintiffs and other private parties to bring suit "would severely disrupt th[e] complex and delicate" scheme that Congress adopted. *Block*, 467 U.S. at 348; *cf. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (explaining that the APA's carveout to its waiver of sovereign immunity "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes").

***Second***, as to Plaintiffs' construction of the appropriations statutes themselves (which is central to their APA "contrary to law" and other claims, including for mandamus relief), they assert that the language of the relevant appropriations provisions requires the Executive Branch to spend the full amount appropriated. But in many instances the statutes simply provide that large undifferentiated sums are appropriated for various activities. Such provisions supply no specific command to provide specific funds on a specific timetable. Even where appropriations provisions state that amounts "'shall be made available,'" such language "contain[s] an element of ambiguity" as to whether Congress intended the amount to serve as a floor or ceiling or both. 2 GAO, *Principles of Federal Appropriations Law* 6-31 (3d ed. 2006). That ambiguity by definition cannot support, among other claims, Plaintiffs' claims for mandamus relief.

4

The Order's reliance on *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) (Kavanaugh, Cir. J., for the Court) is also mistaken. There, the D.C. Circuit issued a writ of mandamus directing the Nuclear Regulatory Commission (NRC) to "promptly continue" proceedings on the Department of Energy's application for authorization to store nuclear waste at Yucca Mountain. 725 F.3d at 267. The D.C. Circuit rejected the NRC's contention that, because Congress had not appropriated sufficient funds for the agency to complete that process, NRC could "shut down its review and consideration" of the application. *Id.* at 258. But there, substantive law, the Nuclear Waste Policy Act, mandated the Commission "shall consider" the application and "'shall issue a final decision approving or disapproving'" the application within three years of its submission. *Id.* at 257-58 (quoting 42 U.S.C. § 10134(d)). "[I]f Congress appropriates no money for a *statutorily mandated program*," the D.C. Circuit remarked, "the Executive obviously cannot move forward." *Id.* at 259 (emphasis added). But here, there is no statutory mandate, in the FCAA or in any other pertinent appropriations statute, requiring Defendants to contract with or obligate funds to Plaintiffs.

To the contrary, the underlying Foreign Assistance Act provisions, for their part, reflect statutory recognition of the Executive Branch's discretion over foreign assistance funding, which the Court ignored. Rather, various Foreign Assistance Act provisions explicitly authorize the President to provide for assistance "on such terms and conditions as he may determine." *See, e.g.*, 22 U.S.C. § 2151b(c)(1)) (health assistance); 22 U.S.C. § 2291(a)(4) (counternarcotics and anti-crime assistance); 22 U.S.C. § 2346 (assistance to promote economic or political stability); 22 U.S.C. § 2347 (International Military Education and Training assistance); 22 U.S.C. § 2348 (Peacekeeping Operations); 22 U.S.C. § 2349aa (anti-terrorism assistance).

**2.** As to irreparable injury to Defendants absent a stay: The requested stay is warranted to avoid interference with the Executive Branch's overriding interest in ensuring that the obligation and expenditure of foreign-aid funds aligns with foreign policy and the national interest.

The effect of the order is to require the Government, during the pendency of Congress's review of the President's special message and accompanying rescission proposals, to "make available for obligation and obligate" billions of dollars in pertinent funds described in those proposals. The Order thus disregards the views of the Executive Branch that such spending is detrimental to U.S. foreign-policy interests, and disregards the need for Congress to consider the rescission proposals without those proposals being undermined by continued obligation of funds during the review period. Such an attempt to direct the functioning of the Executive Branch is improper. *See, e.g.*, *Nat'l Inst. of Health v. Am. Public Health Ass'n*, No. 25A103, 2025 WL 2415669 (Aug. 21, 2025) (granting stay of District Court's order enjoining the Government from terminating millions of dollars in research-related grants); *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) (granting stay of District Court order enjoining the Government from terminating millions of dollars in education grants); *Trump v. Sierra Club*, 140 S. Ct. 1 (2019) (granting stay of District Court order enjoining the Department of Defense from undertaking any border-wall construction using funding the Acting Secretary transferred under statutory authority).

And it is especially improper in light of the foreign-affairs setting of these suits, where the Executive Branch's decisions have "long been held to belong in the domain of political power not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948). Indeed, as the September 30 expiration deadline approaches, Defendants must take steps necessary to obligate the funds that become "close to irrevocable" when taken— such as negotiating with foreign government and international organizations—as Defendants

previously explained. 8/22 Lewin Decl. ¶¶ 9-14 (GHC Doc. 123-1). The requested stay would allow Defendants to seek relief from the Order without further taking such "close to irrevocable" steps before the expiration.

Additionally, obligation of the funds is especially improper in this setting because of the reality that, according to Plaintiffs' own description of their financial condition, will likely be impossible to recover once disbursed to them (as may occur through subawards). *See Nat'l Inst. of Health*, 2025 WL 2415669, at *1; *California*, 145 S. Ct. at 969.

Furthermore, "[w]hen a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties," which itself is "irreparable harm absent a stay." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2561 (2025) (quoting *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (citation modified). Indeed, the preliminary injunction is one such "universal injunction" that "prevents" Defendants from implementing their "policies against nonparties" (not just Plaintiffs), underscoring the irreparable harm that denial of the requested stay would entail.

In that regard, the Order overlooked an important gap between Plaintiffs' assertions about what funds they are "willing and able to compete for" and what funds they historically have received to operate foreign assistance programs. *Compare* Ex. A (GHC Doc. 133-2) (awards Plaintiffs posit they would compete for) (Doc. 133-2) *with* Ex. B (GHC Doc. 133-3) (Plaintiffs' historical awards). The Court thus relieved Plaintiffs of their burden of proof by failing to require evidence substantiating what funds Plaintiffs capably can compete for based on their historical performance. The overbreadth of the relief the Court granted based on that error is especially striking in light of Plaintiffs' own submissions that even a seasoned operator of foreign assistance

7

programs such as the American Bar Association only wins up to 35% of the programs for which it competes. *See* ABA Decl. ¶ 13 (GHC Doc. 133-4) ("In recent years, the ABA CGP 'win rate' on new proposals has been between 25-35%.").

*3.* As to harm to others: The Order's assessment of Plaintiffs' harm (at 36) rests on an assumption that the preliminary injunction was necessary to protect "the very existence of [Plaintiffs'] business." But the Order's validation of Plaintiffs' submissions as to irreparable harm overlooks key defects in those submissions, which, despite being updated following issuance of the D.C. Circuit's August 13 opinion, failed to account for the currently prevailing conditions. The submissions did not acknowledge that Defendants are advancing the multi-step process for obligating about $6.5 billion "consistent with available authorities," including notifications to committees of Congress and negotiation or consultation with foreign entities, and the responsible officials have "already given appropriate policy direction for the allocation of all available expiring funds to specific purposes and programs." *See* 8/31 Lewin Decl. ¶¶ 6-10 (GHC Doc. 135-1). Instead, the submissions erroneously assumed that Defendants are not obligated any expiring funds—they fixate on the hypothetical circumstance "[i]f the expiring appropriations are not spent," but do not address the reality that many appropriations are being obligated before expiration. *See, e.g.*, ABA Decl. ¶ 9 (GHC Doc. 133-4); Chemonics Decl. ¶¶ 10, 12 (GHC Doc. 133-5); DAI Decl. ¶¶ 9, 11 (GHC Doc. 133-6). For their part, the AVAC Plaintiffs' preliminary injunction motion of September 1 relies on declarations that do not address such obligation either—instead concentrating on harm from past stop-work orders and from past terminations of funding instruments. 2d Roehm Decl. ¶¶ 21-27 (AVAC Doc. 143-1); Warren Decl. ¶¶ 11-13 (AVAC Doc. 13-2); Sullivan Decl. ¶¶ 10, 12-13 (AVAC Doc. 13-4).

8

*4.* As to the public interest: "[T]he public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021). As explained, while Plaintiffs stand to benefit from foreign assistance funds Defendants are in the process of obligating, the preliminary injunction will cause significant and irreparable harm to Defendants. It trenches on the public interest in ensuring that tax dollars are not spent on foreign aid projects incompatible with the Executive Branch's policy decisions, including as reflected in proposed rescissions that Congress is in the process of considering.

## CONCLUSION

For the forgoing reasons, the Court should stay its Memorandum Opinion and Order of September 3, 2025 in each suit (AVAC Doc. 145, GHC Doc. 139) pending issuance of the mandate of the Court of Appeals in Defendants' appeal from that opinion and order.

Dated: September 4, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*